UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:

JUDITH MARILYN DONOFF
on behalf of herself and all others
similarly situated,

    Plaintiffs,

v.                                                       **CLASS ACTION**

DELTA AIR LINES, INC.,

    Defendant.
_____/

## COMPLAINT

Plaintiff Judith Marilyn Donoff, on behalf of herself and all others similarly situated, sues Defendant Delta Airlines, Inc. ("Delta") and alleges as follows.

## INTRODUCTION

1.    This is a class action filed to redress injuries that Plaintiff and a class of consumers have suffered, and will continue to suffer, as a result of Delta's deceptive practices relating to its presentation of the charge for trip insurance sold on its website. On its website, and throughout the online process of purchasing a flight ticket and trip insurance, Delta leaves the consumer with the false impression that the charge for trip insurance is a pass-through fee, i.e., a fee that is passed on to another entity and for which Delta has no financial interest. The net impression of Delta's representations and omissions to its consumers is that, when consumers purchase a trip insurance policy, the funds to cover the policy's cost ultimately go to an independent third-party insurance company, whom Delta identifies as the company brokering the policy for sale to the consumer.

Indeed, Delta identifies this third-party insurance company as "the licensed producer," or insurance agent, for the trip insurance policies. In reality, and despite lacking a license to broker insurance policies, Delta retains or ultimately receives an undisclosed kickback from every policy sold.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is an individual who is domiciled in, and is thus a citizen of, Florida.

3. Defendant Delta is a Delaware corporation with its principal place of business in Georgia. It does business regularly throughout the United States, including in Florida. Delta also maintains a registered agent in Florida.

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different from Delta.

5. This Court has personal jurisdiction over Delta because the causes of action asserted herein arise from (i) Delta operating, conducting, engaging in, or carrying on a business or business venture in this state and (ii) Delta committing a tortious act within this state. This Court further has personal jurisdiction over Delta based on its consent and waiver by establishing a registered agent in Florida for the purpose of receiving service of process. Moreover, Delta purposefully availed itself of Florida's consumer market through the advertisement, promotion, and sale of trip insurance policies in Florida.

6. Venue is proper in this Court, pursuant to 28 U.S.C. §§ 1391(b) and (c) because Delta resides in this district for purposes of the statute, as it is subject to the personal jurisdiction of this Court for purposes of this action. Moreover, a substantial part of the events or omissions

giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7. In addition to operating flights nationwide, Delta operates hundreds of daily flights to and from sixteen different airports in Florida. As part of its business, Delta sells tickets to consumers through its website, www.delta.com.

8. When a consumer visits Delta's website, the site allows the consumer to select his or her preferred destination and travel dates.

9. Upon the consumer's selection of his or her specific flights, Delta's website provides the consumer with the price to purchase the selected flights.

10. Before the consumer completes his or her purchase, Delta's website requires consumers to make an election regarding purchasing a trip insurance policy with a third-party insurance provider. There is no way to purchase a ticket on Delta's website without making an election regarding trip insurance.

11. Delta markets the third-party trip insurance to its consumers in a uniform fashion—each consumer sees the same marketing language when purchasing a ticket.

12. After the consumer selects the desired flights, the consumer must proceed to a page to enter passenger information and contact information. After entering this information, the consumer has two options: "Skip to Payment" or "NEXT: TRIP EXTRAS."

13. If the consumer selects the "NEXT: TRIP EXTRAS" button, the consumer is brought to a webpage to select "Trip Extras" for purchase, which include in-flight Wi-Fi and a "Mileage Booster."

14. Under the available "Trip Extras," there is a breakdown of charges for "Total Trip Extras," "Flight Total," and "Trip Total."

15. After selecting any "Trip Extras," the consumer must select a button that reads "REVIEW + PAY" in order to continue with the purchase.

16. After selecting "REVIEW + PAY," or after selecting "Skip to Payment" on the prior webpage, the consumer is brought to a webpage to finalize payment. Regardless of whether the consumer, selects "Skip to Payment" or selects "NEXT: TRIP EXTRAS" and then "REVIEW + PAY," the consumer will ultimately arrive at the same payment webpage.

17. This page contains a section for the consumer to select his or her method of payment and input his or her payment information. A section below the fields for entry of payment information relates to trip insurance. It is titled "**RECOMMENDED: ADD TRIP INSURANCE**." On the same line as this heading, the section states: "*REQUIRED: PLEASE SELECT YES OR NO TO CONTINUE." Under this heading is the line: "Protect your trip to [Destination] for $[Price] total." Next to this line is a green text box with an arrow pointing to the price that states: "Highly Recommended." Under this, there is a line that states: "Piece of mind is only a click away." This is followed by a list of reasons to purchase trip insurance, with each itemized reason preceded by a green checkmark. This is followed by a quote from USA today, which states: "We can't predict who will get sick, if Mother Nature will cancel flights or if luggage gets lost, but we can play it safe by purchasing protection." This is then followed by a line that states how many "customers protected their trip in the last 7 days."

18. To the right of this marketing language, there is a "YES" and "NO" button, one of which must be selected by the consumer to complete the ticket purchase. Under the "NO" button is the following language: "I understand by selecting 'No' I am declining coverage and I am responsible for all cancellation fees and delay expenses for my $[Price] trip."

19. Consumers are required to make an insurance election, as they are unable to

proceed with purchasing their airline tickets on Delta's website until they choose whether to purchase a trip insurance policy. The consumer cannot simply ignore the insurance offering and move on to purchasing a ticket.

20. If the consumer selects the "YES" button, it turns green and a green icon with a checkmark appears next to the button. If the consumer selects "NO," the button turns red and a red icon with an exclamation point appears next to the button.

21. This marketing is intended to create the impression that the trip insurance is in the consumer's best interest—while hiding the fact that Delta is pushing the product because it is in its financial interest to generate sales. In other words, the consumer is deceived into believing that Delta is acting in the consumer's best financial interest, and not its own.

22. For example, Delta includes the green textbox with the word "Recommended" at the top of the insurance-election section, and then represents to the consumer that the party "recommending" the purchase of insurance is AGA Service Company, not Delta. This representation is designed to hide Delta's financial interest in the purchase of trip insurance policies.

23. After the section that portrays the trip insurance policies as something in the consumer's best financial interest, Delta proceeds to conceal its financial motivation in pushing the product by stating that a different entity—AGA Service Company—is the entity recommending and brokering the trip insurance policies being sold on its website.

24. Specifically, below the marketing language is the following language. "Terms, conditions and exclusions apply. Benefits underwritten by BCS Insurance Company or Jefferson Insurance Company, depending on your state of residence. ***Recommended by AGA Service Company, the licensed producer*** and administrator of this plan." (emphasis added).

25. Delta's website thus represents to the consumer that it is AGA Service Company, and not Delta, who is recommending the trip insurance and who is "the licensed producer" for the trip insurance policies.

26. A "producer" is insurance parlance for an insurance agent or broker, i.e., the one who makes a commission on the sale of insurance. Thus, by stating that AGA Service Company is "the" producer, Delta represents that it is not acting as an agent or broker, i.e., it is not making a commission on sales of trip insurance policies.

27. In fact, Delta cannot sell insurance to the consumer (and thus cannot receive commissions on sales) because it is not licensed as an insurer or insurance agent in Florida or anywhere else.

28. Like Florida, other states across the country prohibit the unlicensed sale or brokerage of insurance, including the receipt of commissions by people or entities without a license. For example, the New York Attorney General's Office has issued an official opinion that an insurer may not pay any commission to transportation companies for the sale of travel insurance unless the transportation company is a licensed and appointed insurance agent or broker. *See* Ex. 1, N.Y. General Counsel Opinion No. 4-23-2008 ("May an insurer pay an insurance commission to a cruise line or tour operator that is not a licensed and appointed insurance agent, or a licensed insurance broker? . . . No. An insurer may not pay an insurance commission to a cruise line or tour operator that is not either a licensed and appointed insurance agent, or a licensed insurance broker.").

29. Further enhancing the idea that the trip insurance is a pass-through charge is the presentation of the invoice. When a consumer buys a trip insurance policy on Delta's website, the cost of the policy is not included in the consumer's bill for the purchased airfare. Rather the

consumer's insurance cost is itemized separately even though the airfare and trip insurance cost are paid via a one-time credit card charge on Delta's website. In contrast, when a consumer elects to purchase from Delta a seat upgrade or "Trip Extra," the cost of that "add on" is included in the fare price. The lack of inclusion of the trip insurance cost in the consumer's airfare purchase price further indicates to the consumer that Delta treats the insurance cost as a pass-through charge, not as a profit vehicle for itself.

30. Moreover, if a consumer seeks to have questions answered about the insurance offered on Delta's website, the "terms, conditions and exclusions apply" link takes the consumer to an Allianz Global Assistance ("Allianz") link. That link notes that, if the consumer changes her mind about the purchase, "[w]ithin 10 days of purchasing the program, Allianz Global Assistance will process a full refund of premium to you." Conspicuously absent in that representation is any mention of Delta, further evidence that Defendant represents the trip insurance as a "pass through" charge, wherein it is simply a conduit for funds to Allianz without any profit interest.

31. Additionally, Delta's website has a webpage entitled "Trip Protection" for consumers who seek more information about the insurance offered on Delta's website. This webpage contains the Allianz logo and repeats the statement: "AGA Service Company is the licensed producer and administrator of these plans."

32. On the same page Delta tells consumers the "U.S. State Department recommends trip protection," and that "Allianz Global Assistance is a trusted Delta partner and the leader in the travel insurance and assistance industry."

33. Another webpage on Delta's website is entitled "Taxes & Carrier-Imposed Fees." On this webpage, Delta tells the consumer: "We don't want you to have any unpleasant surprises on your bill. We're making every effort to let you know about any taxes and carrier-imposed fees

that might be included." This is followed by an extensive list of various fees. Nowhere on this list is there any disclosure of Delta's retention or receipt of a commission or kickback for every trip insurance policy sold on its website.

34. These statements and omissions to the consumer on Delta's website, especially Delta's representation that another entity is "the producer" of the trip insurance policies, reinforce the impression of the trip insurance premium as a pass-through charge—one where Delta has no profit interest in the sales of trip insurance policies on its website.

35. Delta's representation that another entity is "the producer" of the trip insurance is also an affirmative misrepresentation because Delta's actual role in the sale of the trip insurance policies is analogous (if not identical) to that of an insurance agent, who receives commissions on policies sold. In addition to AGA Service Company, Delta is or acts as an insurance agent and is also a "producer" of the trip insurance policies.

36. Delta's representations and omissions necessarily inform the consumer that Delta does not receive a commission or otherwise profit from the sale of trip insurance.

37. After a consumer elects to purchase a trip insurance policy and proceeds to complete the purchase of an accompanying airfare, Allianz, not Delta, sends the consumer an email containing a copy of the purchased insurance policy. Nowhere in that communication or accompanying insurance policy is there any reference to Delta having a role in the provision of the insurance.

38. The net impression of all of Delta's representations and omissions to its consumers on its website and during the online purchase process—including, but not limited to, Delta's assertion that another entity is "the" producer for the insurance (and by necessary implication, Delta is not)—is that the cost of the trip insurance policies is a pass-through charge, where Delta

simply collects the money for the insurance policy from the consumer and forwards it on to the actual insurance provider, without any profit interest in the charge.

39. This net impression is reinforced by the fact that state laws generally prohibit the unlicensed sale of insurance, including the receipt of commissions on sales of insurance.

40. It is thus reasonable for consumers to expect that Delta is not receiving a commission or any other remuneration from any sales of insurance.

41. In reality, and completely unbeknownst to its consumers, the trip insurance is a hidden profit center for Delta, as Delta retains or ultimately receives for itself a portion of the funds for every trip insurance policy its consumers purchase on its website.

42. Delta, instead of disclosing its profit interest in the trip insurance policies sold on its website, disguises its financial interest by leaving consumers with the impression that the cost of an insurance policy is a "pass through" charge. Indeed, Delta affirmatively tells consumers that a different entity is "the producer" of the insurance, without any suggestion or indication that Delta is retaining or ultimately receiving a portion of this charge for itself.

43. This is in contrast to other charges that Delta offers on its website, such as more desirable seats and early boarding rights, where Delta bundles the cost of these optional fees into the overall price of a consumer's ticket, thereby signaling Delta's profit interest to the consumer.

44. The trip insurance program on Delta's website represents an illegal kickback scheme—one in which Delta hides and misleads consumers about its role and profit interest in the insurance policies sold on its website.

45. The price for the trip insurance sold on Delta's website is a price of Allianz, not Delta.

46. Delta provides no services to the consumer in connection with the sale of trip

insurance on its website.

47. No contractual relationship is formed between the consumer and Delta in connection with a consumer's purchase of trip insurance on Delta's website.

48. No bargained-for exchange takes place between the consumer and Delta in connection with a consumer's purchase of trip insurance on Delta's website.

49. On April 10, 2018, Plaintiff purchased a trip insurance policy on Delta's website. Plaintiff received an email from the insurance provider attaching her policy, neither of which referenced Delta.

50. Delta has never disclosed to Plaintiff, or any of the class members, the true nature of its relationship with Allianz, Jefferson Insurance Company, or BCS Insurance Company. Specifically, Delta has not disclosed the fact that it retains or receives a substantial kickback or commission on the policies made available on its website.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23.

### Class Definition

52. Plaintiff seeks to represent the following class:

All persons who purchased a trip insurance policy on Delta's website within the applicable limitations period (the "Class Period").

Excluded from this class are Delta, its affiliates, subsidiaries, agents, board members, directors, officers, and employees. Also excluded from the class are the district judge and magistrate judge assigned to this case, their staff, and their immediate family members.

53. This class action is brought pursuant to Rule 23(b)(2) because Delta has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class appropriate.

54. This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Plaintiff's claim and the class members' claims predominate over any question of law or fact affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

55. Delta has subjected Plaintiff and the members of the class to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is Delta's standard business practice.

### A.   Numerosity

56. The individual class members are so numerous that joinder of all members in a single action is impracticable. Delta operates thousands of flights a day, and upon information and belief, it has sold thousands of trip insurance policies during the Class Period.

57. While Plaintiff estimates the proposed class numbers in the millions, the exact number of class members, as well as the class members' names and addresses, can be identified from Delta's or the insurer's business records.

### B.   Commonality/Predominance

58. Common questions of law and fact exist as to Plaintiff's and the class members' claims. These common questions predominate over any questions solely affecting individual class members, including, but not limited to, the following:

   a. Whether Delta engaged in a deceptive and unfair business practice by misleading the class about its financial interest in making available trip insurance policies and its receipt or retention of a kickback;

   b. Whether the representations made about insurance premiums collected by Delta would lead the reasonable consumer to believe it was a pass-through charge;

    c.    Whether Delta receives undisclosed kickbacks, commissions, or fees from the sale of trip insurance;

    d.    Whether Delta manipulated the class through trip insurance products in order to maximize its own profits at the expense of the class;

    e.    Whether Delta retains or receives a commission or kickback for the sale of trip insurance policies without a license;

    f.    Whether and to what extent Delta's conduct has caused injury to the Plaintiff and the class members; and

    g.    Whether Delta unlawfully enriched itself at the expense of the class.

**C.   Typicality**

59.   Plaintiff's claims are typical of the putative class members' claims because of the similarity, uniformity, and common purpose of Delta's unlawful conduct. Plaintiff, like all class members, was damaged through his payment of money that Delta deceptively presented as a pass-through charge to the insurance company, when in fact Delta enriched itself in this process.

60.   Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Delta's wrongful conduct and willful nondisclosures.

**D.   Adequacy**

61.   Plaintiff will fairly and adequately protect and represent the interest of each member of the class because he has suffered the same wrongs as the class members.

62.   Plaintiff is fully cognizant of his responsibilities as class representative and has retained León Cosgrove, LLP to prosecute this case. León Cosgrove, LLP is experienced in complex class action litigation, including litigation related to unfair and deceptive trade practices, and has the financial and legal resources to meet the costs of and understand the legal issues

associated with this type of litigation.

63. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

**E.  The Prerequisites of Rule 23(b)(2) Are Satisfied.**

64. The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) exist as Delta has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and equitable relief with respect to the class as a whole.

65. Delta's actions are generally applicable to the class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the class as a whole.

**F.  The Prerequisites of Rule 23(b)(3) Are Satisfied.**

66. The questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy.

67. The likelihood that individual members of the class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

68. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class. Plaintiff knows of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I
## <u>VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT</u>

69. Plaintiff re-alleges paragraphs 1 through 68 as if fully set forth herein and further alleges the following.

70. This count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

71. At all times material, Plaintiff and all members of the class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

72. At all times material, Delta conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

73. Delta has engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices alleged above.

74. The misrepresentations and deceptions, and concealment and omissions of material facts, alleged in the preceding paragraphs occurred in connection with Delta's trade and commerce in Florida.

75. Delta's unfair and deceptive acts and practices violate FDUTPA, Section 501.201 and 501.211, Fla. Stat.

76. As a direct and proximate result of Delta's FDUTPA violations, Plaintiff and the class have been damaged in an amount to be proven at trial. Plaintiff and the class have a monetary, out of pocket loss, as they paid money to Delta as a result of its deceptive conduct.

77. Plaintiff and the class are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under FDUTPA.

## COUNT II
## UNJUST ENRICHMENT

78. Plaintiff re-alleges paragraphs 1 through 68 as if fully set forth herein and further alleges the following.

79. This is a count for unjust enrichment.

80. Plaintiff and each member of the class conferred a direct benefit on Delta through their payment for trip insurance, allowing Delta to enrich itself to the detriment of the class.

81. Delta appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of its insurance kickback scheme.

82. Under the circumstances, it would be unjust and inequitable to allow Delta to retain this benefit, as it was obtained through deceptive representations.

83. Independently, it would also be unjust and inequitable to allow Delta to retain this benefit because Delta is not legally entitled to receive commissions for sales of trip insurance in the first place because it does not have a license to broker insurance.

84. Plaintiff and the class suffered damages as a result of Defendant's unjust enrichment.

## PRAYER FOR RELIEF

Named plaintiff and the plaintiff class request the following relief:

a. Certification of the class;

b. A jury trial and judgment against Delta;

c. An order requiring Delta to make full disclosure to consumers of its receipt or retention of trip insurance premiums sold on its website and the amount of the kickback it retains or receives;

d. The costs of suit, including reasonable attorney's fees, in accordance with

FDUTPA;

e. General, actual, compensatory, and exemplary damages in an amount to be determined at trial;

f. Restitution of the amount Delta was unjustly enriched as a result of the wrongs alleged herein, in an amount to be determined at trial;

g. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

h. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: September 17, 2018

Respectfully submitted,

*/s/ Alec H. Schultz*
Scott B. Cosgrove
  Fla. Bar No. 161365
Alec H. Schultz
  Fla. Bar No. 35022
John R. Byrne
  Fla. Bar No. 126294
Jeremy L. Kahn
   Fla. Bar No. 105277
LEÓN COSGROVE, LLP
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Tel:   305.740.1975
Email: scosgrove@leoncosgrove.com
Email: aschultz@leoncosgrove.com
Email: jbyrne@leoncosgrove.com
Email: jkahn@leoncosgrove.com

*Counsel for Plaintiff and the Class*