UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 18-CV-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF
on behalf of herself and all others
similarly situated,

      Plaintiffs,                            CLASS ACTION

vs.

DELTA AIR LINES, INC.

      Defendant.

_____/

**DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

INTRODUCTION....................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

STANDARD OF REVIEW .....................................................................................................4

ARGUMENT ..........................................................................................................................4

I.   The ADA Preempts Plaintiff's State Law Claims ...............................................................4

     A.     The Supreme Court Broadly Construes The ADA's Preemption Clause. ............4

     B.     The ADA Preempts Plaintiff's State Law Claims Because They Amount To Impermissible Regulation Of An Airline Service.................................................7

II.  The McCarran-Ferguson Act Bars Plaintiff's RICO Claims ...........................................10

III. Plaintiff's Claims Are Inadequately Pled Under *Twombly* and Rule 9(b).......................12

     A.     Plaintiff Fails To Sufficiently Allege The Elements Of A Claim For Violation Of RICO Or A RICO Conspiracy. .......................................................12

           1.     Plaintiff lacks RICO standing...........................................................13

           2.     Plaintiff fails to allege Delta committed any RICO predicate act. ...........14

           3.     Plaintiff's allegation of a RICO enterprise is insufficient. .........................16

           4.     Plaintiff's RICO conspiracy claim fails. ......................................................17

     B.     Plaintiff's FDUTPA Claim Is Fatally Defective. .................................................18

     C.     Plaintiff's Unjust Enrichment Claim Is Insufficiently Pled ................................19

     CONCLUSION ...............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC Charters, Inc. v. Bronson*,
  591 F. Supp. 2d 1272 (S.D. Fla. 2008) ...............................................................8

*ADT LLC v. Vivint, Inc.*,
  2017 WL 5640725 (S.D. Fla. Aug. 3, 2017).........................................................4

*Advanced Optics Elecs., Inc. v. Robins*,
  633 F. Supp. 2d 1237 (D.N.M. 2008) ................................................................16

*Almanza v. United Airlines, Inc.*,
  162 F. Supp. 3d 1341 (S.D. Ga. 2016), *aff'd*, 851 F.3d 1060 (11th Cir. 2017)......16

*In re Am. Airlines, Inc., Privacy Litig.*,
  370 F. Supp. 2d 552 (N.D. Tex. 2005) ..............................................................8, 9

*Am. Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995)..............................................................................5, 9, 10

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) .........................................................................17

*Am. United Life Ins. Co. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) .........................................................................15

*Ambrosia Coal & Const. Co. v. Pages Morales*,
  482 F.3d 1309 (11th Cir. 2007) ...............................................................4, 13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................4

*Bailey v. Rocky Mountain Holdings, LLC*,
  889 F.3d 1259 (11th Cir. 2018) ...........................................................................7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................4

*Branche v. Airtran Airways, Inc.*,
  342 F.3d 1248 (11th Cir. 2003) .......................................................................7, 8

*Bristol Hotel Mgmt. Corp. v. Aetna Cas. & Sur. Co.*,
  20 F. Supp. 2d 1345 (S.D. Fla. 1998) ......................................................2, 10, 12

*Bristol-Myers Squibb Co. v. Superior Court,*
    137 S. Ct. 1773 (2017)..............................................................................................................3

*Buell v. Direct Gen. Ins. Inc.,*
    267 F. App'x 907 (11th Cir. 2008) ........................................................................................20

*Casey v. Fla. Coastal Sch. of Law, Inc.,*
    2015 WL 10096084 (M.D. Fla. Aug. 11, 2015) ....................................................................19

*Christensen v. Smith,*
    2016 WL 3360420 (D. Utah Mar. 21, 2016) .........................................................................16

*Cisneros v. Petland, Inc.,*
    2018 WL 4611612 (N.D. Ga. Apr. 17, 2018) ..................................................................16, 17

*David v. United Cont'l Holdings, Inc.,*
    2015 WL 7573204 (D.N.J. Nov. 24, 2015) .............................................................................9

*Dilts v. Penske Logistics, LLC,*
    769 F.3d 637 (9th Cir. 2014) ...................................................................................................6

*Dolphin LLC v. WCI Communities, Inc.,*
    715 F.3d 1243 (11th Cir. 2013) .............................................................................................18

*Ellis v. Warner,*
    2017 WL 634287 (S.D. Fla. Feb. 16, 2017) ..........................................................................16

*Glover v. Liggett Grp., Inc.,*
    459 F.3d 1304 (11th Cir. 2006) ...............................................................................................4

*Humana, Inc. v. Forsyth,*
    525 U.S. 299 (1999)................................................................................................................12

*In re JetBlue Airways Corp. Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..........................................................................8, 9, 10

*Kondell v. Blue Cross & Blue Shield of Fla., Inc.,*
    187 F. Supp. 3d 1348 (S.D. Fla. 2016) ..................................................................................12

*Koutsouradis v. Delta Air Lines, Inc.,*
    427 F.3d 1339 (11th Cir. 2005) ...............................................................................................7

*Kunzelmann v. Wells Fargo Bank, N.A.,*
    2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (Middlebrooks, J.) .............................................20

*Langford v. Rite Aid of Ala., Inc.,*
    231 F.3d 1308 (11th Cir. 2000) ........................................................................................15, 16

*In re Managed Care Litig.*,
  298 F. Supp. 2d 1259 (S.D. Fla. 2003) ...................................................................15

*McIntyre v. Marriott Ownership Resorts, Inc.*,
  2013 WL 12212640 (S.D. Fla. Dec. 10, 2013) .........................................................18

*Miller v. Delta Air Lines, Inc.*,
  2012 WL 1155138 (S.D. Fla. Apr. 5, 2012) .................................................................8

*Molina v. Aurora Loan Servs., LLC*,
  635 F. App'x 618 (11th Cir. 2015) ...........................................................................19

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .......................................................................................... *passim*

*Northwest, Inc. v. Ginsberg*,
  572 U.S. 273 (2014) .................................................................................... 1, 4, 6, 7

*O'Malley v. O'Neill*,
  887 F.2d 1557 (11th Cir. 1989) ................................................................................17

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of RI*,
  883 F.2d 1101 (1st Cir. 1989) ..................................................................................11

*Prohias v. Pfizer, Inc.*,
  490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...................................................................20

*Ray v. Spirit Airlines, Inc.*,
  126 F. Supp. 3d 1332 (S.D. Fla. 2015) .................................................................4, 16

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ...........................................................................13, 14

*Reva, Inc. v. Humana Health Benefit Plan of La.*,
  2018 WL 1701969 (S.D. Fla. Mar. 19, 2018) ............................................................9

*Rogers v. Nacchio*,
  241 F. App'x 602 (11th Cir. 2007) ...........................................................................14

*Rowe v. N.H. Motor Transport Ass'n*,
  552 U.S. 364 (2008) ................................................................................... 6, 7, 10

*Sec. & Exch. Comm'n v. Nat'l Sec., Inc.*,
  393 U.S. 453 (1969) ..................................................................................................11

*U.S. Dep't of Treasury v. Fabe*,
  508 U.S. 491 (1993) ..................................................................................................11

*U.S. v. Ward*,
   486 F.3d 1212 (11th Cir. 2007) ........................................................................14

*Van Zanen v. Qwest Wireless, L.L.C.*,
   550 F. Supp. 2d 1261 (D. Col. 2007), *aff'd*, 522 F.3d 1127 (10th Cir. 2008) ........................20

*Virgilio v. Ryland Grp., Inc.*,
   680 F.3d 1329 (11th Cir. 2012) ................................................................19, 20

*Weinstein v. Zurich Kemper Life*,
   2002 WL 32828648 (S.D. Fla. Mar. 15, 2002)................................................11, 12

*Zamber v. American Airlines, Inc.*,
   282 F. Supp. 3d 1289 (S.D. Fla. 2017) ..........................................................9, 10

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ......................................................................19

**Statutes**

Airline Deregulation Act of 1978, 49 U.S.C. § 40101 *et seq.* ............................................. *passim*

McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* ........................................10, 11, 12

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ................... 12-17

18 U.S.C. § 1956................................................................................................16

Fla. Stat. § 626.9521 .........................................................................................11

Fla. Stat. § 626.9531 .........................................................................................11

Fla. Stat. § 626.112 ..............................................................................11, 18, 20

Fla. Stat. § 501.212(4)........................................................................................18

Fla. Stat. § 624.307............................................................................................18

Fla. Stat. § 626.9561..........................................................................................18

Fla. Stat. § 626.9541..........................................................................................18

**Other Authorities**

76 Fed. Reg. 23110-01, at 23144 (Apr. 25, 2011) ..........................................................8

Federal Rule of Civil Procedure 9(b)..................................................................4, 12

Federal Rule of Civil Procedure 12(b)(6) .................................................................4

Defendant Delta Air Lines, Inc. ("Delta") hereby moves to dismiss the claims in Plaintiff Judith Marilyn Donoff's ("Plaintiff") Amended Complaint as preempted under the Airline Deregulation Act, 49 U.S.C. § 41713, and the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). In support of its Motion, Delta submits the following Memorandum of Law.

## INTRODUCTION

Delta, like all of its primary competitors, offers its customers who purchase airline tickets on Delta's website the ability to purchase travel insurance from a third-party provider. Plaintiff alleges that this commonplace and beneficial service offered by Delta is fraudulent and deceptive because Delta does not disclose its own financial interest in the travel insurance policies sold on its website, and is allegedly acting as the broker or agent for the insurance policies in violation of Florida law. Plaintiff asserts claims for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and unjust enrichment. But Plaintiff's Amended Complaint fails to state a viable claim for multiple, independent reasons.

*First*—under binding Supreme Court precedent—the Airline Deregulation Act ("ADA") preempts Plaintiff's state law claims. To further "efficiency, innovation, and low prices," Congress deregulated the airline industry through the ADA. 49 U.S.C. §§ 40101(a)(6), (12)(A). To ensure that the states would not undo that deregulation, the ADA includes a "broad" preemption provision, providing that states "may not . . . enforce" a "law related" or "connect[ed]" to "service of an air carrier." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 383 (1992). Plaintiff's allegations that Delta is unlawfully providing insurance services to its customers, and deceptively marketing that service in connection with the sale of airline tickets, bring her state law claims directly within the Supreme Court's "broad interpretation of the ADA pre-emption provision." *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014). Plaintiff's FDUTPA and unjust enrichment claims are preempted and accordingly fail at the threshold.

*Second*, in tacit recognition of the ADA's preemption of her state law claims, Plaintiff attempts in her Amended Complaint to plead a federal RICO violation based on the same conduct underpinning her state law claims. But Plaintiff's federal RICO claim suffers a similar threshold defect: it is barred by the McCarran-Ferguson Act. McCarran-Ferguson "guarantees to

1

the states the power to regulate the business of insurance," and bars federal claims that would impair a state law enacted "for the purpose of regulating the business of insurance." *Bristol Hotel Mgmt. Corp. v. Aetna Cas. & Sur. Co.*, 20 F. Supp. 2d 1345, 1349-50 (S.D. Fla. 1998). Allowing Plaintiff to proceed with a RICO claim—which is based on Delta's allegedly fraudulent scheme of failing to disclose its unlicensed brokering of insurance policies—would impair Florida's extensive statutory framework regulating the very insurance practices that Plaintiff challenges here. Plaintiff's RICO claim, therefore, is also barred.

*Third*, beyond these threshold bars, Plaintiff's claims each suffer multiple, fatal pleading defects. Plaintiff's RICO claim fails because Plaintiff does not allege that she was directly injured by Delta's alleged racketeering activity. Critically, Plaintiff does not allege that she would not have purchased the travel insurance had she known Delta had a financial interest in marketing the policies. Nor does Plaintiff sufficiently allege that Delta committed any RICO predicate acts, or that Delta and the other members of the alleged "enterprise" were acting in furtherance of the enterprise's affairs, rather than their own business interests. Plaintiff's state law claims fare no better. By its express terms, FDUTPA does not apply to any person or activity regulated under laws administered by the Department of Financial Services. Plaintiff's allegation that Delta is unlawfully acting as the broker and agent of the travel insurance policies brings her FDUTPA claim directly within the ambit of this prohibition. In addition—as with her RICO claim—Plaintiff fails to allege the causation necessary to state a FDUTPA claim. And her unjust enrichment claim fails because Plaintiff does not allege that she conferred any direct benefit on Delta, or that it would be "inequitable" for Delta to receive compensation for marketing the travel insurance policies on its website.

For these reasons, as stated more fully below, the claims in the Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

Customers may purchase travel on a Delta flight by visiting Delta's website at www.delta.com. Am. Compl. ¶ 11. During the online booking process, customers are presented with an option to purchase a travel insurance policy, and must make an election regarding travel insurance before they can proceed with the purchase of their airline ticket. *Id.* ¶¶ 14, 23. The travel insurance policies marketed on Delta's website are offered by "a third-party insurance provider,"—AGA Service Company ("AGA")—and underwritten by Jefferson Insurance

Company ("Jefferson") and BCS Insurance Company ("BCS"). *Id.* ¶¶ 14, 28-29, 36, 42. If a customer elects to purchase a travel insurance policy on Delta's website, the cost of the policy is itemized separately from the airfare purchase, and the customer receives a separate email from the insurance provider attaching the customer's policy. *Id.* ¶¶ 34, 57.

On September 17, 2018, Plaintiff filed a putative nationwide[1] class action complaint against Delta alleging that Delta's marketing of travel insurance policies on its website is unlawfully deceptive because Delta conceals its own financial interest in the policy sales. ECF 1, ¶¶ 1, 23. Specifically, Plaintiff alleges that Delta deceives customers by failing to disclose on its website that Delta "retains or ultimately receives an undisclosed kickback from every policy sold" on its website. *Id.* ¶ 1. Plaintiff's original complaint included claims for unjust enrichment and violation of FDUTPA. Delta moved to dismiss, arguing, among other things, that Plaintiff's claims are preempted by the ADA. ECF 11. Rather than respond to Delta's motion, Plaintiff filed her Amended Complaint on November 13, 2018. ECF 15.

The Amended Complaint—in a transparent effort to circumvent the ADA's preemption of her state law claims—includes a RICO and RICO conspiracy claim. Plaintiff alleges Delta is participating in a RICO "enterprise"—which includes AGA, BCS, and Jefferson—through a pattern of racketeering activity designed to hide from its customers the fact that Delta is receiving an "illegal kickback" from each travel insurance policy sold through its website. Am. Compl. ¶¶ 95-100. Plaintiff's Amended Complaint also includes an allegation that Delta "is acting as an unlicensed insurance agent and/or broker, [and] receiving insurance commissions," in violation of Florida's statutory scheme regulating the business of insurance in the state. *Id.* ¶¶ 26, 32–33. Plaintiff alleges that, as a result of Delta's allegedly deceptive conduct, she "suffered an out of pocket loss by the payment of undisclosed and illegal commission kickbacks." *Id.* ¶ 5. Plaintiff does not allege, however, that she was deceived by any particular statement on Delta's website. Nor does she allege that, had she known that Delta would obtain a financial benefit from her purchase, she would not have purchased the insurance plan. These, and other defects in Plaintiff's Amended Complaint, described more fully below, require dismissal of the Amended Complaint with prejudice.

---

[1] Plaintiff's nationwide class allegations fail because the Court lacks personal jurisdiction over Delta with respect to individuals who purchased their trip insurance outside this state. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017); *see also* Fed. R. Civ. P. 12(b)(2).

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *ADT LLC v. Vivint, Inc.*, 2017 WL 5640725, *2 (S.D. Fla. Aug. 3, 2017). "In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Id.* To survive dismissal, a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570. "Dismissal is therefore permitted 'when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (citation omitted).

RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Federal Rule of Civil Procedure 9(b). *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). This is especially true where the claim "arises from an alleged pattern of racketeering consisting of fraud." Fraud based RICO allegations "must comply . . . with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard." *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1336 (S.D. Fla. 2015). "Under Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.*

## ARGUMENT

I.    **THE ADA PREEMPTS PLAINTIFF'S STATE LAW CLAIMS**

A.    **The Supreme Court Broadly Construes The ADA's Preemption Clause.**

Congress enacted the ADA in 1978 to spur competitive market forces by largely deregulating the airline industry. *Morales*, 504 U.S. at 378 (citing 49 U.S.C. §§ 1302(a)(4), 1302(a)(9)). Congress determined that efficiency and innovation, as well as the quality and variety of airline services, would flourish in a deregulated environment. *Northwest,* 572 U.S. at 280, 283. Concerned that states might promulgate their own laws to govern airline regulations, Congress included a broad preemption clause in the ADA: "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C.

§ 41713(b)(1). The Supreme Court has determined that this language expresses "a broad pre-emptive purpose," interpreting it to preempt "actions having a connection with, or reference to, airline 'rates, routes, or services.'" *Morales*, 504 U.S. at 383–84. In a string of cases, the Supreme Court has repeatedly reaffirmed the breadth of the ADA's preemption clause, invalidating the application of state law (including common law claims) to numerous aspects of the airline industry.

*Morales*, the Court's first ADA preemption case, involved an effort by several states to regulate airline advertising through the use of state consumer protection statutes. *Morales*, 504 U.S. at 378. In *Morales*, a group of state attorneys general sent a memorandum to several airlines setting forth "Guidelines" for the manner in which airlines could advertise fees. *Id.* The memorandum informed the airlines that failure to conform their advertising practices to the Guidelines could result in liability under the laws of the various states governing deceptive advertising and trade practices. *Id.* at 378–79. The airlines sued, claiming that state regulations applicable to fare advertisements were preempted by the ADA. The Supreme Court agreed. Interpreting the language of the ADA's preemption clause, the Court noted that "the key phrase, obviously, is 'relating to'" which is defined "broad[ly]" to mean "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Id.* at 383. The Court held that the ADA preempted the states' attempt to regulate the airlines' advertisements because the Guidelines "quite obviously" "'relat[e] to' fares." *Id.* at 387–88 (explaining that "collectively, the guidelines establish binding requirements as to how tickets may be marketed if they are to be sold at given prices"). Moreover, "it [was] clear as an economic matter that state restrictions on fare advertising ha[d] the [] significant effect upon fares" forbidden by the ADA. *Id.* at 388.

In the Court's next ADA preemption case, members of American Airlines' frequent flyer program brought state law claims for breach of contract and violation of the Illinois Consumer Fraud Act ("ICFA") arising from American's retroactive application of changes to the program. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 224–25 (1995). The Court in *Wolens* concluded the ADA preempted Plaintiff's ICFA claim, explaining that state consumer protection laws—like ICFA (and FDUTPA)—have the "inherent" "potential for intrusive regulation of airlines' business practices" because they "serve[] as a means to guide and police the marketing practices of the airlines." *Id.* 227–28. In so ruling, the Court held that the plaintiff's claims involving the

frequent flyer program relate to "'services'" in that they involve "access to flights and class-of-service upgrades unlimited by retrospectively applied capacity controls and blackout dates." *Id.* at 226.

The Supreme Court next applied ADA preemption concepts in *Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364 (2008), which involved a Maine law requiring tobacco shippers to use only those delivery companies that provided certain recipient verification services.[2] The Court held that the law was preempted because it "directly regulate[d]" the carrier's "pickup and delivery service" and would force carriers to offer services "that differ significantly from those that, in the absence of the regulation, the market might dictate." *Id.* at 372-73, 376. The Court explained that "to interpret the federal law to permit these, and similar, state requirements could easily lead to a patchwork of state service-determining laws, rules, and regulations." *Id.* at 373. Such a "regulatory patchwork" is inconsistent with Congress' effort to leave such decisions to the competitive market. *Id.*

Most recently, the Supreme Court concluded that the ADA also preempts claims arising from state common law—like Plaintiff's unjust enrichment claim here—as a "common-law rule clearly has 'the force and effect of law.'" *Northwest*, 572 U.S. at 281–82. In *Northwest*, the plaintiff claimed that the airline breached its implied covenant of good faith and fair dealing when it terminated the plaintiff's membership in its frequent flyer program. *Id.* at 278. Taking an expansive view of what "relates to" an airline's "rates, routes, or services," the Court held that the frequent flyer program related both to the airline's rates and services.  The program related to rates because it "awards mileage credits that can be redeemed for tickets and upgrades," and to services, because it involves "access to flights and to higher service categories." *Id.* at 284.

Taken together, these decisions illustrate an expansive reading of the ADA preemption clause, applying it to actions that in any way relate to—*i.e.*, have a connection with or reference to—airline "rates, routes, or services." *Morales*, 504 U.S. at 384, 386. For more than two decades, the Supreme Court has cleaved to the position that the ADA preemption clause expresses a "broad pre-emptive purpose" and is both "deliberately expansive" and "conspicuous

---

[2] Although *Rowe* involved preemption under the Federal Aviation Administration Authorization Act ("FAAAA"), and not the ADA, "the FAAAA was modeled on the Airline Deregulation Act of 1978" and "us[es] text nearly identical to" the ADA's, including the exact preemption language at issue in this case. *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643–44 (9th Cir. 2014).

for its breadth." *Morales*, 504 U.S. at 383-84. The Eleventh Circuit has followed suit, holding that application of state law in a manner that has a connection to airline rates or services is impermissible. *See, e.g.*, *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344–45 (11th Cir. 2005); *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259 (11th Cir. 2018). This broad application of the ADA's preemption provision serves Congress's purpose of safeguarding against the creation of a confusing "patchwork" of regulations burdensome to both airline passengers and airlines. *Rowe*, 552 U.S. at 373.

   **B.     The ADA Preempts Plaintiff's State Law Claims Because They Amount To Impermissible Regulation Of An Airline Service.**

   The Supreme Court precedent cited above, and other cases addressing the expansive sweep of the ADA's preemption clause, bar Plaintiff's state law claims. Plaintiff's FDUTPA and unjust enrichment claims are paradigmatic examples of claims that the ADA preempts because, on their face, they have "a connection with, or reference to, airline . . . services." *Northwest*, 572 U.S. at 280. Plaintiff's claims are based on (1) alleged omissions on Delta's website relating to services that Delta offers—*i.e.*, connecting its customers to sellers of travel insurance policies—in connection with Delta's sale of airline tickets, and (2) Plaintiff's allegation that Delta is unlawfully acting as the broker for the travel insurance policies sold on its website. *See, e.g.*, Am. Compl. ¶¶ 2, 32. These allegations fall squarely within the broad pre-emptive purpose of the ADA and the Eleventh Circuit's expansive interpretation of "airline services." *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1256–57 (11th Cir. 2003).

   In *Branche*, the Eleventh Circuit adopted the Fifth Circuit's "more expansive[]" interpretation of "service," holding:

> Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included within the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly protect from state regulation.

342 F.3d at 1256–57 (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc). Delta is providing a service to its customers by making available the opportunity for customers to purchase travel insurance policies. These travel insurance policies are obviously "incident" and "appurtenant" to Delta's contract of carriage because they include, among other

things, reimbursement for travel delay and lost baggage.  *Id.*; *see also Miller v. Delta Air Lines, Inc.*, 2012 WL 1155138, *1–3 (S.D. Fla. Apr. 5, 2012) (holding the ADA preempted FDUTPA and unjust enrichment claims challenging airline's failure to inform customers of their right to reimbursement for lost, damaged, or delayed baggage).  Travel insurance also includes reimbursement for flight cancellations, which directly implicates the key service Delta offers (*i.e.*, allows Delta customers flexibility in cancelling or moving flights). In fact, the Department of Transportation—the federal agency responsible for economic regulation of airlines—treats the availability of travel insurance as an ancillary service of airlines. 76 Fed. Reg. 23110-01, at 23144 (Apr. 25, 2011) (characterizing travel insurance as an "optional service" of an airline). Moreover, Plaintiff's allegation in her Amended Complaint that Delta is not only marketing the policies, but is, itself, acting as the insurance agent or broker for the policy unquestionably brings her claims within the purview of the ADA's preemption clause. Am. Compl. ¶¶ 31–32. This clearly represents "a bargained-for . . . provision of labor"—*i.e.*, the alleged brokering of travel insurance—from Delta to its customers that "leads to a concern with the contractual arrangement between the airline and the user of the service." *Branche*, 342 F.3d at 1256–57.

    In addition to their connection to Delta's alleged provision of travel insurance services, Plaintiff's claims also "have a connection . . . with [Delta's] ticketing service, including the reservation component." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005). Plaintiff alleges that customers cannot complete the purchase of airline tickets on Delta's website without first making an election as to whether to purchase travel insurance. Am. Compl. ¶ 14. She also alleges that the price of the travel insurance policy is "tied to ticket price." *Id.*  ¶ 37. Her claims accordingly amount to an attempt by Plaintiff "to regulate the representations and commitments" that Delta "makes in connection with reservations and ticket sales" on its website. *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 316 (E.D.N.Y. 2005) (holding claim was preempted under the ADA because it was "a direct effort to regulate the manner in which JetBlue communicates with its customers in connection with reservations and ticket sales"). It is well-settled, however, that Plaintiff cannot attempt to regulate—through a state consumer fraud statute—the marketing practices and representations Delta makes in connection with the sale of airline tickets. *See, e.g.*, *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1301 (S.D. Fla. 2008) ("[C]ourts routinely hold that state consumer protection and deceptive business practices[] laws . . . are expressly preempted by [the

8

ADA].""). As the Supreme Court in *Wolens* identified, state consumer protection laws—like FDUTPA—have the "inherent" "potential for intrusive regulation of airlines business practices" because they "serve[] as a means to guide and police the marketing practices of the airlines." 513 U.S. at 227-28.  That is precisely how Plaintiff aims to use FDUTPA in this case: to regulate Delta's business practices by policing the way Delta markets travel insurance in connection with the sale of airline tickets on its website. Her state law claims are accordingly preempted.[3]

The court's decision in *Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017), does not require a different result. The court in *Zamber*—on similar facts involving the marketing of travel insurance policies—deferred ruling on the ADA preemption issue, concluding, incorrectly, that whether Plaintiff's claims have an "impermissible effect on American's prices or services is an inherently factual question." *Id.* at 1302. As an initial matter, the ADA preemption issue is a question that is regularly decided on the pleadings. *See, e.g.*, *Reva, Inc. v. Humana Health Benefit Plan of La.*, 2018 WL 1701969, *7 (S.D. Fla. Mar. 19, 2018) (explaining "the Court is able to find ADA preemption 'clearly appears on the face of the complaint'"); *In re Am. Airlines*, 370 F. Supp. 2d at 554 (dismissing claims under the ADA based on "the Fifth Circuit's definition of 'services,' the Supreme Court's expansive construction of . . . 'relate to'" and "the factual bases for plaintiffs' claims").

This court is not bound by *Zamber* and should not follow the *Zamber* court's analysis. This is because the court erred in *Zamber* not only by failing to address the ADA preemption issue on the pleadings, but also by failing to focus on the activity at issue in the plaintiff's claim (and, instead, focusing on which entity actually provides the insurance). *Id.*; *see also In re JetBlue Airways*, 379 F. Supp. at 316 (explaining that" "the principal focus" for the preemption analysis "is the allegedly deceptive steps" the airline had taken to obtain customer information). The challenged conduct here (and in *Zamber*) is not the actual provision of travel insurance, but how Delta allegedly markets that service on its website. The essential question is whether Plaintiff's attempt to regulate the representations Delta makes in connection with marketing (and allegedly brokering) travel insurance policies in connection with the sale of airline tickets relates to service of an airline. The answer to that question is unequivocally "yes." *See supra* at 7-8.

---

[3] This reasoning applies with equal force to Plaintiff's unjust enrichment claim because it is based on the same facts and allegations as Plaintiff's FDUTPA claim. Courts also regularly hold that unjust enrichment claims "fall squarely within the ADA's preemption clause." *See David v. United Cont'l Holdings, Inc.*, 2015 WL 7573204, *4 (D.N.J. Nov. 24, 2015) (collecting cases).

Because the conduct Plaintiff seeks to regulate includes (1) how and what Delta communicates to customers in connection with the sale of airline tickets, (2) the services Delta markets on its website, and (3) Delta's alleged provision of the service of brokering travel insurance, it "fits squarely within the range of state law actions that the Supreme Court concluded, in *Wolens* and *Morales*, are expressly preempted by the ADA." *In re JetBlue Airways*, 379 F. Supp. 2d at 315. For these reasons, this Court should decline to follow the non-binding decision in *Zamber*.

Furthermore, and importantly, *Zamber* is distinguishable from the instant case. Here— unlike in *Zamber*—Plaintiff alleges that Delta is acting as the broker and agent for the travel insurance policies. Am. Compl. ¶¶ 31-32. The holding in *Zamber* was based on the fact that Zamber alleged merely that American "marketed" the services, but that they were "provided and sold by a third party." *Zamber*, 282 F. Supp. 3d at 1302 (explaining that the cases cited by the airline involved "the purchase of a good or service provided and sold by an **air carrier**"). This distinction is critical.  Plaintiff's allegation here that Delta acts as the broker for the policies directly relates to a "service" (trip insurance) that Plaintiff alleges Delta is offering.

Finally, because Plaintiff seeks to have Florida law apply to require Delta to use different disclosures on its website, or to market different services than Delta would be permitted to do in other states—allowing Plaintiff's state law claims to proceed would lead to precisely the "patchwork of state service-determining laws, rules, and regulations" that the Supreme Court warned against in *Rowe*. 552 U.S. at 373. Such a "regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive market. *Id.* For these reasons, the ADA preempts Plaintiff's FDUTPA and unjust enrichment claims.

## II.     THE MCCARRAN-FERGUSON ACT BARS PLAINTIFF'S RICO CLAIMS

Just as Plaintiff cannot apply state law to regulate Delta's provision of airline services, she similarly cannot assert federal RICO claims in a way that impairs Florida law regulating the business of insurance. The McCarran-Ferguson Act "guarantees to the states the power to regulate the business of insurance free from inadvertent preemption by federal statutes of general applicability." *Bristol Hotel Mgmt. Corp.*, 20 F. Supp. 2d at 1349–50. The Act mandates: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The inquiry under McCarran-

Ferguson begins with two questions: (1) was the state law at issue enacted "for the purpose of regulating the business of insurance," and (2) is the defendant engaged in "the 'business of insurance.'" *Weinstein v. Zurich Kemper Life*, 2002 WL 32828648, *1 (S.D. Fla. Mar. 15, 2002). If these elements are satisfied, the federal claim is preempted if it "does not 'specifically relate to the business of insurance' and would 'invalidate, impair, or supersede' the State's law." *Id.* at *2.

Examination of Plaintiff's Amended Complaint demonstrates that the two threshold questions are clearly answered in the affirmative here. *First*, Plaintiff's RICO claims are predicated on her allegation that Delta "engages in a deceptive scheme" to hide from its customers that Delta is engaging in the unlicensed brokerage of travel insurance policies on its website and obtaining "illegal commission kickbacks" in violation of Florida's insurance code. Am. Compl. ¶¶ 32, 52, 95, 100, 118 (claiming injury in the form of inflated costs to "cover the cost of an illegal kickback to Delta"). Plaintiff's claims directly implicate a number of provisions of Florida's extensive statutory scheme governing the insurance industry. *See* § 626.112, Fla. Stat. (governing the unlicensed solicitation of insurance); *id.* § 626.9521 (prohibiting unfair or deceptive practices involving the business of insurance); *id.* § 626.9531 (regulating the identification of insurers, agents, and insurance contracts). These statutes "center[] around the insurance contract" and have been put in place for the purpose of protecting or regulating "the relationship between the insurer and the insured," and thus have been enacted "for the purpose of regulating the business of insurance." *Weinstein*, 2002 WL 32828648, at *1–2; *see also U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 505 (1993) ("The broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance.").

*Second*, Plaintiff has unequivocally alleged that Delta is "acting as an unlicensed insurance agent and/or broker, receiving insurance commissions" (Am. Compl. ¶ 32), and thus "engaged in the 'business of insurance.'" *See Sec. & Exch. Comm'n v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969) (the "selling and advertising of policies" and "the licensing of companies and their agents" is the business of insurance within the scope of the McCarran-Ferguson Act); *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of RI*, 883 F.2d 1101, 1108 (1st Cir. 1989) ("the focus of the McCarran–Ferguson inquiry" is "the nature of the conduct alleged to violate . . . [federal] law[], not whether the defendant is a traditional insurance company").

11

The two-pronged inquiry is accordingly satisfied, and Plaintiff's RICO claims are preempted because RICO "does not specifically relate to the business of insurance," and Plaintiff's RICO claims here would "impair" Florida's statutory framework regulating the insurance industry. *Bristol Hotel Mgmt. Corp.*, 20 F. Supp. 2d at 1349–50; *see also Humana, Inc. v. Forsyth*, 525 U.S. 299, 310 (1999). In particular, a statute impairs state law when it "frustrate[s] any declared state policy" or "interfere[s] with a State's administrative regime." *Weinstein*, 2002 WL 32828648 at *3. Courts in this district have routinely held that—due to Florida's extensive statutory scheme, which contains "limitations" on "the ability to sue insurance companies for unfair or deceptive trade practices"—RICO's remedy provisions conflict with, and would "impair" Florida's "declared state policy" with respect to the business of insurance. *Id.* (noting that Florida insurance law contains pre-suit notice provisions and prohibits class action suits); *Bristol*, 20 F. Supp. 2d at 1350 (similar); *Kondell v. Blue Cross & Blue Shield of Fla., Inc.*, 187 F. Supp. 3d 1348, 1360-62 (S.D. Fla. 2016) (holding that Plaintiff's RICO claim "would permit Plaintiff to obtain relief otherwise unavailable to her under Florida law"). The same reasoning applies here. Plaintiff's RICO claim would impair Florida state law regulating the business of insurance, and is therefore preempted by the McCarran-Ferguson Act.

## III. PLAINTIFF'S CLAIMS ARE INADEQUATELY PLED UNDER *TWOMBLY* AND RULE 9(B)

### A. Plaintiff Fails To Sufficiently Allege The Elements Of A Claim For Violation Of RICO Or A RICO Conspiracy.

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962." 18 U.S.C. § 1964(c). Section 1962, in turn, makes it "unlawful for any person employed by or associated with an enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c). "Racketeering activity" is defined to include a number of crimes, or so-called "predicate acts." *Id.* § 1961(1). Here, Plaintiff alleges Delta participated in an alleged RICO enterprise—comprised of Delta, AGA, BCS, and Jefferson—through a pattern of mail/wire fraud and money laundering for the alleged purpose of hiding Delta's "role" and "financial interest" in "the travel insurance products sold on its website." Am. Compl. ¶¶ 95–96. Plaintiff's RICO claims fail to state a claim, however, because: (1) Plaintiff does not allege an injury directly resulting from Delta's alleged conduct; (2) Plaintiff fails to allege that Delta

committed two or more RICO predicate acts; (3) Plaintiff does not sufficiently allege a distinct RICO enterprise; and (4) Plaintiff's RICO conspiracy claims are insufficiently pled.

### 1.   *Plaintiff lacks RICO standing.*

Plaintiff lacks standing to assert RICO claims because she has not alleged any injury that directly resulted from Delta's alleged conduct. To satisfy RICO's stringent standing requirement, a plaintiff must plead that "the alleged [RICO] violation led *directly* to the plaintiff's injuries." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (emphasis added). Stated another way, Plaintiff must sufficiently allege facts demonstrating that the racketeering activity was the "but-for *and* proximate cause" of her injuries. *Id.* Plaintiff alleges in a conclusory fashion that she paid an "inflated" price for travel insurance "to cover the cost of an illegal kickback to Delta." Am. Compl. ¶ 118. But Plaintiff does not tie her decision to purchase travel insurance to any alleged representation made by Delta. She makes only the bald and conclusory allegation that she "relied on the uniform false statements and omissions from Delta . . . that the full customer premium went to the cost of the travel insurance policy." Am. Compl. ¶ 116. The Eleventh Circuit has held, in similar circumstances, "that plaintiffs did not adequately plead a RICO claim where their complaint asserted only the bald conclusion that the plaintiffs relied on a misrepresentation without showing how that reliance was manifested." *Ray*, 836 F.3d at 1349 (citing *Ambrosia Coal*, 482 F.3d at 1317 & n.12).

The Eleventh Circuit's decision in *Ray* is instructive. There, the plaintiff alleged Spirit Airlines committed mail and wire fraud by deceptively advertising its airline fares to conceal the true nature of certain fees. *Id.* at 1345. The court held the plaintiffs lacked standing to bring their RICO claim because they failed to allege that their injury, *i.e.*, incurring "excessive and unconscionable" fees, was proximately caused by the RICO violation.  *Id.* at 1349–50. This was because the plaintiffs' "threadbare recital" that they "relied to their detriment on Spirit's conduct" was "plainly insufficient to support a cause of action." *Id.* (criticizing plaintiffs for pleading "causation only at the highest order of abstraction"). The court explained that the plaintiffs' failure to allege "a direct link . . . between Spirit's presentation of its Passenger Usage Fee and the plaintiffs' decision to purchase tickets on Spirit's website" was fatal to their RICO claim. *Id.* at 1350. As in *Ray*, Plaintiff here does not allege any direct link between Delta's alleged representations or omissions with respect to travel insurance and Plaintiff's decision to purchase the insurance. Nor does Plaintiff allege she "would not have purchased" the travel

insurance "from the [Delta] website had [she] known" of Delta's alleged financial interest in policy sales. *Id.* Plaintiff's Amended Complaint accordingly fails to state a RICO claim because Plaintiff failed to "include specific allegations that [] [she] would have acted differently" had Plaintiff known the "true nature" of Delta's alleged interest in selling travel insurance policies. *Id.* at 1351 ("There is no ambiguity in Supreme Court or Eleventh Circuit precedent about the requirement that a civil RICO claim must sufficiently plead proximate cause.").

## 2.   *Plaintiff fails to allege Delta committed any RICO predicate act.*

Plaintiff alleges Delta committed the predicate acts of mail/wire fraud and money laundering. But Plaintiff fails to "allege facts sufficient to support each of the statutory elements" of either offense. *Rogers v. Nacchio*, 241 F. App'x 602, 607 (11th Cir. 2007). This provides an additional, independent basis for dismissal of Plaintiff's RICO claims.

The elements of mail and wire fraud are essentially identical; they require Plaintiff to plead facts demonstrating that Delta "(1) intentionally participate[d] in a scheme or artifice to defraud another of money or property, and (2) use[d] or 'cause[d]' the use of the mails or wires for the purpose of executing the scheme or artifice." *U.S. v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007). These elements must also be pled with particularity, which includes—at a minimum—the precise misrepresentations made and "the content and manner in which the statements misled the Plaintiffs." *Ambrosia Coal*, 482 F.3d at 1317. Here, Plaintiff does not plausibly allege that any statement made by Delta is false. The only representations Plaintiff challenges are the statements on Delta's website: (1) that AGA is the party "recommending" the purchase of travel insurance, and (2) that AGA is the "licensed producer and administrator of" the insurance plan. Am. Compl. ¶¶ 27, 29-30. But Plaintiff makes only the conclusory assertion that these statements are "false." Am. Compl. ¶ 30. Plaintiff does not allege that AGA is *not* recommending the purchase of insurance. Nor does she allege that AGA is *not* the licensed producer and administrator of the insurance policies. In fact, Plaintiff admits that AGA is the producer of the trip insurance policies. Am. Compl. ¶ 42. She alleges only that: "***In addition to AGA*** . . . , Delta is . . . ***also*** a "producer" of the trip insurance policies"—a fact that Delta allegedly fails to include on its website. *Id.* (emphasis added); *Id.* ¶ 44.

At bottom, Plaintiff's complaint is that she was left "with the false impression that the charge for trip insurance is a pass-through fee" due to Delta's alleged failure to disclose its financial interest in the travel insurance policies sold through Delta's website. Am. Compl. ¶¶ 2,

26. Her mail and wire fraud claims fail, therefore, because they are based on Delta's alleged omissions, and a defendant may only commit mail or wire fraud by omission where it "has a duty to disclose either by statute or otherwise"—which Plaintiff has failed to allege. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of RICO claim where the plaintiff "needed to plead that the" defendant "had a duty to disclose" in order to state a mail or wire fraud claim based on "nondisclosure of material information," and failed to do so).

A duty to disclose typically arises when the parties have a "special relationship of trust." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000). "[C]ommercial contractual relationships"—like the one at issue here—"are generally not the type of special relationship of trust that imposes an affirmative duty to disclose information." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1278 (S.D. Fla. 2003). Plaintiff accordingly must allege that the disclosures made on Delta's website somehow gave rise to a duty to disclose. This she has not done, and cannot do. Plaintiff contends only that Delta "had a duty to correct" the mistaken impression that the price of the travel insurance policy she purchased "represented the cost of the policy." Am. Compl. ¶ 100. A duty arises in these types of commercial contractual relationships, however, only where the defendant is alleged to have concealed "critical" or "material" information, and where "disclosure was necessary to prevent" the Plaintiff from being misled. *In re Managed Care Litig.*, 298 F. Supp. 2d at 1278. As an initial matter, it is not at all clear how the representations made on Delta's website plausibly give the impression that Delta has no financial interest in marketing the travel insurance policies.[4] Even more critically, Plaintiff does not allege that Delta's alleged financial interest in the travel insurance policies is a "critical" or "material" piece of information. Indeed, as shown above, Plaintiff does not even allege that the omission of the compensation Delta receives for marketing the travel insurance policies played any role in her decision to purchase travel insurance. *See supra* at 13-14.

In sum, all that Plaintiff alleges is that she was deceived into believing that Delta receives no compensation for marketing the sale of travel insurance policies on its website. But Plaintiff has not alleged any facts demonstrating that Delta was subject to a duty to disclose whether it receives compensation when its customers purchase travel insurance through its website. Her

---

[4] Indeed, Plaintiff admits that Allianz is identified "as a trusted Delta partner" (Am. Compl., ¶ 39), which commonly denotes a financial relationship.

mail and wire fraud claims accordingly fail. *Langford*, 231 F.3d at 1313–14 (holding that a pharmacist's failure to disclose its "pricing structure to consumers" did not give rise to a duty to disclose); *see also Almanza v. United Airlines, Inc.*, 162 F. Supp. 3d 1341, 1358 (S.D. Ga. 2016), *aff'd*, 851 F.3d 1060 (11th Cir. 2017) (holding plaintiff failed to allege airline had a duty to disclose that the plaintiffs were exempt from a "tourism tax" because there were no allegations that they "shared a relationship that was anything more than arm's length and commercial in nature").

Plaintiff's money laundering allegation also fails. In order for Plaintiff to successfully plead that Delta committed the predicate act of money laundering, she must allege that the funds at issue were "the proceeds of specified unlawful activity." 18 U.S.C. 1956(a)(1)(A); *see also Advanced Optics Elecs., Inc. v. Robins*, 633 F. Supp. 2d 1237, 1254 (D.N.M. 2008). Plaintiff is therefore "relying on a predicate offense for racketeering [money laundering] that itself has a predicate offense requirement"—here mail/wire fraud. *Id.* But, as demonstrated above, Plaintiff has failed to sufficiently plead her fraud claims. Her failure to do so "is fatal to the . . . money laundering predicated upon such fraud." *Christensen v. Smith*, 2016 WL 3360420, *2 (D. Utah Mar. 21, 2016), *report and recommendation adopted*, 2016 WL 3365401 (D. Utah Jun. 16, 2016). Without a successfully pled fraud claim, "Plaintiff has recited only a bare conclusion that Defendants laundered funds . . . [and] has not pled facts that could establish a money laundering violation pursuant to 18 U.S.C. § 1956." *Ellis v. Warner*, 2017 WL 634287, *10 (S.D. Fla. Feb. 16, 2017) (dismissing RICO claims based on predicate act of money laundering because she had "not sufficiently pled the predicate acts of wire and mail fraud"); *see also Advanced Optics Elecs.*, 633 F. Supp. 2d at 1254–55 (same). Plaintiff has therefore failed to establish that Delta committed any predicate act, and on that basis alone, her RICO claims should be dismissed.

### 3.     *Plaintiff's allegation of a RICO enterprise is insufficient.*

To sufficiently allege a RICO enterprise, Plaintiff must demonstrate that the enterprise is separate and distinct from the persons constituting it, and that the persons are conducting the enterprise's affairs—not just their own. *Reves v. Ernst &* Young, 507 U.S. 170, 185 (1993). This "distinctiveness" requirement is designed, in part, to ensure that RICO is not applied to "common business relationships," *Ray*, 126 F. Supp. 3d at 1341–42, and is reserved for conduct that "goes beyond the normal business activity," *Cisneros v. Petland, Inc.*, 2018 WL 4611612, *4 (N.D. Ga. Apr. 17, 2018). To achieve that purpose, "[w]here businesses are alleged to be in a

RICO enterprise," courts require a plaintiff to "allege activity that goes beyond normal self-interested business behavior," even if the plaintiff alleges that "the individuals making up the enterprise acted fraudulently in pursuing their own business interest." *Id.* at *5.

Plaintiff fails to allege anything more than a common business relationship and normal, self-interested business activity (even if she alleges it was somehow fraudulent). Plaintiff concedes that AGA is acting as the insurance agent and producer of the travel insurance policies, and that the policies are underwritten by BCS and Jefferson. Am. Compl. ¶¶ 36, 42. Nowhere in the Amended Complaint does she allege facts supporting the plausible inference that these alleged participants in the RICO enterprise were "act[ing] to further the enterprise's affairs rather than [] [their] own business affairs" in selling and underwriting insurance policies. *Cisneros*, 2018 WL 4611612, at *5. Indeed, Plaintiff alleges that the "common purpose" of the RICO enterprise was to "enrich" Delta, but does not allege facts demonstrating that any other member of the alleged enterprise had the purpose of enriching Delta. Am. Compl. ¶ 97. The allegations in the Amended Complaint are plainly insufficient to allege that Delta, AGA, BCS and Jefferson conducted anything more than "normal business activity," or that the members of the alleged enterprise "conducted the affairs of the enterprise," rather than their own business. *Cisneros*, 2018 WL 4611612 at *4-5.

### 4. *Plaintiff's RICO conspiracy claim fails.*

A RICO conspiracy claim fails "where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 n.6 (11th Cir. 2010). Plaintiff simply recites the elements of a RICO conspiracy claim, but—fatally—fails to allege any supporting facts whatsoever. Am. Compl. ¶¶ 119–122; *see, e.g.*, *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989) (affirming dismissal of RICO conspiracy claim because the allegations of conspiracy were "conclusory" and plaintiff failed to allege facts showing "[defendants] were willing participants in a conspiracy"). Plaintiff alleges a contractual, commercial business relationship between Delta and AGA—and nothing more. Am. Compl. ¶ 96. The Amended Complaint does not allege facts supporting Plaintiff's conclusory allegation that these contracts demonstrate any "agreement to [advance] the overall objective of the conspiracy or an agreement to commit two predicate acts." *Am Dental Ass'n*, 605 F.3d at 1293. Her RICO conspiracy claim—like her substantive RICO claim—fails.

**B.      Plaintiff's FDUTPA Claim Is Fatally Defective.**

In addition to being preempted by the ADA, Plaintiff's FDUTPA claim is precluded by another threshold defect: By its express terms, FDUTPA "does not apply" to any "person or activity regulated under laws administered by [Florida's] Office of Insurance Regulation of the Financial Services Commission . . . [or] by the Department of Financial Services." *See* § 501.212(4), Fla. Stat. Plaintiff's allegations bring her FDUTPA claim directly within the ambit of this prohibition. The gravamen of Plaintiff's claim is that Delta's actions are allegedly deceptive because Delta is not licensed to sell insurance and fails to disclose that it is being paid a commission for every policy sold on its website. Am. Compl. ¶¶ 26, 32–33. Florida's insurance code regulates this precise conduct. Specifically, § 626.112(1)(b) requires a "license" to "engage in the solicitation of insurance," including "[m]aking general or specific recommendations as to insurance products." § 626.112(1)(b), Fla. Stat. It is the Department of Financial Services that is charged with enforcement of this provision of Florida's Insurance Code. *Id.* § 624.307(1). Plaintiff cannot usurp the Florida Department of Financial Service's authority to regulate the conduct she complains about by asserting a FDUTPA claim.

In addition, Florida's Insurance Code regulates "unfair or deceptive act[s] or practice[s] involving the business of insurance." *Id.* § 626.9521. In this context, an unfair or deceptive act or practice is defined to cover the exact conduct alleged here, *i.e.*, knowingly misrepresenting the "benefits, advantages, conditions, or terms of an insurance policy." *Id.* § 626.9541(1)(a)(1). This section of Florida's Insurance Code is also administered by the Office of Financial Services. *Id.* § 624.307 ("The department and office shall enforce the provisions of this code . . ."); *see also id.* § 626.9561. The conduct underlying Plaintiff's FDUTPA claim "therefore falls under the Florida Insurance Code's regulations against unfair or deceptive acts or practices." *McIntyre v. Marriott Ownership Resorts, Inc.*, 2013 WL 12212640, *3 (S.D. Fla. Dec. 10, 2013) (dismissing similar claim). Because Plaintiff's FDUTPA claim runs afoul of the prohibition contained in § 501.212(4), it must be dismissed.

Plaintiff also fails to sufficiently plead key elements of her FDUTPA claim. To state a FDUTPA claim, Plaintiff must allege "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). The Amended Complaint fails with respect to the first two elements. ***First***, Plaintiff fails to include plausible factual allegations regarding how Delta's advertising of travel insurance

18

policies constitutes a deceptive or unfair act or practice. "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). "The deception must be probable, not possible, and must be likely to cause injury to a reasonably relying consumer." *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015). Here, Plaintiff describes a wholly unremarkable and commonplace affiliate marketing relationship between Delta and an insurer in which a consumer is given the *option* to purchase travel protection insurance. At most, Plaintiff alleges she was left with the "false impression" that Delta has no financial interest in the policies sold on its website. But "FDUTPA does not require companies to be wholly transparent or prohibit them from publishing facts in the light most conducive to business." *Casey v. Fla. Coastal Sch. of Law, Inc.*, 2015 WL 10096084, *15 (M.D. Fla. Aug. 11, 2015), *report and recommendation adopted*, 2015 WL 10818746 (M.D. Fla. Sep. 29, 2015). And Plaintiff fails to plead how Delta's practices would be "likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment." *Molina*, 635 F. App'x at 627. Indeed, it is implausible that a consumer would believe that Delta receives no compensation for providing marketing services on its website to a third party insurance provider.

**Second**, as shown above—Plaintiff fails to allege causation. *See supra* at 13-14. Plaintiff does not allege that she would have foregone buying a travel insurance policy had she known that Delta would receive compensation. This deficiency, separately and independently, dooms her FDUTPA claim (as well as her RICO claims). *See, e.g., Molina*, 635 F. App'x at 627 (affirming dismissal of FDUTPA claim where plaintiff "made no allegation as to causation; she did not allege that, but for the quoted statement on [the] websites, she would not have applied for (or would have received) a loan modification").

## C.    Plaintiff's Unjust Enrichment Claim Is Insufficiently Pled

Plaintiff's unjust enrichment claim fails because Plaintiff does not allege that she conferred a direct benefit on Delta. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Plaintiff alleges that Delta is receiving an illegal commission from AGA when AGA "route[s] funds to Delta" in the form of a "marketing" or "advertising" fee. Am. Compl. ¶ 52. She does not allege that she conferred any benefit directly on Delta through her purchase of travel insurance. The Eleventh Circuit has held that a claim for unjust enrichment cannot lie

19

where, as here, the plaintiff did not confer a direct benefit on the defendant. *Virgilio*, 680 F.3d at 1337 (plaintiffs sought money they paid to a third party for marketing services that the third party then paid to defendants). Similarly, this court has rejected an unjust enrichment claim by a borrower against an insurance broker that received a commission because "[t]he commission in this case is not paid to [the broker] by the plaintiffs, but instead the insurance company pays it." *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, *6 (S.D. Fla. Jan. 10, 2013) (Middlebrooks, J.).  Plaintiff's unjust enrichment claim accordingly fails.

Plaintiff also fails to allege plausible facts establishing "that it would be inequitable" for Delta to retain a fee for advertising travel insurance on its website. In particular, to state a claim for unjust enrichment, Plaintiff must allege "she was harmed in some way," *i.e.*, that she "did not get the 'benefit of [] her bargain.'" *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234–35 (S.D. Fla. 2007). Plaintiff alleges she purchased travel insurance and received an email from the insurance provider with the policy. Am. Compl. ¶ 57. She does not allege that she did not receive exactly what she paid for. Nor does she allege facts plausibly demonstrating that it is "inequitable" for Delta to receive a fee for Delta's role in advertising AGA's services. Courts have dismissed unjust enrichment claims in these circumstances. *See, e.g.*, *Prohias*, 490 F. Supp. 2d at 1236; *Van Zanen v. Qwest Wireless, L.L.C.*, 550 F. Supp. 2d 1261, 1267 (D. Col. 2007) (dismissing unjust enrichment claim based on allegation that plaintiff purchased an insurance policy from an unlicensed agent who received a commission because the plaintiff "obtained a valuable product for which they bargained and which they intend to keep"), *aff'd*, 522 F.3d 1127 (10th Cir. 2008).

To the extent Plaintiff contends it would be unjust to allow Delta to retain benefits from a third-party because "Delta is not legally entitled to receive commissions for sales of trip insurance in the first place"—her claim fares no better. It is well-settled that "plaintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of [a statute] by asserting common law claims based on such violations." *Buell v. Direct Gen. Ins. Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008). Because § 626.112 lacks a private cause of action, Plaintiff cannot assert a common law claim based on this alleged statutory violation.

## CONCLUSION

For the foregoing reasons, Delta respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's claims with prejudice.

Dated:  December 18, 2018                    Respectfully submitted,

                                            Lazaro Fernandez, Jr.
                                            Lazaro Fernandez, Jr.
                                            Fla. Bar No. 716545
                                            Email:  lfernandez@stackfernandez.com
                                            Denise B. Crockett
                                            Email:  dcrockett@stackfernandez.com
                                            Fla. Bar No. 327913
                                            **STACK FERNANDEZ & HARRIS, P.A.**
                                            1001 Brickell Bay Drive, Suite 2650
                                            Miami, Florida 33131
                                            Tel: (305) 371-0001
                                            *Attorneys for Defendant, Delta Air Lines, Inc.*

                                            -and-

                                            Gayle I. Jenkins, Esq.
                                            Email: gjenkins@winston.com
                                            **WINSTON & STRAWN LLP**
                                            333 South Grand Avenue, 38th Floor
                                            Los Angeles, CA 90071-1543
                                            Tel: (213) 615-1863
                                            *Attorneys for Defendant, Delta Air Lines, Inc.*

                                            -and-

                                            David L. Balser, Esq.
                                            Email: dbalser@kslaw.com
                                            **KING & SPALDING LLP**
                                            1180 Peachtree Street
                                            Atlanta, GA 30309
                                            Tel: (404) 572-4600
                                            *Attorneys for Defendant, Delta Air Lines, Inc.*

- and-

Julia C. Barrett, Esq.
Email: jbarrett@kslaw.com
**KING & SPALDING LLP**
500 W. 2nd Street
Suite 1800
Austin, TX 78701
Tel: (512) 457-2053
*Attorneys for Defendant, Delta Air Lines, Inc.*