**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM DIVISION**

CASE NO.: 18-81258-CV-DMM

JUDITH MARILYN DONOFF, on behalf of
herself and all others similarly situated,

      Plaintiffs,                                **CLASS ACTION**

v.

DELTA AIR LINES, INC.,

      Defendant.
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT DELTA AIR LINES, INC.'S**
**<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 2

ARGUMENT .................................................................................................................... 4

I.  The Complaint States Claims For Relief Based on Established Precedent ............................. 4

   A. The Plaintiff Has Sufficiently Pled a FDUTPA Claim ...................................................... 4

   B  The FDUTPA Insurance Exemption Is Inapplicable .......................................................... 6

   C. The Plaintiff Has Sufficiently Pled An Unjust Enrichment Claim ..................................... 7

   D. The RICO Claims Are Adequately Pled Under Supreme Court Precedent ......................... 8

      1.  Plaintiff Has RICO Standing ......................................................................................... 8

      2.  Plaintiff Adequately Pleaded That Delta Committed RICO Predicate Acts.............. 10

      3.  Plaintiff Has Adequately Pled A Distinct RICO Enterprise ....................................... 12

      4.  Plaintiff Has Adequately Pled A RICO Conspiracy Claim ........................................ 13

   E. Delta's ADA Preemption Argument is Legally Baseless.................................................... 14

      1.  The Plaintiff's Claims Do Not Relate To A Service Of An Airline............................ 14

      2.  Delta Fails To Even Argue It Competes Over Travel Insurance ................................ 15

   F.  The McCarran-Ferguson Act Does Not Bar Plaintiff's RICO Claims .............................. 16

CONCLUSION............................................................................................................... 20

CERTIFICATE OF SERVICE ....................................................................................... 22

# **TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*Amerijet Int'l, Inc. v. Miami-Dade Cnty.*,
   627 F. App'x 744 (11th Cir. 2015) ................................................................ 14, 15

*Beck v. Prupis*,
   162 F.3d 1090 (11th Cir. 1998) ......................................................................... 11

*Beck v. Prupis*,
   529 U.S. 494 (2000) ............................................................................................ 13

*Bowe v. Public Storage*,
   106 F. Supp. 3d (S.D. Fla. July 2, 2014), ........................................5, 7, 13, 16, 17

*Branche v. Airtran Airways*,
   342 F.3d 1248 (11h Cir. 2003) ................................................................ 14, 15, 16

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ......................................................................................... 9, 10

*Bristol Hotel Mgmt. Corp. v. Aetna Cas. & Sur. Co.*,
   20 F. Supp. 2d 1345 (S.D. Fla. 1998) ...........................................................19, 20

*Carriuolo v. GM Co.*,
   823 F.3d 977 (11th Cir. 2016) .............................................................................. 6

*Cisneros v. Petland, Inc.*,
   2018 WL 4611612 (N.D. Ga. Apr. 17, 2018) ...................................................... 13

*City of Miami v. Bank of Am. Corp.*,
   800 F.3d 1262 (11th Cir. 2015) ............................................................................ 7

*Cochran v. Paco, Inc.*,
   606 F.2d 460 (5th Cir. 1979) ....................................................................... 16, 18

*Coleman v. CubeSmart*,
   328 F. Supp. 3d 1349 (S.D. Fla. 2018) ............................................................... 5

*Cont'l Cas. Co. v. Cura Grp., Inc.*,
   2005 WL 8155321 (S.D. Fla. Apr. 6, 2005) ...................................................... 13

*Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*,
   198 F. Supp. 3d 1332 (S.D. Fla. 2016) ............................................................... 5

*Grp. Life & Health Ins. Co. v. Royal Drug Co.*,
   440 U.S. 205 (1979) ........................................................................................... 17

*Humana Inc. v. Forsyth*,
   525 U.S. 299 (1999) ......................................................................................18, 19

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
   295 F. Supp. 927 (N.D. Cal. 2018) ...................................................................... 9

*In re Managed Care Litig.*,
    298 F. Supp. 2d 1259 (S.D. Fla. 2003) ................................................................ 11

*Jankus v. Edge Investors, L.P.*,
    650 F. Supp. 2d 1248 (S.D. Fla. 2004) ................................................................ 5

*Kondell v. Blue Cross & Blue Shield of Florida*,
    187 F. Supp. 3d 1348 (S.D. Fla. 2016) ................................................................ 19

*Langford v. Rite Aid of Ala., Inc.*,
    231 F.3d 1308 (11th Cir. 2000) .......................................................................... 11

*Latman v. Costa Cruise Lines, N.V.*,
    758 So. 2d 699 (Fla. 3d DCA 2000) ............................................................... 5, 6

*Martorella v. Deutsche Bank Nat'l Tr. Co.*,
    161 F. Supp. 3d 1209 (S.D. Fla. 2015) ................................................................ 6

*Martorella v. Deutsche Bank Nat'l Tr. Co.*,
    2015 WL 11347664 (S.D. Fla. Aug. 6, 2015) ...................................................... 7

*McIntyre v. Marriott Ownership Resorts*,
    2013 WL 12212640 (S.D. Fla. Dec. 10, 2013)..................................................... 7

*Molina v. Aurora Loan Servs., LLC*,
    635 F. App'x 618 (11th Cir. 2015) ...................................................................... 4

*Montoya v. PNC Bank, N.A.*,
    94 F. Supp. 3d 1293 (S.D. Fla. 2015) ....................................................... *passim*

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) .......................................................................................... 15

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    927 F. Supp. 2d 870 (C.D. Cal. 2013)......................................................... 18, 19

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003) .................................................................................. 5

*Ray v. Spirit Airlines, Inc.*,
    836 F.3d 1340 (11th Cir. 2016) ........................................................................... 9

*Republic of Pan. V. BCCI Holdings (Lexembourg), S.A.*,
    119 F. 2d 935 (11th Cir. 1997) .......................................................................... 14

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .......................................................................................... 12

*Salinas v. United States*,
    522 U.S. 52 (1997) ............................................................................................ 13

*SEC v. Nat'l Sec., Inc.*,
    393 U.S. 453 (1969) .......................................................................................... 17

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*,
    739 F.3d 579 (11th Cir. 2013) .............................................................................. 8

*State Farm Mut. Auto. Ins. Co. v. Kugler,*
   2011 WL 4389915 (S.D. Fla. Sept. 21, 2011) ................................................................ 10, 12

*Turner Greenberg Assocs. v. Pathman,*
   885 So. 2d 1004 (Fla. 4th DCA 2000), ........................................................................... 5

*Union Labor Life Ins. v. Pireno,*
   458 U.S. 119 (1982) ........................................................................................................ 17, 18

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.,*
   714 F. 3d 414 (6th Cir. 2013) ........................................................................................ 10

*Weinstein v. Zurich Kemper Life, No. 01-6140-CIV,*
   2002 WL 32828648 (S.D. Fla. Mar. 15, 2002) ............................................................. 19, 20

*Zamber v. Am. Airlines, Inc.,*
   282 F. Supp. 3d 1289 (S.D. Fla. 2017) ..........................................................3, 4, 5, 8, 14

*Zlotnick v. Premier Sales Grp., Inc.,*
   480 F.3d 1281 (11th Cir. 2007) ..................................................................................... 4-5

## **Statutes**

15 U.S.C. §1012 ................................................................................................................ 2, 16

18 U.S.C. § 371 ................................................................................................................. 13

18 U.S.C. § 1961 ............................................................................................................... 8

18 U.S.C § 1962 ................................................................................................................ 8, 13

## **Other**

Fed. R. Civ. P. 9 ................................................................................................................ 2, 12

Fed. R. Civ. P. 12 .............................................................................................................. 12

## **PRELIMINARY STATEMENT**

Delta knows that in a nearly identical action involving American Airlines, Judge Martinez already rejected the core arguments Delta raises in this motion, and that American Airlines ultimately entered into a $25 million settlement to resolve that case.  *See* Ex. 1, Joint Notice of Settlement.  Since Judge Martinez's order leaves it with no legal or factual basis to support its dismissal arguments here, Delta proceeds to invent alleged defects in Plaintiff's operative complaint, going so far as to make categorically false statements to this Court.

Delta resorts to misstating facts because discovery has revealed that Plaintiff's core allegations are undeniably true: Delta is deceptively marketing Allianz Global Assistance ("Allianz") trip insurance policies to its customers and participating in a racketeering enterprise that pays Delta enormous secret kickbacks of customer insurance premiums.  In the face of this established misconduct, Delta asks this Court to dismiss all of Plaintiff's claims.  However, neither the law nor the facts support Defendant's dismissal bid.  Each of Plaintiff's claims finds support in existing precedent, and multiple judges of this District have already rejected the very same arguments Delta raises in its motion.

For example, Delta claims that Plaintiff fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), ignoring that Judges Goodman and Martinez have already endorsed the deceptive "pass through" FDUTPA claim in an identical context involving American Airlines.  Defendant also ignores that Judges Altonaga and Ungaro have both recently rejected attempts to dismiss FDUTPA claims predicated upon the same "pass through" theory that Plaintiff advances here. Delta then argues that Plaintiff's FDUTPA claim is subject to an alleged "insurance" exemption.  However, in making this argument, Delta fundamentally misconstrues the legal theory underlying Plaintiff's FDUTPA claim, *to wit*: Delta's deceptive marketing of the charge for trip insurance as a "pass through," wherein the consumer is deceptively led to believe all of her insurance premium is passed directly to the third-party insurer.  In reality, as early discovery has now confirmed, Delta retains an enormous portion of each customer's premium.  That is why Judge Ungaro, in an identical "pass through" litigation, held that the insurance exemption Delta cites did not apply.

Finally, Delta makes the baseless argument that all of Plaintiff's state law claims are preempted by the Airline Deregulation Act ("ADA").  As demonstrated below, this is a frivolous position, which the Court can see in the fact that ***Delta fails to cite*** the governing Eleventh Circuit test for ADA preemption—a test that Delta cannot come within sight of satisfying.

Delta's arguments against Plaintiff's RICO claim fare no better. The McCarran-Ferguson Act, 15 U.S.C. §1012(b), ("MFA") is categorically inapplicable here (as multiple judges of this District have already held in analogous contexts), because under binding Supreme Court precedent, the activities in which Delta is engaged do not qualify as the "business of insurance." That is a condition precedent for application of MFA preemption, and Delta cannot satisfy it under controlling law.

On the merits of Plaintiff's RICO claim, Delta falsely tells this Court that Plaintiff failed to allege causation and injury based on Delta's predicate acts of mail fraud, wire fraud, and money laundering. Plaintiff does allege these facts, and her allegations of mail and wire fraud go well beyond the pleading requirements of Fed. R. Civ. P. 9(b). Ms. Donoff identifies the specific statements on Delta's website that are false, why they are false, and how she relied upon them to her detriment, as the operation of this illegal enterprise led Plaintiff to pay an enormous commission kickback to Delta without her knowledge or consent. Plaintiff also alleges that Delta's co-conspirators used the mail and wires to submit false filings to state regulators, which served to hide the operation of the RICO enterprise. She also alleged that Delta and its enterprise co-conspirators are engaged in money laundering in order to hide these commission payments, a RICO predicate act that Delta's motion does not credibly contest. Moreover, Plaintiff adequately alleges the RICO enterprise, including the fact that each member has demonstrated its willingness to participate in the enterprise's activities through distinct written agreements. A more clear-cut case of racketeering would be difficult to find. The Court must deny Delta's motion to dismiss in its entirety.

## FACTUAL BACKGROUND

The facts underlying Plaintiff's claims are simple and straightforward, and discovery has confirmed their veracity. Delta requires all customers who purchase a ticket through its website to make an election to purchase a travel insurance policy from Allianz. ¶¶14; 23.[1] Despite making travel insurance policies available for sale, Delta disclaims any role in the insurance sale process, as Defendant does not possess a license to sell or broker insurance in Florida or any other state. ¶32. *See also* Delta's Response to Plaintiff's First RFA at 2-3, Exhibit 2.

As an unlicensed entity, Delta cannot transact the business of insurance or receive any commissions on insurance sales. Despite this, Delta engages in an elaborate scheme and illegal

---

[1] "¶" refers to allegations in Plaintiff's Amended Complaint, D.E. #15.

enterprise that, through a host of false statements to plaintiff and third parties, as well as illegal financial transactions, funnels an enormous portion of each consumer's insurance premium back to Delta. The profits from this illegal conduct are extraordinary, as Delta has received ███████ ██████████████████ over the class period, all without disclosing these funds. *See* Ex. 3, Def's Response to Pl. First Interrogatories at 3; Ex. 2 at 3-4.

Delta's misconduct includes deceptively marketing the travel insurance sold on its website as a "pass through" charge, wherein the consumer is led to believe that all of the money comprising her insurance premium is passed by Delta through to the third party insurance company. *See* ¶¶2, 26, 34-35, 41, 45, and 49. In reality, and despite the pass-through representations, Delta retains an inordinate percentage of each consumer's insurance premium. As Judge Martinez has already held in the related *Zamber* matter, this states a valid FDUTPA claim under controlling Florida law. Moreover, discovery has confirmed that Plaintiff's "pass through" FDUTPA claim is entirely meritorious, as the governing contract between Delta and Allianz states ████████████████████████████████████████████████ ██████████ (Allianz sets premium prices as a fixed percentage of a consumer's ticket price). Ex. 4 at Appendix B. If Allianz is ██████████████████████████████, the rest of the premium is reverting to Delta as undisclosed profit.

Delta's misconduct extends well beyond falsely portraying the insurance premium price as a "pass through" charge, as due to its unlicensed status, Defendant must participate in a racketeering enterprise in order to profit off of consumer insurance premiums. This enterprise, comprised of Delta, Allianz, BCS Insurance Company, Jefferson Insurance Company and other unnamed co-conspirators (¶3), made fraudulent representations to Plaintiff and all members of the proposed class, made (and continues to make) fraudulent statements to state regulators (¶¶37;112-114), and engages in money laundering to conceal Delta's illegal commission payments.

Contrary to Defendant's argument, Plaintiff's RICO claims are not predicated solely on omissions; rather Defendant and other enterprise members have made express false statements to Plaintiff, which she specifically identifies. For example, Plaintiff alleges that Delta's representation to her that the travel insurance on its site is "[r]ecommended by AGA Service Company, the licensed producer and administrator of this plan" is false, as Delta is in fact acting as the producer and was admittedly paid a portion of Plaintiff's insurance premium as a commission. ¶¶27-30. This is an affirmative misrepresentation; it is not fraud through omission,

and Plaintiff relied on it to her detriment in purchasing a travel insurance policy that contained a kickback and was wholly disconnected from the underwritten risk.  ¶¶116-118.  Plaintiff then alleges that enterprise members use the mail and wires to engage in additional fraudulent conduct: submitting fraudulent rate filing requests (¶¶37, 106, 113), fraudulent omissions (¶¶44, 100, 102), and money laundering (¶¶52, 104).  In sum, Plaintiff's complaint alleges with specificity a pattern of fraudulent conduct and thousands of acts of money laundering, all committed by Delta and its RICO co-conspirators, and conducted for the purpose of allowing Delta, an admittedly unlicensed entity, to reap ███████████ in profits from its customers. Delta's motion to dismiss should be denied.

## ARGUMENT

### I.  The Complaint States Claims For Relief Based On Established Precedent

Delta seeks dismissal of each of Plaintiff's claims in the face of decisions from multiple judges of this District rejecting its exact arguments, and in contravention of binding Eleventh Circuit precedent.  Each of Plaintiff's claims is adequately pled, as discussed in turn.

#### A.  The Plaintiff Has Sufficiently Pled a FDUTPA Claim

Judge Martinez and Judge Goodman have already rejected dismissal of an indistinguishable FDUTPA claim predicated upon American Airlines' offering of travel insurance on its website.  *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1300 (S.D. Fla. 2017) ("Whether a reasonable consumer would interpret American's representations to mean that the trip insurance premium is a 'pass through' charge is thus a question of fact for a jury."). Delta, however, does not advise the Court of this precedent in asking for dismissal of Plaintiff's FDUTPA claim.  *See* Mot. at 18-19 (arguing bases for dismissal of FDUTPA claim expressly rejected in *Zamber*).

As the Zamber Court recognized, a consumer who alleges the deceptive marketing of travel insurance as a "pass through" charge on an airline website adequately pleads both a deceptive act and causation under Florida law for purposes of FDUTPA.[2]  A practice is "deceptive" where "there is a representation, omission, or practice that is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v.*

---

[2] To establish a violation of FDUTPA, a plaintiff must show three elements:  (i) a "deceptive act or unfair trade practice," (ii) "causation," and (iii) "damages."  *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 626-27 (11th Cir. 2015). Delta's motion to dismiss does not argue that the Plaintiff failed to plead damages, so Plaintiff will not address that element here.

*Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

Here, Plaintiff has sufficiently pled that Delta engaged in a deceptive trade practice. Specifically, Delta misleads its customers about Delta's financial interest in the travel insurance policies being sold through Delta's website, making customers think that, if they choose to buy such a policy, all of their money will "pass through" to the insurance company.  ¶¶2, 26, 34, 41, and 45.  In truth, Delta gets an undisclosed kickback for every policy sold, effectively acting as an unidentified middleman. *Id.* at ¶¶2, 26, 48. This sufficiently pleads deception.

To say that the case law supports such a conclusion is an understatement.  In no less than *seven* cases, courts have held that allegations like the Plaintiff's here were sufficient to plead a deceptive trade practice.  The cases are, in date order, *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000), *Turner Greenberg Assocs. v. Pathman*, 885 So. 2d 1004, 1008 (Fla. 4th DCA 2004), *Jankus v. Edge Investors*, L.P., 650 F. Supp. 2d 1248, 1257 (S.D. Fla. 2009), *Bowe v. Public Storage*, 2014 WL 12029270, at *3 (S.D. Fla. July 2, 2014), *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1340 (S.D. Fla. 2016), *Zamber*, 282 F. Supp. 3d at 1300, and *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1366 (S.D. Fla. 2018).

 In each of those cases, the plaintiffs brought a FDUTPA claim that is materially indistinguishable from the one here.  Specifically, the plaintiffs alleged that a defendant engaged in a deceptive practice by representing a charge as a "pass through" charge when the defendant was actually keeping (or having kick-backed) a portion of the charge.  And, in each of these cases, the court held that the plaintiff had adequately pled deception under FDUTPA.

Delta fares no better with its lack of causation arguments; again, multiple judges of this District have already rejected it.  The case law in support of this conclusion is legion.  *Zamber*, 282 F. Supp. 3d at 1300 ("Plaintiff also pleads causation and damages. Under FDUTPA, causation and damages are shown by the fact that Plaintiff parted with money for what should have been a 'pass through' charge but that was instead kept by American [Airlines]."); *Coleman v. CubeSmart*, 328 F. Supp. 3d at 1365 ("Under FDUTPA, causation and damages are shown by the fact that Coleman parted with money for what should have been a portion of the pass-through charge, but was instead kept by CubeSmart."); *Deere Constr., LLC*, 198 F. Supp. 3d at 1340 (reasoning, in holding that the plaintiff had adequately pled standing, that "[p]laintiff has also clearly demonstrated the ***causal connection*** between Defendants' misrepresentations and

Plaintiff's loss: Plaintiff and the putative class members have been aggrieved by Defendants' unfair and deceptive practices by submitting payments for what they believed were charges associated with fuel and environmental costs, when in fact those charges were merely ways for Defendants to make additional profit") (emphasis added)).

Delta's claim that Plaintiff was required to "allege that she would have foregone buying a travel insurance policy had she known that Delta would receive compensation" (Mot. at 19) is legally mistaken (see the case law above), and it appears to conflate "causation" with "reliance," the latter of which is *not* an element of the FDUTPA claim.  *Carriuolo v. GM Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (holding that a plaintiff need not show '[a]ctual reliance" to establish a FDUTPA claim).  In fact, in *Latman*, the case which serves as the cornerstone of the governing case law, the Third District Court of Appeal expressly rejected the viability of Delta's argument. *Latman*, 758 So. 2d at 703 ("We would not hesitate to say that an intentional overcharge of sales tax, which is kept by the company itself, is an unfair and deceptive trade practice and that the consumer must be repaid. That is so even though the consumers clearly were willing to pay the price charged . . . nor would it make a difference that the consumers paid no attention to the sales tax amount.").  Under settled case law, the Plaintiff has sufficiently pled a FDUTPA claim.

**B.  The FDUTPA Insurance Exemption Is Inapplicable**

Delta's arguments regarding the purported "insurance exemption" under FDUTPA fundamentally misunderstand the nature of Plaintiff's FDUTPA claim and wholly ignore existing precedent that rejects their position.  First and foremost, and contrary to Defendant's suggestion, the FDUTPA claim is not predicated upon violations of any state insurance statutes.  It is, as Plaintiff demonstrated above, premised on Delta's deceptive marketing of travel insurance as a "pass through" charge under the precedent of *Latman* and the opinions of at least six judges of this Court who have uniformly applied *Latman*.

Second, Delta is not subject to regulation by the Florida Office of Insurance Regulation or the Florida Department of Financial Services, and it is not engaged in the "business of insurance" in Florida, which is a prerequisite to application of the insurance exemption.  Judge Marra and Judge Ungaro have rejected application of the FDUTPA insurance exemption on this basis in cases indistinguishable from this action.  In *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 161 F. Supp. 3d 1209, 1217 (S.D. Fla. 2015), Judge Marra held that

> Homeward [defendant] is not an insurance company regulated by FLOIR and because the LPI rates were not subject to regulation by the FLOIR, the activity at

issue in this case was not regulated by the FLOIR, and Homeward has not established, as a matter of law, that the insurance exemption applies."[3]

Judge Marra then identified that the exact fact pattern present in this case—the receipt of commissions by an unregulated entity—does not implicate the insurance exemption.

> Homeward imposed an additional charge on its ... customers under the guise of collecting an insurance premium, but a large percentage of that 'premium' was designated not for the insurance, but for commissions and other compensation that QBE and Homeward allegedly pocketed. This is exactly the type of arrangement that the Badcock Court identified as outside the FDUTPA insurance exemption.

*Id.* at 1218 (citations omitted).

Judge Ungaro reached the same conclusion in *Bowe*, a case factually analogous to this one, as it also involved kickbacks of consumers' insurance premiums.

> The deceptive conduct that is the subject of Plaintiffs' FDUTPA claim is Public Storage's failure to disclose that it ultimately retains 75% of class members' PSTIP premiums. This conduct is not related to the business of insurance; Plaintiffs do not challenge the rate of the PSTIP per se, the amounts or type of coverage provided, or the master insurance policy issued by NHIC. Instead, they argue that the access fee is an unlawful kickback.

106 F. Supp. 3d at 1268 (rejecting application of insurance exemption at summary judgment).

As in those actions, here Plaintiff's FDUTPA claim is predicated upon Delta's deceptive conduct in portraying the price of travel insurance on its website as a "pass through" charge, one wherein Delta has no financial interest.[4]  The insurance exemption is wholly inapplicable.

### C.  The Plaintiff Has Sufficiently Ped an Unjust Enrichment Claim.

"There are three elements of an unjust enrichment claim under Florida law: [a] the plaintiff has conferred a benefit on the defendant; [b] the defendant voluntarily accepted and retained that benefit; and, finally, [c] the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying for it."  *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287 (11th Cir. 2015). Here, Plaintiff has pled all three elements. Plaintiff alleged [a] that she conferred a benefit on Delta through her payment for trip insurance, ¶88; [b]

---

[3] Judge Marra also noted the impropriety of attempting to resolve this issue through a motion to dismiss. *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 11347664, at *7 (S.D. Fla. Aug. 6, 2015) ("level of analysis requires resort to a factual analysis beyond that presented by the Complaint and the Court cannot engage in such an analysis at this stage.").

[4] The only case Delta cites in support of its position, *McIntyre v. Marriott Ownership Resorts*, is wholly inapposite, as it involved a defendant that had actually purchased insurance for a plaintiff.

that "Delta appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of its insurance kickback scheme[,] (*id.*); and [c] that it would be inequitable for Delta to retain the benefit because (i) as the Plaintiff has alleged, Delta misrepresented its financial relationship with Allianz and (ii) Delta was not legally permitted to keep any of the Plaintiff's insurance payment.   ¶¶90-91.  Judge Martinez and Judge Goodman have already held that this adequately pleads a direct benefit for purposes of an unjust enrichment claim.  *Zamber*, 282 F. Supp. 3d at 1301 ("money was transferred from Plaintiff's pocket and into American's. That is sufficient to confer a direct benefit.") (denying dismissal of unjust enrichment claim).  Delta's argument that Plaintiff cannot premise an unjust enrichment claim on Delta's unlawful receipt of commissions is wrong.  Per the Eleventh Circuit, an unjust enrichment claim exists when "an entity accepts and retains benefits that it is not legally entitled to receive in the first place." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013).  Thus, Plaintiff plainly can plead unjust enrichment based on Delta's illegal receipt of insurance commissions.

### D.  The RICO Claims are Adequately Pled Under Supreme Court Precedent

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"   "A pattern of racketeering activity consists of at least two related, qualifying predicate acts listed in 18 U.S.C. § 1961(1)."  *Montoya v. PNC Bank, N.A.*, 94 F. Supp. 3d 1293, 1319 (S.D. Fla. 2015).  The Complaint alleges three predicate acts: mail fraud, wire fraud, and money laundering.  ¶95.

Delta asserts that Plaintiff fails to allege: (1) standing; (2) the predicate acts of mail and wire fraud and money laundering; (3) a distinct RICO enterprise; and (4) RICO conspiracy. Mot. at 12-17. Delta is wrong. The Complaint more than adequately alleges all of these elements and adequately pleads claims under RICO.

### 1.  Plaintiff Has RICO Standing

Delta contends that "Plaintiff lacks standing to assert RICO claims because she has not alleged any injury that directly resulted from Delta's alleged conduct[,]" as she "does not tie her decision to purchase travel insurance to any alleged representation made by Delta."  Mot. at 13. The Supreme Court has rejected Delta's argument, and the glaring error in Defendant's analysis is that it conflates the concept of "causation" with that of "reliance."  The Supreme Court has made clear that "a plaintiff asserting a RICO claim predicated on mail fraud ***need not show,***

***either as an element of its claim or as a prerequisite to establishing proximate causation***, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 661 (2008) (emphasis added); *see also Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340 (11th Cir. 2016) ("RICO does not contain a requirement that the plaintiff personally relied on the defendant's fraudulent misrepresentation.").[5]

To establish proximate causation, Plaintiff need only allege "some direct relation between the injury asserted and the injurious conduct alleged." *Bridge*, 553 U.S. at 654 (2008); *see also Ray*, 836 F.3d at 1349 ("'When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.'"). Plaintiff has sufficiently alleged a direct relation between her injury and Delta's scheme.

Here, as stated above, there is first-party reliance by Plaintiff on Delta's false statements that caused Plaintiff to pay a price for trip insurance that had no relation to the underwritten risk but instead constituted an unlawful kickback to Delta.  ¶¶36-37, 97, 106, 112-13.  Additionally, under the controlling precedent in *Bridge,* Plaintiff also alleges third-party reliance sufficient to demonstrate causation.  Specifically, Plaintiff alleges that Delta's coconspirators submitted false filings to various state regulators that hid Delta's role in receiving unlawful, unlicensed commission kickbacks and misstated how consumers are charged for these travel insurance policies in order to further their RICO enterprise. ¶¶36-37, 97, 106, 112-13. This fraudulent conduct directly harmed Plaintiff in that Plaintiff was forced to pay prices for insurance policies that are higher than they would be otherwise, and that had no relation to the underwritten risk, but rather, were inflated to cover the cost of an illegal kickback to Delta. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 967 (N.D. Cal. 2018) ("The alleged 'fraud on the regulators' plausibly led directly to Plaintiffs' economic injury. By deceiving regulators, Defendants were able to sell Class Vehicles that emitted NOx at levels up to 20 times legal limits and that contained one or more defeat devices. This deceit plausibly caused Plaintiffs to overpay for the defective Class Vehicles by an amount

---

[5]  To be sure, the Supreme Court in *Bridge* recognized that "proof of reliance is often used to prove…the element of causation," but the Court made clear that this fact "***does not transform reliance itself into an element of the cause of action***." *Bridge*, 553 U.S. at 658-59.  Thus, Delta's "discussion of reliance is misplaced at the motion to dismiss stage[.]" *Montoya*, 94 F. Supp. 3d at 1308-09 ("[T]his potential consequence concerning actual proof of proximate causation is not an issue on a motion to dismiss.").

directly attributable to the alleged wrongful conduct of the Defendants."); *Bridge*, 553 U.S. at 658 ("If . . . the county had not accepted petitioners' false attestations of compliance with the Single, Simultaneous Bidder Rule, and as a result had not permitted petitioners to participate in the auction, respondents' injury would never have materialized."); *Ray*, 836 F.3d at 1350 ("Without reliance on the fraud by someone—in *Bridge*, Cook County—the plaintiffs would not be able to show that they were injured by reason of the alleged racketeering activity.");[6] *State Farm Mut. Ins. Co. v. Kugler*, 2011 WL 4389915, at *7 (S.D. Fla. Sept. 21, 2011) (proximate cause adequately pled where plaintiff was "the direct target of the defendants' alleged fraud, and the financial loss asserted [was] a direct consequence of the alleged fraudulent conduct").

As the Supreme Court in *Bridge* has expressly endorsed Plaintiff's RICO liability theory, Delta's attacks on Plaintiff's standing are misplaced and should be rejected.

### 2.   Plaintiff Adequately Pled That Delta Committed RICO Predicate Acts

Delta next asserts that Plaintiff failed to allege elements of the RICO predicate acts of mail and wire fraud and money laundering because, according to Delta, Plaintiff does not allege that any statement made by Delta is false, and Delta had no duty to disclose its financial interest in the insurance policies it sold. Mot. at 14-15. Delta's assertions mischaracterize Plaintiff's Complaint and misconstrue the law.

First, contrary to Delta's mischaracterization of the Complaint, Plaintiff does allege that Delta made affirmatively false representations regarding the trip insurance policies it sold. *See* ¶¶27-30. For example, Plaintiff specifically alleges that "Delta's website . . . represents to the consumer that it is AGA Service Company, and not Delta, who is recommending the trip

---

[6]   Delta's reliance on *Ray* is misplaced. In that case, unlike here, the plaintiffs expressly relied solely on a theory of first-party detrimental reliance and alleged "only that they 'and the other members of the proposed class were harmed in that they relied to their detriment on Spirit's conduct and, as a result, needlessly incurred excessive and unconscionable [Passenger Usage Fees].'" 836 F.3d at 1349-50. Although Plaintiff here does plead facts to support a reasonable inference of first-party reliance, ¶¶2, 27, 30, 101, those facts are not necessary to establish proximate cause for her RICO claim, as *Bridge* controls. *See Montoya*, 94 F. Supp. 3d at 1308-09 (quoting *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 419-20 (6th Cir. 2013) ("[F]or RICO purposes, reliance and proximate cause remain distinct—if frequently overlapping—concepts[,]" and though reliance is often used to show causation, "that does not mean it is the only way to do so[.]"). *Ray* is also distinguishable because, unlike the lawful airline-imposed fee that the defendant characterized as a government-imposed fee, but was in fact related to the price of the plaintiff's airline ticket in *Ray*, 836 F.3d at 1344-45, Delta's undisclosed kickback that Plaintiff was unwittingly forced to pay is unlawful and unrelated to any insurance coverage she received.

insurance and who is 'the licensed producer' for the trip insurance policies." ¶30. Delta insists that "Plaintiff does not allege that AGA is *not* recommending the purchase of insurance" or allege that "AGA is *not* the licensed producer and administrator of the insurance policies." Mot. at 14 (original emphasis). But this entirely misses the point. As alleged, "[a] 'producer' is insurance parlance for an insurance agent or broker, i.e., the one who makes a commission on the sale of insurance. Thus, by stating that AGA Service Company is 'the' producer, Delta represents that it is not acting as an agent or broker, i.e., it is not making a commission on sales of trip insurance policies." ¶31. Thus, the issue is not whether AGA is *a* producer of the plan, but whether AGA is *the* producer of the plan. The latter formulation, which appeared on Delta's website, constitutes a material misrepresentation. And there can be no credible dispute that it is pled with specificity, as it directly quotes the false statement and details why it is false.

   *In addition* to Delta's affirmative misrepresentations, Plaintiff also alleges that Delta failed to disclose material facts regarding its financial interest in the trip insurance policies it sold. While Delta concedes that a duty to disclose may arise "where the defendant is alleged to have concealed 'critical' or 'material' information, and where 'disclosure was necessary to prevent' the Plaintiff from being misled[,]" it insists that its representations do not give the impression that Delta has no financial interest in the travel insurance policies, and further, that the truth about its unlawful kickback – wholly unrelated to actual risk – is not material. Mot. at 15 (quoting *In re Managed Care Litig.*, 298 F. Supp. 2d at 1278).

   Delta's concealment of its unlawful kickback scheme, which is inherently material, does give rise to a duty to disclose. *See Beck v. Prupis*, 162 F.3d 1090, 1096 (11th Cir. 1998) ("[M]aterial omissions can be the basis for a claim of fraud if they are intended to create a fraudulent representation."); *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312-13 (11th Cir. 2000) (clarifying that "concealment of critical data, even without a formalized duty to disclose that data, *can* constitute mail and/or wire fraud in certain situations," and that "whether a duty to disclose information exists must be made on a case by case basis"); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1278 (S.D. Fla. 2003) (finding that the defendants' "failed disclosures . . . go to 'the heart of their relationship' and disclosure was necessary to prevent the doctors from being misled by Defendants' apparent actions and statements" and concluding that "the allegations, if proven, constitute circumstances that might trigger a duty to disclose"). And, contrary to Delta's mischaracterization of the Complaint, Mot. at 15, Plaintiff does indeed allege that Delta had a "duty to correct [the mistaken impression left by the representations on its

website] . . . but failed to do so in order to increase its profits," and that this "omission was material" because "it increased the cost of Plaintiff and Class members' insurance premiums" in order "to cover an illegal kickback that Allianz pays to Delta." ¶100.

Of course, the question of whether Delta's misrepresentations gave Plaintiff the impression that Delta has no financial interest in the trip insurance sold is a question of fact that goes to the heart of Plaintiff's claims, and which is unsuitable for resolution on a Rule 12(b)(6) motion. Thus, Plaintiff adequately pleads the elements of the RICO predicate acts of mail and wire fraud with specificity under Rule 9(b).  And because Delta's only challenge to Plaintiff's money laundering allegation is based on its challenges to the mail and wire fraud allegations, Mot. at 16, money laundering is also adequately pled as an independent predicate act.[7]

### 3.  Plaintiff Has Adequately Pled a Distinct RICO Enterprise

Delta asserts that Plaintiff's allegation of a distinct RICO enterprise is deficient and contends that "Plaintiff fails to allege anything more than a common business relationship and normal, self-interested business activity . . . ." Mot. at 17.  Delta is wrong. Plaintiff alleges that, in furtherance of the common purpose of enriching Delta at the expense of class members, the RICO enterprise (1) paid unlawful commissions to Delta for acting as an unlicensed insurance agent or broker and selling trip insurance policies (on which no underwriting is performed on the individual customer level); (2) submitted false filings to the various state regulators that hide Delta's role in receiving unlicensed commission kickbacks and misstate how consumers are charged for these travel insurance policies; and (3) engaged in thousands of acts of money laundering, all in furtherance of the enterprise's affairs, rather than their own.  ¶¶36-37, 97, 104.

As none of these fraudulent and unlawful activities fall within the scope of the ordinary business in which Delta or its co-conspirators are engaged (indeed it is highly unlikely that Delta or its co-conspirators would agree that money laundering is within the ordinary scope of their business), Plaintiff has adequately pled the existence of a separate and distinct enterprise whose members conducted the enterprise's affairs, rather than their own, in accordance with *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  *See State Farm Mut. Auto. Ins. Co. v. Kugler*, 2011 WL 4389915, at *6 (S.D. Fla. Sept. 21, 2011) (holding that *Reves* was satisfied where the plaintiff alleged defendants "each knowingly participated in the rendition of unnecessary medical

---

[7]  The cases Defendant cites in support of its argument are inapposite because each involves circumstances where the money laundering violations were dismissed because they relied on other predicate acts that were inadequately pled, which is not the case here.

testing and surgical procedures, and themselves submitted fraudulent bills for professional fees to State Farm through the professional medical associations by which they were employed"); *Cont'l Cas. Co. v. Cura Grp., Inc.*, 2005 WL 8155321, at *23 (S.D. Fla. Apr. 6, 2005) ("The LOCs provided to CNA were allegedly fraudulent, and Brentwood did not post any collateral with any bank, or require that Certified, Cura, or some other entity provide collateral to secure the LOCs. Therefore…Defendants are alleged to have been active participants in the fraudulent scheme, not legitimate businesses caught in the middle of a fraudulent scheme.").[8]   There is no legitimate enterprise that conducts its "ordinary" affairs through thousands of acts of mail fraud, wire fraud and money laundering; Plaintiff has adequately pled this element.

### 4.   Plaintiff Has Adequately Pled a RICO Conspiracy Claim

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of the RICO statute."   *Beck v. Prupis*, 529 U.S. 494, 506-07 (2000).  Delta's principle challenge to Plaintiff's RICO conspiracy claim is based on its hope that Plaintiff's substantive RICO claim will be dismissed.  Mot. at 17.  As discussed above, Plaintiff adequately pleads a substantive RICO claim.   Furthermore, a RICO conspiracy "may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil[.]"  *Salinas v. United States*, 522 U.S. 52, 65 (1997).   Accordingly, a §1962(d) claim does not require an enterprise, and "there is no requirement of some overt act or specific act…unlike the general conspiracy provision [18 U.S.C. § 371]." *Id*. at 63. "The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371." *Id.* Thus, even if the Delta's co-conspirators did not participate in the affairs of the enterprise (which is categorically untrue), the allegations suffice to show they joined a RICO conspiracy under §1962(d) based on Supreme Court precedent.

---

[8]   Delta relies on *Cisneros v. Petland, Inc.*, 2018 WL 4611612 (N.D. Ga. Apr. 17, 2018), a nonbinding decision from the Northern District of Georgia, which in easily distinguishable. There, the plaintiff altogether failed to address the question of whether the defendant puppy merchants conducted the affairs of a RICO enterprise rather than their own affairs, and without the benefit of any argument from plaintiff, the court held that, by fraudulently selling puppies without disclosing that they were ill, the defendants were acting exactly within the scope of their ordinary business.  *Id.* at *4-5.  By contrast, here, Delta's co-conspirators did not act within the scope of their business when they laundered money and paid unlawful kickbacks to an unlicensed insurance agent/broker, or when they submitted false filings to state regulators to conceal their conduct.

Delta makes the cursory argument that Plaintiff does not allege facts to show that Delta's contracts with its co-conspirators "demonstrate any 'agreement to [advance] the overall objective of the conspiracy or an agreement to commit two predicate acts.'" Mot. at 17. But Delta fails to recognize that such an agreement "need not be established by direct evidence; it may be inferred from the conduct of the participants." *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997). The Complaint includes numerous allegations from which such agreement may be inferred from the parties' conduct, including paying an unlawful kickback to Delta and concealing that fact from Plaintiff and various state regulators. ¶¶36-37, 97, 106, 112-113. Accordingly, Plaintiff's RICO conspiracy claim is sufficiently pleaded.

### E. Delta's ADA Preemption Argument is Legally Baseless

Delta does not bring its ADA preemption argument in good faith, as it categorically fails to advise this Court of the governing Eleventh Circuit test for what constitutes the "service" of an airline. Defendant ignores this binding precedent because it knows it cannot satisfy it.

#### 1. The Plaintiff's claims do not relate to a service of an airline[9]

The Eleventh's Circuit's definition of "service" of an airline is clear. "[T]o be deemed a service for purposes of the ADA three elements must be present": (a) the service "must be bargained for"; (b) the "bargained-for exchange must be between an air carrier and its consumers"; and (c) the service "must fit within the limited range of services over which airlines compete[.]" *Amerijet Int'l, Inc. v. Miami-Dade Cnty.*, 627 F. App'x 744, 749 (11th Cir. 2015) (rejecting application of ADA preemption) (citing *Branche v. Airtran Airways*, 342 F.3d 1248, 1255-56 (11th Cir. 2003)). Delta's purported service of "connecting [Delta] customers to sellers of travel insurance policies" fails to satisfy a single element of this governing test.

First, and most basically, Delta's purported service is not "bargained for." The Plaintiff never bargained with Delta with respect to anything insurance related, including Delta's purported "brokering" service. Indeed, it is this very lack of bargaining that underlies the Plaintiff's entire complaint, as Delta *hid* its financial interest in the transaction from its customers. Second, and relatedly, Delta's purported service is not part of any "bargained-for exchange . . . ***between an air carrier and its consumers***." *Branche*, 342 F.3d at 1257. As the

---

[9] Plaintiff specifically alleges that Delta provided her with no service in connection with her travel insurance policy (¶54), making it impossible for this Court to adjudicate this issue in Delta's favor through a motion to dismiss. *See Zamber*, 282 F. Supp. 3d at 1290, 1302 (discovery and development of factual record necessary to adjudicate ADA issue).

Eleventh Circuit said in *Branche*, when a customer buys an airplane ticket, there are certain airlines services that are "'appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline[.]'" *Id.* These "[contractual] features of air transportation" include, "in addition to the transportation itself," items like "ticketing, boarding procedures, provision of food and drink, and baggage handling[.]" *Id.*

Delta's purported service – "connecting [Delta] customers to sellers of travel insurance policies" – is certainly not part of any bargained for exchange "between an air carrier and its consumers," as Delta ***is not a party to any insurance relationship between its customers and Allianz***. Consumers do not bargain with Delta for anything insurance-related, and this undisputed fact ends this Court's ADA analysis, as under binding precedent Delta cannot be providing a service when it is admittedly not a party to the consumer's insurance relationship.

**2.   Delta Fails to Even Argue It Competes Over Travel Insurance**

Delta fails the "competition" prong of the Eleventh Circuit's test as well, as its purported "connection-to-insurance-sellers" service is *not* "within the limited range of services *over which airlines compete*." *See Amerijet Int'l, Inc.*, 627 F. App'x at 749 (emphasis added)). Indeed, Delta does not even *argue* that it competes with other airlines over its purported service. The absence of such an argument is striking given the time Delta spent discussing the history behind the ADA, which was the idea that *competition between airlines*, not laws, was the best way to keep the airlines in check when it came to prices and services. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) ("Congress, determining that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation services,' enacted the [ADA.]").

Although Delta's failure to argue the competition point is fatal to its ADA argument, it is fair to ask whether it is even *possible* for Delta to compete with other airlines with respect to its purported service.  As the Eleventh Circuit has recognized, airlines compete over a "*limited range* of services." *Amerijet Int'l, Inc.*, 627 F. App'x at 749 (emphasis added).  These are services that are "part of the customer's experience of air travel and are considered in evaluating the quality of their flight." *See Branche*, 342 F.3d at 1258 (internal quotation and citation omitted). The only way Delta could compete with its airline competitors over travel insurance is on pricing (because Delta is not an insurer and thus has no control over insurance product offerings).  However, by Delta's own admission, ***it has no control over pricing of the insurance.*** Ex. 2 at 5-6.  Thus, Delta would ask this Court to find (on a motion to dismiss no less) that Delta

somehow competes over an insurance service it admittedly does not sell at a price it admittedly does not set—a form of competition that would be new to American capitalism, and one that finds no support in Eleventh Circuit law. *Branche*, 342 F.3d at 1258 ("those elements of air carrier operations over which airlines do not compete are not 'services' within the meaning of the ADA's pre-emption provision, and state laws related to these elements are not pre-empted.").

### F.   The McCarran-Ferguson Act Does Not Bar Plaintiff's RICO Claims

Delta contends that Plaintiff's RICO claims are barred by the McCarran-Ferguson Act, 15 U.S.C. §1012(b) ("MFA"), Mot. at 10-12, which provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance[.]"   The death knell in Delta's argument is the fact that the challenged conduct underlying Plaintiff's RICO claims does not relate to the "business of insurance," and thus, the MFA does not apply from the outset.   But even if Delta's conduct did relate to the "business of insurance," which would be ironic given that Delta claims to have no involvement in insurance other than to place a third party's offer on its website, the MFA still would not bar Plaintiff's claims because application of the RICO statute to the facts of this case would not "invalidate, impair, or supersede" Florida insurance law.

Plaintiff's RICO claim plainly does not relate to the business of insurance.   Contrary to Delta's mischaracterization of the Complaint, Mot. at 11, Plaintiff's RICO claims are ***not*** premised on seeking to enforce state insurance regulations.   Rather, Plaintiff's claims arise from Delta's fraudulent misrepresentations, concealment of its financial interest in, and money laundering regarding, trip insurance policies, and the false impression Delta gives that the charge for trip insurance constitutes a pass-through fee rather than an undisclosed kickback.   ¶¶1-5, 25-26, 37, 52, 95, 103-104.[10]   This conduct is distinct from any insurance activities and cannot be said to relate to the business of insurance "simply because an insurance policy is tangentially involved."   *Cochran v. Paco, Inc.*, 606 F.2d 460, 467 (5th Cir. 1979); *see also Bowe*, 106 F. Supp. at 1268 ("The deceptive conduct that is the subject of Plaintiffs' FDUTPA claim is Public

---

[10]   Delta admits that this is the essence of Plaintiff's RICO claim. *See* Mot. at 12 ("Here, Plaintiff alleges Delta participated in an alleged RICO enterprise—comprised of Delta, AGA, BCS, and Jefferson—through a pattern of mail/wire fraud and money laundering for the alleged purpose of hiding Delta's 'role' and 'financial interest' in 'the travel insurance products sold on its website.'") (citing ¶¶ 95–96).

Storage's failure to disclose that it ultimately retains 75% of class members' PSTIP premiums. This conduct is not related to the business of insurance."); *Montoya*, 94 F. Supp. at 1293 (collusion between lenders and insurance providers "to create a nefarious scheme of unearned kickbacks (disguised as commissions and other benefits) that artificially inflate LPI rates" does not "touche[sic] on the ordinary business of insurance.").

The Supreme Court has set forth three criteria "relevant in determining whether a particular practice is part of the 'business of insurance'": (1) "whether the practice has the effect of transferring or spreading a policyholder's risk"; (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured"; and (3) "whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. v. Pireno*, 458 U.S. 119, 129 (1982). Delta's conduct here satisfies ***none*** of these requirements.

First, Delta's concealment of its financial interest in trip insurance policies has literally nothing to do with spreading a consumer's risk of loss. To the contrary, Plaintiff specifically alleges that "there is no correlation whatsoever between the actual insurance risk that is being underwritten and the policy cost." ¶36; *see Bowe*, 106 F. Supp. 3d at 1168 ("Public Storage does not assume any risk under the PSTIP in exchange for accepting the access fee. The access fee is paid to Public Storage 'for the right to offer insurance coverage to their tenants and cover administrative time of property management personnel.'"); *see also Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 213 (1979) ("The fallacy of the petitioners' position is that they confuse the obligations of Blue Shield under its insurance policies, which insure against the risk that policyholders will be unable to pay for prescription drugs during the period of coverage, and the agreements between Blue Shield and the participating pharmacies, which serve only to minimize the costs Blue Shield incurs in fulfilling its underwriting obligations.").

Second, Delta's receipt of an undisclosed kickback is not an integral part of the policy relationship between the insurer and insured and, in fact, is wholly unrelated to such relationship. *See Bowe*, 106 F. Supp. 3d at 1268-69 ("Public Storage's receipt of the access fee, and its concealment of the access fee from its tenants . . . is not integral to the tenants' relationship with NHIC"); *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969) ("[I]t is clear where the focus [of the MFA] was—it was on the relationship between the insurance company and the policyholder."). Here Delta, by its own admission, is not even a party to the policy relationship.

Third, Delta's receipt of an undisclosed kickback is not limited to entities within the insurance industry, as Delta itself is not in the insurance industry. *Pireno*, 458 U.S. at 132 ("[I]t

is plain that the challenged peer review practices are not limited to entities within the insurance industry. . . .  ULL's use of NYSCA's Peer Review Committee inevitably involves third parties wholly outside the insurance industry-namely, practicing chiropractors."); *Cochran*, 606 F.2d at 465 ("At the outset we reject Paco's argument that . . . the [MFA] exemption extends to people who are neither the insurance company nor the insured.").  Such "[a]rrangements between insurance companies and parties outside the insurance industry can hardly be said to lie at the center of [the] legislative concern [underlying the MFA]." *Pireno*, 458 U.S. at 133.

At bottom, Delta's concealment of the kickback it receives in no way relates to the business of insurance, and, thus, the MFA does not apply.  But even assuming it did, the MFA still would not bar Plaintiff's claims because application of the federal RICO statute to the facts of this case would not "invalidate, impair, or supersede" Florida insurance law.

In *Humana Inc. v. Forsyth*, 525 U.S. 299, 310 (1999), the Supreme Court rejected the notion of any sort of field preemption and held that "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the [MFA] does not preclude its application."  Applying this standard, the Court concluded that a federal RICO claim did not invalidate, impair, or supersede Nevada insurance law.  *Id.* at 311.  The Court reasoned that Nevada insurance law is not "hermetically sealed" and does not exclude application of other state laws.  *Id.* at 312.  The Court further noted that Nevada provides a comprehensive scheme prohibiting various forms of insurance fraud and misrepresentation, in which the state insurance commissioner has authority to issue charges, cease and desist orders, and administrative fees for violations, and in which victims of insurance fraud may pursue private rights of action for a number of unfair insurance practices, including punitive damages award that could exceed treble damages under RICO.  *Id.* at 301.

Not surprisingly, many courts have since followed the Supreme Court's analysis in *Humana* to conclude that application of a federal RICO claim would not "invalidate, impair, or supersede" Florida law.  *See Montoya*, 94 F. Supp. 3d at 1316 ("[A] RICO claim—even with its treble damages provision—challenging conduct the Florida Legislature has prohibited will not frustrate Florida's interest in regulating that conduct, but will, in fact, further that interest."); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 927 F. Supp. 2d 870, 883 (C.D. Cal. 2013) ("[T]he Court concludes that the prosecution of RICO claims on behalf of Florida class members would not impair Florida's scheme for regulating insurance."). Like *Humana*, these courts properly

relied on the fact that, "in enacting . . . insurance regulations, the Florida Legislature made clear that all state common law and statutory remedies were preserved." *Montoya*, 94 F. Supp. 3d at 1316 (citing Fla. Stat. §§624.155(7), 626.9631). The *Negrete* court reasoned that "[a] number of other courts, including the Supreme Court, have noted the importance of these 'preservation clauses' in their analysis of whether a particular claim is reverse-preempted by the state's insurance laws. *Negrete*, 927 F. Supp. 2d   at 880-81 (collecting cases). Thus, a plaintiff is free to bring parallel statutory or common law claims, including FDUTPA claims and fraud claims where punitive damages that may exceed RICO's treble damages are available. *See Montoya*, 94 F. Supp. 3d at 1316; *Negrete*, 927 F. Supp. 2d at 880. Finally, the *Negrete* court noted that absence of "any pronouncement by the state of Florida at any stage of [any] litigation . . . against the application of RICO to allegations such as plaintiffs' allegations here[, which] also weighs against a finding of reverse-preemption." *Id.* at 881.

Delta offers absolutely no explanation as to why its challenged practices constitute the "business of insurance" or how Florida law would be impaired by application of Plaintiff's RICO claim. Instead, Delta baldly asserts that courts have "routinely held" that RICO's remedy provisions impair Florida's insurance law. Mot. at 12.  But all of the cases Delta relies on are inapt because, unlike the instant case, those cases directly challenged conduct that was central to the business of insurance. *See Bristol Hotel Mgmt. Corp. v. Aetna Cas. & Sur. Co.*, 20 F. Supp. 2d 1345 (S.D. Fla. 1998) (employers purchasing workers compensation alleged they were charged prices that varied from the approved rates);[11] *Kondell*, 187 F. Supp. 3d 1348 (plaintiff directly challenged development and implementation of defendants guidelines for experimental treatment decisions); *Weinstein v. Zurich Kemper Life*, No. 01-6140-CIV, 2002 WL 32828648, at *1 (S.D. Fla. Mar. 15, 2002) (plaintiffs allege Defendants engaged in scheme of collecting life insurance premium payments for periods of time during which the Defendants were not providing insurance); *see also Montoya*, 94 F. Supp. 3d at 1316 n.5 (distinguishing *Weinstein*).[12]

_____

[11]  *Bristol* also predates the Supreme Court's decision in *Humana*. *See  Negrete*, 927 F. Supp. 2d at 883 n.13 (noting that *Bristol* is unpersuasive as it predates *Humana* and distinguishing it on the grounds that the allegations implicated Florida's "comprehensive" workers' compensation framework).

[12]  This Court should not find either *Weinstein*'s, *Bristol Hotel*'s, or *Kondell*'s impairment analyses persuasive because neither *Weinstein* nor *Bristol Hotel* addresses the fact that the remedies in Florida insurance law do not conflict with a cause of action for fraud (where no notice is required and punitive damages are permitted).

Because Delta's challenged conduct does not relate to the business of insurance as a matter of law, and Plaintiff's RICO claims would not impair Florida law in any event, the MFA does not bar Plaintiff's claims.

## CONCLUSION

The arguments Delta raises conflict with binding precedent, and multiple judges of this District have already rejected them in indistinguishable circumstances.  This Court should deny the motion to dismiss in its entirety.

Dated: January 8, 2019                                  Respectfully submitted,

<div style="margin-left:40%">

*s/ Alec H. Schultz*
Scott B. Cosgrove
  Fla. Bar No. 161365
Alec H. Schultz
  Florida Bar No. 35022
John R. Byrne
  Florida Bar No. 126294
Jeremy L. Kahn
  Fla. Bar No. 105277
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:  305.740.1986
Facsimile:  305.437.8158
Email:  scosgrove@leoncosgrove.com
Email:  aschultz@leoncosgrove.com
Email:  jbyrne@leoncosgrove.com
Email:  jkahn@leoncosgrove.com
*Counsel for Donoff and the Class*


Paul Jeffrey Geller, Esq.
Stuart Andrew Davidson, Esq.
Jason Henry Alperstein, Esq.
Christopher Chagas Gold, Esq.
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
120 E. Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Tel:  (561) 760-3000
Email:  pgeller@rgrdlaw.com
Email:  sdavidson@rgrdlaw.com
Email:  jalperstein@rgrdlaw.com

</div>

Email:  cgold@rgrdlaw.com
*Counsel for Donoff and the Class*

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on January 8, 2019, I electronically filed the foregoing with

the Clerk of Court using CM/ECF system which in turn will serve a copy by electronic mail to

all counsel of record.

Lazaro Fernandez, Jr., Esq.
Denise B. Crockett, Esq.
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001
Email: lfernandez@stackfernandez.com
Email: dcrockett@stackfernandez.com
Email: gmartich@stackfernandez.com
Email: mwolf@stackfernandez.com
*Attorneys for Defendant, Delta Air Lines*

Gayle I. Jenkins, Esq.
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863
Email: gjenkins@winston.com
Email: rsalyer@winston.com
Email: docketla@winston.com
*Attorneys for Defendant, Delta Air Lines*

David L. Balser, Esq.
Julia C. Barrett, Esq.
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Email: dbalser@kslaw.com
Email: jbarrett@kslaw.com
*Attorneys for Defendant, Delta Air Lines*

                             */s/ Alec H. Schultz*
                              Alec H. Schultz