UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 18-cv-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF,
on behalf of herself and all others
similarly situated,

       Plaintiff,

v.                                     **CLASS ACTION**

DELTA AIR LINES, INC.,

       Defendant.

_____/

## SECOND AMENDED COMPLAINT

Plaintiffs Walter Cappillo and Judith Marilyn Donoff, on behalf of themselves and all others similarly situated, sue Defendant Delta Air Lines, Inc. ("Delta"), and allege as follows.

## INTRODUCTION

1.    This is a class action filed to redress injuries that Plaintiffs and a class of consumers have suffered, and will continue to suffer, as a result of Delta's deceptive and illegal practices relating to trip insurance sold on its website, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et. seq*., and state law.

2.    On its website, and throughout the online process of purchasing a flight ticket and trip insurance, Defendant engages in a deceptive scheme to induce its customers to purchase travel insurance policies, while concealing its own financial interest in policy sales.  Delta leaves the consumer with the false impression that the charge for trip insurance is a pass-through fee, i.e., a fee that is passed on to another entity and for which Delta has no financial interest. The net impression of Delta's representations and omissions to consumers is that, when consumers

purchase a trip insurance policy, the funds to cover the policy's cost go to an independent third-party insurance company, whom Delta identifies as the company brokering the policy for sale to the consumer. Indeed, Delta identifies this same insurance company as "the licensed producer," or insurance agent, for the trip insurance policies. In reality, and despite lacking a license to broker insurance policies, Delta retains or ultimately receives an undisclosed kickback from every policy sold.  Delta knows it lacks the required license to transact the business of insurance in any state, which is one reason it attempts to hide its role in the travel insurance program through false statements on its website.

3.      The Defendant, in order to obtain illegal monetary kickbacks from the sale of travel insurance policies on its website (which it is legally prohibited from receiving), knowingly participates in a racketeering enterprise involving multiple other entities.  This enterprise, comprised of Defendant, AGA Service Company d/b/a Allianz Global Assistance ("Allianz"), Jefferson Insurance Company, BCS Insurance Company and additional, unnamed co-conspirators, is engaged in an ongoing pattern of racketeering activity resulting in direct harm to Plaintiffs and the proposed class.

4.      Delta's participation in this racketeering enterprise is knowing and willful, evidenced by a written agreement that it possesses with other members of the enterprise.  Indeed, each participant in the enterprise has acknowledged its participation through a written agreement.

5.      All of these activities have harmed Plaintiff and the proposed class of consumers, as Plaintiff and each member of the proposed class have suffered an out of pocket loss through the payment of undisclosed and illegal commission kickbacks.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff Walter Cappillo is an individual who is domiciled in, and is thus a citizen of, Florida. Plaintiff brings this action pursuant to 18 U.S.C. § 1964 to obtain injunctive relief and to recover damages, including treble damages, attorney's fees and costs of suit arising from Defendant's violations of the RICO statute, 18 U.S.C. § 1962, as well as violations of state law.

7.      Plaintiff Judith Donoff is an individual who is domiciled in, and is thus a citizen of, Florida. Plaintiff brings this action pursuant to 18 U.S.C. § 1964 to obtain injunctive relief and to recover damages, including treble damages, attorney's fees and costs of suit arising from Defendant's violations of the RICO statute, 18 U.S.C. § 1962, as well as violations of state law.

8.      Defendant Delta is a Delaware corporation with its principal place of business in Georgia. It does business regularly throughout the United States, including in Florida. Delta also maintains a registered agent in Florida.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States. Additionally, this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different from Delta.

10.      This Court has personal jurisdiction over Delta because the causes of action asserted herein arise from (i) Delta operating, conducting, engaging in, or carrying on a business or business venture in this state and (ii) Delta committing a tortious act within this state. This Court further has personal jurisdiction over Delta based on its consent and waiver by establishing a registered agent in Florida for the purpose of receiving service of process. This Court also has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965 because Defendant resides, is

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

found, has an agent, or transacts its affairs in this judicial district.  Moreover, Delta purposefully availed itself of Florida's consumer market through the advertisement, promotion, and sale of trip insurance policies in Florida.

11.     Venue is proper in this Court, pursuant to 28 U.S.C. §§ 1391(b) and (c) because Delta resides in this district for purposes of the statute, as it is subject to the personal jurisdiction of this Court for purposes of this action. Moreover, a substantial part of the events or omissions giving rise to the claims occurred in this district. Venue is also proper in this Court pursuant to 18 U.S.C. § 1965 because Defendant resides, is found, has an agent, or transacts its affairs in this judicial district and the ends of justice require that other parties residing in any other district be brought before the court.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.     In addition to operating flights nationwide, Delta operates hundreds of daily flights to and from sixteen different airports in Florida. As part of its business, Delta sells tickets to consumers through its website, www.delta.com.

13.     When a consumer visits Delta's website, the site allows the consumer to select his or her preferred destination and travel dates.

14.     Upon the consumer's selection of his or her specific flights, Delta's website provides the consumer with the price to purchase the selected flights.

15.     Before the consumer completes his or her purchase, Delta's website requires consumers to make an election regarding purchasing a trip insurance policy with a third-party insurance provider. There is no way to purchase a ticket on Delta's website without making an election regarding trip insurance.

16.     Delta markets the third-party trip insurance to its consumers in a uniform

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

fashion—each consumer sees the same marketing language when purchasing a ticket.

17.     After the consumer selects the desired flights, the consumer must proceed to a page to enter passenger information and contact information. After entering this information, the consumer has two options: "Skip to Payment" or "NEXT: TRIP EXTRAS."

18.     If the consumer selects the "NEXT: TRIP EXTRAS" button, the consumer is brought to a webpage to select "Trip Extras" for purchase, which include in-flight Wi-Fi and a "Mileage Booster."

19.     Under the available "Trip Extras," there is a breakdown of charges for "Total Trip Extras," "Flight Total," and "Trip Total."

20.     After selecting any "Trip Extras," the consumer must select a button that reads "REVIEW + PAY" in order to continue with the purchase.

21.     After selecting "REVIEW + PAY," or after selecting "Skip to Payment" on the prior webpage, the consumer is brought to a webpage to finalize payment. Regardless of whether the consumer, selects "Skip to Payment" or selects "NEXT: TRIP EXTRAS" and then "REVIEW + PAY," the consumer will ultimately arrive at the same payment webpage.

22.     This page contains a section for the consumer to select his or her method of payment and input his or her payment information. A section below the fields for entry of payment information relates to trip insurance. It is titled "**RECOMMENDED: ADD TRIP INSURANCE**." On the same line as this heading, the section states: "*REQUIRED: PLEASE SELECT YES OR NO TO CONTINUE." Under this heading is the line: "Protect your trip to [Destination] for $[Price] total." Next to this line is a green text box with an arrow pointing to the price that states: "Highly Recommended." Under this, there is a line that states: "Peace of mind is only a click away." This is followed by a list of reasons to purchase trip insurance, with

each itemized reason preceded by a green checkmark. This is followed by a quote from USA today, which states: "We can't predict who will get sick, if Mother Nature will cancel flights or if luggage gets lost, but we can play it safe by purchasing protection." This is then followed by a line that states how many "customers protected their trip in the last 7 days."

23.     To the right of this marketing language, there is a "YES" and "NO" button, one of which must be selected by the consumer to complete the ticket purchase. Under the "NO" button is the following language: "I understand by selecting 'No' I am declining coverage and I am responsible for all cancellation fees and delay expenses for my $[Price] trip."

24.     Consumers are required to make an insurance election, as they are unable to proceed with purchasing their airline tickets on Delta's website until they choose whether to purchase a trip insurance policy. The consumer cannot simply ignore the insurance offering and move on to purchasing a ticket.

25.     If the consumer selects the "YES" button, it turns green and a green icon with a checkmark appears next to the button. If the consumer selects "NO," the button turns red and a red icon with an exclamation point appears next to the button.

26.     This marketing is intended to create the impression that the trip insurance is in the consumer's best interest—while hiding the fact that Delta is pushing the product because it is in its financial interest to generate sales. In other words, the consumer is deceived into believing that Delta is acting in the consumer's best financial interest, and not its own.

27.     Throughout the online process of purchasing a flight ticket and trip insurance, Delta leaves the consumer with the false impression that the charge for trip insurance is a pass-through fee, i.e., a fee that is passed on to another entity and for which Delta has no financial interest. The net impression of Delta's representations and omissions to consumers is that, when

consumers purchase a trip insurance policy, the funds to cover the policy's cost go to an independent third-party insurance company, whom Delta falsely identifies as the company brokering the policy for sale to the consumer. Indeed, Delta identifies this same insurance company as "the licensed producer," or insurance agent, for the trip insurance policies. In reality, and despite lacking a license to broker insurance policies, Delta retains or ultimately receives an undisclosed kickback from every policy sold and acts as the broker for all trip insurance policies sold on its website.

28.     For example, Delta includes the green textbox with the word "Recommended" at the top of the insurance-election section, and then represents to the consumer that the party "recommending" the purchase of insurance is AGA Service Company, not Delta. This representation is false and deliberately designed to hide Delta's financial interest in the purchase of trip insurance policies. Delta is also recommending trip insurance policies to its consumers in order to generate illegal kickbacks for itself, and its false statements are designed to induce more consumers to purchase insurance policies, with the belief that all of their premium is passed to the actual insurer.

29.     After the section that portrays the trip insurance policies as something in the consumer's best financial interest, Delta proceeds to conceal its financial motivation in pushing the product by stating that a different entity—AGA Service Company—is the entity recommending and brokering the trip insurance policies being sold on its website.

30.     Specifically, below the marketing language is the following language. "Terms, conditions and exclusions apply. Benefits underwritten by BCS Insurance Company or Jefferson Insurance Company, depending on your state of residence. ***Recommended by AGA Service Company, the licensed producer*** and administrator of this plan." (emphasis added).

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

31.     Delta's website thus represents to the consumer that it is AGA Service Company, and not Delta, who is recommending the trip insurance and who is "the licensed producer" for the trip insurance policies. This is another false statement that Delta makes to its consumers in order to hide its financial interest in the travel insurance program and induce more of its consumers to purchase policies.

32.     A "producer" is insurance parlance for an insurance agent or broker, i.e., the one who makes a commission on the sale of insurance. Thus, by stating that AGA Service Company is "the" producer, Delta represents that it is not acting as an agent or broker, i.e., it is not making a commission on sales of trip insurance policies.

33.     In fact, Delta cannot sell insurance to the consumer (and thus cannot receive commissions on sales) because it is not licensed as an insurer or insurance agent in Florida or anywhere else. However, Delta is in fact acting as an unlicensed insurance agent and/or broker, receiving insurance commissions to which it has no legal entitlement.  Delta is aware that due to its lack of a license, it cannot receive commissions from sales of travel insurance products on its website.   Specifically, ██████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* at 000000284-285.

34.     Like Florida, other states across the country prohibit the unlicensed sale or brokerage of insurance, including the receipt of commissions by people or entities without a license.  For example, the New York Attorney General's Office has issued an official opinion

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

that an insurer may not pay any commission to transportation companies for the sale of travel insurance unless the transportation company is a licensed and appointed insurance agent or broker. *See* Ex. 2, N.Y. General Counsel Opinion No. 4-23-2008 ("May an insurer pay an insurance commission to a cruise line or tour operator that is not a licensed and appointed insurance agent, or a licensed insurance broker? . . . No. An insurer may not pay an insurance commission to a cruise line or tour operator that is not either a licensed and appointed insurance agent, or a licensed insurance broker.").

35.     Further enhancing the idea that the trip insurance is a pass-through charge is the presentation of the invoice. When a consumer buys a trip insurance policy on Delta's website, the cost of the policy is not included in the consumer's bill for the purchased airfare. Rather the consumer's insurance cost is itemized separately even though the airfare and trip insurance cost are paid via a one-time credit card charge on Delta's website. In contrast, when a consumer elects to purchase from Delta a seat upgrade or "Trip Extra," the cost of that "add on" is included in the fare price. The lack of inclusion of the trip insurance cost in the consumer's airfare purchase price further indicates to the consumer that Delta treats the insurance cost as a pass-through charge, not as a profit vehicle for itself.

36.     Moreover, if a consumer seeks to have questions answered about the insurance offered on Delta's website, the "terms, conditions and exclusions apply" link takes the consumer to an Allianz Global Assistance ("Allianz") link. That link notes that, if the consumer changes her mind about the purchase, "[w]ithin 10 days of purchasing the program, Allianz Global Assistance will process a full refund of premium to you." Conspicuously absent in that representation is any mention of Delta, further evidence that Defendant represents the trip insurance as a "pass through" charge, wherein it is simply a conduit for funds to Allianz without

any profit interest.

37.     Upon information and belief, the insurance policy prices on Delta's website are predicated upon a simple formula wherein a consumer is charged a fixed percentage of her ticket price for the travel insurance policy.  This pricing mechanism for a consumer's travel insurance policy perfectly reveals the inherent illegality of the entire travel insurance program.  The actual insurance underwriters for the insurance policies, which Plaintiff believes to be Jefferson Insurance Company and BCS Insurance Company, do not perform any underwriting on the individual customer level.  Instead, policies are ***automatically issued*** to consumers when Delta collects their credit card payment for the insurance premium on its website.  As a result, there is no correlation whatsoever between the actual insurance risk that is being underwritten and the policy cost.  This allows Delta to make unconscionable commission profits.

38.     Therefore, Delta and the members of this illegal enterprise are not charging any stated filed rate for these insurance policies, rather they are using a simple formula tied to ticket price that is wholly unrelated to the actual risks being underwritten.  In fact, members of the racketeering enterprise submit false filings to the various state regulators that 1) hide Delta's role in receiving unlicensed commission kickbacks; and 2) misstate how consumers are charged for these travel insurance policies. Indeed, Allianz and Delta are both well aware of the need to hide their illegal commission payments from government regulators. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████     Ex. 3, Delta 000000190 (emphasis added).

39.     Incredibly, despite having this express knowledge, ████████████████

████████████████████████████████████████

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████

40.     Additionally, Delta's website has a webpage entitled "Trip Protection" for consumers who seek more information about the insurance offered on Delta's website. This webpage contains the Allianz logo and repeats the statement: "AGA Service Company is the licensed producer and administrator of these plans." This is another false statement to the consumer designed to induce additional policy purchases, as it is Delta who plays the role of insurance producer.

41.     On the same page Delta tells consumers the "U.S. State Department recommends trip protection," and that "Allianz Global Assistance is a trusted Delta partner and the leader in the travel insurance and assistance industry."

42.     Another webpage on Delta's website is entitled "Taxes & Carrier-Imposed Fees." On this webpage, Delta tells the consumer: "We don't want you to have any unpleasant surprises on your bill. We're making every effort to let you know about any taxes and carrier-imposed fees that might be included." This is followed by an extensive list of various fees. Nowhere on this list is there any disclosure of Delta's retention or receipt of a commission or kickback for every trip insurance policy sold on its website.

43.     These false statements and material omissions to the consumer on Delta's website, especially Delta's representation that another entity is "the producer" of the trip insurance policies, reinforce the impression of the trip insurance premium as a pass-through

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

charge—one where Delta has no profit interest in the sales of trip insurance policies on its website.

44.     Delta's representation that another entity is "the producer" of the trip insurance is also an affirmative misrepresentation because Delta's actual role in the sale of the trip insurance policies is analogous (if not identical) to that of an insurance agent, who receives commissions on policies sold. In addition to AGA Service Company, Delta is or acts as an insurance agent and is also a "producer" of the trip insurance policies.

45.     Delta's false representations and material omissions necessarily inform the consumer that Delta does not receive a commission or otherwise profit from the sale of trip insurance.  However, Delta does in fact receive substantial percentage-based commission profits, totaling ██████████████████████████████████ *See* Ex. 6, Delta's Response to Plaintiff's First Interrogatories.

46.     After a consumer elects to purchase a trip insurance policy and proceeds to complete the purchase of an accompanying airfare, Allianz, not Delta, sends the consumer an email containing a copy of the purchased insurance policy. Nowhere in that communication or accompanying insurance policy is there any reference to Delta having a role in the provision of the insurance.

47.     The net impression of all of Delta's representations and omissions to its consumers on its website and during the online purchase process—including, but not limited to, Delta's assertion that another entity is "the" producer for the insurance (and by necessary implication, Delta is not)—is that the cost of the trip insurance policies is a pass-through charge, where Delta simply collects the money for the insurance policy from the consumer and forwards it on to the actual insurance provider, without any profit interest in the charge.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

48.     This net impression is reinforced by the fact that state laws generally prohibit the unlicensed sale of insurance, including the receipt of commissions on sales of insurance.

49.     It is thus reasonable for consumers to expect that Delta is not receiving a commission or any other remuneration from any sales of insurance.

50.     In reality, and completely unbeknownst to its consumers, the trip insurance is a hidden profit center for Delta, as Delta retains or ultimately receives for itself a portion of the funds for every trip insurance policy its consumers purchase on its website.

51.     Delta, instead of disclosing its profit interest in the trip insurance policies sold on its website, disguises its financial interest by leaving consumers with the impression that the cost of an insurance policy is a "pass through" charge. Indeed, Delta affirmatively tells consumers that a different entity is "the producer" of the insurance, without any suggestion or indication that Delta is retaining or ultimately receiving a portion of this charge for itself.

52.     This is in contrast to other charges that Delta offers on its website, such as more desirable seats and early boarding rights, where Delta bundles the cost of these optional fees into the overall price of a consumer's ticket, thereby signaling Delta's profit interest to the consumer.

53.     The trip insurance program on Delta's website represents an illegal kickback scheme—one in which Delta hides and misleads consumers about its role and profit interest in the insurance policies sold on its website.

54.      To facilitate this kickback scheme, and its inherent illegality, Delta routes insurance premium payments through its website at the point of sale for airline tickets.  Through the use of interstate wires, those consumer insurance funds are then routed to other members of the enterprise.  Those members in turn take a portion of those consumer insurance premium funds and, through use of the interstate wires, route funds back to Delta, disguised as a

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

"marketing" or "advertising" fee. *See* Ex. 3. The enterprise engages in this deception in order to hide from consumers and state regulators the fact that Delta is receiving illegal insurance commission payments without a license.   Indeed, Delta and Allianz know well that they are engaged in an illegal enterprise, and that Delta must have a license to receive the commissions that Allianz is paying it. Specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮  Exhibit 7, Delta 000006130-31.  Delta, however, admits that it has no such license. *See* Ex. 8, Delta's Response to Plaintiff's First Set of Requests for Admission at 2 ("Delta admits that it is not licensed as set forth in § 626.112, Fla. Stat., or similar statutes in any state…").  Despite this admitted lack of a license, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  on all travel insurance sales through its website booking path. Exhibit 9, Delta 000006035-6052 at p.3.

55.     The price for the trip insurance sold on Delta's website is not set by Delta.

56.     Delta provides no services to the consumer in connection with the sale of trip insurance on its website.

57.     No contractual relationship is formed between the consumer and Delta in connection with a consumer's purchase of trip insurance on Delta's website.

58.     No bargained-for exchange takes place between the consumer and Delta in connection with a consumer's purchase of trip insurance on Delta's website.

59.     On or about October 5, 2017, Plaintiff Walter Cappillo purchased a trip insurance policy on Delta's website.  Mr. Cappillo received an email from the insurance provider attaching his policy, neither of which referenced Delta or Delta's receipt of a portion of his insurance

premium.

60.     On or about April 10, 2018, Plaintiff Judith Donoff purchased a trip insurance policy on Delta's website. Ms. Donoff received an email from the insurance provider attaching her policy, neither of which referenced Delta or Delta's receipt of a portion of her insurance premium.

61.     Delta has never disclosed to Plaintiffs, or any of the class members, the true nature of its relationship with Allianz, Jefferson Insurance Company, or BCS Insurance Company. Specifically, Delta has not disclosed the fact that it retains or receives a substantial kickback or commission on the policies made available on its website. Instead, it engages in a pattern of false statements to hide this fact.  Delta's agreement with Allianz, however, expressly states that Delta ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

## **CLASS ACTION ALLEGATIONS**

62.     Plaintiffs bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23.

### **Class Definition**

63.     Plaintiffs seek to represent the following class:

All persons in the United States who purchased a trip insurance policy on Delta's website within the applicable limitations period (the "Class Period").

Excluded from this class are Delta, its affiliates, subsidiaries, agents, board members, directors, officers, and employees. Also excluded from the class are the district judge and magistrate judge assigned to this case, their staff, and their immediate family members.

64.     This class action is brought pursuant to Rule 23(b)(2) because Delta has acted or

refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class appropriate.

65.    This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Plaintiffs' claims and the class members' claims predominate over any question of law or fact affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

66.    Delta has subjected Plaintiffs and the members of the class to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is Delta's standard business practice.

### A.    Numerosity

67.    The individual class members are so numerous that joinder of all members in a single action is impracticable. Delta operates thousands of flights a day, and upon information and belief, it has sold thousands of trip insurance policies during the Class Period.

68.    While Plaintiffs estimate the proposed class numbers in the millions, the exact number of class members, as well as the class members' names and addresses, can be identified from Delta's or the insurer's business records.

### B.    Commonality/Predominance

69.    Common questions of law and fact exist as to Plaintiffs' and the class members' claims. These common questions predominate over any questions solely affecting individual class members, including, but not limited to, the following:

   a.    Whether Delta violated 18 U.S.C. § 1962(c) or (d);

b.      Whether Delta engaged in a deceptive and unfair business practice by misleading the class about its financial interest in making available trip insurance policies and its receipt or retention of a kickback;

c.      Whether the representations made about insurance premiums collected by Delta would lead the reasonable consumer to believe it was a pass-through charge;

d.      Whether Delta receives undisclosed kickbacks, commissions, or fees from the sale of trip insurance;

e.      Whether Delta manipulated the class through trip insurance products in order to maximize its own profits at the expense of the class;

f.      Whether Delta retains or receives a commission or kickback for the sale of trip insurance policies without a license;

g.      Whether and to what extent Delta's conduct has caused injury to the Plaintiffs and the class members;  and

h.      Whether Delta unlawfully enriched itself at the expense of the class.

**C.      Typicality**

70.      Plaintiffs' claims are typical of the putative class members' claims because of the similarity, uniformity, and common purpose of Delta's unlawful conduct. Plaintiffs, like all class members, were damaged through their payment of money that Delta deceptively presented as a pass-through charge to the insurance company, when in fact Delta illegally enriched itself in this process.

71.      Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Delta's wrongful conduct and willful nondisclosures.

**D.      Adequacy**

72.     Plaintiffs will fairly and adequately protect and represent the interest of each member of the class because they have suffered the same wrongs as the class members.

73.     Plaintiffs are fully cognizant of their responsibilities as class representatives and have retained León Cosgrove, LLP  and Robbins Geller Rudman & Dowd LLP to prosecute this case. León Cosgrove, LLP and Robbins Geller Rudman & Dowd LLP are experienced in complex class action litigation, including litigation related to unfair and deceptive trade practices, and have the financial and legal resources to meet the costs of and understand the legal issues associated with this type of litigation.

74.     Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

        **E.**       **The Prerequisites of Rule 23(b)(2) Are Satisfied.**

75.     The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) exist as Delta has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and equitable relief with respect to the class as a whole.

76.     Delta's actions are generally applicable to the class as a whole, and Plaintiffs seek, among other things, equitable remedies with respect to the class as a whole.

        **F.**       **The Prerequisites of Rule 23(b)(3) Are Satisfied.**

77.     The questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair

and efficient adjudication of the controversy.

78.     The likelihood that individual members of the class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

79.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class. Plaintiffs know of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**<u>VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT</u>**

80.     Plaintiffs re-allege paragraphs 1 through 79 as if fully set forth herein and further allege the following.

81.     This count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

82.     At all times material, Plaintiffs and all members of the class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

83.     At all times material, Delta conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

84.     Delta has engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices alleged above.

85.     The misrepresentations and deceptions, and concealment and omissions of material facts, alleged in the preceding paragraphs occurred in connection with Delta's trade and commerce in Florida.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

86.     Delta's unfair and deceptive acts and practices violate FDUTPA, Section 501.201 and 501.211, Fla. Stat.

87.     As a direct and proximate result of Delta's FDUTPA violations, Plaintiffs and the class have been damaged in an amount to be proven at trial. Plaintiffs and the class have a monetary, out of pocket loss, as they paid money to Delta as a result of its deceptive conduct.

88.     Plaintiffs and the class are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under FDUTPA.

**COUNT II**
**UNJUST ENRICHMENT**

89.     Plaintiffs re-allege paragraphs 1 through 79 as if fully set forth herein and further alleges the following.

90.     This is a count for unjust enrichment.

91.     Plaintiffs and each member of the class conferred a direct benefit on Delta through their payment for trip insurance, allowing Delta to enrich itself to the detriment of the class.

92.     Delta appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of its insurance kickback scheme.

93.     Under the circumstances, it would be unjust and inequitable to allow Delta to retain this benefit, as it was obtained through deceptive representations.

94.     Independently, it would also be unjust and inequitable to allow Delta to retain this benefit because Delta is not legally entitled to receive commissions for sales of trip insurance in the first place because it does not have a license to broker insurance.

95.     Plaintiffs and the class suffered damages as a result of Defendant's unjust enrichment.

## COUNT III
## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1962(C)

96.     Plaintiffs re-allege paragraphs 1 through 79 as if fully set forth herein and further alleges the following.

97.     This is a count for violations of the Racketeer Influenced and Corrupt Organizations provisions of the Organized Crime Control Act of 1970 (RICO), 18 U.S.C. § 1961 *et seq.*

98.     At all relevant times, Defendant Delta conducted and participated in the affairs of an enterprise through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mail and wire facilities to execute a scheme to defraud, as well as repeated acts of money laundering, all in violation of RICO, 18 U.S.C. § 1962(c).  The predicate acts of racketeering carried out by the enterprise include the sale of hundreds of thousands of travel insurance policies to the class through fraudulent representations on Defendant's website, hundreds of thousands of invoices sent through the mail and wire facilities, the receipt of illegal kickbacks through use of the mail and wire facilities, the submission of false documentation through the mail and wire facilities, and the illegal laundering of monetary instruments.  The scheme to defraud had the express purpose of allowing Delta to obtain from its consumers monies to which it has no legal entitlement, namely portions of consumers' insurance premiums, by lying to consumers about Defendant's role in and relationship to the travel insurance products sold on its website. *See* Exs. 1-10.

99.     The RICO enterprise which Delta engaged in, and the activities of which affected interstate and foreign commerce, is comprised of Defendant, Allianz Global Assistance ("Allianz"), BCS Insurance Company ("BCS"), Jefferson Insurance Company ("Jefferson"), and

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

other unnamed co-conspirators.  Each member of the enterprise has a written agreement with Allianz setting forth its role and participation in the enterprise. *See, e.g.*, Ex. 10.   These contracts form the structure of the enterprise.

100.    The enterprise and its activities are ongoing, and its common purpose is to enrich the Defendant at the expense of the class members.  The enterprise acted to deceive and hide from the class members the fact that Allianz was paying an undisclosed and illegal kickback to Delta when each class member purchased a travel insurance policy.

101.    The enterprise has functioned for over four years as a continuing unit and has maintained an ascertainable structure separate and distinct from the pattern of racketeering activity.

102.    Delta conducted and participated in the affairs of the RICO enterprise through a pattern of racketeering activity that consisted of numerous and repeated violations of federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. § 1341 and § 1343. Defendant further participated in the enterprise by engaging in the laundering of monetary instruments in violation of 18 U.S.C. § 1956. This conduct and these predicate acts, with the resultant harm to Plaintiffs and class members, continues on a daily basis, establishing a long-term threat of racketeering activity and evidencing the continuity of Defendant's open-ended pattern of racketeering activity.

103.    The scheme to defraud included deceiving Plaintiffs and class members into believing that when they purchased a travel insurance policy on Defendant's website, the price displayed represented the cost of the policy.  In reality, the insurance premium price includes a large kickback to Delta.  Defendant had a duty to correct this mistaken impression but failed to

do so in order to increase its profits from the sale of insurance policies to class members.  Delta's omission was material, as it increased the cost of Plaintiffs' and Class Members' insurance premiums.  Plaintiffs and the class are not paying insurance premiums predicated upon the underwritten risk, rather they are paying higher prices to cover an illegal kickback that Allianz pays to Delta.

104.    The scheme to defraud was executed through multiple false statements on Delta's website, as noted *supra*, all designed with the express purpose of inducing consumers to purchase travel insurance policies by falsely representing Delta's role in the sale of policies.

105.    In addition to Delta's use of the wires to deceptively market and sell the travel insurance product, Allianz sent class members insurance policies through mail and wire facilities, all of which were in furtherance of the enterprise's scheme, as none of them disclosed the payment of illegal kickbacks.

106.    Moreover, Allianz utilized the federal wire and mail facilities to make payments of illegal kickbacks to Delta.  Therefore, Allianz has committed tens of thousands of distinct violations of 18 U.S.C. § 1341 and § 1343 during the class period.

107.    Delta and Allianz separately engaged in multiple acts of money laundering in violation of 18 U.S.C. § 1956.  The federal anti-money laundering statute prohibits, among other things, an entity from engaging in financial transactions, knowing that the proceeds of those transactions derive from illegal activity, with the intent of promoting unlawful activity.  That is exactly what Delta and other members of the enterprise do here.  As stated, Delta lacks a license to conduct the business of insurance, and as such it is prohibited from receiving commissions stemming from sales of travel insurance policies.  Defendant knows that it 1) lacks a license; and 2) cannot receive commissions as a result. *See* Ex. 1. To enable itself to receive commissions

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

while hiding the true nature of the payments it is receiving, Delta and Allianz violate 18 U.S.C. § 1956. Specifically, monies are collected from consumers on Delta's website who elect to purchase a travel insurance policy, and then those funds are routed to Allianz. Allianz, in turn, takes the same consumer insurance premium money and, through a financial transaction, returns a substantial portion of it to Delta each month, disguised as a "marketing" or "advertising" fee. *See id*. In reality, the payments are commissions, and both Allianz and Delta know this, but they hide the true nature of the transaction in order to allow Delta to receive commission payments that it is legally prohibited from receiving. *See id* and Exs. 2-5.

108.   Each of these violations was related because they shared the common purpose of defrauding class members by failing to disclose the payment of illegal kickbacks of class member insurance premiums. These related criminal acts had the same or similar purpose, results, participants, victims, and methods of commission, and are otherwise related by distinguishing characteristics which are not isolated events.

109.   Finally, Allianz, BCS and Jefferson committed additional acts of mail and wire fraud by submitting fraudulent documents to state regulators, all of which were designed to hide the operation of the RICO enterprise. Specifically, all of these entities submitted regulatory filings that failed to disclose the illegal payment of commissions to Delta, and that also falsely stated the price that the insurers were charging consumers for a policy.

110.   Allianz, BCS, and Jefferson are insurance companies regulated by respective state entities.

111.   One aspect of this regulation is that insurers and other related entities, including Allianz, BCS, and Jefferson, are required to provide the states certain information regarding the use of a brokering agent and the payment of commissions.

112.     Delta's role in the sale of trip insurance policies on its website is materially equivalent to that of an insurance agent or broker.

113.     Delta submits business for trip insurance risks to Allianz, BCS, and Jefferson.

114.     In exchange, it is paid a commission or kickback for each trip insurance policy sold through its website.

115.     Under state insurance regulations, Allianz, BCS, and Jefferson must report to the state a list of agents who provide them with insurance risks as great as that coming from Delta.

116.     Instead of abiding by these requirements, Allianz, BCS, and Jefferson make material misrepresentations in their reports to and filings with state agencies by failing to disclose the amount of risk they receive from Delta, who is acting as an insurance agent.  Allianz also fails to disclose the kickbacks it pays to this unlicensed agent.

117.     Delta is not a licensed insurance agent in any state.

118.     The material omissions of Allianz, BCS, and Jefferson allow the kickback scheme described *supra* to continue, to the detriment of Plaintiffs and class members.

119.     Collectively, these predicate acts demonstrate that Delta had the specific intent to participate in the overall RICO enterprise, which was evidenced by its scheme to defraud Plaintiffs and class members.  The scheme was designed to deceive Plaintiffs and class members through the implementation and execution of an illegal kickback scheme.  Plaintiffs and the class members relied on the uniform false statements and omissions from Delta and the enterprise co-conspirators—that the full customer premium went to the cost of the travel insurance policy--to their detriment.

120.     Delta used and invested the income it received through its pattern of racketeering activity to operate its business, which caused direct damage to Plaintiffs and class members.

121.    As a result of Delta's participation in the racketeering activity set forth herein, Plaintiffs and class members have incurred significant damages.  Plaintiffs and class members paid a price for a travel insurance policy that had no relation to the underwritten risk, but rather was inflated to cover the cost of an illegal kickback to Delta. This results in consumers paying prices for insurance policies that are higher than they would be absent the Defendant's misconduct.

**COUNT IV**
**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1962(D)**

122.    Plaintiffs re-allege paragraphs 1 through 79 and 97 through 121 as if fully set forth herein and further allege the following.

123.    At all relevant times, Delta was associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is agreed to conduct and participate, directly and indirectly, in the conduct and affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

124.    Defendant engaged in a scheme to defraud Plaintiffs and class members by marketing the travel insurance product through false and deceptive statements, while hiding the payment of illegal commission kickbacks, wherein the Defendant received a substantial portion of Plaintiffs' and class members' insurance premiums, without any legal entitlement.

125.    Defendant committed, or caused to be committed, a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the payment and receipt of illegal kickbacks and the related acts of mail fraud, wire fraud and money laundering set forth above.

126.    As a result of Defendant's violations of 18 U.S.C. § 1962(d), Plaintiffs and the

class members suffered direct damages.

## **PRAYER FOR RELIEF**

Named plaintiffs and the plaintiff class request the following relief:

a.   Certification of the class;

b.   A jury trial and judgment against Delta;

c.   An order requiring Delta to make full disclosure to consumers of its receipt or retention of trip insurance premiums sold on its website and the amount of the kickback it retains or receives;

d.   The costs of suit, including reasonable attorneys' fees, in accordance with RICO and FDUTPA;

e.   Compensatory and treble damages, attorneys' fees, and costs under the federal RICO statute;

f.   Compensatory damages in an amount to be determined at trial, punitive damages, cost of suit, including reasonable attorneys' fees, in accordance with the RICO statutes;

g.   General, actual and compensatory damages in an amount to be determined at trial;

h.   Restitution of the amount Delta was unjustly enriched as a result of the wrongs alleged herein, in an amount to be determined at trial;

i.   Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

j.   Such other relief as the Court deems just and proper.

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

Dated: February 8, 2019

Respectfully submitted,

*/s/ Stuart A. Davidson*

Paul Jeffrey Geller
  Fla. Bar No. 984795
Stuart Andrew Davidson
  Fla. Bar No. 0084824
Jason Henry Alperstein
  Fla. Bar No. 64205
Christopher Chagas Gold
  Fla. Bar No. 88733
Bradley M. Beall
  Fla. Bar No. 1010635
**ROBBINS GELLER RUDMAN &
DOWD LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel:  (561) 760-3000
Email:  pgeller@rgrdlaw.com
Email:  sdavidson@rgrdlaw.com
Email:  jalperstein@rgrdlaw.com
Email:  cgold@rgrdlaw.com
Email:  bbeall@rgrdlaw.com

Scott B. Cosgrove
  Fla. Bar No. 161365
Alec H. Schultz
  Fla. Bar No. 35022
John R. Byrne
  Fla. Bar No. 126294
Jeremy L. Kahn
  Fla. Bar No. 105277
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Tel:     305.740.1975
Email: scosgrove@leoncosgrove.com
Email: aschultz@leoncosgrove.com
Email: jbyrne@leoncosgrove.com
Email: jkahn@leoncosgrove.com

Mark A. Wites
 Florida Bar No. 24783
**WITES LAW FIRM**
4400 N. Federal Highway
Lighthouse Point, Florida  33064
Tel:  954-933-4400
Email:  mwites@witeslaw.com

*Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn will serve a copy by Notice of Electronic Mail to all counsel of record.

Lazaro Fernandez, Jr., Esq.
Denise B. Crockett, Esq.
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001
Email: lfernandez@stackfernandez.com
Email: dcrockett@stackfernandez.com
Email: gmartich@stackfernandez.com
Email: mwolf@stackfernandez.com
*Attorneys for Defendant, Delta Air Lines*

David L. Balser, Esq.
Julia C. Barrett, Esq.
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Email: dbalser@kslaw.com
Email: jbarrett@kslaw.com
*Attorneys for Defendant, Delta Air Lines*

Gayle I. Jenkins, Esq.
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863
Email: gjenkins@winston.com
Email: rsalyer@winston.com
Email: docketla@winston.com
*Attorneys for Defendant, Delta Air Lines*

/s/ Stuart A. Davidson
Stuart A. Davidson

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM