**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:18-cv-81258-MIDDLEBROOKS/BRANNON**

JUDITH MARILYN DONOFF, on Behalf of          <u>CLASS ACTION</u>
Herself and All Others Similarly Situated,

                Plaintiff,

vs.

DELTA AIR LINES, INC.,

                Defendant.

_____/


**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**
**<u>AND MEMORANDUM OF LAW IN SUPPORT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................... ii

I.     INTRODUCTION ............................................................................................................... 1

II.    STATEMENT OF FACTS ................................................................................................. 3

     A.    Delta Offered Travel Insurance to All Members of the Class In A Uniform Manner ..................................................................................................... 3

     B.    Delta Lacks A License To Transact the Business of Insurance In Any State ................................................................................................................................ 4

     C.    Delta Uniformly Deceived Members of the Class And State Regulators ............... 4

     D.    Delta's Deceptive Practices Injured The Class Representative In The Same Manner As All Other Class Members ........................................................... 7

III.   ARGUMENT ...................................................................................................................... 7

     A.    Standard For Class Certification ............................................................................ 7

     B     The Proposed Class Is Ascertainable ..................................................................... 8

     C.    The Class Meets the Requirements of Rules 23(a) ................................................ 8

          1.    The Class Is Sufficiently Numerous ........................................................... 8

          2.    There Are Common Questions of Law and Fact Among Class Members ...................................................................................................... 9

          3.    Plaintiff's Claims Are Typical of Those of the Class ................................ 10

          4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Class ........................................................................................................... 11

                a.    Plaintiff's Interests Align with the Interests of the Class ..................... 11

                b.    Plaintiff's Counsel Are Qualified ......................................................... 12

     D.    The Class Meets the Requirements of Rule 23(b)(3) ............................................ 12

          1.    Common Questions Predominate Over Individual Issues ......................... 12

          2.    Delta's Liability on Plaintiffs' RICO Claims Can Be Established With Common Proof .................................................................................. 14

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

         3.    Plaintiffs' FDUTPA Claim Can Be Established With Common Proof ........................................................................................................ 16

         4.    Plaintiffs' Unjust Enrichment Claim Can Be Established With Common Proof ................................................................................................ 17

         5.    A Class Action is the Superior Method of Resolving This Controversy .................................................................................................. 18

    E.    The Court Should Certify An Injunctive Relief Class ............................................. 19

IV.    CONCLUSION ................................................................................................................ 20

CERTIFICATE OF SERVICE .................................................................................................... 22

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

**TABLE OF AUTHORITIES**

**Cases**                                                                                                            **Page(s)**

*AAL High Yield Bond Fund v. Ruttenberg*,
   229 F.R.D. 676 (N.D. Ala. 2005) ............................................................................. 8

*Allapattah Servs., Inc., v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003) ........................................................................... 12

*Amchem Prods., Inc., v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 12

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ....................................................................................... 8, 16

*Bank of Am. Corp. v. City of Miami, Fla.*,
   137 S. Ct. 1296 (2017) ........................................................................................ 17

*Bowe v. Public Storage*,
   318 F.R.D. 160 (S.D. Fla. 2015) ............................................................... 12, 13, 16

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008) ............................................................................................ 15

*Brown v. SCI Funeral Servs. of Fla., Inc.*,
   212 F.R.D. 602 (S.D. Fla. 2003) ..................................................................... 9, 12

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*,
   169 So. 3d 164 (Fla. Dist. Ct. App. 2015) ............................................................ 16

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004) .............................................................................. 19

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ..................................................................... *passim*

*City of Miami v. Bank of Am. Corp.*,
   800 F.3d 1262 (11th Cir. 2015) ........................................................................... 17

*Commodity Futures Trading Comm'n v. Fleury, No. 03-61199-CIV-MARRA*,
   2010 WL 3835134 at *2 (S.D. Fla. Sept. 29, 2010) ............................................. 18

*County of Monroe, Fla., v. Priceline.com, Inc.*,
   265 F.R.D. 659 (S.D. Fla. 2010) ......................................................................... 18

*Cox v. American Cast Iron Pipe Co.*,
   784 F. 2d 1546 (11th Cir. 1986) ........................................................................... 8

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

*Fitzpatrick v. Gen. Mills, Inc.*,
   635 F.3d 1279 (11th Cir. 2011) ................................................................ 17

*In re Checking Account Overdraft Litig.*,
   286 F.R.D. 645 (S.D. Fla. 2012) .............................................................. 18

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004) ................................................... 9, 10, 18

*In re Visa Check/Master Money Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ..................................................................... 13

*Kilgo v. Bowman Transp., Inc.*,
   789 F. 2d 859 (11th Cir. 1986) .................................................................. 9

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ........................................................ *passim*

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984) ............................................................... 10

*Latman v. Costa Cruise Lines, N.V.*,
   758 So.2d 699 (Fla. 3d DCA 2000) ......................................................... 17

*Morgan v. Pub. Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) .................................................... 12

*Muzuco v. Re$ubmitIt, LLC*,
   297 F.R.D. 504 (S.D. Fla. 2013) .............................................................. 18

*Northrup v. Innovative Health Ins. Partners, LLC*,
   329 F.R.D. 443 (M.D. Fla. 2019) ............................................................... 8

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
   311 F.R.D. 688 (S.D. Fla. 2015) ............................................................... 8

*Pottinger v. Miami*,
   720 F. Supp. 955 (S.D. Fla. 1989) .................................................... 10, 11

*Smith v. Triad of Alabama, LLC*,
   No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ............................. 10

*Sosna v. Iowa*,
   419 U.S. 393 (1975) .................................................................................. 11

*Tefel v. Reno*,
   972 F. Supp. 608 (S.D. Fla. 1997) ........................................................... 11

v

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................. 13

*Valley Drug Co. v. Geneva Pharm., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) ......................................................... 7, 8, 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................. 7, 9

*Walco Invs., Inc., v. Thenen*,
    168 F.R.D. 315 (S.D. Fla. 1996) ............................................................. 10

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ................................................... 9, 15, 19

*Williams v. Wells Fargo Bank, N.A.*,
    280 F.R.D. 665 (S.D. Fla. 2012) ............................................................. 18

*Zamber v. Am. Airlines, Inc.*,
    282 F. Supp. 3d 1289 (S.D. Fla. 2017) ................................................... 17

<u>Statutes</u>

18 U.S.C. §1961 ..................................................................................... 1

18 U.S.C. §1962 ..................................................................................... 9

Fla. Stat. §501.201, et seq. .................................................................... 1

Fla. Stat. §501.211 ................................................................................. 19

<u>Other</u>

Federal Rule of Civil Procedure 23 ................................................... *passim*

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Plaintiffs Judith Marilyn Donoff and Walter Cappillo (collectively, "Plaintiffs"), by and through undersigned counsel, respectfully move the Court for an Order: (a) certifying this case as a class action under Rules 23(b)(3) and 23(b)(2) of the Federal Rules of Civil Procedure; (b) appointing Mr. Cappillo as representative of the Class (defined below);[1] and (c) appointing Plaintiffs' counsel, León Cosgrove, LLP ("León Cosgrove") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.  In support hereof, Plaintiffs state:

## I.    INTRODUCTION

In *Bowe v. Public Storage*, 318 F.R.D. 160 (S.D. Fla. 2015),[2] Judge Ungaro certified, under Federal Rule of Civil Procedure 23(b)(3), a "nationwide class for resolution of Plaintiffs' RICO claims"[3] and a "Florida subclass" for resolution of FDUTPA[4] and Florida common law claims, in a case alleging – *just as here* – that the defendant failed to disclose its significant financial interest in insurance policies sold through the defendant.  *Public Storage*, 318 F.R.D. at 168, 185.

The same result should occur here, as just like the defendant in *Public Storage*, Defendant Delta Air Lines, Inc. ("Delta") uniformly fails to tell each of its customers that it receives illegal commission profits from each trip insurance policy sold on its website, class members can be easily ascertained from Delta's business records, and damages can be calculated with simple arithmetic using the same evidence for all class members.  Therefore, class certification in this case is both warranted and desirable.

Delta's conduct in exploiting its customers is brazen and willful, as Delta negotiated and entered into a secret agreement with insurance agent AGA Service Company ("Allianz") that *intentionally falsifies* how Allianz pays Delta in order to hide the illegal payments from consumers and state regulators.  And this unlawful scheme has unjustly enriched Delta during the class period to the tune of over ▓▓▓▓▓▓▓ in insurance commissions alone, all without making any disclosure to any consumer or state regulatory entity.

---

[1]  Plaintiffs seek to certify the proposed Classes with only Plaintiff Walter Cappillo serving as the lead plaintiff and class representative.  Thus, all references to Plaintiff refer to him.

[2]  Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

[3]  Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, *et. seq*.

[4]  The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*.

Delta has obtained these exorbitant and undisclosed profits from its customers by uniformly deceiving them as to its role in the third-party travel insurance policies sold through its website.   More specifically, pursuant to their fraudulently negotiated agreement, Delta allows Allianz to sell insurance policies through Delta's website booking path[5], which uniformly portrays the price of the trip insurance premium as a "pass through" charge (one wherein all the money is retained by the third-party insurer), yet Delta fails to inform its customers what its internal documents prove--that Delta ultimately receives a ▮▮▮▮▮▮▮▮▮ on each policy sold through the booking path.

This arrangement is not only uniformly deceptive, it is uniformly illegal.  Delta admits that it lacks any license to transact the business of insurance in Florida or any other state.  *See* Deposition of Marla Johnson ("Johnson Dep.") (Ex. B) at 29:1-30:5.  And Delta also knows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Trust Dep. (Ex. A) at 82:5-8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Despite this knowledge of illegality, Delta's internal documents reveal that: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. C); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D; *see also* Deposition of Ricky Horwitz ("Horwitz Dep.") (Ex. E) at 111:6-19.

Disturbingly, Delta, Allianz and the other members of the RICO enterprise uniformly deceive not only their own customers, but they extend their deception to state regulatory bodies, uniformly failing to disclose the unlawful commission payments to Delta.  Indeed, there is not a single regulatory filing submitted by Delta, Allianz, or any other member of the enterprise that discloses Delta's commission payments.  And Delta's Form 10-K filed with the Securities and Exchange Commission ("SEC") is devoid of any reference to Allianz, despite the fact that Delta receives close to ▮▮▮▮▮▮▮▮ annually from the entity.  This is because Allianz and Delta *intentionally misstate* the nature of the commission payments from Allianz to Delta, falsely characterizing them as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ They engage in this deliberate fraud

---

[5]  The "booking path" refers to the portion of Delta's website beginning when a customer inputs flight search criteria and ending when the customer chooses specific flights and makes a purchase. *See* Deposition of Elmar Trust ("Trust Dep.") (Ex. A) at 21:7-15.

because they know that ███████████████████████████████████████

████████████████████████████████████████████████████████████████

(Ex. F)  and so ███████████████████████████████████████████████

████████████████████ Ex. D.

     At bottom, Delta engaged in deceptive conduct and a racketeering enterprise by intentionally creating the misimpression that the insurance it offered to consumers on its website was provided by an independent company.  And Delta intentionally fails to disclose—to anyone— that it operates the program to allow itself to receive substantial illegal commission payments. Instead, Delta purports to be acting in the best interests of its customers by merely allowing a third party to market travel insurance on Delta's website.  Common evidence will be used at trial to prove that Delta's misrepresentations and omissions are deceptive and that its conduct is unlawful.

     Plaintiffs now move for certification of Counts I through IV of the Second Amended Complaint ("SAC"), which includes claims for violations of RICO, violation of FDUTPA, and unjust enrichment.  As detailed below, all required elements of Federal Rule 23 are satisfied, therefore, the Court should certify the proposed classes.

## II.   STATEMENT OF FACTS

     While discovery is still ongoing, the evidence adduced to date establishes the predominance of common issues, the typicality of Plaintiff's claims, the superiority of a class action for resolving these claims, and the suitability of the claims at issue for class certification. Below is a sampling of the evidence that Plaintiff will present at trial to demonstrate how the predominant common issues in this case will be resolved on a class-wide basis.

### A.   Delta Offered Travel Insurance to All Members of the Class in a Uniform Manner

     Delta and Allianz present a travel insurance purchase offer to ███████████████ using the Delta website booking path, and Delta requires all customers who purchase a ticket through its website to make an initial election to purchase a travel insurance policy from Allianz. *See* Trust Dep. (Ex. A) at 20:18-23 and 25:3-8.  This uniform requirement to make an initial election to purchase travel insurance applies to all customers nationwide who purchase a ticket through Delta's website booking path.  *See id.* at 26:4-9.

     The primary reason Delta forces customers to make an initial *yes* or *no* election to purchasing travel insurance prior to completing their airfare purchase is to drive up the "take rates"

for the insurance product, which means the percentage of people who elect to purchase insurance. When take rates increase, ████████████████████████ *See id.* at 27:22-28:1.

Unbeknownst to all Class members, Delta, in conjunction with Allianz, engages in ████████████████████████████████████████████████████████████████ *See id.* at 33:16-34:9. ███████ ████████████████████████████████████████████████████████████████

*See id.*

**B.     Delta Lacks a License to Transact the Business of Insurance in any State**

Despite making travel insurance available for sale through its website, Delta disclaims any role in the insurance sale process because it does not possess a license to "transact the business of insurance" in Florida or any other state. *See id.* at 36:2-9.  As an unlicensed entity, Delta cannot transact the business of insurance or receive any commissions on insurance sales.  Despite this, Delta engages in an elaborate scheme and illegal enterprise that, through a host of false statements to Plaintiffs and third parties, as well as illegal financial transactions, funnels an enormous portion—████████████—of each premium payment back to Delta.  The profits from this illegal conduct are extraordinary, as Delta has—secretly—received over ██████████ in commissions over the class period.

Incredibly, Delta ***knows*** that ████████████████████████████████████████ ████████████████████████████████████ *See id.* at 82:5-8 ██████████████ ████████████████████████████████████████████████████████████████ ████████ Despite this express knowledge, Delta ***admits*** to ████████████████████ ████████████████████████████████████ Ex. G.  This is not only deceptive, it is criminal.

**C.     Delta Uniformly Deceived Members of the Class and State Regulators**

Delta admits that it uniformly failed to disclose to any Class member that it receives commission payments from Allianz each time a consumer purchases a trip insurance policy.  *See* Trust Dep. (Ex. A) at 37:16-20 ("Q. Does Delta disclose anywhere on its website the economic arrangement that it has with Allianz related to consumer's purchase of travel insurance? A. We do not.").  Allianz also admits that it ████████████████████████████████████████████ ████████████████████████████████████████████████ Horwitz Dep. (Ex. E) at 200:17-201:14.

To hide the illegal payments, Delta and its enterprise co-conspirators engaged in a uniform campaign of deception directed at consumers and state regulators with regard to the travel insurance sold through Delta's website.  The deception began at the point of sale in Delta's website booking path, when Delta and Allianz made the uniform—and blatantly false—representation to all Delta customers that the trip insurance is "[r]ecommended by AGA Service Company, the licensed producer and administrator of this plan."  SAC at ¶30.  Delta admits that each Class member was exposed to this statement.  *See* Trust Dep. (Ex. A) at 35:5-21; *see* Horwitz Dep. (Ex. E) at 23:9-18; *see* Deposition of Katherine Lay ("Lay Dep.") (Ex. H) at 23:17-24:6; *see* Johnson Dep. (Ex. B) at 29:1-30:5.[6]  This statement is false because Delta is also acting as a producer (aka broker) of the trip insurance, as it is receiving compensation for each policy sold.

Delta's uniform deception continues after the Class member elects to purchase a travel insurance policy, as Delta itemizes the price charged for the trip insurance policy as a separate line item from the Class member's airfare price.  *See* Trust Dep. at 38:3-9; *see* Horwitz Dep. at 25:8-19.  In contrast, for *trip extras* where Delta does not conceal its profit interest, such as seating with extra leg room, or WiFi, Delta bundles the price of those extras and displays them together with the consumer's overall price for the airfare.  Delta admitted in deposition that, due to setting out the trip insurance cost as a separate line item, consumers may not be able to discern Delta's profit interest in the product.  *See* Trust Dep. at 40:9-14.

Upon completing their insurance purchase on Delta's website, consumers receive their trip insurance policy from Allianz.  Both the confirmation letters and the policies themselves uniformly fail to disclose Delta's role in the insurance product, or the payments Allianz makes to Delta based on the consumer's insurance purchase.  Ex. I (Capillo Policy).  Thus, there is nowhere a consumer can look to in order to learn of Delta's illegal profits and financial interest in the travel insurance policies sold through the website.  Indeed, as noted above, Delta does not even mention Allianz nor its trip insurance profits in its annual Form 10K filing with the SEC.

The underlying conduct is so clearly illegal that Delta and its enterprise co-conspirators must expand their deception beyond consumers to state regulators.  Again, Delta knows that ▮

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[6]  When asked whether every customer saw this phrase, Allianz's corporate representative testified ▬▬▬▬▬▬ but am ▬▬▬▬▬▬▬▬▬▬▬▬▬ Horwitz Dep. (Ex. E) at 23:9-18.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Trust Dep. at 82:5-8.  Therefore, its entire contract with Allianz is a ruse designed to mislead anyone who looks at it into believing that Delta is not receiving commissions from insurance sales. To hide these payments, neither ████████████████████████████████████ *See* Ex. J (Marketing Agreement); Horwitz Dep. (Ex. E) at 70:25-73:14.  This is the case despite the fact that Delta has internally stated that ████████████████████████████████████ ████████████████████████████████ Ex. F.  And this is the case despite the fact that Allianz has admitted that it and Delta agreed upon ████████████ ████████████████████████████████████ *See* Horwitz Dep. (Ex. E) at 69:12-16 and 72:15-73:14.  Instead, the Marketing Agreement refers to ████████████████████ ████████████ Ex. J (Marketing Agreement).

The Marketing Agreement then sets out ████████████████████████ ████████████████████████████ *Id.* at § IV.  Specifically, ████████████████████████████████ ████████████████████████████████ ████████████████ *Id.* ██████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████ Horwitz Dep. (Ex. E)  at 119:17-120:18. ██████████ ████████████████████████████████████ *Id.* at 106:23-107:4; Ex. D.  Ultimately, as the testimony from Allianz's corporate representative proves, Allianz simply ████████████████████████████████ ████████████████████████████████ Horwitz Dep. at 127:17-130:13.

Delta and Allianz set out this fictional compensation system because they know that the actual compensation system is illegal.  As Delta has stated, ████████████████████ ████████████████████████████████████ ████████████████████ Ex. F.  And as Allianz has stated, ██████████████ ████████████████████████████████████ ████████████████████████████████████████ Ex.

D.   This is an admission of criminal conduct.   Not only did Delta and Allianz deliberately misrepresent the terms of their actual agreement, but they and other enterprise members proceeded to submit uniformly false filings to state regulators.   These filings all failed to disclose the commission payments to Delta, and they also misstated to regulators how consumers are charged for the trip insurance policies in order to hide the commission kickbacks.   For example, a submission by enterprise member Jefferson Insurance Company ("Jefferson") to the Florida Office of Insurance Regulation entitled "rules and rates manual for travel insurance booking path program Florida" failed to mention anywhere that airlines such as Delta received commissions from insurance sales. *See* Ex. K (Jefferson Insurance Company Travel Insurance Booking Path Program).   The regulatory authority then relied on this material omission to approve the program. *See id.*

### D.   Delta's Deceptive Practices Injured the Class Representative In the Same Manner as all Other Class Members

The proposed Class representative has claims that are typical of the claims of other Class members.   Walter Cappillo purchased an insurance policy through Delta's website on October 5, 2017.   Declaration of Walter Cappillo ("Cappillo Decl.") (Ex. L) at ¶4.   Just like all Class members, nothing on Delta's website disclosed to Mr. Cappillo that Delta was receiving a commission from Allianz in connection with his purchase of an insurance policy. *Id.*   Mr. Cappillo, as with all Class members, received a copy of his insurance policy from Allianz, which also failed to disclose Delta's profit interest or reveal Allianz's commission payment to Delta. *Id.*   As with all Class Members, Delta did in fact receive a payment from Allianz as a direct result of Mr. Cappillo's insurance purchase. *See* Johnson Dep. (Ex. B) at 35:13-36:9; Horwitz Dep. (Ex. E) at 23:9-18. Just like all Class members, Mr. Cappillo never received any disclosure from Delta, Allianz, or other members of the racketeering enterprise setting forth Delta's profit from his insurance policy purchase.

## III.   ARGUMENT

### A.   Standard for Class Certification

To obtain class certification, a plaintiff must satisfy all the requirements of Rule 23(a), and the requirements of at least one subsection of Rule 23(b). *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003) (noting that Rule 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate.").   Under Rule

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

23(b)(3), Plaintiff must demonstrate that common issues predominate and that a class action is the superior method to adjudicate the controversy.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).  Under Rule 23(b)(2), Plaintiff must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  *Id*. at 345.

 Importantly, while the Court may "consider the factual record in deciding whether the requirements of Rule 23 are satisfied[,]" *Valley Drug*, 350 F.3d at 1188 n.15, "[a]t the class certification stage, the Court does not delve into the merits of the case.  Instead, the Court only determines whether class certification is appropriate."  *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 694 (S.D. Fla. 2015) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465 (2013)); *Valley Drug*, 350 F.3d at 1188 n.15.

      **B.**      **The Proposed Class Is Ascertainable**

"As a threshold issue, Plaintiff must demonstrate that the proposed class is adequately defined and clearly ascertainable."  *Northrup v. Innovative Health Ins. Partners, LLC*, 329 F.R.D. 443 (M.D. Fla. 2019).  Plaintiff proposes certification of a Class under Rules 23(b)(2) and (b)(3), defined as:

> *All persons in the United States who purchased a trip insurance policy on Delta's website within the applicable limitations period (the "Class Period").*[7, 8]

The Proposed Class is adequately defined using "objective criteria that allow for class members to be identified in an administratively feasible way."  *Id*. at 443.  The Class members are limited to persons who purchased a travel insurance policy from Allianz through Delta's website. Thus, although discovery is still ongoing, it is clear that Class members can be easily identified through business records maintained by both Delta and Allianz, which would obviously include, at a minimum, each Class member's name, address, contact information, and premium amount. *See* Horwitz Dep. (Ex. E) at 193:3-194:14.  Therefore, the ascertainability requirement is satisfied here.

      **C.**      **The Class Meets the Requirements of Rule 23(a)**

---

[7]  Excluded from this class are Delta, its affiliates, subsidiaries, agents, board members, directors, officers, and employees. Also excluded from the class are the district judge and magistrate judge assigned to this case, their staff, and their immediate family members.

[8]  Plaintiff also requests that the Court certify a Florida subclass for the non-RICO counts.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

There are four prerequisites a party must satisfy under Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  *Klay v. Humana, Inc*., 382 F.3d 1241, 1250 (11th Cir. 2004).  Plaintiff and the proposed Class easily satisfy these criteria.

### 1.   The Class is Sufficiently Numerous

Rule 23(a)(1) requires that the proposed Class be so numerous that joinder of all members is impracticable.  It is generally the rule in this Circuit that a class of more than forty members satisfies the numerosity requirement.  *See AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 680-81 (N.D. Ala. 2005) (citing *Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986).  Numerosity is easily satisfied here.  Delta has sold ████████████████ ██████████████████████████████████████████████████ during the Class period. Trust Dep. (Ex. A) at 41:10-15; *see* Ex. D; *see* Ex. M; *see* Ex. N; *see* Ex. O.  The sheer number of Class members standing alone makes joinder of them all impracticable, and the impracticability of joinder is exacerbated by the fact that Class members are located in all of the fifty states.  *Kilgo v. Bowman Transp., Inc*., 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied by class of 31 members who were dispersed across Florida, Georgia and Alabama); Lay Dep. (Ex. H) at 18:13-19:5.

### 2.   There are Common Questions of Law and Fact Among Class Members

Rule 23(a)(2) requires that there be questions of law or fact common to the class.  The "commonality" requirement of Rule 23(a)(2) is a "low hurdle" easily surmounted. *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1356 (11th Cir. 2009).  It only requires "at least one issue common to all class members."  *Brown v. SCI Funeral Servs. of Fla., Inc*., 212 F.R.D. 602, 604 (S.D. Fla. 2003).  Where the defendant is alleged to have "engaged in a standardized course of conduct that affects all class members," commonality is satisfied.  *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 685-86 (S.D. Fla. 2004).  "Plaintiffs' legal claims need not be completely identical and factual differences concerning treatment or damages will not defeat a finding of commonality."  *Brown*, 212 F.R.D. at 604.  A common question must be capable of classwide resolution, which means that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350. There are a number of common factual and legal questions in this case that will resolve an issue that is central to each Class member's claim in one stroke, including:

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

- Whether Delta violated 18 U.S.C. §1962(c) or (d);

- Whether Delta engaged in a deceptive and unfair business practice by misleading the class about its financial interest in travel insurance;

- Whether Delta's representations and omissions would lead a reasonable consumer to believe the insurance premium collected by Delta was a pass-through charge;

- Whether Delta retains or receives undisclosed kickbacks, commissions, or fees from the sale of travel insurance;

- Whether Delta is legally authorized to retain or receive a commission or kickback for the sale of travel insurance policies;

- Whether Delta's RICO enterprise used U.S. mails or wires to deceive insurance regulators;

- Whether Delta's RICO enterprise engaged in money laundering in furtherance of their scheme;

- Whether Delta unlawfully enriched itself at the expense of the Class; and

- Whether and to what extent Delta's conduct has caused injury to the Plaintiffs and the Class members.

Since only one question of law *or* fact is required, these numerous common questions of both law and fact easily surmount the "low hurdle" that the commonality requirement presents. Thus, Rule 23(a)(3) is satisfied.

### 3.    Plaintiff's Claims are Typical of Those of the Class

The "typicality" requirement of Rule 23(a) is met when the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and where their claims are based upon similar legal theories and are not antagonistic to those of the class. *Pottinger v. Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989).  Typicality and commonality are related concepts, with commonality referring to the group characteristics of the class as a whole, and typicality focusing on the named plaintiff's claims in relation to the class.  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 686 n.23.

Typicality does not require identical claims or defenses, and a "factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class."  *Kornberg v. Carnival Cruise Lines,*

*Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Indeed, any alleged atypicality between the named plaintiff's claims and those of the class "must be clear and must be such that the interests of the class are placed in significant jeopardy." *Walco Invs., Inc., v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996).  And variations in the amount of damages also do not vitiate typicality.  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 990 (11th Cir. 2016) ("As we've already noted, the potential for individualized damages is not sufficient to defeat class certification under Florida law."); *Kornberg*, 741 F.2d at 1337; *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 687; *Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *9 (M.D. Ala. Mar. 17, 2017) ("so long as the Named Plaintiffs and putative class members have an interest in prevailing on similar legal claims, a difference[ ] in the amount of damages claimed will not defeat typicality.").

Here, Plaintiff's claims arise out of the same course of conduct and are based on the same legal theories as those of the absent Class members.  Plaintiff and other members of the Class, all deceived through a uniform course of conduct by Delta and its enterprise co-conspirators, uniformly suffered damages in the amount of their contribution to the commission kickback Delta received as a result of their insurance purchases.  As Plaintiff and the Class seek redress via common legal claims, Rule 23(a)(3) is satisfied.

### 4.  Plaintiff will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class."  A plaintiff satisfies that requirement when (1) the class representative has no interests conflicting with the class; and (2) the representative and his attorneys will properly prosecute the case.  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Valley Drug*, 350 F.3d at 1189. Plaintiff satisfies both prongs.

### a.  Plaintiff's Interests Align with the Interests of the Class

Walter Cappillo is an adequate lead plaintiff because he shares common interests with the class members and seeks the same type of relief for himself as he seeks for the Class.  *Pottinger*, 720 F. Supp. at 959.  "[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Carriuolo*, 823 F.3d at 989 (affirming grant of class certification).

Mr. Cappillo possesses no conflicts whatsoever with the Class, nor does his counsel. *See* Ex. L (Cappillo Decl.). The central issues in this case—the existence, unlawfulness, and consequence of Delta's insurance scheme—are common to the claims of Plaintiff and the Class. Plaintiff, like each absent Class member, has a strong interest in proving Delta's scheme, establishing its unlawfulness, demonstrating the impact of the illegal conduct, and obtaining relief. As Plaintiff proves his own claims, he also will be proving the claims of hundreds of thousands of absent Class members. *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (the "common goal of each member of the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure to all class members"). As there is no conflict between Mr. Cappillo and absent Class members, Plaintiff satisfies the requirements of Rule 23(a)(4).

### b.     Plaintiff's Counsel are Qualified

Class counsel must be qualified to represent the Class, and the plaintiff must participate in the prosecution of the litigation. *Brown*, 212 F.R.D. at 605. The law firms seeking to represent the Class here include very qualified lawyers with substantial experience in the prosecution of consumer class actions, and they have collectively recovered over a billion dollars for class members in other litigation. Indeed, in a similar consumer class action in the Southern District of Florida, the presiding judge described counsel's efforts and skill in litigating the case as "extraordinary." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1253 (S.D. Fla. 2016). In support of the determinations required under Federal Rules 23(a)(4) and 23(g), the undersigned firms seeking appointment as Class Counsel have included resumes setting forth their experience and expertise in class actions. *See* Ex. P. Similarly, Mr. Cappillo has expressed his commitment to overseeing the attorneys and participating in the prosecution of the case. *See* (Ex. L) Cappillo Decl. The adequacy requirement is unquestionably satisfied here.

### D.     The Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), certification is appropriate if: (1) common questions of law or fact predominate over questions affecting individual class members only; and (2) class treatment is superior to other methods available for adjudicating the controversy. Certification is particularly appropriate where the focus of the claim is on the defendant's common course of conduct, as it is here. *See, e.g., Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997) ("[p]redominance is a test readily met in certain cases alleging consumer…fraud"); *Allapattah Servs., Inc., v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003).

### 1.    Common Questions Predominate over Individual Issues

The Eleventh Circuit's recent opinion affirming class certification in *Carriuolo*, that court's opinion in *Klay*, along with Judge Ungaro's certification of a nationwide class asserting indistinguishable legal theories in *Public Storage*, demonstrate that this case satisfies the predominance requirement. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay*, 382 F.3d at 1255. "If…the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate." *Pub. Storage*, 318 F.R.D. at 177 (granting certification).

It is not necessary that **all** questions of law or fact be common; only some questions must be common, and they must predominate over individual questions. *Klay*, 382 F.3d at 1254; *see also In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (the rule "calls only for predominance, not exclusivity, of common questions"). Additionally, "individualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member… [n]othing in this Rule requires plaintiffs to prove predominance separately as to both liability and damages." *Carriuolo*, 823 F.3d at 988; *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.").

Plaintiff easily satisfies the Rule 23(b)(3) standard under this binding precedent. As the evidentiary proffer summarized above establishes, the salient evidence necessary to establish Plaintiff's claims is the same evidence any other member of the Class would use to prove their own claims; they all seek to prove that Delta's material omissions and deceptive conduct were wrongful, and that such conduct would deceive an objective "reasonable consumer." Indeed, in accord with *Klay* and Judge Ungaro's decision in *Public Storage*, the evidentiary presentation would not be affected whether there are 100 or 1,000,000 Class members. In either case, Plaintiff would present the same evidence of (1) Delta's uniform deceptive conduct; (2) Delta's universal failure to disclose to its customers that, despite admittedly lacking a license to transact the business

13

of insurance, it in fact receives a commission on each individual insurance policy a consumer buys; (3) the universal failure of Delta and its enterprise co-conspirators to disclose the commission payments to state regulators; and (4) expert testimony establishing that Delta's conduct is deceptive.  In the words of the Eleventh Circuit, the foregoing evidence has a direct impact on every Class member's effort to establish liability and entitlement to relief.  *Klay*, 382 F.3d at 1255.

Moreover, damages are easily calculated from the business records of Allianz by using simple arithmetic.  Indeed, Plaintiff's damages expert performed a preliminary damages calculation using simple arithmetic and the business records obtained during discovery.  *See* Expert Declaration of Colin Weir (Ex. Q).  Under the theories of liability advanced by Plaintiff, the damages here are the undisclosed commission kickbacks to Delta.  Allianz and Delta ███

████████████████████████████████████████████████████████████

*See* Horwitz Dep. (Ex. E) at 91:25-93:13 and 193:3-194:14.  "Because that [damages] theory is consistent for all class members, the predominance requirement under Rule 23(b)(3) is satisfied." *Carriuolo*, 823 F.3d at 989.  Thus, common issues predominate.

### 2. Delta's Liability on Plaintiffs' RICO Claims Can be Established with Common Proof

Plaintiff alleges two different RICO violations on behalf of the nationwide Class based on the allegations that Delta's misconduct extends well beyond falsely portraying the insurance premium price as a "pass through" charge to consumers.  The SAC alleges that, due to its unlicensed status, Delta participates in a racketeering enterprise in order to profit off of consumers' insurance premiums.  This enterprise, comprised of Delta, Allianz, BCS Insurance Company, Jefferson, and other unnamed co-conspirators (SAC at ¶3), made fraudulent representations and material omissions to Plaintiffs and all members of the proposed class, made (and continues to make) fraudulent statements to state regulators (SAC at ¶¶38, 109-118), and engages in money laundering to conceal Delta's illegal commission payments.

The evidence necessary to establish these well-pled allegations is common to all Class members.  To prove their RICO claims, all Class members would have to prove: (1) the existence of a RICO enterprise comprised of Delta and the named and unnamed co-conspirators set forth in the SAC through which Delta hid from Class members the fact that it was secretly receiving a ███ commission on its customers' insurance policies; (2) Delta and the enterprise made material misrepresentations and omissions and failed to disclose its financial interest to Class members and

state regulators in order to hide its unlawful commission payments; and (3) Delta and other members of the enterprise used the mail and wires in furtherance of their illegal enterprise, and/or engaged in money laundering to conceal the true nature of the illegal commission payments.

Under the binding Eleventh Circuit precedent in *Klay*, class certification of the RICO claims is required.  In *Klay*, the Eleventh Circuit considered the class certification of RICO claims brought by a putative class of doctors against the health maintenance organizations ("HMO's") to which they subscribed.  382 F.3d at 1246.  The Eleventh Circuit reversed the district court's order denying class certification, determining that "numerous factual issues relating to the conspiracy [were] common to all plaintiffs" where the HMO defendants "operate[d] nationwide and allegedly conspired to underpay doctors across the nation[.]"  *Id*. at 1256.  The court explained that the plaintiffs' "RICO claims [we]re not simply individual allegations…lumped together…[i]nstead, the very gravamen of the RICO claims is the pattern of racketeering activities and the existence of a national conspiracy…these very facts constitute essential elements of each plaintiff's RICO claims."  *Id.*

Here, as in *Klay*, the common evidence has "a direct impact on every Class member's effort to establish liability" on the RICO predicate acts and the overarching RICO violation, thus classwide issues predominate over individual issues.  *Id.* at 1255.  Indeed, the travel insurance program through which Delta and its co-conspirators deceive Class members "constitute[s] the very heart of the plaintiffs' RICO claims" and "would necessarily have to be re-proven by every plaintiff if each [consumer's] claims were tried separately."  *Id*. at 1257.  Class members' RICO claims against Delta turn on proof of a uniform and coordinated scheme, and the materiality of the false statements and omissions by Delta and its enterprise co-conspirators.  *See, e.g., Williams, Inc*., 568 F.3d at 1356 (reversing district court's denial of a motion for class certification of a RICO claim, finding that the plaintiffs' RICO claim was "not dependent on proof of individual acts of disparate treatment," despite the existence of certain "decentralized" issues of fact). The situation here is indistinguishable from *Klay*, where the Eleventh Circuit went on to hold that even though some individual questions of fact existed, "the common issues of fact [in a RICO action], concerning the existence of a[n enterprise and] a pattern of racketeering activity…are quite substantial" and "would tend to predominate over all but the most complex individualized issues." 382 F.3d at 1258-59.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

To the extent Delta attempts to argue that individual showings of reliance are necessary to establish a RICO claim, and that such individualized showings would defeat predominance, Delta would be flat wrong.  The Supreme Court has already held that a plaintiff need not rely on a defendant's acts of mail fraud to prevail on a RICO claim.  *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 648-49 (2008) ("[N]o showing of reliance is required to establish that a person has violated § 1962 by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud.").  But even assuming that reliance was an element of Plaintiff's RICO claims, Plaintiff can establish that element at trial on a classwide basis because it can be inferred from circumstantial evidence.  Before *Bridge* issued, the Eleventh Circuit recognized in *Klay* that reliance for purposes of RICO can be inferred from circumstantial evidence and proven on a classwide basis: even where "each plaintiff must provide reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue.)."  *Klay*, 382 F.3d at 1259.

Therefore, whether Plaintiff must show third-party reliance via his fraud on the regulators theory, or first party reliance, either showing can be made with classwide proof.  *Bowe*, 318 F.R.D. at 179 ("in cases involving over-billing, courts have found that there may be classwide proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed").

Additionally, any materiality showing with respect to the RICO predicate acts of mail and wire fraud will also be subject to common, classwide proof, because Delta's false statements and omissions were uniform.  As demonstrated above, each Class member saw the same false statement in the trip insurance offer ("[r]ecommended by AGA Service Company, the licensed producer and administrator of this plan"), and Delta's omission of its financial interest was uniform. At trial Plaintiff will introduce expert survey evidence and testimony demonstrating that a substantial portion of the consuming public would find it material that Delta receives up to ▮▮▮ of the money consumers pay Allianz for trip insurance.  *See* Expert Declaration of Brian Sowers ("Sowers Decl.") (Ex. R) ¶¶12, 77.  As the Supreme Court has recognized, materiality is subject to common proof, and "the failure of proof on the element of materiality would end the case for one and for all; no claim would remain in which individual reliance issues could potentially predominate."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Thus, under binding precedent, the materiality analysis is no bar to a finding of predominance and the certification of Plaintiff's RICO claims.

3.      **Plaintiffs' FDUTPA Claim Can be Established with Common Proof**

FDUTPA claims are particularly amenable to class treatment because a FDUTPA claim is proven using an objective standard – the "reasonable consumer" standard – and it does not require any showing of individualized reliance.  The elements of a FDUTPA claim are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167 (Fla. Dist. Ct. App. 2015).  The Eleventh Circuit has made clear that a showing of individual reliance is not required:

> [R]ecovery under the FDUTPA does not hinge on whether a particular plaintiff actually relied on [defendant's unfair or deceptive conduct]; rather, whether the allegedly deceptive conduct would deceive an objective reasonable consumer is a common issue for all the putative class members, amenable to classwide proof.

*Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011).

In the context of the "pass through" liability theory that underlies Plaintiff's FDUTPA claim, it does not matter what the plaintiff ***actually*** thought when consummating the transaction. *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 702-703 (Fla. 3d DCA 2000).  As the Eleventh Circuit reaffirmed in upholding class certification of a FDUTPA claim in *Carriuolo*, "***the mental state of each class member is irrelevant***":

> Because a plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at issue, the mental state of each class member is irrelevant. In Davis, the First District Court of Appeal of Florida recognized that the absence of a reliance requirement means the impediment to class litigation that exists for multiple intrinsic fraud claims does not exist in FDUTPA cases.

*Carriuolo*, 823 F.3d at 985; *see also Fitzpatrick*, 635 F.3d at 1283 (whether a defendant's "conduct would deceive an objective reasonable consumer is a common issue for all the putative class members, amenable to classwide proof").

Therefore, the question of whether Delta's deceptive conduct and omissions would have led a reasonable consumer to believe that the travel insurance premium was a "pass through" charge is an objective one for the jury, which predominates over any individual questions.  *See Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1300 (S.D. Fla. 2017) ("Whether a reasonable consumer would interpret American's representations to mean that the trip insurance premium is

a 'pass through' charge is thus a question of fact for a jury."). Under binding Eleventh Circuit precedent, predominance exists for Plaintiff's FDUTPA claim and it should be certified.

### 4. Plaintiffs' Unjust Enrichment Claim Can be Established with Common Proof

"There are three elements of an unjust enrichment claim under Florida law: first, the plaintiff has conferred a benefit on the defendant; second, the defendant voluntarily accepted and retained that benefit; and, finally, the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying for it." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287 (11th Cir. 2015), *vacated and remanded sub nom. Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017). Each of these elements is subject to classwide proof, and courts routinely certify unjust enrichment claims, even where the laws of multiple states are at issue.[9] *See Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 698 n.4 (certifying 17-state unjust enrichment subclass where the gravamen of the claim was that defendants "were unjustly enriched by…illegal overcharges and equity requires disgorgement").

As the court in *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 521 (S.D. Fla. 2013) observed, where "Defendants' business operations are the same to all members of the putative class," predominance is satisfied. In that case, the court found predominance satisfied because the manner in which the defendants were alleged to have collected unauthorized NSF (non-sufficient funds) fees were the same for all members of the class. *Id.* Likewise, here, from September 2014 forward, Delta, on a monthly basis, received a roughly ▮▮▮ commission from Allianz on all trip insurance policy sales. *See* Horwitz Dep. (Ex. E) at 69:12-21 and 110:25-111:23. Numerous courts in this District have certified unjust enrichment classes in similar circumstances. *See In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657-59 (S.D. Fla. 2012); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 674-75 (S.D. Fla. 2012) (certifying unjust enrichment claim where bank and insurer concealed kickback from forced-place homeowner's insurance); *County of Monroe, Fla., v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010) (certifying unjust enrichment claim where "Defendants' business operations are the same to all members of the putative class"). Delta's ill-gotten gains—the commission kickbacks—are the uniform restitution due to the Class.

---

[9] Plaintiff here seeks certification of only a Florida subclass for his unjust enrichment claim.

*See Commodity Futures Trading Comm'n v. Fleury*, No. 03-61199-CIV-MARRA, 2010 WL 3835134 at *2 (S.D. Fla. Sept. 29, 2010).

### 5.    A Class Action Is the Superior Method of Resolving this Controversy

Finally, Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The Eleventh Circuit has found that there are four factors courts should take into account in making a superiority determination: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." *Klay*, 382 F.3d at 1269.

Delta cannot credibly contest the first three factors, as due to the relatively small individual damages, Class members have little interest in controlling their own case, there is no similar litigation involving these claims against Delta, and it is desirable for this Court to adjudicate these issues given its familiarity with the facts.

The fourth element is easily met here as well, as given the predominance of common questions, a class action is by definition superior to individual suits. "Because common questions of law and fact predominate, class-wide adjudication appropriately conserves judicial resources and advances society's interests in judicial efficiency." *Carriuolo*, 823 F.3d at 989.  Indeed, in the words of Judge Posner, "[t]he ***realistic*** alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (original emphasis).  Thus, the superiority element is satisfied.

### E.    The Court Should Certify an Injunctive Relief Class

Class certification under Rule 23(b)(2) is permitted where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  That standard is met here because Delta's materially misleading representations and omissions regarding its financial interest in the travel insurance sold through its website is a practice that applies generally to the entire Class, and injunctive relief ending Delta's conduct would be

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

appropriate with respect to the Class as a whole. While certification under Rule 23(b)(2) is generally unavailable where final relief relates exclusively or predominantly to money damages, this Court may certify a "hybrid class action" for injunctive relief. *Williams*, 568 F.3d at 1360 ("It is possible to create hybrids in given cases. Since in theory there should be no hard requirement that (b)(2) be mutually exclusive, and since subpart (c)(4)(A) allows an action to be maintained 'with respect to particular issues,' the fact that damages are sought as well as an injunction or declaratory relief should not be fatal to a request for a (b)(2) suit, as long as the resulting hybrid case can be fairly and effectively managed."). This Court should do so here so that the Class, if victorious, will have the ability to declare unlawful and end Delta's deceptive, unfair, and unlawful practices – a remedy expressly made available under FDUTPA. Fla. Stat. §501.211(1) ("Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.").

## IV.    CONCLUSION

This is a routine consumer class action involving small dollar amount purchases and asserting claims that require no individualized inquiries.   All of the requirements of Rule 23(a) are satisfied, as are the requirements of both Rule 23(b)(2) and Rule 23(b)(3).   Accordingly, Plaintiffs respectfully request that the Court certify the proposed Class, appoint Mr. Cappillo as Class Representative, and appoint León Cosgrove and Robbins Geller as Class Counsel.

Dated: March 26, 2019                    Respectfully submitted,

*s/ Alec H. Schultz*
Scott B. Cosgrove
  Fla. Bar No. 161365
Alec H. Schultz
  Florida Bar No. 35022
John R. Byrne
  Florida Bar No. 126294
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:  305.740.1986
Facsimile:  305.437.8158
Email:  scosgrove@leoncosgrove.com

20

Email:  aschultz@leoncosgrove.com
Email:  jbyrne@leoncosgrove.com

*Counsel for Plaintiffs and the Class*


Paul J. Geller, Esq.
  Florida Bar No. 984795
Stuart A. Davidson, Esq.
  Florida Bar No. 84824
Jason H. Alperstein, Esq.
  Florida Bar No. 64205
Christopher C. Gold, Esq.
  Florida Bar No. 088733
Bradley M. Beall, Esq.
  Florida Bar No. 1010635
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida  33432
Email:  pgeller@rgrdlaw.com
Email:  sdavidson@rgrdlaw.com
Email:  jalperstein@rgrdlaw.com
Email:  cgold@rgrdlaw.com
Email:  bbeall@rgrdlaw.com

*Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 26, 2019, I electronically filed the foregoing with

the Clerk of Court using CM/ECF system which in turn will serve a copy by electronic mail to

all counsel of record.

Lazaro Fernandez, Jr., Esq.
Denise B. Crockett, Esq.
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001
Email: lfernandez@stackfernandez.com
Email: dcrockett@stackfernandez.com
Email: gmartich@stackfernandez.com
Email: mwolf@stackfernandez.com
*Attorneys for Defendant, Delta Air Lines*

David L. Balser, Esq.
Julia C. Barrett, Esq.
Katherine P. Nobles, Esq.
Edward Bedard, Esq.
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Email: dbalser@kslaw.com
Email: jbarrett@kslaw.com
Email: pnobles@kslaw.com
Email: ebedard@kslaw.com
*Attorneys for Defendant, Delta Air Lines*

Gayle I. Jenkins, Esq.
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863
Email: gjenkins@winston.com
Email: rsalyer@winston.com
Email: docketla@winston.com
*Attorneys for Defendant, Delta Air Lines*

*/s/ Alec H. Schultz*
Alec H. Schultz

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM