UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 18-CV-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF
on behalf of herself and all others
similarly situated,

    Plaintiffs,

vs.

DELTA AIR LINES, INC.

    Defendant.
_____/

CLASS ACTION

**NON-PARTY AGA SERVICE COMPANY'S MOTION TO SEAL CONFIDENTIAL INFORMATION AND DOCUMENTS REFERENCED IN PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT**

Non-Party, AGA Service Company (hereinafter, "AGA"), makes this limited appearance for the sole purpose of seeking protection for its Confidential information and documents pursuant to the terms of the Protective Order Governing Discovery filed on December 5, 2018 [ECF No. 31, Exhibit A] and entered on December 13, 2018 [ECF No. 36] (the "Protective Order") and hereby moves pursuant to Rule 5.4 of the Local Rules for the Southern District of Florida and the Protective Order for an Order sealing Confidential information and documents of AGA that Plaintiff references in, and intends to attach to, Plaintiff's Motion for Class Certification and Memorandum of Law in Support (the "Motion for Class Certification") [ECF No. 87].

**I.    INTRODUCTION**

The Protective Order protects information designated as "Confidential Information" by any party or non-party in this action. Protective Order, ¶¶ 4-7. Under the Protective Order,

"Confidential Information" is defined as:

> information produced by a Party or non-party that the Party or non-party considers in good faith, pursuant to Federal Rule of Civil Procedure 26 and applicable case law, to contain trade secrets and/or other commercial, proprietary, research, development, or personal information that is not known to, or has not generally been made available to the public.

Protective Order, ¶ 4.

In this case, AGA produced to Plaintiff a number of highly confidential and commercially sensitive documents, including documents containing AGA's secret business strategies, the terms of its confidential agreement with Delta and related revenue information concerning its business relationship with Delta. Since the disclosure of these documents to the public would cause significant competitive harm to AGA, these documents are designated as "Confidential Information" under the Protective Order.

On March 8, 2019, AGA's representative testified at a deposition in this case regarding, among other things, AGA's highly confidential and private negotiations with Delta Air Lines, Inc. ("Delta"). Pursuant to ¶ 6 of the Protective Order, these documents are also designated as "Confidential Information."[1]

Plaintiff now references in, and intends to attach to, its Motion for Class Certification AGA's proprietary business terms, revenue, and confidential negotiation information. Specifically, Plaintiff intends to file the following:

    a.    <u>Motion for Class Certification - Exhibit E</u> -- Excerpts from a deposition transcript of Richard Horwitz, AGA's representative, taken on March 8,

---

[1] The Protective Order provides that all "deposition testimony taken in this case shall be treated as Confidential Information until the expiration of the 30th day after the transcript is delivered. Within this time period, a party or non-party may serve a Notice of Designation … to specif[y] portions of the testimony" as "Confidential Information." Protective Order, ¶ 6. As of the date of this motion, AGA's representative's transcript is still within the 30-day time period described in the Protective Order. Before the expiration of the 30-day time period, AGA intends to designate portions of that transcript as "Confidential Information," including those portions sought to be attached to the Motion for Class Certification.

        2019 (the "Horwitz Transcript"), wherein Mr. Horwitz described AGA's confidential and private negotiations with Delta;

    b.    <u>Motion for Class Certification - Exhibit N</u> -- AGA-0004625 (the "Marketing Fee Email"), which is an email containing the terms of AGA's confidential financial arrangement with Delta; and

    c.    <u>Motion for Class Certification - Exhibit O</u> -- AGA-0014915 (the "Revenue Breakdown Sheet"), which is an internal AGA document breaking down and analyzing a portion of the revenue AGA generated in relation to its confidential marketing agreement with Delta.

For the reasons explained below, these documents squarely fit within the confidentiality standards agreed to by the parties in the Protective Order and as made normally exempt from public disclosure by the courts. As such, these documents must be kept under seal.

## II. ARGUMENT

Pursuant to Rule 26, a showing of "good cause" is required to maintain records as confidential and under seal. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). In order to demonstrate "good cause," a party must show "that (1) the information sought is a trade secret or other confidential information; and (2) the harm caused by its disclosure outweighs the need of the party seeking disclosure." *Alarm Grid, Inc. v. Alarm Club.com, Inc.*, 2018 WL 1175254, at *5 (S.D. Fla. Mar. 5, 2018). Here, that burden is easily met.

### A. The Documents at Issue Qualify for Protection as Trade Secret and Confidential Financial Information.

Good cause exists to maintain the documents under seal because they constitute proprietary trade secret and commercially sensitive financial information that is not known to, and has not been made available to, the public. The Marketing Fee Email is clearly a private communication between AGA and Delta that states the confidential compensation arrangement between AGA and

3

Delta under the parties' confidential marketing agreement.[2] The Revenue Breakdown Sheet, on the other hand, describes and analyzes in detail the revenues AGA generates as a result of that agreement.[3] And, the Horwitz Transcript excerpts details AGA's business strategy, as well as the private negotiations leading up to the execution of AGA's and Delta's confidential marketing agreement. The information contained in these documents is maintained in strict confidence and has not been previously disclosed outside of the two contracting parties' relationship because such disclosure would be used by AGA's competitors to undercut AGA's relationship with its airline partners. "If any of this information were to be made public, AGA's competitors would gain direct insight into AGA's propriety market and financial strategy, to AGA's detriment." Declaration of Ricky Horwitz, Chief Sales Officer of AGA Services Company, ¶ 8, attached hereto as Ex. A.

Accordingly, the information contained in these documents satisfies the "commonly accepted criteria" for trade secret protection in the Eleventh Circuit. *See Chicago Tribune Co.*, 263 F.3d at 1313–14 (the criteria include whether the information (1) is treated "as closely guarded secrets," (2) "represents substantial value" to the party, (3) "would be valuable to [the party's] competitors," and (4) "derives its value by virtue of the effort of its creation and lack of dissemination"). Indeed, the proprietary and commercially sensitive financial information of the type sought to be attached to the Motion for Class Certification are normally granted protection by the courts. *See, e.g., CV Restoration, LLC v. Diversified Shafts Sols., LLC*, 2017 WL 2123562, at *3 (M.D. Fla. May 16, 2017) (finding a "legitimate interest in protecting the disclosure" of "confidential pricing and ordering information because '[t]his information would obviously be

---

[2] As noted in Section C, *infra*, this Court has already granted Delta's prior motion to seal, among other documents, the marketing agreement between AGA and Delta. *See* ECF No. 62.

[3] The Revenue Breakdown Sheet contains a statement at the bottom of the sheet that states that it is not "to be disclosed to any other party."

important for a competitor in deciding by how much it could undercut [the party's] prices.'"); *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, 2010 WL 6790538, at *2 (M.D. Fla. Oct. 28, 2010) (explaining that "[c]ourts have found that a company's interest in the privacy of its financial records and the terms of confidential agreements, however, often outweigh the public right of access"); *In re Photochromic Lens Antitrust Litig.*, 2013 WL 12156446, at *2, n.4 (M.D. Fla. Oct. 21, 2013) ("competitively sensitive commercial information . . . should be protected," including "pricing strategy," "sales aggregated across customers," "transactions or potential transactions with customers," and "customer-specific pricing."); *James, Hoyer, Newcomer, Smiljanich, & Yanchunis, P.A. v. Rodale, Inc.*, 41 So. 3d 386, 388 (Fla. 1st DCA 2010) (affirming ruling that contracts, reports and communications with and from suppliers and other vendors constitute trade secrets).

Due to the confidential nature of the information, AGA only produced these documents to Plaintiff and agreed to produce its representative for deposition with the expectation that they would remain confidential under the Protective Order. Ex. A, ¶ 10.

**B. AGA's Interest in Maintaining the Confidentiality of its Financial Information Outweighs any Other Party's Right to Access that Information.**

The factors the Court should consider in evaluating a request to seal weigh in favor of granting AGA's motion to seal. *See Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (in determining whether to seal documents, courts consider (1) whether access would impair court functions or harm legitimate privacy interests; (2) the degree and likelihood of injury from access; (3) the reliability of the information; (4) whether there is an opportunity to respond to the information; (5) whether the information concerns public officials or concerns; and (6) whether a less onerous alternative to sealing exists).

*First*, while publication of the documents sought to be sealed would not impair court

5

functions, it would harm AGA's legitimate privacy interests. As explained above, the documents sought to be attached to the Motion for Class Certification contain highly confidentially, commercially sensitive information that is not disclosed to the public or competitors because it can be used by others to gain an unfair advantage in a highly competitive industry. Ex. A, ¶¶ 3, 6-8. If the details of this information were to be made public, AGA's competitors would gain significant insight into AGA's financial terms and negotiation strategy with Delta and could undercut AGA's position in the marketplace. *Id.* at ¶ 8.

*Second*, for the same reason discussed above, there is a very high degree and likelihood of an injury to AGA if the documents sought to be sealed is made public. "AGA operates in a highly competitive industry, where pricing and revenue information and negotiated agreements are closely guarded." *Id.* at ¶ 3. Consequently, revealing the pricing and revenue information and the conditions leading up to AGA's marketing agreement with Delta will cause competitive harm and place AGA at a strategic disadvantage, thus mandating protection by this Court. *See Graphic Packaging*, 2010 WL 6790538, at *2 ("[A] company's interest in the privacy of its financial records and the terms of confidential agreements . . . often outweigh the public right of access."); *Local Access, LLC v. Peerless Network, Inc.*, 2015 WL 7351444, at *1 (M.D. Fla. Nov. 20, 2015) ("A party's interest in the privacy of its financial records and the terms of confidential agreements oftentimes outweighs the public's right of access"); *McQuilliams v. Int'l Auto Logistics*, LLC, 2016 WL 7494264, at *1 (S.D.Ga. 2016) (sealing, among other things, the attachments to a response to a Motion for Class Certification in order to protect "proprietary information and information that implicates national security interests.").

*Third*, the documents sought to be sealed were and designated "Confidential Information" pursuant to the Protective Order, and Plaintiff made no objection to AGA's designation; nor has

Plaintiff questioned their authenticity or veracity.

*Fourth*, sealing the documents does not interfere with any party's opportunity to respond. Plaintiff currently has access to this confidential information, and it has already used that information to file his Motion for Class Certification. Moreover, the documents sought to be sealed are only tangentially related (if at all) to the main thrust of the Motion for Class Certification, namely whether class certification is appropriate at this time.

*Fifth*, the documents sought to be sealed do not concern public officials or public concerns, but rather involve ordinary, but highly confidential, financial information from private business entities. In fact, AGA only seeks to seal two documents and a few excerpts from a deposition transcript that involve private matters (*i.e.*, AGA's specific marketing fee information/revenues and its private negotiations with Delta). As stated above, none of the minute details contained in these handful of documents relate to the main thrust of the Motion for Class Certification, or even the ultimate question underlying this litigation: "Whether Delta violated 18 U.S.C. §1962(c) or (d)." Motion for Class Certification, p. 10. Moreover, if the documents sought to be sealed did involve matters of great public concern (which is not the case), the public's right to access is nonetheless limited at this stage of the proceedings since court "[d]ecisions less central to merits resolutions implicate lesser right-to-access considerations." *Romero*, 480 F.3d at 1246 (internal quotations omitted).

*Sixth*, there is no less onerous alternative to sealing the documents that will ensure the contents remain confidential and will protect AGA's privacy interests. In fact, AGA only seeks to seal in this motion a one-page email, a one-page revenue analysis sheet, and portions of 24 pages of a transcript hundreds of pages long.

In sum, it would frustrate the purpose of the Protective Order and non-party AGA's reliance

thereunder if the information Plaintiff requested and obtained from AGA, and which AGA designated in good faith as "Confidential Information," were unnecessarily publicly disseminated in the course of this litigation. Under these circumstances, the documents should be protected by the Court. *See, e.g.*, *Local Access,* 2015 WL 5307729, at *3 (granting motion to seal "confidential and proprietary business and financial information," which, if made public, "could negatively impact the parties' business operations"); *NXP B.V. v. Blackberry Ltd.*, 2013 WL 12170309, at *1 (M.D. Fla. Oct. 16, 2013) (granting motion to seal where confidential documents contained "sensitive financial, technical, and otherwise proprietary information, including information about Defendants' . . . business operations," and finding that "access to these documents could violate Defendants' legitimate and private interests").

### C. The Court Has Already Sealed Similar Documents from Delta in this Case

On January 7, 2019, Delta filed Defendant Delta Air Lines, Inc.'s Motion to Seal [ECF No. 45] seeking to seal the marketing agreement entered into between Delta and AGA and its interrogatory responses disclosing the amount of compensation Delta received thereunder. On January 24, 2019, Delta subsequently filed Defendant Delta Air Lines, Inc.'s Second Motion to Seal and Memorandum of Law in Support [ECF No. 53] seeking to seal another four emails between Delta and AGA detailing 1) Delta's compensation structure under the parties' marketing agreement; 2) the economic terms of that agreement; 3) the revenue derived from that agreement; and 4) the confidential contract renegotiation of that agreement between AGA and Delta. On February 6, 2019, the Court granted this request, ruling that:

> Defendant argues that the six documents at issue in its Motions to Seal—the Marketing Agreement, the interrogatory response, and the four emails—contain proprietary trade secret and commercially sensitive information, including pricing, rates and methodologies for calculating compensation, strategic goals, and financial incentives. Defendant states that public disclosure of this information would unfairly advantage its business competitors and damage Defendant's relationship

>with AGA. Based on these contentions, I find Defendant's interest in keeping the information confidential outweighs the common law right of access in this instance.

Omnibus Order [ECF No. 62], p. 3.

On March 5, 2019, Delta filed Defendant's Delta Air Lines, Inc.'s Third Motion to Seal and Memorandum of Law in Support [ECF No. 59] seeking to seal, among other things, an internal report that provides sales information and performance metrics for various sales categories that included breakdowns of revenues. On March 12, 2019, the Court similarly granted this request to seal ruling again that "Defendant's interest in keeping the information confidential outweighs the common law right of access in this instance." Order Granting Motion to Seal [ECF No. 79], pp. 2-3.

Pursuant to this motion, AGA is seeking to seal documents regarding the very same marketing agreement that is already under seal. And, like the materials already sealed, these documents describe the same "proprietary trade secret and commercially sensitive information, including pricing, rates and methodologies." Omnibus Order [ECF No. 62], p. 3. Consequently, as the Court has already repeatedly found in this case, good cause clearly exists to seal the excerpts from the Horwitz transcript, the Marketing Fee Email, and the Revenue Breakdown Sheet.

### III. CONCLUSION

For the foregoing reasons, AGA respectfully requests that the Court grant this motion to seal, ordering that the above-noted documents and information referenced in the Motion for Class Certification be filed under seal and be maintained under seal until the conclusion of this litigation, including all appeals, or further order of the Court, and that any specific references to this information made in Plaintiff's Motion for Class Certification be redacted.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), counsel for AGA certifies that they have conferred with

Plaintiff's counsel regarding this Motion. Counsel for Plaintiff advised that they defer to the Court's interpretation of the Eleventh Circuit's holding in *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001) and will not be filing an opposition brief.

Dated: April 16, 2019

Respectfully submitted,

<u>Lazaro Fernandez, Jr.</u>
Lazaro Fernandez, Jr.
Fla. Bar No. 716545
Email: lfernandez@stackfernandez.com
Denise B. Crockett
Email: dcrockett@stackfernandez.com
Fla. Bar No. 327913
Sammy Epelbaum
Email: sepelbaum@stackfernandez.com
Fla. Bar No. 0031524
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001

*Attorneys for Non-Party, AGA Service Company*

-and-

Gayle I. Jenkins, Esq.
Email: gjenkins@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863

*Attorneys for Non-Party, AGA Service Company*

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 18-CV-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF
on behalf of herself and all others
similarly situated,

       Plaintiffs,                         CLASS ACTION

vs.

DELTA AIR LINES, INC.

       Defendant.
_____/

## DECLARATION OF RICHARD HORWITZ

I, Richard Horwitz, declare as follows:

1. I am the Chief Sales Officer, Americas and Global Travel, at AGA Service Company a/k/a Allianz Global Assistance ("AGA") and have held this position since November 2010. I am the person at AGA that is most knowledgeable regarding the contract between Defendant Delta Air Lines, Inc. ("Delta") and AGA, including its negotiation, terms, implementation, and matters regarding its day-to-day operation are escalated to me as warranted.

2. This Declaration is filed in support of AGA's Motion to Seal Confidential Information and Documents Referenced in Plaintiff's Motion for Class Certification and Memorandum of Law in Support.

3. AGA operates in a highly competitive industry, where pricing and revenue information and negotiated agreements are closely guarded.

4. In my position, I am personally familiar with the negotiations leading up to the execution of the Marketing Agreement between Delta and AGA and the extent to which AGA

ensures that the terms and details of its agreement and business relationship with Delta are maintained in confidence and only shared with Delta, AGA's business partner.

5. The details leading up to the Marketing Agreement entered into between the parties in this case is the product of protracted and confidential negotiations that provides value to AGA. The terms of the marketing agreement, including the pricing structure set up under the agreement and the revenues received therefrom, are highly confidential, unique to the parties' relationship and proprietary.

6. AGA and Delta maintain the terms of their marketing agreement and business relationship secret because disclosure of this information to AGA's competitors in the travel insurance industry, or to Delta's airline competitors, with whom AGA also contracts or with whom AGA solicits for additional business opportunities, would give the parties' competitors an unfair competitive advantage.

7. My staff and I do not disclose the terms and conditions of our relationship with one business partner with any other business partners; this includes pricing and rates, compensation, products offered, and contract terms, among other details. This information is only discussed with the particular business partner and is never publicly disclosed in any setting. Furthermore, AGA never discloses this information to AGA's competitors, who would utilize the information in their efforts to lure the business partners away from AGA.

8. The manner in which the pricing rate structure under the Marketing Agreement with Delta was determined is thus highly confidential and sought after by AGA's competitors. And, the revenue derived from that agreement contains highly sensitive information that, if disclosed, could be used by others to undercut AGA's position in the marketplace. If any of this

information were to be made public, AGA's competitors would gain direct insight into AGA's propriety market and financial strategy, to AGA's detriment.

9.  As such, the email produced to Plaintiff in this case that is bate-stamped AGA-0004625 and which provides AGA's pricing numbers was never previously disclosed to any third parties. Similarly, the document produced to Plaintiff in this case that is bate-stamped AGA-0014915 and which breaks down and analyzes a portion of the revenue AGA received from Delta was also never previously disclosed to any third parties. Additionally, the testimony I provided in this case describing the negotiations leading up to AGA's contract with Delta and the method in which our pricing rate methodology was developed are closely guarded secrets. The disclosure of any of this information would likely cause serious damage to AGA.

10. Consequently, AGA only agreed to produce the documents bate-stamped AGA-0004625 and AGA-0014915 to Plaintiff and permitted me to sit for deposition in this case on the understanding that the information described therein would be kept confidential under the Protective Order entered in this case [ECF No. 36].

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 25th day of March 2019.

Ricky Horwitz
Chief Sales Officer, Americas and Global Travel
AGA Service Company aka Allianz Global Assistance