UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 18-CV-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF
on behalf of herself and all others
similarly situated,

    Plaintiffs,

vs.

DELTA AIR LINES, INC.

    Defendant.
_____/

CLASS ACTION

**NON-PARTY AGA SERVICE COMPANY'S MOTION TO SEAL CONFIDENTIAL INFORMATION AND DOCUMENTS REFERENCED IN DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT**

Non-Party, AGA Service Company (hereinafter, "AGA"), makes this limited appearance for the sole purpose of seeking protection for declarations made by its representatives in this matter on the grounds that there is good cause, and hereby moves pursuant to Rule 5.4 of the Local Rules for the Southern District of Florida for an Order sealing confidential declarations of AGA representatives that Defendant references in, and intends to attach to, Defendant's Opposition to Plaintiff's Motion for Class Certification and Memorandum of Law in Support (the "Opposition").

## I.    INTRODUCTION

In this matter, certain AGA employees have made declarations that contain AGA's trade secrets or other confidential proprietary research, development, or commercial information. That information stems from AGA's marketing agreement with Delta, which this Court has already sealed, [ECF No. 62], and has not been made available to the public. If revealed, the information

would likely cause AGA and Delta significant competitive harm. Specifically, the declarations contain confidential information regarding business analytics, surveys, third party contract information, and the various ways that AGA insurance is displayed and offered on Delta's website.

In its Opposition, Defendant references, and intends to attach, the following:

a. <u>Opposition to Class Certification - Exhibit 3</u> – Declaration from Begench Atayev ("Atayev Declaration"), in which Mr. Atayev describes AGA's confidential business strategy relating to the nature and extent of its operations in support of the Delta Marketing Agreement, the scope of the information gathered, how it is used, how AGA conducts its business relative to that agreement and AGA's internal analytics, which are not disclosed to any third parties.

b. <u>Opposition to Class Certification - Exhibit 8</u> – Declaration from Michael Confer ("Confer Declaration"), in which Mr. Confer describes AGA's confidential financial information and internal accounting information which are also not disclosed to third parties.

c. <u>Opposition to Class Certification - Exhibit 9</u> – Declaration from Mark Henson ("Henson Declaration"), in which Mr. Henson describes how AGA implements its strategies regarding its partnership with Delta in terms of licensing which are not disclosed to third parties except as required in confidential settings.

For the reasons explained below, there is good cause to exempt these declarations from public disclosure by the courts, and therefore the redacted information in these documents must be kept under seal.

## II.   ARGUMENT

Pursuant to Rule 26, a showing of "good cause" is required to maintain records as confidential and under seal. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). In order to demonstrate "good cause," a party must show "that (1) the information sought is a trade secret or other confidential information; and (2) the harm caused by its disclosure outweighs the need of the party seeking disclosure." *Alarm Grid, Inc. v. Alarm Club.com, Inc.*, 2018 WL 1175254, at *5 (S.D. Fla. Mar. 5, 2018). Here, that burden is easily met.

### A. The Declarations at Issue Qualify for Protection as Trade Secret and Confidential Financial Information.

Good cause exists to maintain the declarations under seal because they constitute proprietary trade secret and commercially sensitive financial information that is not known to, and has not been made available to, the public. The Atayev Declaration contains a historical analysis of AGA's various insurance offerings on Delta's website in response to Plaintiff's claim that Delta customers were exposed to uniform messaging, as well references an analysis regarding purchasers that has only been shared with Delta and produced under the Protective Order in this case. Further, the Confer Declaration provides in detail how the funds from insurance sales are collected, which again are private dealings between AGA and third parties. Lastly, the Henson Declaration contains private information concerning AGA's strategies in terms of insurance licensing.

The information contained in these declarations is maintained in strict confidence and has not been previously disclosed outside of the contracting parties' relationship, other than as disclosed in documents designated as Confidential under the Protective Order in this matter, because such disclosure would be used by AGA's competitors to undercut AGA's relationship with its airline partners. Public disclosure of any of this information would provide AGA's competitors direct insight into AGA's propriety market and financial strategy to AGA's detriment. Declaration of Ricky Horwitz, Chief Sales Officer of AGA Services Company ("Horwitz Decl."), ¶¶ 5-7, attached hereto as Ex. A. Additionally, were Delta's competitors provided access to this information yet Delta not have equal access to the same quantity and detail of its competitors' strategies and results, Delta would be disadvantaged. *Id.*

Accordingly, the information contained in these declarations satisfies the "commonly accepted criteria" for trade secret protection in the Eleventh Circuit. *See Chicago Tribune Co.*, 263 F.3d at 1313–14 (the criteria include whether the information (1) is treated "as closely guarded

secrets," (2) "represents substantial value" to the party, (3) "would be valuable to [the party's] competitors," and (4) "derives its value by virtue of the effort of its creation and lack of dissemination"). Indeed, the proprietary and commercially sensitive financial information of the type sought to be attached to the Opposition are normally granted protection by the courts. *See*, *e.g.*, *CV Restoration, LLC v. Diversified Shafts Sols., LLC*, 2017 WL 2123562, at *3 (M.D. Fla. May 16, 2017) (finding a "legitimate interest in protecting the disclosure" of "confidential pricing and ordering information because '[t]his information would obviously be important for a competitor in deciding by how much it could undercut [the party's] prices.'"); *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, 2010 WL 6790538, at *2 (M.D. Fla. Oct. 28, 2010) (explaining that "[c]ourts have found that a company's interest in the privacy of its financial records and the terms of confidential agreements, however, often outweigh the public right of access"); *In re Photochromic Lens Antitrust Litig.*, 2013 WL 12156446, at *2, n.4 (M.D. Fla. Oct. 21, 2013) ("competitively sensitive commercial information . . . should be protected," including "pricing strategy," "sales aggregated across customers," "transactions or potential transactions with customers," and "customer-specific pricing."); *James, Hoyer, Newcomer, Smiljanich, & Yanchunis, P.A. v. Rodale, Inc.*, 41 So. 3d 386, 388 (Fla. 1st DCA 2010) (affirming ruling that contracts, reports and communications with and from suppliers and other vendors constitute trade secrets).

Due to the confidential nature of the information, AGA only agreed for the declarants to make these statements with the understanding that the information contained therein would be kept confidential and would not be publicly disclosed. Horwitz Decl., ¶ 9.

**B. Non-Party AGA's Interest in Maintaining the Confidentiality of Its Proprietary Information Outweighs any Other Party's Right to Access that Information.**

The factors the Court should consider in evaluating a request to seal weigh in favor of

granting AGA's motion to seal. *See Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (in determining whether to seal documents, courts consider (1) whether access would impair court functions or harm legitimate privacy interests; (2) the degree and likelihood of injury from access; (3) the reliability of the information; (4) whether there is an opportunity to respond to the information; (5) whether the information concerns public officials or concerns; and (6) whether a less onerous alternative to sealing exists).

*First*, while publication of the declarations sought to be sealed would not impair court functions, it would harm AGA's legitimate privacy interests. As explained above, the declarations sought to be attached to the Opposition contain highly confidential, commercially sensitive information that is not disclosed to the public or competitors because it can be used by others to gain an unfair advantage in a highly competitive industry. Horwitz Decl., ¶¶ 5-8. If the details of this information were to be made public, AGA's competitors would gain significant insight into AGA's marketing strategy which would undercut AGA's position in the marketplace. *Id.* at ¶ 7.

*Second*, for the same reason discussed above, there is a very high degree and likelihood of significant injury to AGA if the declarations sought to be sealed are made public. "AGA operates in a highly competitive industry, where marketing strategies and customer analyses are closely guarded." *Id.* at ¶ 3. Consequently, revealing the underlying analytics to the public, discussion of which are necessary here to combat the false assumptions that the putative class saw a "uniform" message, or how it collects insurance revenues will cause competitive harm and place AGA at a strategic disadvantage, thus requiring protection from disclosure from this Court. *See Graphic Packaging*, 2010 WL 6790538, at *2 ("[A] company's interest in the privacy of its financial records and the terms of confidential agreements . . . often outweigh the public right of access."); *Local Access, LLC v. Peerless Network, Inc.*, 2015 WL 7351444, at *1 (M.D. Fla. Nov. 20, 2015)

("A party's interest in the privacy of its financial records and the terms of confidential agreements oftentimes outweighs the public's right of access"); *McQuilliams v. Int'l Auto Logistics*, LLC, 2016 WL 7494264, at *1 (S.D.Ga. 2016) (sealing, among other things, the attachments to a response to a Motion for Class Certification in order to protect "proprietary information and information that implicates national security interests.").

*Third*, sealing the declarations does not interfere with any party's opportunity to respond. The parties have access to this confidential information, and Plaintiff has already used the information to file his Motion for Class Certification. Moreover, the documents sought to be sealed are only tangentially related (if at all) to the main thrust of the Motion for Class Certification and the corresponding Opposition, namely whether class certification is appropriate at this time.

*Fourth*, the documents sought to be sealed do not concern public officials or public concerns, but rather involve ordinary, but highly confidential, financial information from private business entities. In fact, AGA only seeks to seal select portions of declarations made by three employees concerning information that involve private matters (*e.g.*, AGA's marketing strategy, including details of the scope of AGA's analytics and customer analyses). As stated above, none of the details contained in these few declarations relate to the main thrust of the Motion for Class Certification or the corresponding Opposition, or even the ultimate question underlying this litigation: "Whether Delta violated 18 U.S.C. §1962(c) or (d)." Motion for Class Certification, p. 10. Moreover, if the declarations sought to be sealed did involve matters of great public concern (which is not the case), the public's right to access is nonetheless limited at this stage of the proceedings since court "[d]ecisions less central to merits resolutions implicate lesser right-to-access considerations." *Romero*, 480 F.3d at 1246 (internal quotations omitted).

*Fifth*, there is no less onerous alternative to sealing the declaration that will ensure the

contents remain confidential and will protect AGA's privacy interests. In fact, AGA only seeks to seal in this motion select portions of three declarations all of which are ten pages or fewer.

In sum, given that the declarations here contain confidential and contain proprietary information and that AGA's potential harm from public disclosure of the redacted portions outweighs the parties' need for disclosure, there is good cause to file the redacted portions of the three declarations under seal. Under these circumstances, the declarations should be protected by the Court. *See, e.g.*, *Local Access,* 2015 WL 5307729, at *3 (granting motion to seal "confidential and proprietary business and financial information," which, if made public, "could negatively impact the parties' business operations"); *NXP B.V. v. Blackberry Ltd.*, 2013 WL 12170309, at *1 (M.D. Fla. Oct. 16, 2013) (granting motion to seal where confidential documents contained "sensitive financial, technical, and otherwise proprietary information, including information about Defendants' . . . business operations," and finding that "access to these documents could violate Defendants' legitimate and private interests").

### C. The Court Has Already Sealed Similar Documents from Delta in This Case

On January 7, 2019, Delta filed Defendant Delta Air Lines, Inc.'s Motion to Seal [ECF No. 45] seeking to seal the marketing agreement entered into between Delta and AGA and its interrogatory responses disclosing the amount of compensation Delta received thereunder. On January 24, 2019, Delta subsequently filed Defendant Delta Air Lines, Inc.'s Second Motion to Seal and Memorandum of Law in Support [ECF No. 53] seeking to seal another four emails between Delta and AGA detailing 1) Delta's compensation structure under the parties' marketing agreement; 2) the economic terms of that agreement; 3) the revenue derived from that agreement; and 4) the confidential contract renegotiation of that agreement between AGA and Delta. On February 6, 2019, the Court granted this request, ruling that:

> Defendant argues that the six documents at issue in its Motions to Seal—the Marketing Agreement, the interrogatory response, and the four emails—contain proprietary trade secret and commercially sensitive information, including pricing, rates and methodologies for calculating compensation, strategic goals, and financial incentives. Defendant states that public disclosure of this information would unfairly advantage its business competitors and damage Defendant's relationship with AGA. Based on these contentions, I find Defendant's interest in keeping the information confidential outweighs the common law right of access in this instance.

Omnibus Order [ECF No. 62], p. 3.

On March 5, 2019, Delta filed Defendant's Delta Air Lines, Inc.'s Third Motion to Seal and Memorandum of Law in Support [ECF No. 59] seeking to seal, among other things, an internal report that provides sales information and performance metrics for various sales categories that included breakdowns of revenues. On March 12, 2019, the Court similarly granted this request to seal ruling again that "Defendant's interest in keeping the information confidential outweighs the common law right of access in this instance." Order Granting Motion to Seal [ECF No. 79], pp. 2-3.

Pursuant to this motion, AGA is seeking to seal declarations regarding the details regarding the implementation of the very same marketing agreement that is already under seal. And, like the materials already sealed, these documents describe the same "proprietary trade secret and commercially sensitive information[.]" Omnibus Order [ECF No. 62], p. 3. Consequently, as the Court has already repeatedly found in this case, good cause clearly exists to seal the redacted portions of the Atayev Declaration, the Confer Declaration, and the Henson Declaration.

### III. <u>CONCLUSION</u>

For the foregoing reasons, AGA respectfully requests that the Court grant this motion to seal, ordering that the above-noted declarations referenced in and attached to the Opposition be filed under seal and be maintained under seal until the conclusion of this litigation, including all appeals, or further order of the Court, and that any specific references to this information made in

Defendant's Opposition to Plaintiff's Motion for Class Certification be redacted.

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), counsel for AGA certifies that they have conferred with Defendant's counsel regarding this Motion. Counsel for Defendant advised that they defer to the Court's interpretation of the Eleventh Circuit's holding in *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001) and will not be filing an opposition brief.

Dated: April 23, 2019

Respectfully submitted,

<u>Lazaro Fernandez, Jr.</u>
Lazaro Fernandez, Jr.
Fla. Bar No. 716545
Email: lfernandez@stackfernandez.com
Denise B. Crockett
Email: dcrockett@stackfernandez.com
Fla. Bar No. 327913
Sammy Epelbaum
Email: sepelbaum@stackfernandez.com
Fla. Bar No. 0031524
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001

*Attorneys for Non-Party, AGA Service Company*

-and-

Gayle I. Jenkins, Esq.
Email: gjenkins@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863

*Attorneys for Non-Party, AGA Service Company*

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 18-CV-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF
on behalf of herself and all others
similarly situated,

    Plaintiffs,

vs.

DELTA AIR LINES, INC.

    Defendant.
_____/

CLASS ACTION

### DECLARATION OF RICHARD HORWITZ

I, Richard Horwitz, declare as follows:

1. I am the Chief Sales Officer, Americas and Global Travel, at AGA Service Company a/k/a Allianz Global Assistance ("AGA") and have held this position since November 2010. I am the person at AGA that is most knowledgeable regarding the contract between Defendant Delta Air Lines, Inc. ("Delta") and AGA, including its negotiation, terms, implementation, and matters regarding its day-to-day operation are escalated to me as warranted.

2. This Declaration is filed in support of AGA's Motion to Seal Confidential Information Referenced in Declarations filed as part of Defendant's Opposition to Plaintiff's Motion for Class Certification and Memorandum of Law in Support.

3. AGA operates in a highly competitive industry, where marketing strategies and customer analyses are closely guarded.

4. In my position, I am personally familiar with the various ways that AGA insurance is displayed and offered on Delta's website and the thought processes, strategies, and

business decisions at AGA that allow AGA to successfully partner with Delta, including maintaining information regarding those strategies and implementation that is only shared with Delta, AGA's business partner. I am also personally familiar with the process by which AGA collects revenue from insurance sales. This information is highly confidential, specific to the parties' relationship, and proprietary.

5. AGA and Delta maintain the terms of their marketing agreement and business relationship secret because disclosure of this information to AGA's competitors in the travel insurance industry, or to Delta's airline competitors, with whom AGA also contracts or with whom AGA solicits for additional business opportunities, would give the parties' competitors an unfair competitive advantage.

6. My staff and I do not disclose the terms and conditions of our relationship with one business partner with any other business partners; this includes the strategies implemented to ensure customer offers have the best fit to the proposed booked travel, the determination of which products offered, and customer analyses, among other details. This information is only discussed with Delta and is never publicly disclosed in any setting. Furthermore, AGA never discloses this information to AGA's competitors, who would utilize the information in their efforts to lure the business partners away from AGA. Additionally, if Delta's competitors were provided access to the detailed information provided here by AGA, Delta would be put at a competitive disadvantage by not having equal access to the same information for its competitors.

7. The strategies that lead to the selection of information that AGA displays its insurance offers on Delta's website is thus highly confidential and sought after by AGA's competitors and, if disclosed, could be used by others to undercut AGA's position in the

marketplace. If any of this information were to be made public, AGA's competitors would gain direct insight into AGA's propriety market and financial strategy, to AGA's detriment.

8. As such, the declaration from Begench Atayev ("Atayev Declaration"), in which he describes AGA's confidential business strategy relating to the nature and extent of its operations in support of the Delta Marketing Agreement, the scope of the information gathered, how it is used, how Allianz conducts its business relative to that agreement and AGA's internal customer analytics are not disclosed to any third parties. Similarly, the declaration from Michael Confer ("Confer Declaration"), in which he describes AGA's confidential financial information and internal accounting information is also not disclosed to third parties. Finally, the declaration from Mark Henson ("Henson Declaration"), in which he describes how AGA implements its strategies regarding its partnership with Delta in terms of licensing is not disclosed third parties except as required in confidential settings. The disclosure of any of this information would likely cause serious damage to AGA.

9. Consequently, AGA only agreed for the declarants to make these statements with the understanding that the information described therein would be kept confidential and not publicly displayed where it could be viewed by AGA competitors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of April 2019.

_____
Ricky Horwitz
Chief Sales Officer, Americas and Global Travel
AGA Service Company aka Allianz Global Assistance

3