**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 18-CV-81258-MIDDLEBROOKS/BRANNON**

**JUDITH MARILYN DONOFF**
**on behalf of herself and all others**
**similarly situated,**

      **Plaintiffs,**                            **CLASS ACTION**

**vs.**

**DELTA AIR LINES, INC.**

      **Defendant.**
_____/

**DELTA AIR LINES, INC.'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.............................2

      A.    Travel Insurance is an Ancillary Product Delta Makes Available to its Customers in Partnership with Allianz.................................................2

      B.    The Travel Insurance Offer in Delta's Booking Path is Constantly Changing..............................................................................................3

      C.    Delta is Compensated by Allianz for Providing Space on Delta's Website for Allianz to Offer Travel Insurance to Delta's Customers...............4

      D.    Allianz is Responsible for Licensing and Regulatory Compliance....................4

      E.    Delta's Customers Elect The Option of Purchasing Travel Insurance for a Variety of Reasons and Under Different Circumstances. ........................5

      F.    Plaintiff's Claims and Motion for Class Certification. .......................................6

III.    ARGUMENT AND CITATION OF AUTHORITY.................................................7

      A.    Plaintiff Bears the Burden Under Rule 23........................................................7

      B.    Plaintiff Has Not Established the Requirements of Rule 23(a)..........................7

            i.    Plaintiff cannot adequately represent the purported class. ...................7

            ii.    Plaintiff is atypical because he will be subject to multiple defenses demonstrating the differences among the claims of class members...................................................................................9

            iii.   Plaintiff fails to identify any common questions the answer to which will drive classwide resolution of his claims. ...............................10

      C.    Individual Issues Predominate Over any Purportedly Common Questions, and the Motion Fails to Establish Manageability or Superiority....................................................................................................12

            i.    Individual issues of proximate causation and reliance defeat certification of Plaintiff's FDUTPA and RICO claims.........................12

            ii.    The elements of materiality and likelihood of deception are incapable of common proof.....................................................................15

iii.    **Plaintiff Fails to Offer a Common Method of Proving Actual Damages for Any of His Claims.**...............................................................17

iv.    **Plaintiff's unjust enrichment claim is ill-suited for class treatment.**...........................................................................................19

D.    **Plaintiff Cannot Seek Certification Under Rule 23(b)(2) Because He Primarily Seeks Monetary Relief.**........................................................20

IV.    **CONCLUSION**.................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. United Life Ins. Co. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) .................................................................................9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)................................................................................................16

*Bohlke v. Shearer's Food, LLC*,
  2015 WL 249418 (S.D. Fla. Jan. 20, 2015) ..........................................................20

*Bowe v. Pub. Storage*,
  106 F. Supp. 3d 1252 (S.D. Fla. 2015) ...........................................................15, 18

*Bowe v. Pub. Storage*,
  318 F.R.D. 160 (S.D. Fla. 2015)........................................................13, 14, 15

*Bridge v. Phx. Bond & Indem. Co.*,
  553 U.S. 639 (2008)........................................................................................13, 14

*Bristol-Myers Squibb Co. v. Superior Court of Ca., S.F. Cty.*,
  137 S. Ct. 1773 (2017)..............................................................................................7

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) .......................................................................12, 19

*CGC Holding Co., LLC v. Broad & Cassel*,
  773 F.3d 1076 (10th Cir. 2014) .............................................................................15

*Cohen v. Implant Innovations, Inc.*,
  259 F.R.D. 617 (S.D. Fla. 2008)............................................................................17

*Cohen v. Trump*,
  2016 WL 4543481 (S.D. Cal. Aug. 29, 2016) .......................................................16

*Collins v. DaimlerChrysler Corp.*,
  894 So. 2d 988 (Fla. 5th DCA 2004) .....................................................................18

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...............................................................................................7, 18

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) .....................................................................16

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ..........................................................................................................7

*DeBernardis v. NBTY, Inc.*,
  2018 WL 461228 (N.D. Ill. Jan. 18, 2018) ..........................................................................7

*Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*,
  2016 WL 8542540 (S.D. Fla. Dec. 1, 2016) .......................................................................17

*Dolan v. JetBlue Airways Corp.*,
  No. 0:18-cv-62193-RS, ECF 117-1 (S.D. Fla.) ...................................................................8

*Fitzpatrick v. Gen. Mills Inc.*,
  635 F.3d 1279 (11th Cir. 2011) .........................................................................................13

*Gelfound v. Metlife Ins. Co. of Conn.*,
  313 F.R.D. 674 (S.D. Fla. 2016) ........................................................................................20

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...............................................................................8

*Howe v. Samsung Elecs. Am., Inc.*,
  2018 WL 2212982 (N.D. Fla. Jan. 5, 2018) .........................................................................7

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) .............................................................................................9

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ...................................................................................14, 15

*Krukever v. TD Ameritrade, Futures & Forex LLC*,
  328 F.R.D. 649 (S.D. Fla. 2018) ........................................................................................19

*Kunzelmann v. Wells Fargo Bank, N.A.*,
  2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (Middlebrooks, J.) ...................................11, 19

*Latman v. Costa Cruise Line NV*,
  758 So.2d 699 (Fla. 3d DCA 2000) ....................................................................................13

*London v. Wal-Mart Stores, Inc.*,
  340 F.3d 1246 (11th Cir. 2003) ...........................................................................................7

*Molina v. Aurora Loan Servs., LLC*,
  635 F. App'x 618 (11th Cir. 2015) .......................................................................................9

*Morales v. Progressive Cas. Ins. Co.*,
  2014 WL 12531280 (S.D. Fla. Nov. 26, 2014).....................................................................10

*In re Motions to Certify Classes Against Court Reporting Firms*,
   715 F. Supp. 2d 1265 (S.D. Fla. 2010) .................................................................17

*Murray v. Auslander*,
   244 F.3d 807 (11th Cir. 2001) ............................................................................20

*O'Neill v. The Home Depot U.S.A., Inc.*,
   243 F.R.D. 469 (S.D. Fla. 2006) ...........................................................................9

*Perisic v. Ashley Furniture Indus., Inc.*,
   2018 WL 3391359 (M.D. Fla. June 27, 2018)......................................................19

*Price v. United Servs. Auto. Ass'n*,
   2012 WL 2847821 (W.D. Ark. Mar. 16, 2012) ......................................................9

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...........................................................18, 19

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) ...........................................................................18

*Ray v. Spirit Airlines, Inc.*,
   836 F.3d 1340 (11th Cir. 2016) ........................................................................9, 13

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010) ...........................................................................20

*Shiring v. Tier Techs., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007) .............................................................................8

*Stalley v. ADS Alliance Data Sys., Inc.*,
   296 F.R.D. 670 (M.D. Fla. 2013)...........................................................................20

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) .......................................................................7, 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).........................................................................................7, 10

*Wasser v. All Market, Inc.*,
   No. 1:16-cv-21238-RNS, ECF No. 281 (S.D. Fla. Sept. 26, 2018)......................20

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ...........................................................................20

**Statutes**

McCarran-Ferguson Act ..................................................................................11

N.C. Gen. Stat. § 58-33-10(18) .................................................................................................. 10

Neb. Rev. Stat. § 44-4060 ......................................................................................................... 10

RICO ................................................................................................................................. *passim*

**Other Authorities**

Rule 23 ............................................................................................................................. *passim*

I.    INTRODUCTION

Despite obtaining a "do over" from the Court based on the filing of the Third Amended Complaint ("TAC"), Plaintiff's Motion still fails to satisfy the "rigorous analysis" this Court is required to undertake in deciding whether to certify a class. At bottom, Plaintiff's claims remain predicated on the contention that Delta's website misrepresents that consumers' payment for travel insurance is a "pass through." And the TAC makes clear that the activity underlying Plaintiff's claims purportedly violates Florida's—and thus presumably all 50 states'—insurance code. Plaintiff alleges Delta "uniformly" misrepresents, to customers and state regulators, its financial interest in the travel insurance sold through its website, and that this deception allows Delta to conceal the fact that the alleged commissions it receives from Allianz caused the purported class to pay inflated premiums. Plaintiff's own testimony, however, coupled with his expert's survey and proffered theory of damages, contradict his theory of liability and underscore the fatal flaws in his Motion.

One insurmountable flaw in the Motion is that Plaintiff does not even try to demonstrate that class members paid inflated prices for travel insurance. Plaintiff's damages model is predicated on an entirely different theory of liability: that Delta is violating insurance regulations by receiving "commissions" from Allianz. But Plaintiff fails to demonstrate how a class could be certified on that theory as he is unable articulate a common method for proving it without examining the laws of all 50 states. Even setting that aside, whether Delta is violating insurance regulations does not establish liability on any of Plaintiff's claims, nor does it show that Delta's conduct caused any class member actual damages. In fact, the "illegal commission" theory of damages on which the claims in the TAC are based would result in Plaintiff recovering damages *in excess* of the amount he paid for his policy. The proof required to demonstrate the "inflated price" theory of damages is highly individualized because it would require inspection of each policy sold to determine whether a comparable policy was available for less. Plaintiff offers absolutely no evidence that the price of *his* policy was inflated—let alone a common method for proving this allegation. The conflict in his theories of liability and damages—and the highly individualized nature of damages in this case—require denial of Plaintiff's Motion.

Plaintiff's difficulty in landing on a cohesive theory of liability and damages reflects yet another flaw in the Motion: this is a lawyer-driven case with no injured plaintiffs. Plaintiff's cursory attention to the requirements of adequacy and typicality in the Motion is telling in this

respect, as discovery confirmed that Mr. Cappillo independently decided to purchase travel insurance because of his particular circumstances and not because of any statements on Delta's website. Indeed, Plaintiff's purchasing experience directly conflicts with the legal theories his lawyers present, and he could not articulate the basis of any of his claims against Delta beyond what he learned from his lawyers. This renders Plaintiff inadequate to represent any purported class. The circumstances of Plaintiff's purchase of travel insurance also make him atypical of the purported class. He confirmed that: (1) it was not important to him whether Delta was getting paid when he made his purchase; (2) he assumed that Delta *would be* getting paid by Allianz; and (3) he did not care that Delta was getting paid, he just wants Delta to disclose that fact. This testimony evidences the lack of a real class of injured plaintiffs and that a trial of Plaintiff's claims would devolve into adjudicating myriad unique defenses applicable to Plaintiff.

Finally, the essential elements of Plaintiff's claims—*i.e.*, (1) that Delta's omissions were material, and (2) are likely to deceive consumers acting reasonably in the same circumstances; that Delta (3) proximately caused class members, (4) actual damages; and (5) that Delta was unjustly enriched—are not only wholly missing with respect to Plaintiff but require highly individualized inquiries and are not susceptible of class-wide proof. Plaintiff cannot divorce his claims from his own personal experience, nor shortcut the proof required to establish these essential elements by reliance on fundamentally flawed surveys, the "pass through" line of authority, or by asking the Court to infer causation. For these reasons, as described more fully below, Plaintiff fails to carry his burden under Rule 23, and the Motion should be denied.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Travel Insurance is an Ancillary Product Delta Makes Available to its Customers in Partnership with Allianz.

In addition to selling airline tickets, Delta markets and provides its customers direct access to ancillary products that enhance customer experience. One of those products is travel insurance. To make this option available, Delta entered into a Marketing Agreement (the "Agreement") with AGA Service Company d/b/a Allianz. Mot. Ex. K. Pursuant to that Agreement, Delta provides Allianz space on Delta's website for Allianz to offer travel insurance to Delta's customers. Customers can elect to purchase travel insurance from Allianz in the

"booking path" at the time they purchase airline tickets. Mot. at 2.[1] Allianz is the entity that offers, sells and administers the travel insurance sold through Delta's website and controls the wording and content of the offer. *Id.*; Deposition of Elmar Trust ("Trust") 22:4-11 (Ex. 1)[2]; Deposition of Marla Johnson ("Johnson") 29:15-17 (Ex. 2). Allianz also develops the various insurance products that are offered to Delta's customers and sets the price for those products.

███████████████████████████████████████████████████████████████████

████████████████████████████████████. Johnson 21:10-25; Decl. of Atayev, ¶¶ 9-10 ("Atayev Decl.") (Ex. 3).

    **B.**    **The Travel Insurance Offer in Delta's Booking Path is Constantly Changing.**

The language and presentation of the travel insurance offer in Delta's booking path is constantly changing ███████████████████████████████████████████

███████████████ Atayev Decl. ¶¶ 11-13; Johnson 76:10-23. This means that Delta's customers see different offers █████████████████████████████████████████████. Atayev Decl. ¶ 12. █████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████. *Id.*

¶ 11. As a result, █████████ specific offer presentations have appeared in Delta's booking path during the class period. *Id.* ¶ 2. And, critically, the only statement in Allianz's offer box that Plaintiff challenges as false—that Allianz is the "licensed producer" of the insurance (which is true)—was not included in all offers from September 2014 to the present and does not appear there today. *Id.* ¶¶ 3-4. It is this purportedly "uniform" statement that Plaintiff contends leaves the allegedly false impression that the consumer's travel insurance purchase is a "pass through" charge. TAC ¶¶ 2, 29-32. But the producer statement is not "uniform" as both past and present offers did not contain the "licensed producer" statement.[3] Determining which individual customers saw that statement when they purchased travel insurance in Delta's booking path, the

---

[1] Customers can also purchase travel insurance after purchasing their flights by logging into their SkyMiles account and selecting the travel insurance option in "My Trips" or as a stand-alone product. Trust 55:22-56:1, 87:22-88:7 (describing "second chance" offers).

[2] Exhibits 1-12 are attached to Delta's April 23, 2019 Opposition to Plaintiff's Motion for Class Certification, ECF No. 102. To the extent the exhibits reflect confidential information, Delta has redacted that information in accordance with its Fifth Motion to Seal. *See* ECF No. 101.

[3] Plaintiff's survey used images from Delta's current website and thus did not contain this language. It accordingly did not test Plaintiff's theory that the "producer" language deceptively leaves the impression of a "pass through" charge.

impression that was formed, and the impact on that person would accordingly require an individualized purchaser-by-purchaser analysis.

### C.    Delta is Compensated by Allianz for Providing Space on Delta's Website for Allianz to Offer Travel Insurance to Delta's Customers.

If a Delta customer elects to purchase travel insurance, Delta does not collect any money from its customers related to the purchase; payment is collected by and goes directly to Allianz. Trust 38:3-14. Customers' credit cards are charged by Allianz, and they receive an email from Allianz with their policy. Trust 184:9-185:1; Deposition of Walter Cappillo ("Cappillo") Ex. 80 (Ex. 5), 81 (Ex. 6), 83 (Ex. 7). Unsurprisingly, in this e-commerce era, Allianz compensates Delta for allowing it space in Delta's digital channel to market insurance to Delta's customers. Trust 162:1-3.



. Decl. of Michael Confer, ¶¶ 2-9 (Ex. 8).

. Trust 65:19-66:7, 149:10-150:1, 152:23-153:15.

. *Id.* 159:15-18; Johnson 33:12-16                                                    . Nor is Delta selling its customers' information. *See* Mot., Ex. K §§ 4.2, 4.3, Ex. B. As Delta explained in its motion to dismiss the TAC, the fact that the marketing fee has a multiplier derived from the number of data sets transmitted *after* customers have indicated that they wish to purchase insurance does not mean that Delta is "selling" data.[4]

### D.    Allianz is Responsible for Licensing and Regulatory Compliance.

Because Delta is not offering or selling insurance, Delta has not applied for any license in any state to offer or sell insurance. Johnson 88:25-89:2, 96:11-18.

. Mot., Ex. K; Johnson 61:23-62:4. And Allianz holds the appropriate licenses in all 50 states, including

---

[4] *See also* Delta Privacy Policy ¶ 7.1, available at https://www.delta.com/us/en/legal/privacy-and-security; Delta Contract of Carriage § 4.

Florida, to sell insurance. Decl. of Mark Henson ¶ 5 ("Henson Decl.") (Ex. 9). The applicable licensing and registration requirements for Allianz's insurance sales vary state-by-state and have changed over time. *Id.* ¶¶ 7-10. Even the Regulatory Settlement Agreement ("RSA") that Jefferson Insurance Company ("Jefferson") entered into with multiple regulatory authorities recognizes that each state's law varies with respect to licensing requirements. TAC Ex. 1. In the RSA, Jefferson denied any wrongdoing and reaffirmed its commitment to follow the law, *i.e.*, license its partners "***where required[] under applicable state Insurance Law***." *Id.* (emphasis added). Regardless, the RSA clearly addresses Jefferson and its Distribution Participants, for insurance activities, all of which, under the RSA, are subject to the insurance regulator's jurisdiction and not to a private right of action brought by the Plaintiff. Likewise, separate and apart from the RSA, Jefferson—as a matter of course—submits myriad filings to each of the 50 states' regulators related to its travel insurance and other business lines.[5] These filings vary by state, as do the insurance statutes and regulations. Henson Decl. ¶¶ 7-9; Roth Decl. (Ex. 11).

### E.    Delta's Customers Elect The Option of Purchasing Travel Insurance for a Variety of Reasons and Under Different Circumstances.

In this case, Plaintiff made clear that he had a very specific reason for purchasing trip insurance and *assumed* Delta was being compensated. Mr. Cappillo has only flown with Delta once, and it was the only trip for which he ever purchased travel insurance. Cappillo 30:16-17, 36:21-25 (Ex. 10). He purchased insurance on that single trip for a very specific reason: his checked bag contained valuables for a deceased family friend's memorial service. *Id.* 46:9-47:5. Having insurance for this flight was thus important to Mr. Cappillo. *Id.* 62:4-9. In fact, he sat down to purchase his flight knowing he was going to purchase travel insurance. *Id.* 52:21-53:19. At the time he purchased his Delta flight and travel insurance, Mr. Cappillo did not think about whether Delta was being compensated by Allianz. *Id.* 54:17-25. He testified that whether Delta was getting paid was not important to his decision of whether to buy the policy. *Id.* 57:9-14. Mr. Cappillo also testified that he assumed Delta *was* being paid for allowing Allianz to advertise insurance policies on Delta's website. *Id.* 116:20-117:12. While Mr. Cappillo does not have any problem with Delta receiving payment, he believes Delta is required to disclose its

---

[5] Exhibit L to Plaintiff's Motion is not one of those filings. ███████████████████
█████████████████████████████████████████. *See* Decl. of Mark Henson ¶ 6, attached as Ex. A ("9/18/19 Henson Decl."). Plaintiff's error here magnifies the difficulty in claiming and proving receipt and reliance by 50 separate regulators.

compensation. *Id.* 110:1-18, 117:23-118:4, 135:17-21.

      **F.**      **Plaintiff's Claims and Motion for Class Certification.**

      Leon Cosgrove, LLP filed this lawsuit in Judith Donoff's name on September 17, 2018, asserting FDUTPA and unjust enrichment claims, complaining that Delta misled its customers into believing it had no financial interest in the travel insurance policies sold by Allianz through Delta's website. ECF No. 1. Two months later, Leon Cosgrove filed an Amended Complaint—also in Ms. Donoff's name—adding RICO claims based on an alleged "enterprise" among Delta, Allianz, and the insurance underwriters—including Jefferson—designed to hide the fact that Delta is receiving an "illegal kickback" from the travel insurance policies sold through its website. ECF No. 15 ¶¶ 95-100. After Delta filed a second motion to dismiss, Leon Cosgrove sought leave to file a Second Amended Complaint. ECF No. 54 ("SAC"). The SAC was filed February 8, 2019 and added Mr. Cappillo as a named plaintiff and additional allegations related to Plaintiff's belief that Delta is receiving "commissions" in violation of Florida's insurance code. Plaintiffs filed their initial motion for class certification on March 26, 2019, while Delta's motion to dismiss remained pending. ECF No. 87. On July 9, 2019, the Court granted in part and denied in part Delta's motion to dismiss, and granted Plaintiff leave to file a third amended complaint. The TAC, filed on July 19, 2019, drops Donoff as a named plaintiff, and includes the claims alleged in the SAC as well as additional FDUTPA and unjust enrichment claims based on Delta's alleged violation of its privacy policy, a FDUTPA claim based on Delta's allegedly deceptive advertising, and a claim for violation of Florida's RICO statute. Delta's motion to dismiss the TAC and to strike the newly added claims are fully briefed. ECF Nos. 137, 138.

      Plaintiff filed his renewed motion for class certification on September 10, 2019. ECF No. 149. The Motion—which is almost identical to Plaintiff's motion based on the SAC—seeks certification of a class of: "All persons in the United States who purchased a trip insurance policy on Delta's website within the applicable limitations period." Mot. at 8.[6] Plaintiff seeks certification of a nationwide RICO class and sub-classes of Florida residents on Plaintiff's FDUTPA and unjust enrichment claims.[7] The Motion fails for the reasons stated below.

---

[6] The class definition is overbroad to the extent it includes customers who purchased policies outside the booking path.

[7] Plaintiff's nationwide RICO class fails because Delta is not subject to personal jurisdiction for non-Florida residents' claims and because the applicable regulations governing the business of insurance vary significantly and materially from state to state. *Daimler AG v. Bauman*, 134 S. Ct.

### III.   ARGUMENT AND CITATION OF AUTHORITY

####    A.   Plaintiff Bears the Burden Under Rule 23.

Class actions are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "The burden of proof to establish the propriety of class certification" rests with the Plaintiff, who must demonstrate each of the four requirements of Rule 23(a) and at least one of the requirements of 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). This Court, in turn, "must conduct a rigorous analysis of the Rule 23 prerequisites" to determine that each has been satisfied. *Id*. at 1266. This rigorous analysis frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim," as "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Id.* Because the Court's "rigorous analysis" will show Plaintiff has fallen far short of satisfying his burden, the Court should deny the Motion.

####    B.   Plaintiff Has Not Established the Requirements of Rule 23(a).

#####       i.   Plaintiff cannot adequately represent the purported class.

Plaintiff fails to carry his burden of demonstrating that he is adequate to represent the putative class because discovery has confirmed that this is lawyer-manufactured litigation, and that Plaintiff is not pursuing his claims against Delta in his own interest or the interest of any purported class. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).

Leon Cosgrove first solicited a family member to initiate this case, knowing Ms. Donoff would never serve as the class representative. Deposition of Judith Donoff ("Donoff") 176 (Ex. 4). The case then proceeded in her name for over four months before Plaintiff's counsel moved to add Mr. Cappillo. ECF Nos. 1, 54. But even then, Plaintiff's counsel remained silent about dropping Ms. Donoff as a class representative, waiting until 9:00 p.m. on March 11, 2019—the evening before her deposition and almost six months into this litigation—to inform Delta that

---

746, 761 (2014); *Bristol-Myers Squibb Co. v. Superior Court of Ca., S.F. Cty.,* 137 S. Ct. 1773, 1781 (2017); *DeBernardis v. NBTY, Inc.*, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (*Bristol-Myers Squibb* should be interpreted to outlaw a nationwide class actions where there is no general jurisdiction over defendants); *Howe v. Samsung Elecs. Am., Inc*., 2018 WL 2212982, *2-4 (N.D. Fla. Jan. 5, 2018) (applying *Bristol-Myers* to dismiss claims of non-resident named plaintiffs in class action who did not conduct their transactions in Florida).

Mr. Cappillo would be the sole class representative. In the TAC, Ms. Donoff has been dropped altogether. Mr. Cappillo's testimony demonstrates, however, that it was also not his idea that he may have claims against Delta. Rather, he "was approached" by a suitemate (Mr. Bushell)[8] in December 2018. Cappillo 77:12-24. While Plaintiff's counsel prevented inquiry into that conversation (claiming privilege), one thing was made clear: Mr. Cappillo was solicited, and only then did he believe he might have claims against Delta. *Id.* 77:8-89:20, 90:8-91:4.

The lawyer-driven nature of this litigation was reinforced by Mr. Cappillo's deposition, where he stated he intended to purchase travel insurance before he even sat down to book on delta.com, did not care that Delta was getting paid, and demonstrated an inability to articulate the factual predicate for his claims beyond what he learned from his lawyers. *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D. Va. 2007) (plaintiff was inadequate where he "elected to pursue litigation only after responding to a press release distributed by the [plaintiff's counsel] and even then based only on [plaintiff's counsel's] investigation and research").[9] Plaintiff stated that the basis for his claims is that Delta "did not properly disclose information when it comes to their travel insurance" and that Delta "obtained commissions" from Allianz. Cappillo 103:6-12. But when asked on what these beliefs were based, he was unable to answer outside of things he learned from his attorneys. *Id.* 105:15-25, 107:21-108:14. Nor did Plaintiff have any factual support for the contention that he paid an inflated price for his policy beyond what he learned from his attorneys. *Id.* 144:17-145:1. He confirmed that he did not do any "independent research" to confirm the accuracy of his lawyer's belief that the Delta-Allianz marketing arrangement resulted in inflated prices for travel insurance. *Id.* 108:12-19, 145:2-5. Moreover, while he expressed a belief that Delta is required to disclose its compensation from Allianz, Plaintiff admitted that whether or not Delta was getting paid was not important to his decision to buy the insurance. *Id.* 57:9-14, 132:5-24.

In sum, the astonishing inconsistency between Plaintiff's testimony and the case's legal

---

[8] Mr. Bushell formerly worked with attorney Marc Wites, whose name appears on the TAC with Leon Cosgrove and Robbins Geller even though Mr. Cappillo did not appear to know Mr. Wites' name. On September 16, 2019, Mr. Wites was disclosed as the attorney who recruited a potential replacement plaintiff in counsel's parallel case against another airline, *Dolan v. JetBlue Airways Corp.*, No. 0:18-cv-62193-RS, ECF 117-1 (S.D. Fla.).

[9] While *Shiring* was in the securities context, "the Eleventh Circuit agrees that this is a 'generic standard.'" *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1056 (S.D. Tex. 2012) (citing *London*, 340 F.3d at 1254 n.3).

theories show that he is simply lending his name to this litigation, which renders him an inadequate representative because he is "unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) ("Several district courts [] have properly denied class certification" on these grounds); *Price v. United Servs. Auto. Ass'n*, 2012 WL 2847821, *8 (W.D. Ark. Mar. 16, 2012) ("Plaintiff is 'simply lending [his name] to a suit controlled'" by the attorney).

### ii. Plaintiff is atypical because he will be subject to multiple defenses demonstrating the differences among the claims of class members.

Plaintiff dedicates a mere three sentences to his burden of proving typicality, contending his claims are "based on the same legal theories," and that he and the purported class were "deceived through a uniform course of conduct." Mot. at 10. But Plaintiff's deposition proves otherwise. It shows that Plaintiff's circumstances and beliefs are unique, "emphasiz[ing] the differences among the class members," and demonstrating that Plaintiff is atypical of the class. *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 478-80 (S.D. Fla. 2006).

Most notably, Plaintiff admitted that whether Delta was getting paid by Allianz was *not* important to his decision to purchase travel insurance. Cappillo 54:17-57:14. Moreover, Plaintiff knew—*before* accessing Delta's website—that he was going to purchase travel insurance when he purchased his flights. *Id.* 52:21-53:19. His desire to protect the valuable possessions traveling with him motivated his purchase before he even saw Delta's website. *Id.* 62:4-9, 46:9-47:5. This testimony demonstrates that whether Delta was receiving compensation from Allianz was not material to Plaintiff's decision to purchase travel insurance and that nothing on Delta's website induced him to buy or caused Plaintiff's alleged damages, thereby defeating his RICO and FDUTPA claims. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349-50 (11th Cir. 2016) (plaintiff's failure to allege "a direct link" between the airline's conduct and the plaintiff's "decision to purchase tickets" was fatal to RICO claim); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (for omission-based fraud, must show that omission was material); *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (affirming dismissal of FDUTPA claim where plaintiff failed to allege that "but for the quoted statement on [the] website[], she would not have applied for" the loan modification).

In addition, Plaintiff's own testimony demonstrates that a reasonable consumer would not be deceived into believing Delta lacks any financial interest in the travel insurance sold through Delta's website—Plaintiff certainly was not. He testified that nothing in the insurance offer box

9

on Delta's website was false, and that he assumes Delta would be getting paid for allowing Allianz to advertise the sale of insurance on Delta's website. Cappillo 134:13-135:4, 116:20-117:12. Thus, Plaintiff is atypical of the purported class he seeks to represent as his beliefs and legal theories are different than those espoused by Plaintiff's counsel. Mot. at 13 ("Delta's . . . conduct . . . would deceive an objective 'reasonable consumer'"); Ex. Q (basing damages on disgorgement of all amounts paid to Delta). These differences between Plaintiff's circumstances, beliefs, and theories of liability make clear that Plaintiff is atypical of the purported class. *Morales v. Progressive Cas. Ins. Co.*, 2014 WL 12531280, *5 (S.D. Fla. Nov. 26, 2014) (typicality requires an "alignment of interests" between the named plaintiff and purported class).

iii.     **Plaintiff fails to identify any common questions the answer to which will drive classwide resolution of his claims.**

While Plaintiff contends commonality is a "low hurdle," that does not obviate the requirement that he identify common questions that are "of such a nature" that they are "capable of classwide adjudication" and "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 349. The purportedly "common" questions Plaintiff identifies are patently insufficient as many of them pose only the generic question of whether Delta violated the law. Mot. at 9 (*e.g.*, "Whether Delta violated 18 U.S.C. § 1962(c) or (d)" and "Whether Delta unlawfully enriched itself"). But simply "[r]eciting the[] question[]" "[i]s that an unlawful [] practice?" is insufficient to establish commonality. *Dukes*, 564 U.S. at 349.

Two of the other purportedly common questions ask whether Delta "receives undisclosed kickbacks, commissions, or fees" from travel insurance and if Delta is "legally authorized" to receive a "commission or kickback." Mot. at 9. But whether Allianz's payment qualifies as a commission, and, if so, whether such payment is forbidden, will not resolve issues central to the validity of Plaintiff's claims (especially FDUTPA). Even more critically, such an analysis is not based on the same law nationwide. Whether Delta is legally entitled to be paid by Allianz will require an analysis of the different laws and regulations governing the business of insurance in each state where class members reside. *See, e.g.*, Neb. Rev. Stat. § 44-4060 (insurance producer "may pay or assign commissions" to "persons who do not sell, solicit or negotiation insurance"); N.C. Gen. Stat. § 58-33-10(18) ("solicit" defined to exclude "a referral to a licensed insurance agent"). This is only further demonstrated by the RSA, in which Jefferson agreed to license its partners "***where required[] under applicable state Insurance Law***." TAC, Ex. 1. Thus, to the extent Delta's liability hinges on whether it receives an "illegal commission," Plaintiff has utterly

failed to establish that a single common question, rather than a 50-state analysis of insurance statutes, could resolve his claims.[10] The same is true as to whether Delta's conduct "deceive[d] insurance regulators." Because of the different insurance licensing and registration requirements in each state, whether Delta or its partners provided false or inadequate information to any one state's insurance regulators must be analyzed through that particular state's requirements.[11] Again, Plaintiff's Motion makes this clear by erroneously labeling the DFS's compilation as a single document filing purportedly "submitted" by Jefferson to the DFS as purported evidence that Delta deceived regulators. Mot. at 6, Ex. L; 9/18/19 Henson Decl. ¶ 6. Not only has Plaintiff failed to establish that there is anything false or deceptive about Jefferson's submissions to the DFS, but his "evidence" also proves that a state-by-state analysis is required for Plaintiff's "fraud on the regulators" theory, and thus precludes certification of a nationwide RICO class. This is especially true in light of Delta's defense under the McCarran-Ferguson Act, which will *also* require a 50-state analysis to determine whether the RICO claim impairs each state's laws governing the business of insurance. *See Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, *10 (S.D. Fla. Jan. 10, 2013) (Middlebrooks, J.) ("To certify a multi-state class action, a plaintiff must prove, through 'extensive analysis' that there are no material variations among the law of the states for which certification is sought.") (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004)).

The final questions posed by Plaintiff fail to satisfy the commonality requirement because there is no evidence that a classwide proceeding could generate common answers to: (1) "Whether and to what extent Delta's conduct has caused injury to the" purported class, or (2) "Whether Delta's representations and omissions would lead a reasonable consumer to believe the" amount they paid for their insurance policy "was a pass-through charge" and that Delta had no "financial interest in travel insurance." Mot. at 9. In fact, only individual evidence could answer these questions. Whether Delta caused injury to any class member will require proof that

---

[10] Plaintiff fails to state a claim for relief to the extent his unjust enrichment and FDUTPA claims asserted on behalf of Florida residents are based on these allegedly common questions, which involve practices regulated by DFS. *See* ECF No. 69 at 18-20; ECF No. 81 at 10.

[11] Not all states require a license to sell travel insurance and others allow non-licensees to be paid and/or be registered under the licensee. Henson Decl. ¶¶ 5-8. Plaintiff's failure to address how he plans to demonstrate an "illegal act" or "fraud" on each state regulator with common evidence precludes a nationwide RICO class. Decl. of Daniel Roth ¶¶ 4-5 ("Roth Decl.") (Ex. 11).

they paid more to secure travel insurance than they would have absent Delta's alleged misconduct. This will require individual proof that comparable travel insurance policies were available to each putative class member for less. *See* ECF No. 138 at Ex. A, Expert Report of Donald Fancher ("Fancher Report") at Ex. 4. Whether the statement that Allianz is the "licensed producer" of the policies coupled with the omission of Delta's compensation from Allianz would lead a reasonable consumer to believe the price they paid for their policy was a "pass-through" charge is also not uniform and likewise presents an individual issue. First, Delta does not collect payment for the policies and makes no representations about the price of the policy; no reasonable consumer would therefore conclude this was a "pass through" simply based on the "producer" language on the website.  Even more importantly, ███████████ of the offer during the class period did not include the statement that Allianz "is the licensed producer" of the policy. Atayev Decl. ¶¶ 3-4. And well ███████████████ were shown. *Id.* Indeed, Plaintiff's survey did not even test the alleged net impression of the "licensed producer" language because it no longer appears on Delta's website. This alone demonstrates Plaintiff's theory is unworkable, and that determining what any individual class members saw in the booking path would require a purchaser-by-purchaser analysis.

### C. Individual Issues Predominate Over any Purportedly Common Questions, and the Motion Fails to Establish Manageability or Superiority.

***Predominance***: "The predominance inquiry . . . is 'far more demanding' than Rule 23(a)'s commonality requirement." *Vega*, 564 F.3d at 1270. It centers around the elements of "the parties' claims and defenses" and whether the plaintiff can establish "the same evidence will suffice for each member." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016). Plaintiff fails to satisfy this demanding standard.

#### i. Individual issues of proximate causation and reliance defeat certification of Plaintiff's FDUTPA and RICO claims.[12]

Plaintiff's predominance argument attempts to sidestep the element of proximate causation required for his RICO and FDUTPA claims. But "[t]here is no ambiguity in Supreme Court or Eleventh Circuit precedent about the requirement that a civil RICO claim must sufficiently plead proximate cause." *Ray*, 836 F.3d at 1351. And Plaintiff at least acknowledges

---

[12] Despite requesting the opportunity to re-brief certification to address Plaintiff's newly added claims, he merely states the "same analysis applies." Mot. 16-17. This is plainly insufficient; the Court should deny certification of the new claims for the same reasons described above.

that causation is an element of FDUTPA—although it is the *only* mention of causation in Plaintiff's entire brief. Mot. at 16-18.

**FDUTPA**: Plaintiff's attempt to shortcut the proof of causation required for his FDUTPA claims based on the "pass through" line of authority fails. As an initial matter, only one of Plaintiff's FDUTPA claims is even based on this theory. In any event, the "pass through" line of authority cannot be applied here. This is because causation in the pass through cases hinges on the predicate that the defendant charged the plaintiff a **mandatory** fee while making a uniform **affirmative misrepresentation** about the fee. *See, e.g.*, *Bowe v. Pub. Storage*, 318 F.R.D. 160 (S.D. Fla. 2015); *Latman v. Costa Cruise Line NV*, 758 So.2d 699 (Fla. 3d DCA 2000). Causation is therefore proven by the fact that the plaintiff "parted with money" for what was described as a "pass through" or other specific fee, but was not in fact the described fee. *Latman*, 758 So. 2d at 703. These are not the circumstances here. Purchasing travel insurance is optional; customers pay Allianz, not Delta; and, critically: Delta **does not make any representation at all** about the charge for the policy. Also, unlike the pass through cases, Plaintiff is not challenging a payment he made to Delta. Plaintiff challenges the compensation Delta receives from Allianz based on his belief that it violates insurance regulations. Mot. at 4 (claiming Delta receives commissions from Allianz despite lacking a license). And he claims, inconsistent with the theory of damages presented by his own expert, to have paid an "inflated" price for the policy due to these allegedly unlawful commissions. Causation for Plaintiff's FDUTPA claim, therefore, requires proof that Plaintiff paid an inflated price for the travel insurance policy based on Delta's allegedly deceptive conduct. *Fitzpatrick v. Gen. Mills Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (class members would need "to show that he or she paid a premium for" the product "to be entitled to damages"). As shown below, that evidence is not common. *Infra* 17-18.

**RICO**: Plaintiff also attempts to shortcut the proof of causation and reliance required for his RICO claims by mischaracterizing the holding in *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008), and asking the Court to infer causation and reliance. Mot. at 15-16. First—as this Court has already recognized—the holding in *Bridge* did not eliminate the need to demonstrate reliance. ECF No. 121; *see also* 553 U.S. at 657-58 ("none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations"). Here, Plaintiff's fraud claims are based on both first and third-party reliance—*i.e.*, Plaintiff claims the alleged

enterprise deceived both consumers and regulators in order to "conceal Delta's illegal commission payments." Mot. at 14. Plaintiff does not, and cannot, offer any common method of proving that consumers relied on any alleged representation or omission on Delta's website in deciding to purchase travel insurance. Plaintiff epitomizes the individual nature of this inquiry. Mr. Cappillo sat down to his computer intending to purchase travel insurance when he booked his flight before he saw anything on Delta's website. Cappillo 52:21-53:19. He, therefore, did not purchase his insurance policy in reliance on anything that was said (or not said) on Delta's website. And it will require an individual inquiry to determine whether any purported class member did, in fact, rely on language on Delta's website in purchasing travel insurance.

Demonstrating third-party reliance in this case is likewise highly individualized. Plaintiff alleges Delta "uniformly" fails to disclose the "unlawful payments" to "state regulatory bodies" and "misstated to regulators how consumers are charged." Mot. at 2, 4-5. But to show third-party reliance under this "fraud on the regulators" theory will require individualized proof as to whether the payments to Delta even constitute a "commission" as defined by state law, how that state's registration statutes address the payment of commissions, what submissions are required in each state, the content of the submissions that were actually made (or not made) to regulators in each state, their knowledge of the truth or falsity of those submissions, and the actions (if any) taken by the regulators in each state in reliance on those submissions. *Bridge*, 553 U.S. at 658-59 (observing that if the entity receiving the alleged misrepresentation knew they were false but proceeded anyway, the plaintiffs claiming resultant harm could not show proximate cause). Conducting this inquiry fifty times will be unmanageable and will predominate over any purportedly common questions. Tellingly, other than baseless speculation that Jefferson omitted Delta from its submissions to DFS, Plaintiff cannot identify that which he claims was allegedly falsified to any one regulator, let alone fifty. *See* Roth Decl. ¶ 3; 9/18/19 Henson Decl. ¶ 6.

In an attempt to circumvent the individualized proof required to demonstrate reliance, Plaintiff states that reliance "can be inferred from circumstantial evidence." Mot. at 15. But Plaintiff does not state *what* circumstantial evidence could be used to establish reliance on a classwide basis. Plaintiff merely points to the decisions in *Bowe* and *Klay*. But key factual differences make them inapplicable here. In *Bowe*, the defendant required its tenants to purchase insurance and made a uniform representation about what it would do with the premium payments plaintiffs paid. 318 F.R.D. at 167. Based on these facts, the court held that reliance and causation

can be inferred based on the "standard misrepresentation" regarding the fee and class members'
payment of "inflated" insurance premiums. *Id.* at 178-79. Here, Delta did not require any
customer to purchase travel insurance and did not make any representation about the price of the
insurance. Accordingly, the Court cannot infer that any class members' decision to purchase
travel insurance was caused by any of Delta's alleged conduct. Moreover, Judge Ungaro later
***decertified the RICO class in Bowe*** based on the lack of any evidence "tending to prove that the
price paid" for the insurance was "inflated." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1263-
66 (S.D. Fla. 2015). Without that evidence, the plaintiff was not entitled to "a classwide
reasonable inference" that class members were injured "by reason of" the RICO violation. *Id.*
Plaintiff here similarly has no evidence that the price he paid for his policy was "inflated;" the
Court should accordingly reject his bid for an "inference" of causation to obtain certification of
his RICO claims. Fancher Report; Mot., Ex. Q.

*Klay* is even further afield. It involved RICO claims by physicians alleging that HMOs
falsely represented they would reimburse the physicians for medically necessary services. 382
F.3d at 1252, 1259. The Court held that "based on the nature of the misrepresentation," the court
could infer that the physicians "relied upon the defendants' representations and assumed they
would be paid the amounts they were due." *Id.* To fall within *Klay*'s holding, Delta would have
had to represent, for example, that it would reimburse customers for a portion of their payment
for travel insurance. One could infer customers would rely on that statement in purchasing travel
insurance. But Delta made no affirmative representation *at all* in this case and purchasers have a
variety of motivations to purchase travel insurance; accordingly, no such inference is merited
here. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089-90 (10th Cir. 2014)
(inference of reliance appropriate only "where the behavior of plaintiffs and the members of the
class cannot be explained in any way other than reliance upon the defendant's conduct"). For
example, Mr. Cappillo's decision to purchase travel insurance had nothing whatsoever to do with
what Delta's website said or did not say—his decision can be explained by many other factors
other than "reliance upon [Delta's] conduct." *Id*. Plaintiff thus epitomizes the individual issues of
reliance precluding certification of his RICO claims.

> ii.  **The elements of materiality and likelihood of deception are incapable of common proof.**

<u>**RICO**</u>: Plaintiff offers three grounds supporting his assertion that the materiality required
for his RICO claims is capable of common proof: (1) "Delta's false statements and omissions

were uniform," (2) a survey that purports to demonstrate "that a substantial portion of the consuming public would find it material that ███████████████████████ ████████ and (3) the Supreme Court's holding in *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013). Mot. at 16. But it is not true that each class member saw the statement that Allianz is "the licensed producer and administrator of this plan," which is the sole statement Plaintiff claims was false. And even if that were true, it does not, alone, establish that Delta's financial interest in the insurance policies is material to Delta's customers. Nor does the declaration of Brian Sowers demonstrate that materiality is capable of common proof. Sowers' survey—even when using biased questions and flawed techniques—could only muster an insufficient correlation between purchasing decisions and knowledge of Delta's compensation.[13] *See* Decl. of Alex Simonson ("Simonson Decl.") (Ex. 12). Indeed, *60%* of respondents indicated that whether Delta was being compensated would not have been important to know when purchasing the insurance. Mot., Ex. R at 25-26. And out of the 40% indicating it would be important, only *10%* responded that Delta's compensation would make them less likely to purchase. *Id.* ¶ 71. This is far below the percentages courts typically accept in concluding that materiality is capable of common proof. *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) (relying on survey that found 65% of respondents would pay more for "natural" products and citing "20%" as the low end of percentages) (citing *Oshana v. Coca-Cola Co.,* 2005 WL 1661999, *8 (N.D. Ill. July 13, 2005)); *Cohen v. Trump*, 2016 WL 4543481, at *6 (S.D. Cal. Aug. 29, 2016) (statement impacted 69% of respondents). The lack of common proof available to establish materiality is also borne out by Plaintiff's own testimony. Plaintiff purchased travel insurance on that single occasion because it was of paramount importance to protect the valuables in his possession: it was not important to him whether Delta was being compensated when he made that purchase. To identify whether Delta's compensation is material to any other class member would likewise require individual inquiry into the circumstances driving their purchase of insurance. There is no common proof, therefore, that can establish materiality.[14]

    **_FDUTPA_**: The likelihood of deception required for Plaintiff's FDUTPA claims is also

---

[13] The Court should disregard the survey because it relies on a fundamentally flawed approach with biased questions designed to increase findings of materiality. Simonson Decl., ¶¶ 11, 14-32.

[14] *Amgen* does not demonstrate otherwise as the Court simply held that proof of materiality is not a prerequisite to class certification in a securities fraud action based on a fraud on the market theory. 568 U.S. at 466-68. It is inapplicable here.

not capable of common proof. While a "reasonable consumer" standard applies, there is also a subjective component, *i.e.*, whether the practice is "likely to deceive a consumer acting reasonably **in the same circumstances**." *In re Motions to Certify Classes Against Court Reporting Firms*, 715 F. Supp. 2d 1265, 1282-83 (S.D. Fla. 2010) (denying certification where "reasonableness . . . depends on numerous individualized inquiries," including the different circumstances under which law firms utilized the court reporting services) (emphasis added). Whether the language of the insurance offer was deceptive to a reasonable consumer "in the same circumstances" is not capable of common proof because ▇▇▇▇▇▇▇▇ shown during the class period did not contain the allegedly false statement that Allianz is the "licensed producer" of the policy. *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 643 (S.D. Fla. 2008) (individualized issues predominated where "not every putative class member received the same marketing materials"); *Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*, 2016 WL 8542540, *2-3 (S.D. Fla. Dec. 1, 2016) (evidence showing "variability" in "what written and oral communications they received regarding the fees" precluded certification of FDUTPA claim). In fact, the offer on Delta's website does not currently contain that statement, as is made clear from Plaintiff's own survey, which used images from Delta's website to test for deception that lack the challenged statement in this case. Mot., Ex. R at 10. The circumstances applicable to some class members are therefore not the same circumstances applicable to others, and deception is not capable of common proof in this case. *Deere Constr.*, 2016 WL 8542540, *2-3.

### iii.    Plaintiff Fails to Offer a Common Method of Proving Actual Damages for Any of His Claims.

Plaintiff bears the burden of demonstrating that the damages he seeks on his claims can be established with common proof. Plaintiff contends that damages are capable of common proof because, "[u]nder the theories of liability advanced by Plaintiff, the damages [] are the undisclosed commission kickbacks to Delta" which are "consistent for all class members." Mot. at 13, Ex. Q. This argument is fundamentally flawed for at least two reasons.

*First*, Plaintiff's damages model does not align with his theory of liability. Plaintiff alleges that Delta's omissions and misrepresentations lead consumers to expect that "Delta is not receiving . . . any [] remuneration from" the sale of travel insurance, and that based on this alleged deceit, Plaintiff and the purported class paid an "inflated" price for their travel insurance policies. TAC ¶¶ 27, 53, 155. In fact, Plaintiff's proof of causation for his RICO and FDUTPA claims depends entirely on the allegation that the price of the travel insurance is inflated. Mot. at

15-17. Yet Plaintiff's damages model is not based on the price paid by the Plaintiff for the insurance. Rather, Plaintiff purports to calculate damages by the amount Allianz paid Delta under the Agreement. *See* Ex. Q. Plaintiff's circumstances illustrate the problem with this damages model: it would result in reimbursement to Mr. Cappillo of $23.22 (the alleged per-policy "kickback" for the month he purchased his policy) when he paid only $21.88 for his policy. Mot., Ex. J and Ex. Q at 7. Damages cannot, therefore, be based on the amount Allianz paid to Delta untethered to whether that amount actually harmed any purported class member. The chasm between Plaintiff's theory of liability and his damages model requires denial of Plaintiff's motion for class certification. *Comcast*, 569 U.S. at 27-28 (instructing courts to conduct a "rigorous analysis" of whether the purported damages model fits the liability case); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696-97 (S.D. Fla. 2014) (denying certification of FDUTPA claim alleging product contained a "price premium" for failure to demonstrate damages were measurable through a "common methodology").

      ***Second***, Plaintiff's damages model is flawed because it is does not actually measure damages under the claims asserted. Plaintiff's FDUTPA and RICO claims require proof of *actual* damages. 18 U.S.C. § 1964(c) (providing standing to a person "injured in his business or property by reason of" a RICO violation); *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (actual damages for FDUTPA are "defined as 'the difference in the market value of the product'" as delivered and "'the condition in which it should have been delivered'"). His unjust enrichment claim likewise requires proof that Plaintiff was harmed in some way. *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234-35 (S.D. Fla. 2007). Even assuming Delta does receive "commissions" from Allianz, that does not mean that any class member suffered actual damages. To make that showing, Plaintiff must demonstrate that the alleged "commissions" inflated the prices class members paid for insurance. *Bowe*, 106 F. Supp. 3d at 1264-65 (decertifying RICO class "based on allegations of overcharges" for failure to provide evidence that class members "paid inflated prices"). That is, in fact, what Plaintiff alleges in the TAC (¶ 155) and what he argues in opposition to Delta's motion to dismiss. ECF No. 151 at 18-19. But Plaintiff has not offered a common method for proving that the price purported class members paid for their policies was inflated. Fancher Report; Mot., Ex. Q. Nor is there one. To know whether any class member paid an inflated price would require individual investigation into both the price and unique characteristics of the policy actually purchased to see

if a similar policy for that particular purchaser was available for less elsewhere. *Electrolux*, 817 F.3d at 1240 ("[I]ndividual damages defeat predominance if computing them 'will be so complex, fact-specific, and difficult that the burden . . . would be [] intolerable'"); *Krukever v. TD Ameritrade, Futures & Forex LLC*, 328 F.R.D. 649, 661 (S.D. Fla. 2018) (individualized damages issues precluded certification where it required comparing the price of the options with prices of analogous options sold at a later date). Because individualized damages issues would predominate in any trial, the Court should deny class certification.

        **iv.**        **Plaintiff's unjust enrichment claim is ill-suited for class treatment.**

"The Eleventh Circuit has noted that 'common questions will rarely, if ever, predominate' in an unjust enrichment claim." *Perisic v. Ashley Furniture Indus., Inc.*, 2018 WL 3391359, *7 (M.D. Fla. June 27, 2018). This is because "a court must examine the particular circumstances of an individual case" to determine whether "without a remedy[,] inequity would result or persist." *Kunzelmann*, 2013 WL 139913, at *7. This is particularly true here where establishing that any class member did not receive the benefit of their bargain will require individual investigation into whether they paid an inflated price for the value received from their insurance policies (or whether they failed to receive an airline ticket or policy in exchange for providing their personal information). Notably, Plaintiff admits he has no reason to believe the policy he purchased would not have provided the coverage he paid for. Cappillo 72:3-11. And while he alleges the price for the insurance was inflated, Plaintiff's damages expert does not attempt to show that Plaintiff could have bought a cheaper policy with the same coverage, let alone attempt to do that on a classwide basis. This is because that analysis would require individual examination of the facts and circumstances of each purchase. As shown above, Plaintiff's argument that the allegedly unlawful commission payments can uniformly prove class members' unjust enrichment claims is fundamentally flawed because it does not establish whether those commissions actually harmed any class member. *Prohias*, 490 F. Supp. 2d at 1235-36. The individual inquiry of whether any class member paid an inflated price defeats certification of Plaintiff's unjust enrichment claim.

***Manageability/Superiority***: As shown above, Plaintiff's proposal for a nationwide RICO class would require an unmanageable 50-state analysis of travel insurance marketing, licensing/registration, and rate filing requirements. Plaintiff's failure to address this issue in his Motion also evidences his failure to demonstrate the manageability or superiority requirements

of Rule 23(b)(3). *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010) ("[I]n cases implicating the law of all fifty states," to establish manageability, plaintiff  must "provide an *extensive analysis* of state law variations to reveal whether these pose insuperable obstacles [to class certification]."); *Gelfound v. Metlife Ins. Co. of Conn.*, 313 F.R.D. 674, 679 (S.D. Fla. 2016) ("Plaintiff's failure to even identify, let alone analyze, the variations among the applicable 46 states' laws is fatal to his motion").

### D. Plaintiff Cannot Seek Certification Under Rule 23(b)(2) Because He Primarily Seeks Monetary Relief.

Plaintiff dedicates a mere paragraph of his Motion to his request for certification under Rule 23(b)(2), failing to even state the declaratory or injunctive relief he seeks on behalf of the class.[15] Mot. at 19-20. For purposes of certification under Rule 23(b)(2), the critical question in this Circuit is whether any monetary damages sought "are incidental to [the] equitable relief." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001). That is clearly not the case here, as the effort dedicated to addressing Plaintiff's monetary claim under Rule 23(b)(3) makes plain. While Plaintiff acknowledges that certification under Rule 23(b)(2) is "generally unavailable" in these circumstances, he asks the Court to certify a "hybrid class action" based on *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009). Mot. at 20. But *Williams* is inapplicable here as the plaintiffs sought certification of only one of their claims under Rule 23(b)(2). 568 F.3d at 1354. Plaintiff seeks certification of all of his claims under Rule 23(b)(3). And courts in this Circuit do not allow certification under subsection (b)(2) where the predominant relief sought for each claim is monetary relief. Plaintiff's request for certification under Rule 23(b)(2) thus fails. *Stalley v. ADS Alliance Data Sys., Inc.*, 296 F.R.D. 670, 684 (M.D. Fla. 2013).

### IV. CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for class certification.

---

[15] Plaintiff also lacks standing to represent an injunctive relief class seeking to "end Delta's deceptive . . . practices." *Wasser v. All Market, Inc.*, No. 1:16-cv-21238-RNS, ECF No. 281, at 4-8 (S.D. Fla. Sept. 26, 2018) (plaintiff lacked standing to represent injunctive relief class because "past exposure to illegal conduct does not" show a "present case or controversy," where "unaccompanied by any continuing, present adverse effects"). The same is true to the extent he seeks to represent purchasers who did not purchase the same insurance policy as him. *Bohlke v. Shearer's Food, LLC*, 2015 WL 249418, *4 (S.D. Fla. Jan. 20, 2015).

Respectfully submitted this 24th day of September, 2019.

*s/ Lazaro Fernandez, Jr.*
Lazaro Fernandez, Jr.
Fla. Bar No. 716545
Email: lfernandez@stackfernandez.com
Denise B. Crockett
Email: dcrockett@stackfernandez.com
Fla. Bar No. 327913
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001

-and-

Gayle I. Jenkins, Esq.
Email: gjenkins@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863

-and-

David L. Balser, Esq.
Email: dbalser@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 572-4600

-and-

Julia C. Barrett, Esq.
Email: jbarrett@kslaw.com
**KING & SPALDING LLP**
500 W. 2nd Street
Suite 1800
Austin, TX 78701
Tel: (512) 457-2053

*Attorneys for Defendant, Delta Air Lines, Inc.*

# EXHIBIT A
# Redacted Pursuant to Forthcoming Motion to Seal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 18-CV-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF
on behalf of herself and all others
similarly situated,

      Plaintiffs,                              CLASS ACTION

vs.

DELTA AIR LINES, INC.

      Defendant.

_____/

**DECLARATION OF MARK HENSON**

I, Mark Henson, declare as follows:

    1.     I am Vice President – Regulatory Operations at AGA Service Company aka Allianz Global Assistance ("AGA" or "Allianz").  I have held that position since September 2015.  I have been employed with Allianz since 2007; my initial position was Director of Travel Customer Service and in 2011 I was promoted to Vice President – Travel Services.  This Declaration is given to supplement the prior declaration provided on April 18, 2019 in this case.

    2.     In my current role, I oversee and direct operations relating to AGA's insurance licensing in every US jurisdiction with respect to AGA's sales of travel insurance products underwritten by Jefferson Insurance Company and BCS Insurance Company.

3.      Both Jefferson Insurance Company and BCS Insurance Company hold

Certificates of Authority as insurers issued by the Florida Office of Insurance Regulation. True

and correct copies of their pages as accessed on Print-outs of their pages on the Florida OIR

website are attached hereto as Exhibits 1 and 2.

4.      AGA is licensed as a producer and is authorized to transact insurance sales for the

travel insurance products in each of the 50 states and the District of Columbia, where such

licenses are required. The licensing requirements vary from state to state, and not all states

require a license to offer or disseminate travel insurance.

5.      Attached hereto as Exhibit 3 is a copy of AGA's license issued by Florida's

Department of Financial Services.

6.      I have reviewed Exhibit L to Plaintiff's Motion for Class Certification, as well as

Page 6 of the Motion where Plaintiff states: "For example, Jefferson Insurance Co. is required to

submit to regulators (such as the Florida Department of Financial Services) the name of all agents

who receive compensation from insurance sales. However, Jefferson intentionally omitted Delta to

hide the payments. Ex. L (Jefferson disclosure to Florida DFS)."



Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and correct.  Executed this 18th day of September 2019.

Mark Henson
Vice-President – Regulatory Operations,  AGA Service
Company aka Allianz Global Assistance

Page **3** of **3**

# EXHIBIT 1

Search

# Company Directory: Search Results

*This information is current as of 9/6/2019*

## JEFFERSON INSURANCE COMPANY

| | |
|---|---|
| FEIN | 13-5556470 |
| Florida Company Code | 01431 |
| NAIC Company Code | 11630 |
| Company Type | PROPERTY AND CASUALTY INSURER |
| Home State | NY |
| Web Site | HTTPS://WWW.ALLIANZWORLDWIDEPARTNERS.COM |
| Authorization Type | CERTIFICATE OF AUTHORITY |
| Authorization Status | ACTIVE |
| First Licensed in Florida Date | 01/23/1958 |

### Addresses

| Type | Address | Phone |
|---|---|---|
| ADMINISTRATIVE | 9950 MAYLAND DRIVE, RICHMOND VA 23233 United States | (800) 497-4602 |
| HOME | C/O ALLIANZ GLOBAL INVESTORS, 1633 BROADWAY, 42ND, NEW YORK NY 10019 United States | |
| MAILING | 9950 MAYLAND DRIVE, RICHMOND VA 23233 United States | (804) 965-8011 |
| CLAIMS WEBSITE | http://www.allianztravelinsurance.com | (800) 334-7525 |
| LOCATION OF RECORDS | 9950 MAYLAND DRIVE, RICHMOND VA 23233 United States | (800) 497-4602 |

### Authorized Lines of Business

| Line of Business | Type |
| --- | --- |
| MISCELLANEOUS CASUALTY | DIRECT AND REINSURANCE |
| GLASS | DIRECT AND REINSURANCE |
| PRIVATE PASSENGER AUTO LIABILITY | DIRECT AND REINSURANCE |
| COMMERCIAL MULTI PERIL | DIRECT AND REINSURANCE |
| HOMEOWNERS MULTI PERIL | DIRECT AND REINSURANCE |
| FIRE | DIRECT AND REINSURANCE |
| BOILER AND MACHINERY | DIRECT AND REINSURANCE |
| MOBILE HOME MULTI PERIL | DIRECT AND REINSURANCE |
| AIRCRAFT | DIRECT AND REINSURANCE |
| PPA PHYSICAL DAMAGE | DIRECT AND REINSURANCE |
| OTHER LIABILITY | DIRECT AND REINSURANCE |
| COMMERCIAL AUTO PHYSICAL DAMAGE | DIRECT AND REINSURANCE |
| OCEAN MARINE | DIRECT AND REINSURANCE |
| ALLIED LINES | DIRECT AND REINSURANCE |
| BURGLARY AND THEFT | DIRECT AND REINSURANCE |
| COMMERCIAL AUTOMOBILE LIABILITY | DIRECT AND REINSURANCE |
| MEDICAL MALPRACTICE | DIRECT AND REINSURANCE |
| MOBILE HOME PHYSICAL DAMAGE | DIRECT AND REINSURANCE |
| INLAND MARINE | DIRECT AND REINSURANCE |

| Current Personal Injury Protection(Auto-PIP) Contact | |
| --- | --- |
| PIP Contact Name | LYNETTE COLEMAN |
| PIP Address | 1201 HAYS STREET  TALLAHASSEE FL 32301 |

**Historic PIP Contact information is available upon request from:**
**Office of Insurance Regulation**
**Public Records Office**
**200 East Gaines Street**
**Tallahassee, FL 32399**
**TELEPHONE: 850-413-4223**

New Search

## DISCLAIMER

The Florida Office of Insurance Regulation ("Office") provides access to company and other information on this Web site as a public service. Although reasonable efforts have been made to ensure that all electronic information made available is current, complete and accurate, the Office does not warrant or represent that this information is current, complete and accurate. All information is subject to change on a regular basis, without notice.

The Office assumes no responsibility for any errors in the information provided, nor assumes any liability for any damages incurred as a consequence, directly or indirectly, of the use and application of any of the contents of the Office Web site. Unless otherwise noted on an individual document, file, webpage or other Web site item, the Office grants users permission to reproduce and distribute all information available on this website for non-commercial purposes and usage, as long as the contents remain unaltered and as long as it is noted that the contents have been made available by the Florida Office of Insurance Regulation.

Any electronic information or inquiries that the Office receives from a Web site user shall not be considered as, or treated as, confidential.

The inclusion of, or linking to, other web site URLs does not imply our endorsement of, nor responsibility for, those web sites, but has been done as a convenience to our Web site visitors.

## EXAMPLES

The Office of Insurance Regulation company search does not require you to know exactly how Office of Insurance Regulation has the company's name recorded. It will take your input and return every name that contains your input as it appears in any part of all records. In other words, if your search is:

*Floricorp*

then the search will return all the names that have "Floricorp" in any part of the record. For example:

FLORICORP, INC.
FLORICORP PROPERTY AND CASUALTY COMPANY
SOUTHERN FLORICORP UNLIMITED

If you entered

*Floricorp P*

you would get only

FLORICORP PROPERTY AND CASUALTY COMPANY

Note that even though the whole name is searched, the service still looks for an exact match. So if you entered

*FLORICORP,*

(i.e., with a comma) you would only get

FLORICORP, INC.

# EXHIBIT 2

Search

# Company Directory: Search Results

*This information is current as of 9/6/2019*

## BCS INSURANCE COMPANY

| | |
|---|---|
| FEIN | 36-6033921 |
| Florida Company Code | 09303 |
| NAIC Company Code | 38245 |
| Company Type | PROPERTY AND CASUALTY INSURER |
| Home State | OH |
| Web Site | http://WWW.BCSINS.COM |
| Authorization Type | CERTIFICATE OF AUTHORITY |
| Authorization Status | ACTIVE |
| First Licensed in Florida Date | 09/28/1970 |

### Addresses

| Type | Address | Phone |
|---|---|---|
| ADMINISTRATIVE | 2 MID AMERICA PLAZA, SUITE 200, OAKBROOK TERRACE IL 60181 United States | (630) 472-7700 |
| HOME | 6740 NORTH HIGH STREET, WORTHINGTON OH 43085 United States | |
| MAILING | 2 MID AMERICA PLAZA, SUITE 200, OAKBROOK TERRACE IL 60181 United States | (630) 472-7815 |
| CLAIMS WEBSITE | | (630) 472-7700 |
| LOCATION OF RECORDS | 2 MID AMERICA PLAZA, SUITE 200, OAKBROOK TERRACE IL 60181 United States | (630) 472-7700 |

### Authorized Lines of Business

| Line of Business | Type |
|---|---|
| PREPAID LEGAL | DIRECT AND REINSURANCE |
| INLAND MARINE | DIRECT AND REINSURANCE |
| MISCELLANEOUS CASUALTY | DIRECT AND REINSURANCE |
| AUTO WARRANTIES | DIRECT AND REINSURANCE |
| ACCIDENT AND HEALTH | DIRECT AND REINSURANCE |
| COMMERCIAL AUTO PHYSICAL DAMAGE | DIRECT AND REINSURANCE |
| FIDELITY | DIRECT AND REINSURANCE |
| OTHER LIABILITY | DIRECT AND REINSURANCE |
| COMMERCIAL AUTOMOBILE LIABILITY | DIRECT AND REINSURANCE |

| Current Personal Injury Protection(Auto-PIP) Contact | |
|---|---|
| PIP Contact Name | HENRY A CARPENTER |
| PIP Address | 2 MID AMERICA PLAZA SUITE 200  OAKBROOK TERRACE IL 60181 |

**Historic PIP Contact information is available upon request from:**
**Office of Insurance Regulation**
**Public Records Office**
**200 East Gaines Street**
**Tallahassee, FL 32399**
**TELEPHONE: 850-413-4223**

New Search

**DISCLAIMER**

The Florida Office of Insurance Regulation ("Office") provides access to company and other information on this Web site as a public service. Although reasonable efforts have been made to ensure that all electronic information made available is current, complete and accurate, the Office does not warrant or represent that this information is current, complete and accurate. All information is subject to change on a regular basis, without notice.

The Office assumes no responsibility for any errors in the information provided, nor assumes any liability for any damages incurred as a consequence, directly or indirectly, of the use and application of any of the contents of the Office Web site. Unless otherwise noted on an individual document, file, webpage or other Web site item, the Office grants users permission to reproduce and distribute all information available on this website for non-

commercial purposes and usage, as long as the contents remain unaltered and as long as it is noted that the contents have been made available by the Florida Office of Insurance Regulation.

Any electronic information or inquiries that the Office receives from a Web site user shall not be considered as, or treated as, confidential.

The inclusion of, or linking to, other web site URLs does not imply our endorsement of, nor responsibility for, those web sites, but has been done as a convenience to our Web site visitors.

## EXAMPLES

The Office of Insurance Regulation company search does not require you to know exactly how Office of Insurance Regulation has the company's name recorded. It will take your input and return every name that contains your input as it appears in any part of all records. In other words, if your search is:

*Floricorp*

then the search will return all the names that have "Floricorp" in any part of the record. For example:

FLORICORP, INC.
FLORICORP PROPERTY AND CASUALTY COMPANY
SOUTHERN FLORICORP UNLIMITED

If you entered

*Floricorp P*

you would get only

FLORICORP PROPERTY AND CASUALTY COMPANY

Note that even though the whole name is searched, the service still looks for an exact match. So if you entered

*FLORICORP,*

(i.e., with a comma) you would only get

FLORICORP, INC.

# EXHIBIT 3

# FLORIDA DEPARTMENT of FINANCIAL SERVICES

AGA SERVICE COMPANY DBA ALLIANZ GLOBAL ASSISTANCE

9950 MAYLAND DRIVE
RICHMOND VA 23233

## Agency License Number L046975

Location Number: 166836

Issued On 04/05/2010

Pursuant To Section 626.0428, Florida Statutes, This Agency Location Shall Be In The Active Full-Time Charge Of A Licensed And Appointed Agent Holding The Required Agent Licenses To Transact The Lines Of Insurance Being Handled At This Location.

Pursuant To Subsection 626.172(4), Florida Statutes, Each Agency Location Must Display The License Prominently In A Manner That Makes It Clearly Visible To Any Customer Or Potential Customer Who Enters The Agency Location.

Jimmy Patronis
Chief Financial Officer
State of Florida