UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 18-CV-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF
on behalf of herself and all others
similarly situated,

     Plaintiffs,                       CLASS ACTION

vs.

DELTA AIR LINES, INC.

     Defendant.
_____/

**DELTA AIR LINES, INC.'S MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

I.     INTRODUCTION................................................................................. 1

II.    UNDISPUTED MATERIAL FACTS ................................................. 3

       A.    Travel Insurance is an Optional Ancillary Product Delta Makes Available
             to its Customers in Partnership with Allianz. .......................................... 3

       B.    Payment for the Travel Insurance is Collected Directly by Allianz. ................... 3

       C.    Delta is Compensated by Allianz for Providing Space on Delta's Website
             for Allianz to Offer Travel Insurance to Delta's Customers................................. 4

       D.    The Travel Insurance Policies Sold by Allianz to Delta's Customers are
             Among the Least Expensive Travel Products Sold in the Marketplace................. 4

       E.    Plaintiff's Purchase of Travel Insurance Through Delta's Website. .................... 5

       F.    Plaintiff's Claims and Procedural Posture. ........................................... 5

III.   ARGUMENT AND CITATION OF AUTHORITY..................................... 6

       A.    Summary Judgment Standard. ................................................. 6

       B.    Plaintiff's Claims Fail Because There is no Evidence that Plaintiff Was
             Damaged by Delta's Alleged Wrongdoing.......................................... 6

             i.     *Plaintiff received the benefit of his bargain with Allianz.* ...................... 7

             ii.    *Plaintiff's unjust enrichment claim suffers additional, fatal flaws.*............ 9

             iii.   *Plaintiff fails to satisfy FDUTPA's causation and damages
                    requirements and cannot cure that failure based on the "pass-
                    through" line of authority.* ........................................................ 11

       C.    There is No Material Evidence Creating a Triable Issue of Fact as to
             Whether Delta's Alleged Conduct is Likely to Deceive a Reasonable
             Consumer. ................................................................................ 15

       D.    Any Remaining Insurance-Based Claims Fail as a Matter of Law...................... 16

       E.    The Filed Rate Doctrine Bars Plaintiff's Claims ...................................... 17

IV.    CONCLUSION ........................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Safety Ins. Serv., Inc. v. Griggs*,
   959 So. 2d 322 (Fla. 5th DCA 2007) .......................................................................8

*Baptista v. JPMorgan Chase Bank, N.A.*,
   640 F.3d 1194 (11th Cir. 2011) .........................................................................7, 9

*Bergman v. Royal Caribbean Cruises, Ltd.*,
   2005 WL 8156741 (S.D. Fla. Sept. 29, 2005) ......................................2, 13, 14, 15

*Cabrera v. Haims Motors, Inc.*,
   288 F. Supp. 3d 1315 (S.D. Fla. 2017) ...................................................................13

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ...............................................................................11

*Casey v. Fla. Coastal School of Law, Inc.*,
   2015 WL 10096084 (M.D. Fla. Aug. 11, 2015) ....................................................14

*Celotex Corp v. Catrett*,
   477 U.S. 317 (1986).................................................................................................6

*Coleman v. CubeSmart*,
   328 F. Supp. 3d 1349 (S.D. Fla. 2018) ..................................................................14

*Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*,
   198 F. Supp. 3d 1332 (S.D. Fla. 2016) ..................................................................14

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
   1 So. 3d 400 (Fla. 3d DCA 2009) ............................................................................8

*Fitzpatrick v. Gen'l Mills Inc.*,
   635 F.3d 1279 (11th Cir. 2011) .............................................................................11

*Flexiteek Americas, Inc. v. Plasteak, Inc.*,
   2013 WL 6233175 (S.D. Fla. Dec. 2, 2013), *aff'd*, 603 F. App'x 994 (11th
   Cir. 2015) ...............................................................................................................11

*Flores v. United Airlines*,
   Case No. 1:18-cv-06571, Dkt. No. 58 (Order on Motion to Dismiss) (S.D. Fla.
   Dec. 10, 2019)................................................................................................ *passim*

*Fowler v. Caliber Home Loans, Inc.*,
   277 F. Supp. 3d 1324 (S.D. Fla. 2016) (*aff'd sub nom. by Patel*) ....................17, 18

*Gastaldi v. Sunvest Resort Cmtys., LC*,
709 F. Supp. 2d 1299 (S.D. Fla. 2010) ............................................................................11, 12

*Green v. McNeil Nutritionals, LLC*,
2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005)......................................................................7

*Hines v. CMRE Fin. Servs., Inc.*,
2014 WL 105224 (S.D. Fla. Jan. 10, 2014) .............................................................................6

*Jaffe v. Bank of Am., N.A.*,
667 F. Supp. 2d 1299 (S.D. Fla. 2009), *aff'd*, 395 F. App'x 583 (11th Cir.
2010) ........................................................................................................................................8

*John C. Nordt, III, M.D. and Assocs., P.A. v. Colina Ins. Ltd.*,
2018 WL 2688793 (S.D. Fla. Apr. 13, 2018) ........................................................................10

*Johnson v. Catamaran Health Sols., LLC*,
687 F. App'x 825 (11th Cir. 2017) .........................................................................................10

*Kopel v. Kopel*,
229 So. 3d 812 (Fla. 2017)......................................................................................................10

*Latman v. Costa Cruise Lines, N.V.*,
758 So. 2d 699 (Fla. 3d DCA 2000) .......................................................................................13

*Moore v. GNC Holdings, Inc.*,
2014 WL 12634919 (S.D. Fla. Mar. 18, 2014)..................................................................8, 11

*Patel v. Specialized Loan Servicing, LLC*,
904 F.3d 1314 (11th Cir. 2018) ..............................................................................17, 18, 19

*Prohias v. Pfizer, Inc.*,
490 F. Supp. 2d 1228 (S.D. Fla. 2007) ................................................................................7, 8

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery,
LLC*,
315 F. Supp. 3d 1291 (S.D. Fla. 2018) ...................................................................................11

*Taffet v. Southern Co.*,
967 F.2d 1483 (11th Cir. 1992) ..............................................................................................18

*Trevathan v. Select Portfolio Servicing, Inc.*,
142 F. Supp. 3d 1283 (S.D. Fla. 2015) ...................................................................................18

*Turner Greenberg Assocs. v. Pathman*,
885 So. 2d 1004 (Fla. 4th DCA 2004) ..............................................................................13, 14

*Van Zanen v. Qwest Wireless, L.L.C.*,
  550 F. Supp. 2d 1261 (D. Col. 2007), *aff'd*, 522 F.3d 1127 (10th Cir. 2008) ..........................8

*W. Sunrise Dev. Corp. v. Smoler*,
  2016 WL 5369338 (S.D. Fla. Sept. 26, 2016) ..........................................................................14

*Walker v. Darby*,
  911 F.2d 1573 (11th Cir. 1990) ................................................................................................6

*Walker v. Super 8 Worldwide, Inc.*,
  2012 WL 13102078 (M.D. Fla. June 21, 2012)......................................................................11

*White v. Grant Mason Holdings, Inc.*,
  741 F. App'x 631 (11th Cir. 2018) ........................................................................................12

**Statutes**

Fla. Stat § 501.211(2)...................................................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 56 ..........................................................................................1, 6

Pursuant to Federal Rule of Civil Procedure 56, Defendant Delta Air Lines, Inc. ("Delta") hereby moves for summary judgment on the claims in Plaintiff Walter Cappillo's ("Plaintiff") Fourth Amended Complaint. In support of this motion, Delta submits the following memorandum of law and Delta's Statement of Undisputed Material Facts ("SUMF") filed contemporaneously herewith. As shown below, there is no genuine dispute of material fact as to multiple elements of Plaintiff's claims; the claims accordingly fail as a matter of law.

## I.     INTRODUCTION

Plaintiff's claims[1] fail as a matter of law because it is undisputed that Plaintiff was not damaged by Delta's alleged conduct. Plaintiff did not pay an inflated price for his insurance policy; he was not deceived by Delta's website; and he received both the airline ticket and insurance policies he paid for. Far from showing a fraudulent or unjust business practice that injures Delta's customers, the evidence shows that Delta and Allianz have a conventional business relationship whereby Allianz essentially rents space on Delta's website to market and sell travel insurance policies to Delta's customers. Allianz provides the terms of the offers, collects all of the money paid for the insurance policies, and subsequently pays Delta a monthly marketing fee for its role in providing Allianz the space on Delta's website to sell travel insurance. The insurance policies sold to Delta's customers are among the least expensive in the marketplace, and there is no material evidence that customers are deceived by Delta's website into believing that Delta receives no compensation for allowing Allianz to market its product on Delta's website. Without any evidence that Plaintiff suffered any damages, each of his claims fails as a matter of law.

This glaring hole in the evidentiary record is not the only reason the claims in the Fourth Amended Complaint ("Fourth AC") fail. Plaintiff's reliance on the "pass-through" authority to sustain his FDUTPA claim is misplaced, as shown by the undisputed evidence that: (1) Allianz (not Delta) collects all of the money for the travel insurance policies at the point of purchase, and (2) there is no affirmative representation made on Delta's website about how the cost of the policies is calculated or how the monies collected are disbursed once collected by Allianz. As another judge in this district explained, the pass-through line of authority is simply inapplicable where no affirmative representation was made by the defendant as to how the price was

---

[1] Plaintiff's Fourth Amended Complaint is limited to FDUTPA and unjust enrichment claims.

calculated or where the money was going. *Bergman v. Royal Caribbean Cruises, Ltd.*, 2005 WL 8156741, *2 (S.D. Fla. Sept. 29, 2005). Without evidence the pass-through line of authority requires, there is no triable issue of fact on the key elements of causation and damages required by FDUTPA.

In addition, the material evidence before the Court demonstrates that there is no triable issue of fact as to whether Delta's website is likely to deceive a reasonable consumer into believing that Delta is not compensated by Allianz. In a flawed survey, designed as a mere reading test, Plaintiff's expert concludes that *only 27.4%* of respondents believed Delta was not being compensated. A survey conducted by Delta's expert, Hal Poret confirms that the vast majority of viewers of Delta's website either formed no belief at all about whether Delta receives payment or believed Delta *does* receive payment from Allianz. And Plaintiff himself testified that he didn't think about whether Delta was being paid at the time he purchased insurance ***but assumed that Delta would be compensated for allowing Allianz space on Delta's website to market travel insurance***. Indeed, "[a] wise consumer assumes . . . that the owner of a website gets a share of the sale of products sold on its website." *Flores v. United Airlines*, Case No. 1:18-cv-06571, Dkt. No. 58, at 9 (Order on Motion to Dismiss) (S.D. Fla. Dec. 10, 2019) ("*Flores*"). Therefore, there is no triable issue of fact as to whether Delta's website is likely to deceive a reasonable consumer.

Finally, Plaintiff's unjust enrichment claim fails not only because Plaintiff received the benefit of his bargain and thus did not suffer any damages but also because there is no evidence of any unjust or inequitable circumstances here. As Judge Alonso described in dismissing similar claims against United Airlines, the mere "lack of disclosure" of payment between Allianz and Delta does not make it "nefarious" and there is nothing "immoral, oppressive, unscrupulous or unethical about charging a consumer a price she is willing to pay" for an optional product. *Flores*, at 9. In addition, the undisputed evidence shows Plaintiff did not confer any ***direct*** benefit on Delta—as is required under Florida law to sustain a claim for unjust enrichment. For these reasons, as described more fully below, the FDUTPA and unjust enrichment claims in the Fourth AC fail, and summary judgment should be granted in favor of Delta.

## II.   UNDISPUTED MATERIAL FACTS

### A.  Travel Insurance is an Optional Ancillary Product Delta Makes Available to its Customers in Partnership with Allianz.

In addition to selling airline tickets, Delta markets and provides its customer direct access to ancillary products that enhance customer experience. One of those products is travel insurance. To make this option available, Delta entered into a Marketing Agreement (the "Agreement") with AGA Service Company d/b/a Allianz. SUMF ¶ 1. As a function of that Agreement, Delta provides Allianz space on Delta's website for Allianz to offer travel insurance policies for sale to Delta's customers. SUMF ¶ 2. Delta's customers can elect to purchase optional travel insurance from Allianz in the "booking path" at the time they purchase airline tickets. When a flight selection is made in the Delta booking path, Allianz electronically selects the offer to be shown to the customer.  SUMF ¶ 3. With Delta having limited veto power, *i.e.*, for advertising that would be disparaging to Delta, Allianz controls the wording and content of the offer. SUMF ¶ 4.  Allianz is also the entity selling the travel insurance product. SUMF ¶ 5. Plaintiff admits that "Delta's website [] represents to the consumer that it is AGA Service Company . . . who is recommending the trip insurance" and who is "'the licensed producer' for the trip insurance policies." Fourth AC ¶ 28; *see also* SUMF ¶ 5. Allianz also develops the various insurance products that are offered to Delta's customers and sets the price for those products. SUMF ¶ 6.

### B.  Payment for the Travel Insurance is Collected Directly by Allianz.

If a Delta customer elects to purchase travel insurance, Delta does not collect any money from its customers related to the purchase; payment is collected by and goes directly to Allianz. SUMF ¶¶ 9-10. This is made clear from the customers' experience. First, the price of the insurance policy is itemized separately from the price customers pay Delta for their airfare. SUMF ¶ 11. In addition, the customers' credit cards are charged separately by Allianz for the travel insurance policy. SUMF ¶ 12. Finally, customers receive a separate email from Allianz with their policy. SUMF ¶ 13. Aside from the actual price of the travel insurance policy set by Allianz—and the fact that the price is itemized separately from the customers' airfare—there is no affirmative statement made on Delta's website regarding how the price of the policy was calculated or how the monies collected for the travel insurance policies will be treated or allocated by Allianz once paid by the customer. SUMF ¶¶ 14-15.

### C. Delta is Compensated by Allianz for Providing Space on Delta's Website for Allianz to Offer Travel Insurance to Delta's Customers.

Allianz compensates Delta for marketing, which during the class period included allowing Allianz space in Delta's digital channel to market insurance to Delta's customers. SUMF ¶ 16. This is unsurprising in this e-commerce era. Indeed, a consumer survey demonstrates that *only a net 1%* of prospective purchasers of airline tickets through the Delta website understood the website to suggest that Delta does not receive compensation for the travel insurance sold through the website. SUMF ¶ 49. Mr. Cappillo's testimony confirmed that finding: he stated that he assumed Delta would be getting compensated for allowing Allianz to market travel insurance policies on Delta's website. SUMF ¶ 40.

While Allianz compensates Delta for allowing Allianz to market insurance to Delta's customers, no incoming funds resulting from the sale of insurance to Delta's customers are specifically earmarked or segregated to be paid to Delta. SUMF ¶ 17. Rather, Delta's compensation is determined by Allianz on a monthly basis. SUMF ¶ 19. And Allianz pays Delta out of the same operations account as Allianz's rent, salaries, and other operational costs. SUMF ¶ 18. Specifically, Delta's monthly compensation is determined by Allianz in relation to a variety of factors, including: (1) "data sets" sent by Delta to Allianz that month—*i.e.*, information conveyed to Allianz when a Delta customer indicates interest in purchasing travel insurance, and (2) the gross revenue of the overall business that month. SUMF ¶ 19. As the Marketing Agreement makes clear, the monthly payments Allianz makes to Delta are to compensate Delta for providing a platform for the marketing of Allianz insurance to Delta customers, which includes the right to offer travel insurance policies to Delta's customers through its website. SUMF ¶ 20.

### D. The Travel Insurance Policies Sold by Allianz to Delta's Customers are Among the Least Expensive Travel Products Sold in the Marketplace.

The price of the travel insurance policies sold by Allianz to Delta's customers is composed of both insurance costs as well as non-insurance services. SUMF ¶ 21. The cost of the Allianz products is consistent with products sold by competitors in the marketplace. SUMF ¶ 25. In fact, in most instances, the Allianz products offered on Delta's website are below the average cost for travel insurance products offered in the marketplace. SUMF ¶ 26. And in no instance were the Allianz products—as compared to competitor products—the most expensive. SUMF

¶ 28. In sum: there is **no** evidence that the marketing fees Allianz pays Delta inflates in any way the price of the travel insurance policies sold to Delta's customers.

### E.  Plaintiff's Purchase of Travel Insurance Through Delta's Website.

Mr. Cappillo has only flown with Delta for a single trip, and it was the only occasion he ever purchased travel insurance. SUMF ¶ 29. He purchased insurance on that occasion for a very specific reason: his checked bag was carrying valuables to a deceased family friend's memorial service. SUMF ¶ 30. Having insurance for this trip was thus important to Mr. Cappillo. SUMF ¶ 31. In fact, he sat down to purchase his flight knowing he was going to purchase travel insurance before ever seeing anything on Delta's website related to the travel insurance offer. SUMF ¶ 32. At the time he purchased his Delta flight and travel insurance, Mr. Cappillo did not think about whether Delta was being compensated by Allianz. SUMF ¶ 38. He testified that whether Delta was getting paid was not important to his decision of whether to buy the policy. SUMF ¶ 39. Mr. Cappillo also testified that he assumed Delta *was* being paid for allowing Allianz to advertise insurance policies on Delta's website. SUMF ¶ 40. Mr. Cappillo also apparently did not consider the policy price when making his purchase, as he did not pay attention to a communication from Allianz informing him that he did not need to purchase two policies to cover each one-way flight on Delta; he could have updated the "end date" of a single policy's coverage and received a refund on the second policy within 10 days. SUMF ¶¶ 35-37.

### F.  Plaintiff's Claims and Procedural Posture.

The operative complaint in this case—Plaintiff's Fourth AC—was filed on November 20, 2019 and includes a single FDUTPA and unjust enrichment claim, each based on the theory that Delta misrepresents to consumers that Delta has no financial interest in the travel insurance policies sold by Allianz through Delta's website and that the travel insurance is deceptively marketed as a "pass through." ECF No. 202. Plaintiff claims to be injured because he and the purported class "paid money to Delta as a result of its deceptive conduct." FAC ¶ 76. Plaintiff moved for class certification on December 16, 2019. ECF No. 205. Delta opposed that motion on the grounds that Plaintiff has failed to satisfy the requirements of either Rule 23(a) or 23(b)(3). ECF No. 206. For the reasons stated below, not only are Plaintiff's claims incapable of classwide resolution (ECF No. 206), they also fail as a matter of law.

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.  Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56, summary judgment is proper when, as here, the evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). "The burden of establishing that there is no genuine issue of material fact lies with the moving party. However, once the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial," Rule 56(e) "shifts to the non-moving party the burden of presenting specific facts showing that such contradiction is possible." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990). In addition, it is "[o]nly disputes over facts that might affect the outcome of the suit," that will "properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Hines v. CMRE Fin. Servs., Inc.*, 2014 WL 105224, at *2 (S.D. Fla. Jan. 10, 2014). And if "the evidence advanced by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

### B.  Plaintiff's Claims Fail Because There is no Evidence that Plaintiff Was Damaged by Delta's Alleged Wrongdoing.

In the Fourth AC, Plaintiff has eliminated any allegation that he paid a "higher" or "inflated" price for his travel insurance policy to cover what he claims to be the "illegal kickback that Allianz pays to Delta." *See* ECF No. 125 (TAC ¶¶ 135, 155). This is not surprising; at his deposition, Plaintiff conceded that he never shopped around or did any independent work to see if he could have purchased travel insurance for less. SUMF ¶ _. And Plaintiff's damages expert does not even attempt to calculate damages based on the price of Plaintiff's insurance policy. SUMF ¶¶ 22-23. Rather, Plaintiff's damages expert "present[s] a calculation of full refund damages" based on the amounts that Allianz paid to Delta under the Marketing Agreement untethered to whether Delta's compensation had any impact on the price of the travel insurance sold by Allianz. SUMF ¶ 24.[2] In fact, it is undisputed that the travel insurance policies sold by

---

[2] Colin Weir's declaration makes clear that his damages opinion has nothing to do with the price of the travel insurance; it is based purely on the allegation "that the kickbacks received by Delta for the sale of the [] trip insurance are illegal and thus should not have been made." Weir, ¶ 7. However, that allegation—that Delta is receiving payments that are "illegal" under Florida's

Allianz through Delta's website "are actually among the ***least expensive***" policies offered in the marketplace. SUMF ¶ 27. And there is no evidence that Plaintiff could have obtained a similar policy for less or that the payments Allianz made to Delta in any way impacted the price of Plaintiff's insurance policy.

Due to this evidence (or lack thereof), Plaintiff now only claims in the Fourth AC to have suffered "a monetary, out of pocket loss" because he purportedly "paid money to Delta as a result of its deceptive conduct." Fourth AC ¶ 112; *id.* ¶ 5. But Plaintiff's deposition testimony establishes that he did not, in fact, pay money to Delta under any deception. SUMF ¶¶ 32, 38-40. Plaintiff testified that at the time he purchased his Delta flight and travel insurance, he did not think about whether Delta was being compensated by Allianz. SUMF ¶ 38. And—even more importantly—he assumed that Delta was being paid for allowing Allianz to advertise insurance policies on Delta's website. SUMF ¶ 40. Finally, nothing on Delta's website persuaded Plaintiff to purchase travel insurance because he had made up his mind *before* sitting down to purchase his flight that he was going to purchase travel insurance. SUMF ¶ 32. Plaintiff accordingly did not pay any money to Delta as a result of any allegedly deceptive conduct.

Because—as described in more detail below—there is no evidence that Plaintiff paid an inflated price for his policy, was deceived by Delta's alleged conduct, or that he did not receive the value for which he paid, his unjust enrichment and FDUTPA claims both fail.

### i.   *Plaintiff received the benefit of his bargain with Allianz.*

Unjust enrichment under Florida law consists of four elements: "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198, n.3 (11th Cir. 2011). In addition, Plaintiff must demonstrate that he was "harmed in some way before courts will impose this equitable remedy." *Green v. McNeil Nutritionals, LLC*, 2005 WL 3388158, *5 (Fla. Cir. Ct. Nov. 16, 2005); *see also Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) ("'Unjust enrichment cannot exist where payment has been made for the benefit conferred.'") (citation

---

insurance code—cannot serve as the basis for Plaintiff's FDUTPA or unjust enrichment claims as the Court previously ruled in its Order on Delta's motion to dismiss the Second Amended Complaint.  ECF No. 121.

omitted). Thus, a plaintiff must demonstrate, among other things, that he "has conferred a benefit on the defendant . . . [and that] the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.'" *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (citation omitted); *see also Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1322 (S.D. Fla. 2009) ("There must be actual damages incurred before a plaintiff can recover for a claim of unjust enrichment."), *aff'd*, 395 F. App'x 583 (11th Cir. 2010). Here, Plaintiff claims Delta was "unjustly enriched" because Delta received compensation from Allianz in connection with Allianz's sale of travel insurance to Delta's customers. But the fact of Delta's compensation by Allianz does not establish the harm necessary for Plaintiff's claim of unjust enrichment to proceed.

At the time Mr. Cappillo purchased an airline ticket on delta.com, he selected that he also desired to purchase travel insurance. He paid money to Delta for his airline ticket. He also paid money to Allianz for a travel insurance policy. And it is undisputed that he received both his airline ticket and insurance policy. SUMF ¶¶ 34-35. In addition, Mr. Cappillo testified that—had he made a claim under the policy—he has no reason to believe that Allianz would not have provided coverage. SUMF ¶ 41. These facts—taken together with the evidence that the price of the Allianz travel insurance is not inflated—demonstrate that Plaintiff received the benefit of his bargain. Because Plaintiff lacks any evidence that he was harmed in some way or that he failed to receive adequate consideration for the price that he willingly agreed to pay for his travel insurance policy, his unjust enrichment claim fails. *Prohias*, 490 F. Supp. 2d at 1236 (dismissing unjust enrichment claim because the plaintiffs "received the benefit of their bargain"); *Van Zanen v. Qwest Wireless, L.L.C.*, 550 F. Supp. 2d 1261, 1267 (D. Col. 2007) (dismissing unjust enrichment claim based on allegation that plaintiff purchased an insurance policy from an unlicensed agent who received a commission because the plaintiff "obtained a valuable product for which they bargained and which they intend to keep"), *aff'd*, 522 F.3d 1127 (10th Cir. 2008). Thus, where, as here, the defendant "has given adequate consideration to someone for the benefit conferred, a claim for unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. 5th DCA 2007); *Moore v. GNC Holdings, Inc.*, 2014 WL 12634919, at *5 (S.D. Fla. Mar. 18, 2014) (granting summary judgment on unjust enrichment claim where, "[e]ven if Plaintiffs were deceived into purchasing the product, they paid only the market value

of that product … It would [thus] not be inequitable for Defendant to retain the money received from Plaintiffs' purchase of the Product.").

The Northern District of Illinois's recent decision in a related case that Plaintiff's counsel filed against United Airlines ("United") is instructive. *See Flores*, Case No. 1:18-cv-06571, Dkt. No. 58 (Order on Motion to Dismiss). In *Flores*—based on almost identical facts related to the sale of travel insurance through United's website—Judge Alonso dismissed unjust enrichment and Illinois Consumer Fraud Act ("ICFA") claims for failure to state a claim. The Court noted that Flores: (1) made a choice to purchase travel insurance—*i.e.*, "she could have declined the travel insurance;" (2) paid a price that she "was willing to pay for travel insurance;" and (3) "received the travel insurance" she paid for. *Id.* at 10-12. The Court held, therefore, that "she received the benefit of the bargain," and "was not injured." *Id.* at 12 (dismissing ICFA claim, in part, on the lack of any injury). The same is true here: Mr. Cappillo made the choice to purchase travel insurance, paid a price he was willing to pay, and does not claim that he did not receive the travel insurance. SUMF ¶¶ 30-32, 35.[3] His unjust enrichment claim accordingly fails.

### ii.    *Plaintiff's unjust enrichment claim suffers additional, fatal flaws.*

In addition to the lack of evidence of any actual damages, Plaintiff's unjust enrichment claim also fails because there is no material evidence of "inequitable" circumstances that would justify the equitable remedy of unjust enrichment in this case. *Baptista*, 640 F.3d at 1198. Plaintiff's unjust enrichment claim is predicated on the fact that Allianz compensates Delta under the Marketing Agreement without affirmatively disclosing that fact to consumers. But as the Court in *Flores* identified, even assuming *arguendo* that Delta is receiving a commission, "commissions are not inherently immoral, unethical, oppressive or unscrupulous." *Flores*, at 9. And even the "lack of disclosure" of the payment does not somehow make it "nefarious." *Id.* Indeed, "[a] wise consumer assumes . . . that the owner of a website gets a share of the sale of products sold on its website." *Id.* Nor is there anything "immoral, oppressive, unscrupulous or unethical about charging a consumer a price she is willing to pay." *Id.* at 11. The facts in this case—which are identical to those in *Flores*—likewise show nothing more than a run-of-the-mill ecommerce marketing relationship between Allianz and Delta.

---

[3] Indeed, Plaintiff purchased two policies for a single trip without making any investigation regarding whether one policy provided sufficient coverage for the entire trip, even after being advised to do so by Allianz, thereby demonstrating that he would pay twice as much as what was charged for a single policy because of his motivation for purchasing the insurance.

Specifically, the undisputed, material evidence shows that: (1) Plaintiff made the choice to elect to purchase the optional travel insurance; (2) Allianz set the price of the policy; (3) Allianz charged and collected payment from Plaintiff for the travel insurance policy; (4) Plaintiff received the travel insurance policy he paid for; (5) the price for the travel insurance policy was aligned with (or lower than) similar policies in the marketplace; and (6) Plaintiff assumed that Delta would be paid by Allianz for allowing Allianz space on its website to market travel insurance. SUMF ¶¶ 29-30, 6, 10, 35, 40, 25-28. These undisputed facts defeat Plaintiff's unjust enrichment claim because they establish an absence of any inequitable circumstances surrounding Plaintiff's purchase of travel insurance. Because there is no material evidence raising a triable issue of fact as to whether, vis-à-vis Plaintiff, it is "inequitable" for Delta to retain the compensation it receives from Allianz, Plaintiffs' unjust enrichment claim fails as a matter of law.

In order to prevail on a claim for unjust enrichment, Plaintiff must also establish that he **directly** benefitted Delta.[4] *See Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). The cases decided since the Florida Supreme Court's decision in *Kopel* have strictly construed this requirement. In *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825 (11th Cir. 2017), for example, plaintiff-insureds paid membership fees to a company which then passed a portion of those fees onto the insurer to pay the premiums. The Eleventh Circuit, in affirming dismissal of the unjust enrichment claim against the insurer, held that "even if [the insurer] ultimately retained a portion of the [plaintiffs'] membership payments, [] *Kopel* indicate[s] that the [plaintiffs] conferred (at best) an indirect benefit on [the insurer]." *Johnson*, 687 F. App'x at 830. *See also John C. Nordt, III, M.D. and Assocs., P.A. v. Colina Ins. Ltd.*, 2018 WL 2688793, *4 (S.D. Fla. Apr. 13, 2018) (granting summary judgment where evidence established at best an indirect benefit flowing from plaintiff to defendant). The evidence clearly establishes that Plaintiff did not confer a direct benefit on Delta here. SUMF ¶¶ 10, 16-18. Plaintiffs' unjust enrichment claim fails for this additional reason.

---

[4] In allowing Plaintiff's unjust enrichment claim to survive dismissal, the Court accepted as true the "pass through allegations," which included that Delta collected and retained fees. It is an undisputed fact that no such direct payment was made to Delta. SUMF ¶¶ 9-10.

### iii.    Plaintiff fails to satisfy FDUTPA's causation and damages requirements and cannot cure that failure based on the "pass-through" line of authority.

As with unjust enrichment, the well-established measure of damages where a consumer is allegedly misled about a product or service under FDUTPA is the "benefit of the bargain," *i.e.*, "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Gastaldi v. Sunvest Resort Cmtys., LC*, 709 F. Supp. 2d 1299, 1304 (S.D. Fla. 2010) (describing this standard as "well-defined"). It is well established that "actual damages" under FDUTPA is "benefit of the bargain,"—"'the value of the product as promised minus the value of the product delivered.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (citation omitted). Actual damages occur where the misleading conduct allows the defendant "to command a price premium and to overcharge customers …." *Id.* at 987; *Fitzpatrick v. Gen'l Mills Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (same); *see also State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1310 (S.D. Fla. 2018) ("[T]he law is clear that [] FDUTPA recovery depends on whether plaintiffs paid a price premium."); *Moore*, 2014 WL 12634919, *5 (granting summary judgment on FDUTPA claim where the evidence demonstrated that "no consumer paid a premium" and therefore there were no actual damages); *Walker v. Super 8 Worldwide, Inc.*, 2012 WL 13102078, at *4 (M.D. Fla. June 21, 2012) (granting summary judgment on FDUTPA claim where plaintiff did not produce any evidence of the difference in market value between the product he got and what he paid for it).

In addition, to prevail on his FDUTPA claim, Plaintiff must prove that Delta's allegedly deceptive acts *caused* his alleged damages. *See Flexiteek Americas, Inc. v. Plasteak, Inc.*, 2013 WL 6233175, *5 (S.D. Fla. Dec. 2, 2013) (explaining that causation is a necessary element of a FDUTPA claim and noting that "[c]ausation between the deceptive act or trade practice and the damages must be direct rather than remote or speculative."), *aff'd*, 603 F. App'x 994 (11th Cir. 2015). The record evidence is insufficient to create a triable issue of fact as to whether Delta's allegedly deceptive conduct caused Plaintiff any actual damages.

At most, the evidence shows that Allianz compensates Delta for allowing Allianz to market travel insurance to Delta's customers and that the compensation is not affirmatively disclosed to Delta's customers. Critically, however, there is no evidence that Plaintiff paid a

"price premium" for his travel insurance policy due to the compensation Delta receives from Allianz. Quite the contrary. The evidence shows that Plaintiff received precisely the product advertised at the value he paid for. SUMF ¶¶ 25-28. Plaintiff accordingly cannot establish a material dispute on the elements of causation and actual damages necessary to submit his FDUTPA claim to a jury. *See, e.g.*, *White v. Grant Mason Holdings, Inc.*, 741 F. App'x 631, 637 (11th Cir. 2018) (explaining that FDUTPA damages are not measured based on the alleged deception, but by the value of what the plaintiffs received versus what they were promised); *Gastaldi*, 709 F. Supp. 2d at 1306 (explaining that "[a] person who has suffered a loss as a result of a violation of the FDUTPA" may recover only "actual damages").

Plaintiff has insisted throughout this litigation that he can avoid proving causation and damages for his FDUTPA claim based on the "pass-through" line of authority. *See, e.g.*, ECF No. 151, at 18 (contending that under his pass-through claims, "Plaintiff need *not* prove that he paid a higher price for his policy"). But—as shown in Delta's opposition to Plaintiff's motion for class certification—the pass-through line of authority is inapplicable here. *See* ECF No. 206, at 13-16. And, in any event, Plaintiff stretches that line of authority beyond its logical limits, essentially collapsing the distinct elements of deception, causation, and damages required to establish a FDUTPA violation.

***First***, discovery has proven that this case does not fit within the pass-through line of authority. Most notably, there is no evidence that Delta is collecting and purporting to "pass through" any portion of the money paid by its customers for travel insurance. The price charged for the travel insurance is set by Allianz. SUMF ¶ 6. And the money paid by Delta's customers for travel insurance is charged by and collected solely by Allianz. SUMF ¶ 10. In addition, no funds resulting from the sale of insurance to Delta customers are earmarked or segregated by Allianz to be paid to Delta. SUMF ¶ 17. Rather, Allianz pays Delta out of the same operations account as Allianz's rent, salaries, and other operational costs.[5] SUMF ¶ 18. The evidence

---

[5] In *Flores*, the Court noted that the payments from Allianz to United are not in the form of a kickback. *Flores*, at 8 (noting that "Plaintiff often refers to the commissions as kickbacks, but that does not make it so."). Citing the Seventh Circuit's definition for kickback, the Court explains that under a "traditional understanding of a kickback: an agent, charged with acting for the benefit of a principal, accepts something of value from a third party in return for steering the principal's business to the third party." *Id.* Because United was "acting on its own behalf when it sold air travel on its website, and it was acting on its own behalf when it allowed travel insurance to be offered on its website," the "commissions were not kickbacks." *Id.* at 9. Plaintiff's attempt

therefore shows nothing more than a run-of-the-mill business relationship between Allianz and Delta whereby Allianz pays Delta for marketing space on Delta's website. This is unlike the pass-through cases where the defendant directly collected and kept a specific portion of a fee paid by the plaintiff. *See, e.g., Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. 3d DCA 2000) (applying pass-through analysis where the defendant collected and kept a "port charge," rather than passing that charge through to the port authorities); *Cabrera v. Haims Motors, Inc.*, 288 F. Supp. 3d 1315, 1325 (S.D. Fla. 2017) ("DMV E-File" and "registration and titling fees" were "charges that a reasonable consumer [] would likely think were mandated by and forwarded to the state" but because Defendant "kept the difference between the fees charged and the amount actually paid to register and title the [car]" Defendant's acts "*result[ed] in actual damages suffered by Plaintiff due to the overage.*") (emphasis added), *granting motion for relief from judgment on other grounds*, 2018 WL 5000016 (S.D. Fla. Jan. 24, 2018); *Turner Greenberg Assocs. v. Pathman*, 885 So. 2d 1004, 1006 (Fla. 4th DCA 2004) ("freight/insurance" charge which defendant represented it was "simply passing through," even though defendant retained a portion, resulting in an *inflated* delivery charge to plaintiff).

Also unlike the pass-through line of authority, Delta's website contains no affirmative representation stating that Delta has no financial interest in allowing Allianz to market travel insurance to Delta's customers. SUMF ¶¶ 14-15. But that is critical to the damages analysis in the pass-through cases: the plaintiff paid a fee that was described as one thing—*i.e.* a "port charge"—but was actually kept by the defendant. *Latman*, 758 So. 2d at 703. Judge Moreno addressed just this situation in *Bergman v. Royal Carribean Cruises, Ltd.*, 2005 WL 8156741 (S.D. Fla. Sept. 29, 2005). In *Bergman*, cruise lines arranged optional shore excursions for their passengers, but did not reveal that they were being compensated for booking the excursions. 2005 WL 8156741, at *2. The plaintiff attempted to rely on the pass-through line of authority in asserting a FDUTPA claim against the cruise line. *Id.* The court held, however, that the pass-through cases were inapposite and found no deception as a matter of law, explaining that, unlike in the pass-through cases, "[h]ere, passengers were only told how much to pay Defendants for an excursion. Defendants made no representations on how price was calculated[,] nor did they use terminology in their pricing section that would lead a passenger to think that money was going

to characterize the payments for insurance as a nefarious "kickback" should accordingly be rejected.

directly to a third party." *Id.* at *2. The same is true here, and the pass-through authority is thus inapplicable.

Application of the pass-through line of authority without an affirmative representation as to the fee or charge at issue would have the effect of requiring all businesses to affirmatively disclose whether they have a financial interest in any product they market and/or advertise—regardless of whether that financial interest has anything to do with the actual product sold or the price of the product sold. But that duty is found nowhere in the law. *See, e.g., Casey v. Fla. Coastal School of Law, Inc.*, 2015 WL 10096084, *15 (M.D. Fla. Aug. 11, 2015) (companies are not required to be wholly transparent and they are not prohibited from "publishing facts in the light most conducive to business"), adopting rep. and rec., 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015); *W. Sunrise Dev. Corp. v. Smoler*, 2016 WL 5369338, *2-3 (S.D. Fla. Sept. 26, 2016) (affirming grant of summary judgment for defendant because he owed no duty to disclose his financial interest in transaction); *Flores*, at 9 (noting that "Nordstrom does not post at its counters signs warning customers that its sales staff earns commission on sales, yet the Court is not aware of any cases holding that such practices constitute fraud or are unfair to customers"). The Court should accordingly follow *Bergman* and reject Plaintiff's effort to expand the pass-through line of authority beyond its logical limits.

***Second***, even if this case did fit within the pass-through rubric, nothing in that line of authority obviates the need for a plaintiff to demonstrate actual damages. *See* § 501.211(2), Fla. Stat (allowing a person to "recover actual damages" if they "***suffered a loss*** as a result of a violation of" the statute) (emphasis added). The damages analysis for the pass-through cases hinges on the fact that the plaintiff paid a specifically identified fee that was not used for its stated purpose, *e.g.*, a "freight/insurance" charge the defendant claimed to be "passing through," but did not, *Turner Greenberg Assocs.*, 885 So. 2d at 1006; fees described as a "fuel surcharge" and "environmental" charge that were not used for those purposes, *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1340-41 (S.D. Fla. 2016); and a defendant keeping more than the "portion" of the insurance premium it claimed to be keeping, *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1358-59, 1366 (S.D. Fla. 2018). These cases do not stray from the "price premium" or "benefit of the bargain" principal underlying FDUTPA—a plaintiff paid a price or fee and did not receive the value and/or benefit of the bargain because that fee was not used for its stated purpose. Plaintiff here, however, does not have any evidence that he

paid an amount that was not used for its stated purpose. It is undisputed that he paid for an insurance policy (twice), received the policies he paid for, and did not pay an inflated price for the policy due to the fact that Allianz compensated Delta for the ability to market insurance to Delta's customers. SUMF ¶¶ 35, 25-28. Even under the pass-through line of authority, therefore, Plaintiff fails to create a triable issue of fact on the causation and damages elements of his FDUTPA claim. For this reason, Plaintiff's FDUTPA claim fails as a matter of law.

### C. There is No Material Evidence Creating a Triable Issue of Fact as to Whether Delta's Alleged Conduct is Likely to Deceive a Reasonable Consumer.

Plaintiff's FDUTPA claim also requires proof that a reasonable consumer would be deceived by Delta's website into believing that Delta is not compensated by Allianz for allowing Allianz to market travel insurance to Delta's customers. At a basic level—as shown by Mr. Cappillo's testimony—it would appear clear to a reasonable consumer that a large commercial enterprise like Delta would not allow another company to advertise its products on Delta's well-trafficked website for free. SUMF ¶ 40 (testifying he assumed Delta was being paid). Indeed, Judge Alonso made that very observation in *Flores*, noting that "[a] wise consumer assumes . . . that the owner of a website gets a share of the sale of products sold on its website." *Flores*, at 9. And Judge Moreno's holding in *Bergman* also supports that conclusion: without an affirmative representation as to "how [the] price was calculated" or any terminology "in the pricing section" as to where the money was going, Plaintiff lacks evidence that a reasonable consumer would believe that the price "was only a pass-through charge to" Allianz in which Delta had no financial interest. *Bergman*, 2005 WL 8156741, at *2-3.

Moreover, the only evidence Plaintiff has presented of likelihood of deception is insufficient to create a triable issue of fact. SUMF ¶ 14, Ex. L (the "Sowers Survey"). Rather than testing consumers' actual perception of Delta's website, the Sowers Survey improperly utilized a mere reading test to ask respondents whether Delta's website suggests Delta is being compensated by Allianz. SUMF ¶ 42 ("Simonson Report," ¶¶ 41, 46-51). Specifically, the Sowers Survey provided participants both a test image of Delta's actual website and a control image of the website which included a "disclaimer" that Delta received a certain percentage of the money paid for trip insurance. In an attempt to demonstrate likelihood of deception, the Sowers Survey then asked a series of leading questions while the participants had the two different pages in front of them, artificially increasing the measured misperception. SUMF ¶¶ 43-

45. But even with this flawed methodology, Sowers's results showed *only 27.4%* of respondents believed Delta is not being compensated. SUMF ¶ 46 (Sowers Survey ¶ 12). But those results are no different than chance, *i.e.*, the pattern of answers as to whether Delta's website conveyed it was or was not getting paid was consistent with mere guessing. SUMF ¶ 47 (Simonson Report ¶¶ 41, 52-55). The Sowers Survey, therefore, does not create a triable issue of fact on whether Delta's website is likely to deceive a reasonable consumer.

The survey performed by Hal Poret, on the other hand, demonstrates that the vast majority of respondents either believed Delta does receive payment (23%) or formed no belief at all about whether Delta receives payment (53%) when viewing Delta's website (a total of 76%). SUMF ¶ 49. Taken together with (1) the testimony of Plaintiff that he was not deceived; (2) that fact that Delta's booking path lacks any affirmative representation about how the money is allocated once collected; and (3) Judge Alonso's observation that "[a] wise consumer assumes . . . that the owner of a website gets a share of the sale of products sold on its website," there is insufficient evidence to create a triable issue of fact as to whether Delta's website is likely to deceive a reasonable consumer. The Court should accordingly grant summary judgment in favor of Delta on Plaintiff's FDUTPA claim for this additional reason.

### D.  Any Remaining Insurance-Based Claims Fail as a Matter of Law.

After discarding the factually unsupported pass-through allegations, it is clear that the thrust of Plaintiff's claims is that Delta's alleged conduct violates Florida's insurance code. *See, e.g.*, Fourth AC ¶ 2 ("Delta knows it lacks the required license to transact the business of insurance in any state, which is one reason it attempts to hide its role in the travel insurance"); ¶ 24 ("despite lacking a license to broker insurance policies, Delta retains or ultimately receives from Allianz an undisclosed kickback from every policy sold"); ¶ 25 ("Delta is also recommending trip insurance policies . . . in order to generate illegal kickbacks for itself").

Indeed, it is only by reference to and reliance on Florida's insurance code that Plaintiff attempts to demonstrate that this run-of-the-mill business relationship is somehow nefarious. *Id.* ¶ 30 ("Delta . . . cannot [] receive commission-based compensation when a consumer purchases a policy" due to "industry regulations"); ¶ 33 (Delta "must falsely represent the insurance charge as a pass-through fee, because it is prohibited from receiving insurance revenue"); ¶ 34 (calling Delta's payment from Allianz "categorical illegal conduct"). And it is also the only basis on which Plaintiff intends to calculate damages. That is made clear by Plaintiff's damages expert,

who expressly states that he calculates "full refund damages" based on the allegation that the "kickbacks received by Delta for the sale of the [] travel insurance are illegal and thus should not have been made." SUMF ¶ 24 (Weir, ¶ 7). But the Court already concluded that Plaintiff's unjust enrichment claim predicated on alleged insurance violations cannot proceed. ECF No. 121 at 15-16. And the same is true for Plaintiff's FDUTPA claim. *Id.* at 18 (advising Plaintiff "that FDUTPA liability does not arise to the extent that it is premised on the prohibitions found in Florida's insurance regulations"). Plaintiff therefore cannot attempt to prove that Delta's conduct is unjust or deceptive because Delta allegedly violates insurance regulations.[6]

Because, at bottom, there is no evidence offered in support of Plaintiff's FDUTPA and unjust enrichment claims other than Plaintiff's belief that the payment Delta receives allegedly violates insurance regulations, the claims fail as a matter of law.

### E.  The Filed Rate Doctrine Bars Plaintiff's Claims

Plaintiff's theory of damages in this case would require Delta to refund Plaintiff and the class the full amount AGA paid Delta under the Marketing Agreement, resulting in a significant reimbursement to Plaintiff and the purported class of the amounts they paid for their travel insurance policies.  Stated another way: Plaintiff's damages theory essentially contends that a portion of what he paid for his travel insurance policy is improper and should be refunded. Because the premium Plaintiff paid was based on a rate filed with the state regulators—his claims seeking reimbursement of those amounts, *i.e.*, attacking the amount he paid, violates the filed-rate doctrine.  *See* SUMF ¶¶ 7-8. This provides an additional reason Plaintiff's claims fail as a matter of law.

The filed-rate doctrine bars claims, as here, seeking damages which "'would, effectively, change the rate paid by the customer-[plaintiff] to one below the filed rate paid by other customers'…." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1322 (11th Cir. 2018); *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016) (*aff'd sub nom. by Patel)* ("The doctrine bars **all** claims which would *effectively* result in a rate lower than

---

[6] To be sure, Delta's conduct does not violate Florida's insurance code. But in any event, Plaintiff is precluded from basing his claims on Florida's statutory scheme, which would require Plaintiff to first complain to the Florida insurance department such that the Court would benefit from that department's action or inaction on such a complaint, and even then his claim would lie against *the insurer* based on Florida's regulatory scheme. Here, Plaintiff is asking the Court to substitute its judgment for that of the licensing branch of Florida's insurance department and circumvent those procedures and restrictions.

the filed rate.") (emphasis in original). The Eleventh Circuit "has firmly embraced the filed-rate doctrine and does not hesitate to invoke it when circumstances are appropriate." *Fowler*, 277 F. Supp. 3d at 1327.  As the Eleventh Circuit explained in *Patel*:

> Two rationales underlie the doctrine. The first, which is known as the "nondiscrimination principle," is that all rate-payers should be charged the same rate for the regulated entity's service. The second, which is termed the "nonjusticiability principle," is that duly-empowered administrative agencies should have exclusive say over the rates charged by regulated entities because agencies are more competent than the courts at the ratemaking process. These two principles are "applied strictly" meaning that the filed-rate doctrine bars "a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand is *implicated* by the cause of action the plaintiff seeks to pursue."

*Id.* at 1321-22, 1323 (emphasis in original; internal citation omitted) (specifying that the filed-rate doctrine applies if "the cause of action effectively contests the inclusion of certain charges in … a rate filed with the appropriate administrative agency").

*Patel* is squarely on point and dispositive of Plaintiff's claims here. In *Patel*, the plaintiffs alleged they paid inflated amounts for their insurance because the premiums they paid included the cost of alleged kickbacks to the loan servicers placing the insurance. *Id.* at 1320. In affirming the district court's dismissal of the plaintiffs' RICO, unjust enrichment, and FDUPTA claims on the basis of the filed-rate doctrine, the Eleventh Circuit explained that the fact that "the plaintiffs are challenging the reasonableness of [the] premiums; and since these premiums are based upon rates filed with state regulators, plaintiffs are directly attacking those rates as being unreasonable as well." *Id.* at 1326;[7] *see also Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1287-88 (S.D. Fla. 2015) (same). The undisputed evidence demonstrates that Plaintiff is, like *Patel*, "challenging the reasonableness of" his premium by requesting that Delta be required to refund the portion of Plaintiff's premium that AGA allegedly paid to Delta. Plaintiff's claims, if successful, would thus "effectively change the rate paid by" Plaintiff "to one below the filed

---

[7] The court in *Patel* also made clear that "there is no fraud exception to the filed-rate doctrine, defeating plaintiffs' attempt at circumventing the rule by alleging a fraudulent kickback scheme." *Id.*; *see also Taffet v. Southern Co.*, 967 F.2d 1483, 1495 (11th Cir. 1992) ("It is [] '"the impact [a civil action] will have on agency procedures and rate determinations,' rather than the defendant's underlying conduct, [that] controls whether the filed-rate doctrine applies."). And this applies not just to fraud on a plaintiff but also to fraud on state regulators in the rate-setting process—as Plaintiff has attempted to allege, but cannot prove. *See id.* at 1495 (filed-rate doctrine applies even if "filed rate is obtained through fraud").

rate paid by other customers." *Patel*, 904 F.3d at 1322-23, 1325-26. The filed-rate doctrine forbids exactly that. Moreover, granting Plaintiff the relief he seeks also implicates the non-justiciability principle in that Plaintiff asks this Court to usurp the duly-empowered administrative agency's exclusive rate-setting authority. *Patel*, 904 F.3d at 1322-23. The Court should accordingly dismiss all of Plaintiff's claims under the filed-rate doctrine.

## IV.    CONCLUSION

For these reasons, the Court should grant summary judgment in favor of Delta on Plaintiff's FDUTPA and unjust enrichment claims.

Respectfully submitted this 13th day of January, 2020.

*s/ Lazaro Fernandez, Jr.*
Lazaro Fernandez, Jr.
Fla. Bar No. 716545
Email: lfernandez@stackfernandez.com
Denise B. Crockett
Email: dcrockett@stackfernandez.com
Fla. Bar No. 327913
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
phone: (305) 371-0001
*Attorneys for Defendant, Delta Air Lines, Inc.*

-and-

Gayle I. Jenkins, Esq.
Email: gjenkins@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863
*Attorneys for Defendant, Delta Air Lines, Inc.*

-and-

David L. Balser, Esq.
Email: dbalser@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 572-4600

*Attorneys for Defendant, Delta Air Lines, Inc.*

-and-

Julia C. Barrett, Esq.
Email: jbarrett@kslaw.com
**KING & SPALDING LLP**
500 W. 2nd Street
Suite 1800
Austin, TX 78701
Tel: (512) 457-2053

*Attorneys for Defendant, Delta Air Lines, Inc.*