# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-81258-CV-MIDDLEBROOKS

JUDITH MARILYN DONOFF, on behalf of
herself and all others similarly situated,

      Plaintiff,

v.

DELTA AIR LINES, INC.,

      Defendant.

_____/



## ORDER ON MOTION FOR CLASS CERTIFICATION

THIS CAUSE comes before the Court on Plaintiff Walter Cappillo's Motion for Class

Certification, filed on December 16, 2019. (DE 205). Defendant Delta Air Lines, Inc. responded

on December 30, 2019, and Plaintiff replied on January 6, 2020. (DE 206; DE 212). For the

following reasons, the Motion is denied.

## BACKGROUND

Plaintiff alleges that Defendant, through its website and the online process of purchasing

trip insurance, engages in a scheme to induce its customers to purchase and overpay for insurance

while concealing its own financial interest in policy sales.

In the Fourth Amended Complaint, which is the operative complaint, Plaintiff raises a

claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and an unjust

enrichment claim. (DE 202). Plaintiff now moves for class certification of both claims. (DE 205).

## LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only.'" *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 349

(2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "A party seeking class certification must affirmatively demonstrate compliance with [Federal Rule of Civil Procedure 23][,]" *id.* at 350, and "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citations and internal quotation marks omitted). "Although the trial court should not determine the merits of plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003). Thus, a district court may "probe behind the pleadings before coming to rest on the certification question[,]"[1] as "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 131 S.Ct. at 2551; *accord Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n.12 (1978) ("The class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' . . . '[T]he more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.'") (internal citations omitted).

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in [Rule 23(a)], as well as at least one of the requirements set forth in Rule 23(b)." *Vega*, 564 F.3d at 1265. In addition, "[a] plaintiff seeking certification of a claim for class treatment must propose an adequately defined class that satisfies the requirements of Rule 23." *Abby v. Paige*, 282 F.R.D. 576, 578 (S.D. Fla. 2012) (citing *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 667 (S.D. Fla. 2009)). "The burden of proof

---

[1] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co.*, 350 F.3d at 1187.

Under Rule 23(a), a putative class may only be certified if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As to Rule 23(a)(1)'s numerosity requirement, the Eleventh Circuit "has [ ] made it abundantly clear that the burden to satisfy numerosity is on the plaintiff seeking to certify a class, and a plaintiff is not permitted to make a purely speculative showing that numerosity has been met." *Abby*, 282 F.R.D. at 578 (citing *Kelecseny*, 262 F.R.D. at 669); *see also Vega*, 564 F.3d at 1266-67. "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The Rule 23(a)(3) typicality requirement is similar to the commonality requirement but distinguishable because, "[a]lthough typicality and commonality may be related," the two concepts have been distinguished in that "[t]raditionally commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Vega*, 564 F.3d at 1275 (quoting *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)). Further, Rule 23(a)(4) mandates that the named plaintiff must prove that (1) no conflict of interest exists between her and the putative class members and that (2) the action will be vigorously prosecuted. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

3

If the threshold issue of Rule 23(a) has been resolved, courts must then determine whether the proposed certification of a class satisfies the requirements of Rule 23(b). *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Here, Plaintiff seeks certification under Rule both 23(b)(2) and (3). The party seeking certification of a class under Rule 23(b)(3) must demonstrate that common questions predominate over individual interests and that a class action is the superior means of adjudicating such a controversy. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "'[I]n determining whether class or individual issues predominate in a putative class action suit, [the Court] must take into account the claims, defenses, relevant facts, and applicable substantive law.'" *Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, 458 F. App'x 793, 794 (11th Cir. 2012) (quoting *Klay v. Humana Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)). Superiority is determined where the moving party can demonstrate "increased efficiency" through the class mechanism. *Jackson v. Motel 6 Multipurpose Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997). In determining whether the requirements of Rule 23(b)(3) have been satisfied, courts also look to:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (2) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (4) the likely difficulties in managing a class action.

*Vega*, 564 F.3d at 1277 (quoting Fed. R. Civ. P. 23(b)). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co.*, 350 F.3d at 1187.

4

A plaintiff bears the burden of establishing that he has standing. *See Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To establish standing, a plaintiff must prove: (1) he suffered an "injury in fact," or an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it is "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (internal quotations omitted) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003) (citing *Lujan*, 504 U.S. at 560-01).

## ANALYSIS

### I.   Rule 23(a) Requirements

#### a.  *Numerosity*

In the Motion, Plaintiff seeks certification of a class defined as: "All Florida citizens who purchased a trip insurance policy on [Defendant's] website within the applicable limitations period." (DE 205 at 14). Plaintiff argues that the numerosity component of Rule 23(a)(1) is satisfied because Defendant has "sold hundreds of thousands of trip insurance policies to Florida consumers through its website during the Class period." (*Id.* at 15).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir.1983). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega*, 564 F.3d at 1267.

The Eleventh Circuit's numerosity analysis in *Vega* is especially instructive here.  In *Vega*, the district judge granted a motion for class certification, certifying the following class: "[a]ll T–Mobile employees in Florida who received commissions for the sale of T–Mobile prepaid cellular telephone plans, but were charged back by T–Mobile for those commissions[.]"  564 F.3d at 1264.  The only evidence supporting the numerosity element was the testimony of a T-Mobile executive who stated that the number of T-Mobile employees during the class period was "in the thousands." *Id.* at 1267.  The Eleventh Circuit reversed the trial court's certification order, reasoning in part that this evidence was insufficient to establish the numerosity element for a class comprised exclusively of *Florida T-Mobile employees.  See id.* ("While this company-wide testimony easily would constitute a sufficient basis for a finding of numerosity as it relates to a nationwide class, the district court, significantly, certified a Florida-only class.").

The Court further acknowledged that, "T–Mobile is a large company, with many retail outlets, and, as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1)."  *Id.*  However, "a plaintiff still bears the burden of establishing every element of Rule 23 . . . and a district court's factual findings must find support in the evidence before it."  *Id.*  Because the district court's numerosity finding was "without the aid of a shred of Florida-only evidence [and] was an exercise in sheer speculation," the Eleventh Circuit concluded that the district court abused its discretion by finding the numerosity requirement was satisfied. *Id.*; *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013) ("[W]here a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone.").

In making the argument that the numerosity prong has been satisfied, Plaintiff relies on evidence that is almost identical to the evidence relied upon by the district judge in *Vega*.[2] Plaintiff specifically cites the deposition testimony of Elmar Trust—Defendant's Rule 30(b)(6) corporate representative. (*See* DE 205 at 15). In his deposition Trust was asked whether it was "fair to say that . . . in a typical year, in which you had responsibility for the travel insurance program, that hundreds of thousands of policies were sold to Delta's consumers?" And Trust responded "Yes." (DE 205-1 at 41:10-15). This statement appears to offer testimony of Defendant's nationwide sale of trip insurance and *not Florida sales.* Trust's deposition occurred on February 6, 2019, and around that time Plaintiff had filed a Second Amended Complaint indicating that he filed this lawsuit as a nationwide class action and not one limited to Florida citizens. (*See* DE 64 at 15 ¶ 63) (defining the class as all "persons in the United States who purchased a trip insurance policy on Delta's website").

Plaintiff also cites Exhibit D of his Motion in support of the numerosity requirement. (DE 205 at 15). Nothing in that Exhibit offers evidence regarding the number of insurance policies sold by Defendant during the class period. (*See generally* DE 205-4 at 2). Therefore, Plaintiff has failed to cite any record evidence supporting that the *Florida-only* class "is so numerous that joinder of all members is impracticable."

---

[2]Although Defendant has not raised the numerosity issue, I am required to independently analyze the Rule 23(a) factors in determining whether Plaintiff has established that certification is appropriate in this case. *See Martinez–Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n. 37 (11th Cir.2003) (noting a trial court's "independent obligation [under Rule 23(c)(1)] to decide whether an action was properly brought as a class action").

Although it is certainly tempting to conclude that numerosity is present in light of the size of Defendant's operations, I must resist the temptation as *Vega* forecloses such speculation. Moreover, the decision to deny this Motion is supported for other reasons, which I now discuss.[3]

**b. Adequacy**

The "'adequacy of representation' analysis 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representative[] and the class; and (2) whether the representatives will adequately prosecute the action.'" *Valley Drug Co.*, 350 F.3d at 1189 (quoting *In re HealthSouth Corp. Securities Litigation*, 213 F.R.D. 447, 460–461 (N.D. Ala. 2003)). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Id.*

After reviewing the deposition of Plaintiff, I conclude that he is not an adequate representative of the putative class. In his reply, Plaintiff states that he seeks repayment of *all* money paid to Defendant from trip insurance proceeds. (*See, e.g.*, DE 212 at 9) ("The pass-through case law is uniform on this point—the actual damages are the amount of the kickback Delta received from Allianz."). To properly seek these damages under the "pass-through" line of cases, Plaintiff (on behalf of the putative class) would have to ultimately demonstrate that a reasonable consumer would believe that absolutely no trip insurance proceeds were going to Defendant. This is because damages under the "pass-through" theory are equivalent to the *undisclosed profit*. *See, e.g., Turner Greenberg Assocs., Inc. v. Pathman*, 885 So. 2d 1004, 1008 (Fla. 4th DCA 2004) ("[A]n appropriate measure of damages is the undisclosed profit."). When he was deposed, Plaintiff was asked: "[w]hen you see that [the trip insurance provider] was advertising insurance

---

[3]This analysis is not exhaustive, nor intended to address the merits of every class certification requirement set forth Rule 23.

8

on [Defendant's] website, did you assume that [the trip insurance provider] was paying [Defendant] to make that advertisement?   Plaintiff ultimately responded "[t]he advertisement, yes." (DE 206 at 168, Plaintiff's Deposition at 116:20-23, 117:12).

Plaintiff therefore believes that Defendant was receiving some compensation from the trip insurance provider for allowing it to advertise on Defendant's website. Under this belief, Plaintiff would only be entitled to the portion of the trip insurance proceeds Defendant received that exceeded the amount Plaintiff thought Defendant was receiving from the proceeds. This position is irreconcilable with the putative class's requested damages and the theory for those damages— the entire amount of trip insurance proceeds Defendant received because a reasonable consumer would believe that Defendant was not receiving *any proceeds*.[4]

Other portions of Plaintiff's deposition demonstrate that he is not an adequate class representative.  While Plaintiff purchased trip insurance in October of 2017, he did not believe he had any claim against Defendant for over a year. (DE 206 at 147, Plaintiff's Deposition at 77:2-7). Indeed, Plaintiff would never have known that he had a potential claim against Defendant had he not been informed by attorneys.  Plaintiff was asked "[d]id you think, 'I might have a claim related to this insurance policy,' or was it someone else who gave you that idea?" (*Id.* at 77:12-14). Plaintiff answered that he learned about his potential claim when he was approached by "Dan Bushnell," an attorney, who is Plaintiff's "friend, but also a suite mate where [he] works." (*Id.* at 77:16-78:6).  Bushnell did not approach Plaintiff until mid to late December 2018, which was over one year after Plaintiff purchased his trip insurance from Defendant. (*Id.* at 78:8).

---

[4]As discussed below, I reject the application of this measure of damages as it is inconsistent with FDUTPA's actual damages standard. However, this adequacy discussion demonstrates that, even assuming Plaintiff's damage theory is valid, class certification is inappropriate.

Additionally, Plaintiff has testified that the basis for his lawsuit is that Defendant "did not properly disclose information when it comes to their travel insurance and that they also obtained a commission as a result of that." (*Id.* at 103:9-12). The unlawful receipt of a commission contention is presumably based upon violations of Florida insurance laws; I previously dismissed that theory of liability. (*See* DE 121 at 16). The remaining basis for this lawsuit relates to whether Defendant's lack of disclosure of its receipt of trip insurance proceeds is an actionable FDUTPA and/or unjust enrichment claim. Plaintiff offers no independent factual basis for believing that these claims have any merit; instead, he received such information from counsel, meaning that much of the factual basis for Plaintiff's claims was derived from counsel. (*See, e.g.* DE 206 at 163, Plaintiff's Deposition at 105:15-25).

When considered in isolation, any one of these reasons (or the others mentioned in Defendant's response (DE 206 at 15-16)) may not establish that Plaintiff is an inadequate representative of the putative class. However, I am persuaded by the collective impact of these factors, and therefore I conclude that Plaintiff has failed to meet his burden of establishing that he is an adequate representative for this class.

**II.    Rule 23(b)(3) – Whether Common Issues Predominate**

Plaintiff's Motion suffers another flaw—individual issues predominate. "To determine whether common issues predominate, a district court first must 'identify the parties' claims and defenses and their elements' and 'then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial.'" *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1040 (11th Cir. 2019) (quoting *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016)). "The predominance requirement in Rule 23(b)(3) is 'far more demanding' than the commonality requirement found in Rule 23(a)(2), and 'tests

whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Carriuolo v. General Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

"Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." *Brown*, 817 F.3d at 1234. The inquiry then becomes whether common questions predominate over individual ones. The Eleventh Circuit has explained that "certification is inappropriate when 'after adjudication of the class wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individualized claims.'" *Sellers*, 941 F.3d at 1040 (quoting *Klay*, 382 F.3d at 1255).

### A. Individualized Evidence Regarding FDUTPA's First Element

In determining whether common issues predominate, I turn to the substantive law of Plaintiff's claims. Plaintiff first brings a claim under FDUTPA, which "prohibits '[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Carriuolo*, 823 F.3d at 984 (quoting Fla. Stat. § 501.204(1)). "The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Id.* "To satisfy the first element, the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Id.* at 983–84 (quoting *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*, 946 So.2d 1253, 1258 (Fla. 1st DCA 2007)). "Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably." *Id.* at 984. "A party asserting a deceptive trade practice claim need not show

11

actual reliance on the representation or omission at issue." *Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. 1st DCA 2000).

For multiples reasons, I find that individual issues predominate over common ones. First, it appears that Defendant's website displays trip insurance offers in many different ways. In a declaration attached to Defendant's Motion, an individual employed by the trip insurance provider states that "well over 1,000 different offers have been shown to [Defendant's] US customers in the [] Offer Box in [] Defendant's booking path." (DE 213 at 7 ¶ 8). The declaration also states that "[a]t any moment in time, about over 40 distinct offers are available to be displayed in the [] Offer Box on [Defendant's website] to US customers." (*Id.* at 7 ¶ 9). The apparent variability in the offers that consumers see when purchasing trip insurance demonstrates that individual issues predominate. *See, e.g.*, *Cohen v. Implant* Innovations, 259 F.R.D. 617, 643 (S.D. Fla. 2008) (example of where individual issues predominated since putative class members were shown different material that formed the basis of the FDUTPA claim). In this regard, resolving this case would require a jury to determine whether a reasonable consumer would have been deceived by each distinct trip insurance offer.[5]

## B. *Individualized Evidence Regarding Damages*

Moreover, I find that the alleged damages require individualized evidence making this action not susceptible to class determination. In arriving at this conclusion, I must briefly address the "pass-through" FDUTPA line of cases upon which Plaintiff bases his claim. In the context of a FDUTPA claim, the court in *Latman v. Costa Cruise Lines, N.V.* offered an analogy to demonstrate the deceptive nature of "pass-through" schemes such as the one Plaintiff alleges:

---

[5] This evidence would also need to be considered in the context of Plaintiff's unjust enrichment claim. Specifically, it would be relevant to whether it would be inequitable for Defendant to retain some or all of the trip insurance proceeds.

> Suppose that a company systematically overcharges its customers on sales tax. The hypothetical company pays the state the sales tax that it owes, and then keeps the overcharge for itself.
>
> We would not hesitate to say that an intentional overcharge of sales tax, which is kept by the company itself, is an unfair and deceptive trade practice and that the consumer must be repaid. That is so even though the consumers clearly were willing to pay the price charged—in the hypothetical example, they actually paid the sales tax overcharges—nor would it make a difference that the consumers paid no attention to the sales tax amount.

758 So. 2d 699, 703 (Fla. 3d DCA 2000) (citing *W.S. Badcock Corp. v. Myers*, 696 So.2d 776, 778–79 (Fla. 1st DCA 1996)).   When a plaintiff succeeds on a claim based upon this "pass-through" theory, "damages are sufficiently shown by the fact that the [plaintiff] parted with money for what should have been a 'pass-through' [] charge, but the [defendant] kept the money." *Id.* at 704.[6]

An examination of cases applying the "pass-through" theory demonstrates that it applies where a company makes some affirmative misrepresentation regarding how funds it obtains are being allocated. Take *Latman*, for example, where the defendant cruise line represented that certain fees for the plaintiffs' tickets were for "port charges." 758 So. 2d at 703.  In reality, however, a portion of the "port charges" were retained by the cruise lines.  Florida's Third District Court of Appeal concluded that these allegations plausibly stated a deceptive practice under FDUTPA. *Id.* "For purposes of FDUTPA, we think the inquiry is how a reasonable consumer would interpret the term 'port charges.'"  *Id.* The Court concluded that the term "port charges" "necessarily

---

[6]Because at the motion to dismiss stage Plaintiff alleged that Delta overcharged them for trip insurance and kept that overcharge, I denied Defendant's Motion to Dismiss utilizing the "pass-through" logic within *Latman*.  (DE 121).  While I noted that it may not be inequitable for Defendant to simply keep an advertising fee for each policy sold, I found that Plaintiff's allegations that Defendant has created and maintained a deceptive "pass-through" scheme suffices to show unjust enrichment at the pleading stage. I also utilized this "pass-through" theory in determining that Plaintiff stated an actionable FDUPTA claim.

constitutes a representation to a reasonable consumer that these are 'pass-through' charges which the cruise line will pay to the relevant port authorities (and possibly others)." *Id.*

In fact, Plaintiff has cited cases which it believes demonstrate that an affirmative intention representation is not necessary to establish FDUTPA liability using the "pass-through" theory. In one such case, *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349 (S.D. Fla. 2018), the plaintiff rented a self-storage space at the defendant's store.  Pursuant to the defendant's rental contract, the plaintiff was required to obtain insurance for the property he intended to store at the facility.  The defendant made a specific insurance policy readily available to its customers. It further affirmatively represented that a portion of the insurance premium covered its expenses "in servicing as a collection agent for the third-party insurance company." *Id.* at 1355.  In another portion of the rental agreement, defendant stated that "[a]ny insurance premium . . . is being collected for a third-party insurance provider pursuant to a separate agreement." *Id.* at 1356.  In reality, however, the defendant was retaining a much larger portion of the insurance premium than it represented.

Magistrate Judge Goodman concluded that these facts applied to the "pass-through" theory of FDUTPA liability.  Judge Goodman reasoned:

> Here, Coleman has sufficiently alleged that a consumer acting reasonably in the same circumstances would (or could) interpret the representations (in the Self-Storage Rental Agreement and the Personal Property Insurance Participation Form that CubeSmart gave to Coleman) to be that: (a) a third-party (i.e., not CubeSmart) sold the renter's insurance policies and (b) CubeSmart received only a "portion" of the premiums paid "applicable to the storage company's expense in collecting, accounting, and remitting payment to the Insurance Company."

*Coleman*, 328 F. Supp. 3d at 1362; *see also Maor v. Dollar Thirfty Auto. Grp., Inc.*, 303 F. Supp. 3d 1320 (S.D. Fla. 2018) (car rental service misrepresented the amount of money going to toll-

related fees and the damages for such representation equaled the amount of money Defendant retained that was supposedly going to the toll fees).

With the benefit of discovery being completed, it is clear that the facts in this case differ from the above cited cases in several ways. As one example, while the trip insurance is sold on Defendant's website, the fees are collected directly by the insurance provider. The insurance provider then remits a portion, albeit a significant portion, of the fees to Defendant. As another example, Defendant never makes any representation regarding whether it is being compensated by the trip insurance provider. For all of these reasons, I find significant flaws with Plaintiff's theory of his case.

However, assuming without deciding, that Plaintiff's unjust enrichment and FDUTPA claims have merit, I conclude that the "pass-through" measure of damages should not be applied to this case. It is not a just and reasonable method of calculating damages under the circumstances presented here. *See Comcast Corp. v. Behrend*, 559 U.S. 27 (2013). As discussed, the "pass-through" measure of damages equals the money that a defendant retains after misrepresenting that the money would go to a third party. Because FDUTPA provides for actual damages, which appear to be ascertainable in this case, I find that Plaintiff has not shown that it is proper to utilize the "pass-through" method of damages for the purposes of deciding this Motion. *See* Fla. Stat. § 501.211(2) ("In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs[.]").

Instead, in determining whether common issues predominate as to damages, I look to what actual damages putative class members may have suffered and the evidence required to substantiate such damages. "In the context of FDUTPA, 'actual damages' have long been defined as 'the difference in the market value of the product or service in the condition in which it was

delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).

To demonstrate actual damages Plaintiff would need to show that but-for Defendant obtaining a portion of the trip insurance proceeds, he (and putative class members) would have been able to secure trip insurance at a lower rate. Such a showing would necessarily require the Court to consider specific and individualized evidence regarding the availability of alternative trip insurance plans. This is because the price of the trip insurance offered to Plaintiff and the putative class members, and under the same theory the price of alternative trip insurance plans presumably fluctuates based upon several variables including, the particular flight route, booking date, flight date, flight time, etc. Establishing the measure of damages would require a highly individualized inquiry, rendering the class action format effectively unworkable. *See Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1240 (11th Cir. 2016) ("[I]ndividual damages defeat predominance if computing them 'will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable.'" (quoting *Klay*, 382 F.3d at 1260)).[7]

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification (DE 205) is **DENIED**.

---

[7]Plaintiff's reliance on the Eleventh Circuit's decision in *Carriuolo v. General Motors Co.*, 823 F.3d 977 (11th Cir. 2016) is misplaced. In that case, the plaintiff purchased a car that had a sticker on it falsely representing the safety ratings of the car. After finding that the false representation qualified as a FDUTPA violation capable of being resolved on a class-action basis, the Eleventh Circuit found that the potential for individualized damages did not defeat this conclusion. That was because the damages were the difference between the price paid and the price a reasonable consumer would have paid had she known of the false representation. Here, however, the difference in price a reasonable consumer would have paid for trip insurance differs based upon several unique circumstances regarding the specifics of that consumer's trip.

**SIGNED** in Chambers at West Palm Beach, Florida, this 27 day of January, 2020.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

17