UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:18-cv-81258-MIDDLEBROOKS/BRANNON

JUDITH MARILYN DONOFF, on Behalf of
Herself and All Others Similarly Situated,

CLASS ACTION

Plaintiff,

vs.

DELTA AIR LINES, INC.,

Defendant.

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RECUSAL

### INTRODUCTION

That Delta's response was predictable[1] makes it no less disappointing. Delta states that the Court should view Plaintiff's motion "with extreme skepticism" because it was filed the first business day after the Court denied his motion for class certification. Why should that merit skepticism? When one really considers what Delta is insinuating—that Plaintiff's counsel secretly knew but unethically withheld information requiring recusal until after losing a class-certification motion—Delta's position is preposterous on its face. It is also extremely offensive. Plaintiff had no reason to take a chance at class-certification with this Court, while knowing of a mandatory basis for recusal due to a financial interest, and then move for recusal and reassignment if the Court ruled unfavorably. That would be a ridiculous strategy, not to mention malpractice.

As stated in his motion, Plaintiff is well aware of the poor optics and negative inferences

---

[1] Quite literally. *See* [DE 229 at 2] (predicting "the accusations of gamesmanship that Delta is likely to cast in its response to this motion").

that could be drawn from the timing of his motion for recusal. But the notion that Plaintiff has been sitting on the information requiring recusal is absurd, especially when one considers the history of this case. In its first substantive order in this case, granting in part and denying in part Delta's motion to dismiss, the Court prejudged the case with the following gratuitous statement: "As this case progresses, however, I have serious doubts about Plaintiff's ability to ultimately *prove*, rather than simply *allege*, the unjust enrichment element of inequity and the FDUTPA element of deception. Plaintiffs face a steep ascent in the class certification, summary judgment, and trial phases." [DE 121 at 19.]

The writing was on the wall then—*in July 2019*. The Court did not mince its words as to how it viewed this case. Even putting aside Plaintiff's counsel's ethical and professional obligations to move for recusal as soon as possible if he had knowledge warranting it, Plaintiff's counsel had no incentive whatsoever to sit on information warranting recusal. The Court could not be clearer that it was already inclined to deny class certification and otherwise rule against Plaintiff, and Plaintiff had no reason to wait for the Court's predictions of its own rulings to materialize.[2] If Plaintiff knew about the extent of Berkshire's holdings in Delta at that time (as Delta did), he would have immediately moved to recuse.

But that's not all. To believe Delta's wildly offensive and implausible (and just to be clear, completely false) insinuation, the Court would also have to believe that Plaintiff continued to sit on this information (1) after the Court dismissed his RICO claims, simultaneously precluding any

---

[2] Delta, on the other hand, had all the incentive in the world to *not* supplement its Rule 7.1 disclosure or do anything that could risk reassignment to a new judge who might not have the same "serious doubts" about Plaintiff's case. Notably, by the time of the order with this statement, Berkshire had already maintained an ownership stake in Delta above ten percent for several months. If anything, it is *Delta* and its counsel that should be viewed with skepticism.

chance of treble damages or a *nationwide* class; (2) after the Court struck so-called "new" claims in Plaintiff's third amended complaint; (3) and after the Court denied a request for additional discovery regarding a third-party affidavit relied upon in Delta's opposition to class certification—among multiple other adverse rulings. The denial of class certification was by no means the first adverse ruling against Plaintiff. To suggest that Plaintiff waited until *this* adverse ruling to spring a basis for recusal that he had in his back pocket strains credulity.

So yes, Plaintiff agrees that the timing of the motion for recusal is unfortunate. But Plaintiff's counsel learned of the basis for recusal the day the motion was filed. That is a regrettable fact. And at that point, Plaintiff's counsel had no choice but to file the motion for recusal. The alternative—and what Delta is essentially saying Plaintiff's counsel should have done—would be to remain silent and withhold from the Court information mandating recusal, both an ethical violation and malpractice. Plaintiff has filed the motion for recusal *despite* the class-certification ruling being entered one business day before, *not because* of it. Filing a motion for recusal is a solemn enough decision alone that is never taken lightly. The decision is even harder on a timeline that invites the obvious accusations of gamesmanship that Delta shamelessly lodges (while ignoring its own express violation Rule 7.1). Plaintiff and his counsel cannot overstate how much they would have preferred to have learned the information regarding Berkshire's ownership of Delta at a more opportune time, and certainly before the class-certification denial that the Court all but foretold was coming more than six months ago in July 2019.

Delta's utterly implausible and false insinuations and accusations are only meant to detract from the fact that the fault lies with Delta and its counsel for this information not coming to light sooner. Delta had an express obligation to supplement its Rule 7.1 disclosure if another company came to own ten percent or more of its stock. Delta disclosed Berkshire's ownership in its Rule

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

7.1 disclosures in *other* cases. In *this* case, for whatever reason, it did not. Whether "inadvertent" or deliberate, Delta violated Rule 7.1 and caused this mess. Had Delta met its disclosure obligations, recusal would have occurred last year by motion if not *sua sponte* (as is the Court's apparent practice in cases in which Berkshire has a substantial interest in a party). Delta has only itself to blame.

As discussed below, Delta's arguments against recusal are meritless and recusal is mandatory. Delta tellingly (1) concedes that it violated its Rule 7.1 disclosure obligations, calling it "inadvertent," (2) has a factually-incorrect response to this Court's prior recusal orders involving entities Berkshire owns a ten percent or greater stake in, and (3) cites no authority for its fanciful argument that there can be no conflict where a party is being indemnified by a nonparty—which is true in *every* single case where a defendant has insurance. Far from Plaintiff engaging in "gamesmanship," it is Delta who seeks to take advantage of its own violation of Rule 7.1 by faulting Plaintiff for not learning earlier the very information that *Delta* was required to disclose. At bottom, it matters not whether Delta's Rule 7.1 violation was due to "inadvertence" or, more sinisterly, elation at the Court's stated "serious doubts" about Plaintiff's ability to prove his case. Either way, the facts having come to light now, recusal is mandatory.

## ARGUMENT

### A. Berkshire's more-than ten percent ownership of Delta requires recusal.

Delta attempts to cast its violation of Rule 7.1—a rule designed solely to provide judges with information warranting recusal—as "inconsequential." Delta's first attempt to downplay its failure to meet a simple but mandatory disclosure obligation is to argue that Berkshire does not *really* own more than ten percent of Delta and instead its ownership is only "indirect" because it is Berkshire's subsidiaries that own the stock. That argument is pure nonsense. Berkshire is

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

holding company so there is no difference between it "directly" owning Delta stock or its wholly-owned subsidiaries being the technical legal owner of the stock. And the Court need not take Plaintiff's word for that. Berkshire and Delta themselves do not make any distinction.

Warren Buffett made no such distinction in his annual letter to the shareholders of Berkshire, listing its 9.6% ownership in Delta among "*our* fifteen common stock investments that at yearend had the largest market value." *See* Warren E. Buffett, Letter to the Shareholders of Berkshire Hathaway, Inc. 12 (Feb. 23, 2019), *available at* https://www.berkshirehathaway.com/letters/2018ltr.pdf (emphasis added).[3]

Until its supplemental Rule 7.1 disclosure filed late last night after filing its response, Delta's own Rule 7.1 disclosures in other cases also made no distinction, simply listing Berkshire as a publicly-traded company that owns ten percent or more of its stock. *See, e.g.*, Ex. 5 to Pl.'s Mot. for Recusal [DE 229-5]. In fact, *in other cases where Delta is represented by the same counsel it has here, King & Spalding LLP*, Delta has simply disclosed: "Berkshire Hathaway owns more than 10% of the stock of Delta Air Lines, Inc." Ex. 1, Defendant Delta Air Lines, Inc.'s Corporate Disclosure Statement at 1, *Sound View Innovations, LLC v. Delta Air Lines, Inc.*, No. 1:19-cv-00659-CFC-CJB (D. Del. June 17, 2019) (ECF No. 11). Only when it serves its disingenuous "indirect ownership" argument has Delta (and its same lawyers) now seen fit to make hyper-technical distinctions in its Rule 7.1 disclosures. Now *that* is gamesmanship.

Finally, Delta's 2019 Notice of Annual Meeting and Annual Proxy Statement, which lists all beneficial owners of more than 5% voting stock, makes clear that Delta well understands that

---

[3] It also matters not whether Berkshire's ownership occurred "accidentally" or part of a deliberate investment strategy. Ownership is ownership. And Delta provides no reason why that should matter. Indeed, if it was accidental, the only reason buy-backs caused Berkshire's ownership level to exceed ten percent was because it already purposefully owned 9.6% of Delta stock.

while the shares are legally-owned by Berkshire's wholly-owned subsidiaries National Indemnity Company and GEICO, Berkshire has "shared voting and dispositive power *over all shares owned by these subsidiaries*." [DE 229-1 at 24] (emphasis added). In other words, Delta already fully understands that technical ownership by these subsidiaries is a distinction without a difference in the context of Berkshire.

And Courts agree. *See, e.g.*, *Harris v. Wells Fargo Bank, N.A.*, No. EDCV16645JGBKKX, 2016 WL 11525309, at *1 (C.D. Cal. Aug. 18, 2016) ("On June 20, 2016, Judge Snyder became aware that Berkshire Hathaway, Inc. owns 10% or more of Wells Fargo & Company's stock. Wells Fargo & Company is the parent corporation of Defendant Wells Fargo Bank, N.A. Because Judge Snyder owns stock in Berkshire Hathaway, Inc., she recused herself from the case, and the case was randomly reassigned to the undersigned on June 21, 2016.").

Indeed, *this Court* agrees. While Delta claims that this Court only recuses from GEICO cases because it is wholly-owned by Berkshire [DE 232 at 10], that is simply wrong. This Court recuses in all cases where Rule 7.1 requires a disclosure of Berkshire's interest; it is not limited to GEICO cases as Delta falsely suggests. For example, in *Biermann v. Wells Fargo Bank, N.A.*, this Court immediately *sua sponte* recused after Wells Fargo filed a corporate disclosure statement identifying Berkshire as a company with a ten percent or greater stake in Wells Fargo's parent company (the *exact* same situation as in *Harris* cited *supra*). Case No. 16-cv-81885 (S.D. Fla. Dec. 14, 2016) (ECF No. 12). Here, the ownership interest is even more direct than in *Biermann* because Berkshire's interest is in Delta itself, not any parent company. If the Court understood it had to recuse in cases like *Biermann*, there is no legitimate distinction that warrants a different result here.

And Delta's argument really serves to detract from the primary issues. Delta either did or

did not have an obligation to file a supplement to its Rule 7.1 disclosure in March 2019. It is clear that it did, as is exemplified by the fact that Delta has *now* filed a supplement and is undertaking a *national* effort to file supplements "in all of its cases filed before March 2019." [DE 232 at 4 n.3.] If Delta really believed its "indirect ownership" argument had merit, Delta would not be doing that.

### B.  Allianz's indemnification agreement with Delta is irrelevant.

A financial interest is a financial interest. Full stop. It matters not whether the outcome of the proceedings will somehow not affect the financial interest—whether due to indemnification or otherwise. *See, e.g*, *In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d 1297, 1308 (9th Cir. 1982) ("[I]n subsection (b)(4) of the statute, the phrase 'financial interest in the subject matter in controversy or in a party to the proceeding,' unlike the phrase 'or any other interest,' is not modified by the subsequent phrase 'that could be substantially affected by the outcome of the proceeding.' Thus, subsection (b)(4) establishes two classes of disqualifying interests: first, 'financial interests in the subject matter in controversy or in a party to the proceeding;' ***these interests require recusal whether or not the outcome of the proceeding could have any effect on the interests***; second, 'other interests;' these interests require recusal only if they could be substantially affected by the outcome of the proceeding." (emphasis added)).

Delta's argument that the fact that Allianz has an indemnification agreement with Delta makes its violation of rule 7.1 harmless is nonsense. If accepted, it would logically follow that Rule 7.1 and § 455 are meaningless and unnecessary so long as the defendant has insurance. That is not the law. Delta cites *no authority* to support its indemnification argument, because there is none. The ridiculousness of this argument makes clear the extent of Delta's desperation to mask its violation of Rule 7.1.

And as noted above, the effect of the outcome of the case on the Court's financial interest is *irrelevant* to the analysis. It is the financial interest alone that compels mandatory recusal. But regardless, Delta's argument is also factually wrong. Even with indemnification, Delta (and thus Berkshire) has a huge financial interest in this case. Plaintiff seeks to enjoin an extremely lucrative practice by Delta and, even without an injunction, a finding of liability would likely require Delta to reform its extremely-profitable practices with respect to sales of trip insurance on its website. Delta, not just its indemnitor, has a great stake in this controversy.

### C. The recusal motion is timely.

To the extent any timeliness requirement exists, it only requires Plaintiff to move for recusal promptly after learning the facts warranting recusal. Plaintiff has done that, filing the *same day* he and his counsel learned of the facts requiring recusal. And the Court can hardly blame Plaintiff's counsel for not discovering this information sooner when, taking their word, *Delta's* own counsel claims to have not known this information—despite the fact that Delta's counsel here, King & Spalding LLP, has notified *other courts* of Berkshire's ownership interest in *other cases*. *See* Defendant Delta Air Lines, Inc.'s Corporate Disclosure Statement at 1, *Sound View Innovations, LLC v. Delta Air Lines, Inc.*, No. 1:19-cv-00659-CFC-CJB (D. Del. June 17, 2019) (ECF No. 11), attached hereto as Exhibit 1. Plaintiff has met any timeliness requirement because he promptly moved to recuse when he learned of the basis for the motion. Again, Delta is to blame for not "promptly" supplementing its Rule 7.1 disclosure as required, which would have allowed Plaintiff to learn of Berkshire's interest in Delta sooner.

### D. The Court must vacate its prior orders or defer ruling on vacatur.

Vacatur of all prior orders is the required remedy for the § 455 violation. Delta cheekily asks: "Query whether Plaintiff would have claimed vacatur was necessary had the Court granted

his motion for class certification." [DE 232 at 1.] The answer yes, because it would be a violation of Plaintiff's counsel's professional obligations to not alert the Court of the mandatory basis for recusal of a financial interest in an adverse party. Further, Delta's insinuation that Plaintiff waited for an adverse ruling to raise the recusal issue is belied by the myriad unfavorable substantive rulings this Court has issued against Plaintiff throughout this case without any subsequent motion for recusal. And notably, Plaintiff seeks vacatur of *all* prior orders—favorable and adverse— because that is simply what the law requires. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 866–67 (1988); *see also Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 132–33 (2d Cir. 2003) ("Of course, it is burdensome to appellees for us to require a new trial. However, it is not unfair. As noted by the district judge, no updated Rule 9 disclosure statement was filed following the Chemical–Chase merger until September 2000. Chase/Chemical, or for that matter any of the appellees, *could have safeguarded against potential disqualification by revising the Rule 9 disclosure statements at the time of the merger*." (emphasis added)); *Harris v. Wells Fargo Bank, N.A.*, No. EDCV16645JGBKKX, 2016 WL 11486587, at *2 (C.D. Cal. July 14, 2016) ("To avoid any appearance of impropriety, and in the interests of protecting the public's confidence in the integrity of the judicial process, the Court VACATES Judge Snyder's June 15, 2016 Order, because the public might reasonably believe that Judge Snyder knew of Berkshire Hathaway's ownership interest prior to the date she issued her Order in favor of Wells Fargo.").

Alternatively, if the Court is unwilling to vacate its prior orders, it should still recuse and then defer ruling on the issue of vacatur to the reassigned judge.

## CONCLUSION

Plaintiff respectfully requests that the Court vacate all of its previous orders and issue an order of recusal.

Dated: January 30, 2020                     Respectfully submitted,

*s/ Alec H. Schultz*
Scott B. Cosgrove
  Fla. Bar No. 161365
Alec H. Schultz
  Florida Bar No. 35022
John R. Byrne
  Florida Bar No. 126294
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone: 305.740.1986
Facsimile: 305.437.8158
Email: scosgrove@leoncosgrove.com
Email: aschultz@leoncosgrove.com
Email: jbyrne@leoncosgrove.com
*Counsel for Plaintiff and the Class*


Paul J. Geller, Esq.
  Florida Bar No. 984795
Stuart A. Davidson, Esq.
  Florida Bar No. 84824
Jason H. Alperstein, Esq.
  Florida Bar No. 64205
Christopher C. Gold, Esq.
  Florida Bar No. 088733
Bradley M. Beall, Esq.
  Florida Bar No. 1010635
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Email: pgeller@rgrdlaw.com
Email: sdavidson@rgrdlaw.com
Email: jalperstein@rgrdlaw.com
Email: cgold@rgrdlaw.com
Email: bbeall@rgrdlaw.com
*Counsel for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

      I certify that on January 30, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which in turn will serve a copy by email to all counsel of record.

Lazaro Fernandez, Jr., Esq.
Denise B. Crockett, Esq.
STACK FERNANDEZ & HARRIS, P.A.
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001
Email: lfernandez@stackfernandez.com
Email: dcrockett@stackfernandez.com
Email: gmartich@stackfernandez.com
Email: mwolf@stackfernandez.com
*Attorneys for Defendant, Delta Air Lines*

David L. Balser, Esq.
Julia C. Barrett, Esq.
Katherine P. Nobles, Esq.
Edward Bedard, Esq.
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Email: dbalser@kslaw.com
Email: jbarrett@kslaw.com
Email: pnobles@kslaw.com
Email: ebedard@kslaw.com
*Attorneys for Defendant, Delta Air Lines*

Gayle I. Jenkins, Esq.
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863
Email: gjenkins@winston.com
Email: rsalyer@winston.com
Email: docketla@winston.com
*Attorneys for Defendant, Delta Air Lines*

                    */s/ Alec H. Schultz*
                      Alec H. Schultz

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM