**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:18-cv-81258-MIDDLEBROOKS/BRANNON**

JUDITH MARILYN DONOFF, on Behalf of            <u>CLASS ACTION</u>
Herself and All Others Similarly Situated,

               Plaintiff,

   vs.

DELTA AIR LINES, INC.,

               Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

SUMMARY OF DISPUTED MATERIAL FACTS .................................................... 3

LEGAL ARGUMENT...................................................................................................... 4

    A.    Plaintiff's claim is a Latman claim. .......................................................... 5

    B    The Amount of the "marketing fee" is a valid measure of damages. ....................... 9

    C.    Plaintiff has shown causation................................................................ 12

    D.    Plaintiff satisfies the elements of an unjust enrichment claim................................ 13

    E.    The benefit of the bargain analysis is irrelevant. .................................................... 16

    F.    Delta Ironically Admits that it is asking this Court to Apply the Wrong Legal Standard. .......................................................................................... 16

    G.    Delta's Filed-Rate Argument Fails based on Delta's Own Admissions. ................. 17

CONCLUSION................................................................................................................ 19

CERTIFICATE OF SERVICE ..................................................................................... 21

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Abels v. JPMorgan Chase Bank, N.A.*,
  678 F. Supp. 2d 1273 (S.D. Fla. 2009) ................................................................. 18

*Aceto Corp. v. TheapeuticsMD, Inc.*,
  953 F. Supp. 2d 1269 (S.D. Fla. 2013) ................................................................. 14

*Bowe v. Public Storage*,
  106 F. Supp. 3d 1252 (S.D. Fla. 2015) ............................................................. 10, 11

*Carriuolo v. GM Co.*,
  823 F.3d 977 (11th Cir. 2016) ................................................................. 2, 9, 13, 17

*CDC Builders, Inc. v. Biltmore-Sevilla Debt Inv'rs, LLC*,
  151 So. 3d 479 (Fla. Dist. Ct. App. 2014) ............................................................ 7

*City of Miami v. Bank of Am. Corp.*,
  800 F.3d 1262 (11th Cir. 2015) ........................................................................... 14

*Davis v. Powertel, Inc.*,
  776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ........................................................... 13

*Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*,
  198 F. Supp. 3d 1332 (S.D. Fla. July 26, 2016).......................................... 12-13, 16

*Democratic Republic of the Congo v. Air Capital Grp., LLC*,
  614 F. App'x 460 (11th Cir. 2015) .................................................................. 2, 16

*Dolan v. JetBlue Airways Corp.*,
  385 F. Supp. 3d 1338 (S.D. Fla. 2019) ..................................................... 11, 12, 15

*Feliciano v. City of Miami Beach*,
  707 F.3d 1244 (11th Cir. 2013) ............................................................................ 4

*Fid. Union Trust Co. v. Field*,
  311 U.S. 169 (1940)........................................................................................... 11

*Fitzpatrick v. Gen. Mills, Inc.*,
  635 F.3d 1279 (11th Cir. 2011) ............................................................................ 2

*FTC v. Peoples Credit First, LLC*,
  244 F. App'x 942 (11th Cir. 2007) ....................................................................... 9

*Hamilton v. Suntrust Mortg., Inc.*,
  6 F. Supp. 3d 1312 (S.D. Fla. 2014) ...................................................................... 14

*Hill v. First Nat. Bank*,
  84 So. 190 (Fla. 1920)............................................................................................ 8

*Idearc Media Corp. v. Kimsey & Assocs., P.A.*,
  2011 WL 1560653 (M.D. Fla. Apr. 25, 2011) ......................................................... 18

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015)..................................................................... 12

*Kopel v. Kopel*,
  229 So. 3d 812 (Fla. 2017)..................................................................................... 15

*Latman v. Costa Cruise Lines, N.V.*,
  758 So. 2d 699 (Fla. Dist. Ct. App. 2000) ....................................................... *passim*

*Morgan v. Pub. Storage*,
  No. 1:14-CV-21559-UU, 2015 WL 11233111 (S.D. Fla. Aug. 17, 2015) ......................... 7, 10

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689 (S.D. Fla. 2017) ............................................................................ 13

*Patel v. Specialized Loan Servicing, LLC*,
  904 F.3d 1314 (11th Cir. 2018) ............................................................................. 17

*Peoples Gas Sys. v. Posen Constr., Inc.*,
  931 F.3d 1337 (11th Cir. 2019) ............................................................................... 2

*Perkins v. Ottershaw Invs. Ltd.*,
  2007 WL 9701703 (S.D. Fla. Jan. 19, 2007) ........................................................... 18

*Premier Cruise Lines, Ltd., Inc. v. Picaut*,
  746 So. 2d 1132 (Fla. Dist. Ct. App. 1999) .............................................................. 5

*Refined Sugars Inc. v. S. Commodity Corp.*,
  709 F. Supp. 1117 (S.D. Fla. 1988) ......................................................................... 7

*Rubinstein v. Keshet Inter Vivos Tr.*,
  No. 17-61019-CIV, 2019 WL 4739402 (S.D. Fla. July 10, 2019) ............................. 15

*State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.*,
  20 F. Supp. 3d 1363 (S.D. Fla. 2014) ............................................................... 14, 15

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*,
   315 F. Supp. 3d 1291 (S.D. Fla. 2018) ................................................................... 14

*State, Office of Att'y Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*,
   946 So. 2d 1253 (Fla. Dist. Ct. App. 2007) ............................................................. 13

*Turner Greenberg Assocs., Inc. v. Pathman*,
   885 So. 2d 1004 (Fla. Dist. Ct. App. 2004) ............................................. 2, 9, 11, 13

*United States v. Acme Process Equip. Co.*,
   385 U.S. 138 (1966) ................................................................................................. 12

*United States v. Davio*,
   136 F. Supp. 423 (E.D. Mich. 1955) ....................................................................... 12

*Veale v. Citibank, F.S.B.*,
   85 F.3d 577 (11th Cir. 1996) ................................................................................... 11

*Weinberg v. Advanced Data Processing, Inc.*,
   147 F. Supp. 3d 1359 (S.D. Fla. 2015) .................................................................... 15

*Williams v. Wells Fargo Bank, N.A.*,
   No. 11-cv-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ............................. 14

*Zamber v. Am. Airlines, Inc.*,
   282 F. Supp. 3d 1289 (S.D. Fla. 2017) ........................................................... *passim*

## Statutes

Fla. Stat. § 501.204(1) ................................................................................................... 10

Fla. Stat. § 501.211 ....................................................................................................... 11

## Rules

Fed. R. Civ. P. 56(c)(4) ................................................................................................. 18

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Plaintiff Walter Cappillo ("Plaintiff") respectfully submits this response in opposition to Defendant Delta Air Lines, Inc.'s ("Delta") Motion for Summary Judgment (ECF No. 220). For the following reasons, the Court must deny the motion in its entirety.

## PRELIMINARY STATEMENT

Delta begins its motion with an abject falsehood, stating "the evidence shows that Delta and Allianz have a conventional business relationship whereby Allianz essentially rents space on Delta's website to market and sell travel insurance policies to Delta's customers." ECF No. 220 at 1.[1]  This is a complete misrepresentation of the record evidence, as Delta's own documents demonstrate that "Delta receives a 50% commission on each trip insurance policy sold," (ECF No. 202-7 at 5) and that Delta earns a "50% margin on each purchase." *Id.* That is not a "conventional business relationship" involving the "rental" of advertising space on a website. It is a prototypical Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") violation, as Delta leaves the consumer with the net impression that the insurance charge goes entirely to a third-party insurer, when Delta in fact retains 50% of each purchase.

Indeed, accepting Delta's theory would require the Court to wholly ignore the voluminous record in addition to the above admissions in Delta's own documents. For example, Delta now claims that Allianz Global Assistance ("Allianz") is simply renting advertising space from it, but ***nothing in the parties' contract says that***. In fact, the contract states that Delta is selling the personal "Transaction Data" of its customers to Allianz and receiving money for each set of personal data. ECF No. 202-10 at Ex. B (Schedule of Fees in marketing agreement). Then the contract refers to the "net [consumer] premium to be retained" by Allianz, and it states that this amount is directly affected by how much of each consumer's premium Allianz pays back to Delta. There could be no clearer FDUTPA pass-through violation when the operative contract literally states that Allianz is kicking back premium funds to Delta.

This fact is why Judge Martinez has already held, in a related case, that "[w]hether a reasonable consumer would interpret American's representations to mean that the trip insurance premium is a 'pass through' charge is thus a question of fact for a jury." *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1300 (S.D. Fla. 2017). The same result must occur here. Delta made the undisputed (and false) representation to Mr. Cappillo that Allianz, not Delta, was the "licensed

---

[1] Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

1

producer" of the insurance he was purchasing, a categorically false statement as Delta's receipt of a 50% commission makes it a "producer" (a/k/a broker) of the insurance. Moreover, Delta made a second affirmative misrepresentation to Mr. Cappillo by presenting his insurance as a separate line item charge, as opposed to bundling it with the price of his airfare. Delta also included an Allianz logo (and not Delta's logo) in the insurance offer box. These acts create the "net impression" that the trip insurance is a "pass-through" charge—one wherein Delta is ***not receiving 50% of Plaintiff's money***. And as stated, Delta's own documents, and its contract with Allianz, prove the pass-through scheme.

After falsely describing the nature of its relationship with Allianz, Delta proceeds to ask this Court to commit error by focusing on Mr. Cappillo's own subjective beliefs, claiming he knew that Delta was receiving money from Allianz. Not only is the suggestion false, as Mr. Cappillo had no idea Delta received 50% of his insurance premium, but it is irrelevant under binding precedent, as deception is assessed through ***an objective framework***. *See Democratic Republic of the Congo v. Air Capital Grp., LLC*, 614 F. App'x 460, 471 (11th Cir. 2015) (noting that, although "[s]ome courts have injected a subjective element into FDUTPA claims for unfair practices . . . deception is judged from an objective point of view"); *Carriuolo v. GM Co.*, 823 F.3d 977, 985 (11th Cir. 2016) ("the mental state of each class member is irrelevant"). Nor is Mr. Cappillo's subjective reliance an element of his FDUTPA claim. *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011). The Court should decline Delta's invitation to ignore binding precedent.

Finally, Delta makes the fanciful claim that Plaintiff has no evidence of damages to himself. This position again ignores the binding Florida law this Court must apply to this case. *Turner Greenberg Assocs., Inc. v. Pathman*, 885 So. 2d 1004, 1008 (Fla. Dist. Ct. App. 2004) ("[A]n appropriate measure of damages ***is the undisclosed profit***[.]"); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. Dist. Ct. App. 2000) ("Reliance and damages are sufficiently shown by the fact that the passenger parted with money for what should have been a "pass-through" port charge, but the cruise line kept the money."). Moreover, even if this Court were to improperly reject the binding pass-through precedent[2] and require Plaintiff to show that Delta's

---

[2] This Court must follow *Latman* and *Turner Greenberg*. "When we lack guidance from the Florida Supreme Court, we must adhere to the decisions of Florida's intermediate appellate courts…" *Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1339 (11th Cir. 2019).

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

50% commission increased the price of his policy, he has done that. Daniel Roth, the same individual who submitted a declaration to this Court, stated that "the amount of compensation offered to travel insurance distributors [e.g. airlines] **has a direct impact** on the types **and prices** of products offered to consumers." Plaintiff's Response to Delta's Statement of Undisputed Facts at Ex. 4(B) p. 10. So by the admission of Allianz's own employee, the 50% commission paid to Delta "has a direct impact" on the price of Plaintiff's policy. And this is no surprise, it is simple logic. If an insurer pays 50% of the premium price to an entity (Delta) that **admittedly provides no services** to the consumer, the value of the insurance is obviously less than the actual purchase price. It is for the jury, not this Court, to determine the damages amount, even if this were not a prototypical "pass through" case wherein the measure of damages is the undisclosed profit.

## <u>SUMMARY OF DISPUTED MATERIAL FACTS</u>

Delta's purported "undisputed material facts" section (ECF No. 220 at 3-5) is undisputed only if the Court ignores record evidence. First, Delta tries to distance itself from the representations made in the trip insurance offer box, falsely claiming that it has only "limited veto power" for advertising that would be "disparaging" to Delta. ECF No. 220 at 3. This is false, as Delta approves every aspect of the offer box, and it tests different offer box messages in conjunction with Allianz to maximize take rates. ECF No. 202-1. In fact, Delta's own documents show that in the past it has ordered changes to the offer presentation details due to customer complaints that certain marketing was a *"deceptive practice"* by Delta. *Id.*

Next, Delta admits to one of the core affirmative misrepresentations in support of Plaintiff's pass-through claim, namely that "the price of the insurance policy is itemized separately from the price customers pay Delta for their airfare." ECF No. 220 at 3. Exactly, which is why such affirmative misrepresentations give an objectively reasonable consumer the net impression that the insurance is a pass-through charge.

Then Delta claims that there is "no affirmative statement made on Delta's website regarding how the price of the policy was calculated." ECF No. 220 at 3. That is false, as Delta's website tells consumers that pricing is based on a percentage of their ticket price (for example, 6.25%). See Plaintiff's Response to Statement of Facts at Ex. 4(A). Those same percentage figures appear in Delta's contract with Allianz. ECF No. 202-10 at Schedule A.

However, Delta's greatest distortion of the factual record occurs when it discusses its compensation from Allianz. ECF No. 220 at 4. Here, Delta paints a picture that ignores reality,

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

once again claiming that it is unremarkable for a company such as itself to receive compensation for allowing Allianz to sell insurance on its website.  It is indeed unremarkable for companies to pay for advertising space, but that *is not what Delta and Allianz are doing here.*  Delta, by its own admission, is paid a *50% commission on all policy sales.*  ECF No. 202-7 at 5.  That is not an advertising fee, and as Brian Sowers' survey demonstrates, a material percentage of consumers have no idea that Delta is receiving *half their money.*  Ex. 5 to Plaintiff's Response to Delta's Statement of Facts.  Moreover, Delta admits to selling the personal data of its customers to Allianz when they have an "interest" (ECF No. 220 at 4) in travel insurance, thereby violating its stated privacy policy ("We do not sell your name or other personal information to third parties, and do not intend to do so in the future.").  Delta Privacy Policy, Sec. 7.1, https://www.delta.com/us/en/legal/privacy-and-security (effective date Nov. 2019).

Delta then makes the argument that no consumer insurance premiums are earmarked by Allianz to pay back to Delta.  That, however, is not what Delta's contract with Allianz says.  The contract states that Allianz will retain the "net premium" after Delta is paid, which can *only mean* that Delta is directly receiving consumer insurance premiums.  *See* ECF No. 202-10 at Schedule B.

Finally, Delta claims that there is no evidence that the marketing fees Allianz pays Delta inflate the price of the travel insurance.  This is yet another misrepresentation.  Daniel Roth, the same person who Delta used to submit a declaration in this case arguing the lack of inflation, *authored* an industry report saying "the amount of compensation offered to travel insurance distributors [e.g. airlines] *has a direct impact* on the types *and prices* of products offered to consumers."  Plaintiff's Response to Delta's Statement of Facts, Ex. 4(B) at p. 10.   Far from a lack of evidence as to price impact from Delta's kickback, Plaintiff has proven the matter with Allianz's own words.

## LEGAL ARGUMENT

When adjudicating Delta's summary judgment motion, this Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).  Additionally, "when conflicts arise between the facts evidenced by the parties, we [must] credit the nonmoving party's version."  *Id.*  Not only are there disputed facts on every material question, but Delta creates an entirely alternate factual

universe, then asks this Court to simply accept it as the truth when Delta's own documents show its falsity.

### A. Plaintiff's claim is a *Latman* claim.

Understandably because the precedent is so bad for it, Delta spends much of its motion trying to distinguish Plaintiff's claim from a *Latman* or "pass-through" claim. In *Latman*, Florida's Third District Court of Appeal held that cruise lines engaged in a "deceptive" practice under FDUTPA when they itemized a portion of passengers' ticket fares as "port charges" even though the cruise lines paid only a portion of the charges to third parties and kept the remainder as profit. *Latman*, 758 So. 2d at 703 ("We therefore conclude that where the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FDUTPA."). The *Latman* court also held that causation and damages were demonstrated—regardless of whether the Plaintiff subjectively relied on any representation—merely "by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money." *Id. Latman* stands for the proposition that a charge cannot be masked as going entirely to a third party when it is really a vehicle for additional profits for the defendant. *Id.*

*Latman* was based on the earlier decision in *Premier Cruise Lines, Ltd., Inc. v. Picaut*, 746 So. 2d 1132 (Fla. Dist. Ct. App. 1999). In *Picaut*, Florida's Fifth District Court of Appeal reversed a summary judgment in favor of cruise lines that billed passengers purported "port charges" but kept as profit the portion that was not used for port-side expenses. The court repeatedly made clear that what made the claim actionable was that the defendant cruise line was hiding a vehicle for additional profits under the guise of a charge for port operations. *Id.* at 1333 ("[I]f plaintiffs can show that the cruise line used 'port charges' as a vehicle to hide additional profits for its cruise operation, plaintiffs should be permitted to proceed with that portion of its class action related to these allegations."); *id.* at 1334 ("We reverse the summary judgment entered herein solely on the basis of the allegation that Premier engaged in an unfair or deceptive trade practice by including in its port charges expenses not related to its port stay or expenses not incurred by it for its 'port operation' and instead used this device for making additional profits from its cruise operation."); *id.* ("If, however, the trial court, after considering additional discovery, determines that there is a legitimate issue as to whether Premier engaged in a practice of hiding additional profits under the guise of port charges, it may wish to amend its previous certification to reflect that allegation.").

The facts of this case fit comfortably within the rubric of *Picaut*, *Latman*, and their progeny. At bottom, the net impression given to a reasonable consumer of trip insurance on Delta's website is that the charge for trip insurance is wholly for third parties and is not a profit vehicle for Delta. Delta's online booking path presented Plaintiff with offer boxes for various "trip extras," including an offer box for trip insurance. The trip-insurance offer box contained the following representation: "Recommended by AGA Service Company, *the licensed producer* and administrator of this plan." (emphasis added). Because a "producer" is a synonym for a broker, this statement effectively means that AGA Service Company—and not Delta—is the entity that receives a commission for the trip insurance. Furthering this false impression, (1) it is illegal under Florida law for an insurance company to pay a commission to someone who is not a licensed broker[3] and (2) after Plaintiff selected the "Yes" radio button to purchase trip insurance, the premium for the trip insurance was set out as a separate line item from Plaintiff's airfare price. Effectively, Delta's website gives reasonable consumers the net impression that the charge for trip insurance purchased on its website is not a vehicle for additional profits to Delta. In fact, however, Allianz pays Delta a percentage-based commission for each sale of a trip insurance policy on Delta's website, including the sale to Plaintiff. The commissions are staggering—as much as 50%. ECF No. 202-7 at 5.

Delta points to superficial distinctions—already rejected by other courts—to try to distinguish this case from *Latman*. Relying on an overly-literal interpretation of the label "pass-through" that is sometimes used to describe *Latman* claims, Delta argues that this case is not a "pass-through" because the funds paid by Plaintiff went directly to Allianz, and only later the percentage-based commission was paid by Allianz to Delta. In other words, Delta elevates the structure of the payment scheme over the substance of what the *Latman* and *Picaut* courts were concerned about. That is both wrong and an absurd reading of those decisions.

It is clear that the *Latman* and *Picaut* courts were concerned about charges deceptively disguised as going fully to third parties and not being profit vehicles for the defendant. That is the case here. It is a distinction without a difference that in *Latman* the cruise line collected the port

---

[3] As more thoroughly explained in Plaintiff's response to Delta's motion *in limine* to exclude evidence of illegality, a reasonable consumer would know the law, and thus the illegality of an unlicensed broker being paid commissions would be part of the reasonable consumer's net impression. [ECF No. 228 at 5–6.]

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

charge and retained a portion while in this case Allianz collected the premium and kicked back a percentage to Delta. In both cases, a reasonable consumer was given the net impression that the charge is going to a third party and that the defendant had no profit interest in the charge. And in both cases, that net impression was false because the defendant actually profited from the charge. Furthermore, from the reasonable consumer's perspective, the charge in this case was represented as a pass-through because it was made on Delta's website at the same time Plaintiff submitted payment for his ticket through Delta's website. *See Zamber*, 282 F. Supp. 3d at 1300 n.7 ("[T]he fact that the premium is paid via American's website is sufficient for the charge to be interpreted as a 'pass through.'").

Other courts have rejected the same argument that Delta makes here regarding the structure of the payments being material. As the *Zamber* court explained when American made the same argument that Delta copies here:

> American argues that the "pass through" cases are inapplicable because the payments are structured in a way that they are paid to the insurer and then a portion is paid by the insurer to American, as opposed to the funds being forwarded directly from American to the insurer with American retaining a portion. This argument is unpersuasive . . . .

> [T]he fact that the premium is paid via American's website is sufficient for the charge to be interpreted as a "pass through." Third, the Undersigned is not now convinced about American's view of this approach. ***The gravamen of a "pass through" claim is that a charge is represented as being paid to a third party rather than ultimately being kept by the defendant. The fact that some of the travel insurance money supposedly ends up in American's pocket (rather than all of it winding up with a third party) is the significant allegation.***

*Id.*; *see also Morgan v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 11233111, at *1 (S.D. Fla. Aug. 17, 2015) ("The Court, as it has previously ruled, disagrees with Defendant's position and finds that Plaintiffs can maintain a FDUTPA claim to recover the access fees ***paid back*** to Public Storage ***out of the PSTIP premiums*** based on Public Storage's alleged deceptive practice of representing that the PSTIP premium is transferred to a third-party, but is actually largely retained by Public Storage.").

"It is a fundamental principle of law that a person will not be permitted to do indirectly what he is not permitted to do directly." *CDC Builders, Inc. v. Biltmore-Sevilla Debt Inv'rs, LLC*, 151 So. 3d 479, 483 (Fla. Dist. Ct. App. 2014); *see also Refined Sugars Inc. v. S. Commodity Corp.*, 709 F. Supp. 1117, 1122 (S.D. Fla. 1988) ("Florida law does not permit an individual to do

indirectly what it prohibits that individual from doing directly."); *Hill v. First Nat. Bank*, 84 So. 190, 193 (Fla. 1920) ("It would permit defendants to do indirectly what they are enjoined from doing directly, and thereby defeat the beneficial purpose of the law. ***Judicial sanction should not be given to a construction which leads to this result.***").  Were the Court to grant summary judgment to Delta based on the path of the money—a consideration wholly divorced from an analysis of whether a reasonable consumer would be misled by the net impression of Delta's website and a position consistently rejected by other courts—it would allow exactly that. Any business could circumvent FDUTPA by simply changing a practice of retaining a portion of a charge represented as a "pass through" to having the third party kick back the charge instead. Florida law does not condone such an overly-formalistic approach. It is fanciful to suggest that *Latman* would have turned out any differently if the cruise lines were kicked back a percentage of the port charges rather than retaining a portion in the first instance.  Granting summary judgment would encourage defendants to defraud their customers by hiring a third-party bagman to launder customer money back to the defendants.

Likewise, it is irrelevant that Delta and Allianz were sophisticated enough to funnel the percentage-based commission through an "operations account" rather than have Allianz immediately kick back the percentage to Delta. Discovery has overwhelmingly shown that Allianz and Delta understood the payments were commissions and that—contrary to the terms of their own marketing agreement—the payments were a percentage of the premiums paid by consumers rather than any fixed marketing fee. ECF No. 202-4 (admitting that payments were disguised).  It is thus clear that a portion of the premiums themselves—a percentage agreed upon between Delta and Allianz—were a hidden profit vehicle for Delta masked as going to third parties.  Indeed, the ***contract admits this fact***, stating that Allianz receives a portion of the "net premium" (ECF No. 202-10 at Schedule B), thereby proving that Delta receives the rest of the premium as a commission.

Delta also tries to distinguish *Latman* on the basis that "Delta's website contains no affirmative representation stating that Delta has no financial interest in allowing Allianz to market travel insurance to Delta's customers." ECF No. 220 at 18. That statement is false. Delta's website contains that affirmative representation that ***a different entity*** is "the licensed producer" of the trip insurance policies. Because a producer is synonymous with an insurance broker, this is tantamount to representing that Delta is not acting as the insurance broker, *i.e.*, is not the one receiving a

commission for a sale of insurance. And again, that misleading impression is reinforced by the illegality of Delta receiving commissions and Delta's itemizing the premium as a separate charge from other charges, such as airfare and taxes, with Allianz's logo affixed to that charge (which are both additional affirmative misrepresentations).

But Delta's argument is also irrelevant because it presupposes that an affirmative false statement is necessary for a FDUTPA claim, another argument this Court cannot accept because binding precedent rejects it. FDUTPA applies to both representations and omissions. *Carriuolo*, 823 F.3d at 984 (stating that plaintiff "need not show actual reliance on the representation ***or omission*** at issue"); *Turner Greenberg*, 885 So. 2d at 1006 n.1, 1009 (affirming class certification expressly based on "***failure to disclose***" FDUTPA theory). Indeed, under FDUTPA's net-impression test (adopted from the FTC Act), if a statement is likely to mislead a reasonable consumer "then it makes no difference if the statements are 'technically or literally true.'" *Zamber*, 282 F. Supp. 3d at 1299 (quoting *FTC v. Peoples Credit First, LLC*, 244 F. App'x 942, 944 (11th Cir. 2007)).

To be sure, in *Latman* itself there was no affirmative representation that the cruise lines did not have financial interest in the port charges. And the term "pass through" was never included in any of the cruise lines' representations to their passengers. Furthermore, as Judge Martinez and Judge Goodman have observed, the label of "port charges" in *Latman* "was technically true because at least some of the charge went to the port." *Id.* at 1300. Nevertheless, the *Latman* court held that the representation was deceptive under FDUTPA.

Here, the net impression of Delta's website was that Plaintiff's premium would go to Allianz and that, at best, any commission would go to "AGA Service Company, the licensed producer." That is false. Instead of the premium only going to third parties, Delta had a significant hidden profit interest in the premium Plaintiff paid for his trip insurance. That is exactly the type of a deceptive practice that *Latman* holds is actionable. The Court should reject Delta's superficial distinctions to try to circumvent *Latman*.

**B.  The amount of the "marketing fee" is a valid measure of damages.**

Delta attempts to mislead the Court into believing that—regardless of context or the nature of a FDUTPA violation—damages under FDUTPA are ***always*** measured by the difference in market value between the product or good the plaintiff paid for and the product or good actually received. That argument is frivolous.

What Delta fails to comprehend—or does not want this Court to comprehend—is that not every FDUTPA claim must be based on receiving a product or service in a different condition than was promised. While **most** FDUTPA claims can be described that way, FDUTPA is much broader. FDUTPA is more than a breach-of-warranty statute. It prohibits **any** "unfair or deceptive acts in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Thus, while the "difference in value" damages measure is used in **most** FDUTPA cases because **most** cases deal with a consumer's receipt of a product of lesser value than advertised, that damages measure is not applicable to **all** FDUTPA cases, namely where the claim is based on a different type of deceptive act. Delta's one-size-fits-all approach is utterly wrong.

The seminal case is *Latman*. Notably, *Latman* had **nothing** to do with selling a product or service in a different condition than was promised. And thus, the damages measure was not the "difference in value" damages generally used in such cases. Instead, "damages [we]re sufficiently shown by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money." *Id.* The *Latman* court never once referred to any "difference in value" measure of damages, thus confirming that the "difference in value" measure is *not* the exclusive damages measure for FDUTPA claims. *See also Morgan*, 2015 WL 11233111, at *1 ("This [difference in value] measure of damages is helpful where there is an actual product or service being provided, and the defendant's deceptive act alters the product's or service's value. **FDUTPA damages are not, however, limited to this measure of damages**.").

What's more, Judge Ungaro specifically addressed this very issue in an analogous case. In *Bowe v. Public Storage*, Judge Ungaro explained that while other cases have iterated a "difference in value" measure of damages under FDUTPA, "the cases cited in *Gastaldi* and others applying that standard arise under factually dissimilar circumstances." 106 F. Supp. 3d 1252, 1269 n.7 (S.D. Fla. 2015). Instead of relying on an inapposite damages measure, Judge Ungaro faithfully applied the damages measure required under *Latman* under facts nearly identical to those in this case: "[U]nder these circumstances, analogous to the port charges in *Latman, the full amount of the access fees would then be an appropriate measure of FDUTPA damages*." *Id.* at 1270. Likewise here, under these facts the proper measure of damages—as required by Florida appellate decisions **binding**[4] on this Court—is the full amount of the commission Allianz paid to Delta (regardless of

---

[4]  Where, as here, there is no authoritative decision from the Florida Supreme Court, decisions of state intermediate appellate courts are binding on this Court with respect to questions of state law.

whether it is labeled a kickback or "marketing fee" or something else) in connection with Plaintiff's trip insurance policy.

Other cases also recognize that, in this context, the traditional FDUTPA "difference in value" damages measure used in *most* FDUTPA cases is inapplicable, and instead recognize that the damages are the amount represented to be part of the charge of a third party but that is actually kept by the defendant. *Zamber*, 282 F. Supp. 3d at 1300 ("[D]amages are shown by the fact that Plaintiff parted with money for what should have been a 'pass through' charge but that was instead kept by American."); *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1351 (S.D. Fla. 2019) (same); *Turner*, 885 So. 2d at 1008 ("[A]n appropriate measure of damages is the undisclosed profit[.]").

Furthermore, whether the plaintiff paid a price premium is *irrelevant* to the type of FDUTPA claim recognized in *Latman*. Again, in *Bowe*, Judge Ungaro rejected the notion that the measure of damages for a FDUTPA claim in this context depends on a price premium being paid. 106 F. Supp. 3d at 1270 ("One way to interpret *Latman* is that the value of the 'port charge' is what was passed through to the cruise line and therefore everything the cruise line kept was excess above the actual value. But that is not how subsequent decisions have interpreted *Latman*. In *Berry*, the court reasoned 'in *Latman*, it was not the excess amount of the fee that was deceptive, but rather the fact that the company charged what appeared to be a pass-through fee for a third-party but retained a portion for itself.'"). Instead, all that matters is whether a charge that defendant represents as going to a third party is actually retained by the defendant.

While a price premium is not even required to be shown, even if it were required, on this record there is at least a question of fact for the jury as to whether Plaintiff paid an inflated price equal to the commission that Allianz paid to Delta.[5] A commission is an underwriting expense that goes into the premium for an insurance policy. It strains credulity that a 50% commission rate has no effect on the premium for an insurance policy. It is both common sense and a long-recognized

---

*Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940); *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996). This Court lacks any authority to ignore *Latman* and its progeny.

[5]  It should also be noted that, in addition to damages, Plaintiff seeks declaratory and injunctive relief for his FDUTPA claim. Even if he had no damages (he clearly does), that would not be a basis to grant summary judgment as to the FDUTPA claim for declaratory and injunctive relief. *See* Fla. Stat. § 501.211 (allowing for declaratory and injunctive relief under FDUTPA "[w]ithout regard to any other remedy or relief to which a person is entitled").

common-law presumption that a kickback is included within, and thus artificially inflates, a contract price. The Supreme Court has expressly recognized that kickbacks "necessarily inflate the price" to a buyer. *United States v. Acme Process Equip. Co.*, 385 U.S. 138, 144 (1966); *see also United States v. Davio*, 136 F. Supp. 423, 428 (E.D. Mich. 1955) (noting that "commissions or kickbacks" "represent a loaded price" because the seller would have otherwise "sold the goods or services involved at a price less the amount of the bribe"). And courts recognize that it is reasonable to infer that the corresponding price inflation will usually be *more* than the amount of the kickback. *Acme*, 385 U.S. at 144 ("[H]e will be tempted to inflate that proposal by more than the amount of the kickback."); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 379 (S.D.N.Y. 2015) ("If the cartel companies were paying three percent in bribes and kickbacks, it is reasonable to infer that the corruption scheme allowed them to inflate the contract prices by considerably more than three percent. Otherwise, the bribery scheme would not be worth their while."). This is particularly so where, as there, the kickback is 50% of the "premium," *i.e.*, Allianz was willing to and effectively did accept half the charge for the premium. Indeed, Allianz's own employee, Daniel Roth, expressly noted that the amount of the commission kickbacks paid to airlines "***has a direct impact*** on the types ***and prices*** of products offered to consumers." Plaintiff's Statement of Facts, Ex. 4(B) at p. 10. Thus, while evidence of a price premium is not even required to prevail on a FDUTPA claim, there is at least a question of fact here as to whether the commission inflated the premium paid by Plaintiff.

### C. Plaintiff has shown causation.

Again, with respect to causation, Delta tries to mislead the Court into ignoring *Latman* and requiring *all* FDUTPA claims to follow a cookie-cutter approach. In *Latman*, causation was shown "by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money." 758 So. 2d at 703. Other cases, too, invariably hold that causation is shown where a plaintiff parts with money that should have gone to third parties, but was instead a hidden profit vehicle for the defendant. *See, e.g.*, *Dolan*, 385 F. Supp. 3d at 1351 ("In short, '[u]nder FDUTPA, causation and damages are shown by the fact that [the p]laintiff parted with money for what should have been a "pass through" charge but that was instead kept by [the defendant airline].'" (alterations in original)); *Zamber*, 282 F. Supp. 3d at 1300 ("Under FDUTPA, causation and damages are shown by the fact that Plaintiff parted with money for what should have been a "pass through" charge but that was instead kept by American); *Deere Constr.,*

*LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1340 (S.D. Fla. July 26, 2016) ("Plaintiff has also clearly demonstrated the causal connection between Defendants' misrepresentations and Plaintiff's loss: Plaintiff and the putative class members have been aggrieved by Defendants' unfair and deceptive practices by submitting payments for what they believed were charges associated with fuel and environmental costs, when in fact those charges were merely ways for Defendants to make additional profit.").

To defeat causation, Delta repeatedly—and disingenuously—refers to statements by Plaintiff regarding his subjective beliefs and motivations when purchasing trip insurance on Delta's website. These are wholly irrelevant—as case after case holds. It is well-established that whether Plaintiff subjectively relied on Delta's deceptive statements is immaterial to his FDUTPA claim. *Carriuolo*, 823 F.3d at 985 ("General Motors is incorrect to suggest that the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it."); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2017) ("[A] deceptive practice can cause a consumer damages even if the consumer does not rely on the deceptive practice when purchasing a particular product."); *State, Office of Att'y Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007) ("[A] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *Turner*, 885 So. 2d at 1009 ("[A] demonstration of reliance by an individual consumer is not necessary in the context of FDUTPA."); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) ("[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances."); *Latman*, 758 so. 2d at 703 ("That is so even though the consumers clearly were willing to pay the price charged—in the hypothetical example, they actually paid the sales tax overcharges—nor would it make a difference that the consumers paid no attention to the sales tax amount. We think such a claim would be actionable under FDUTPA."). Given the overwhelming binding case law on this issue, Delta's attempt to mislead the Court into engrafting a subjective component to FDUTPA claims borders on bad faith. It certainly does not disprove causation.

### D. Plaintiff satisfies the elements of an unjust enrichment claim.

"There are three elements of an unjust enrichment claim under Florida law: first, the plaintiff has conferred a benefit on the defendant; second, the defendant voluntarily accepted and

retained that benefit; and, finally, the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying for it." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287 (11th Cir. 2015). Delta attacks the first and third elements.

Regarding the first element, Delta claims that Plaintiff did not confer a "direct" benefit on it because the funds were collected by Allianz and then paid to Delta rather than paid to Delta "directly" by Plaintiff. That argument has been flatly rejected by other courts. Where a direct benefit is money, courts have held that a direct benefit is conferred even if conferred via an intermediary. For example, rejecting the same argument that Delta makes here, the *Zamber* court held that it "is immaterial whether American initially retained a portion of the funds Plaintiff paid for his policy and then sent the rest to the insurer or if all the funds went to an insurer and then a portion was 'kicked back' to American." 282 F. Supp. 3d at 130. What matters is that "[u]nder either scenario, money was transferred from Plaintiff's pocket and into American's," and "[t]hat is sufficient to confer a direct benefit." *Id.*

Courts have routinely held that a direct benefit is conferred regardless of whether the money or other benefit passed through an intermediary before being conferred on the defendant. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1311 (S.D. Fla. 2018) ("[U]njust enrichment claims are not precluded merely because the 'benefit' passed through an intermediary before being conferred on a defendant."); *State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.*, 20 F. Supp. 3d 1363, 1368 (S.D. Fla. 2014) ("U]njust enrichment claims are not precluded 'merely because the "benefit" passed through an intermediary before being conferred on a defendant.'"); *Hamilton v. Suntrust Mortg., Inc.*, 6 F. Supp. 3d 1312, 1317 (S.D. Fla. 2014) (holding that unjust enrichment claim may succeed even though "the 'benefit' passed through an intermediary before being conferred on a defendant"); *Aceto Corp. v. TheapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013) ("There are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct *contact*, or privity, is not the equivalent of conferring a direct *benefit*."); *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) ("[J]ust because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim."). Judge Altonaga's decision in *Williams* is particularly instructive because, like here, the unjust enrichment claim was

based on the receipt of kickbacks or "commissions."

Delta's reliance on *Kopel v. Kopel*, 229 So. 3d 812 (Fla. 2017), is odd and misplaced, as that opinion stands for nothing more than the proposition that an unjust enrichment claim requires the existence of a direct benefit. The opinion says nothing about what constitutes a "direct benefit," nor does it disturb the settled law noted above that a "direct benefit" exists when funds pass through an intermediary. Tellingly, Judge Moore's opinion in *State Farm* finding that a "direct benefit" exists when funds pass through an intermediary entity was issued well after the *Kopel* opinion. *Kopel* is wholly irrelevant to this case.

In fact, Florida law already held before *Kopel*, and continues to hold after, that a "direct benefit" may be conferred through an intermediary. *See Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015) ("[T]he 'direct benefit' element of an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary."); *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2019 WL 4739402, at *5 (S.D. Fla. July 10, 2019) ("Defendants' argument relies on the principle that a claim for unjust enrichment requires direct contact between plaintiff and defendant. But this is a misunderstanding of the law. Courts in this District have recognized that an unjust enrichment claim may go forward where a benefit is conferred through an intermediary, finding that direct contact, or privity, is not the equivalent of conferring a direct benefit.").

Delta also contends that Plaintiff cannot show that it would be "inequitable" for Delta to retain the benefit of its undisclosed and illegal commissions. Once again, other courts have held the exact opposite under nearly identical circumstances. *See Dolan*, 385 F. Supp. 3d at 1351 ("[T]he circumstances are such that it would be inequitable for [JetBlue] to retain the money because it obtained the money through alleged deceptive acts.") (second alteration in original); *Zamber*, 282 F. Supp. 3d at 1301 ("Finally, the circumstances are such that it would be inequitable for American to retain the money because it obtained the money through alleged deceptive acts.").[6]

---

[6] Delta makes the odd argument (ECF No. 220 at 16-17) that Plaintiff is somehow predicating his claims on violations of state insurance law. This is false, and unsurprisingly, Delta has no case to support its position. The FDUTPA claim is a "pass through" claim that exists and is viable whether or not Delta is violating any state insurance laws. The same is true for the unjust enrichment claim, as the *Dolan* and *Zamber* courts have already recognized. A jury can assess whether it is inequitable for Delta to receive half of Plaintiff's money for admittedly doing nothing of value in return, regardless of whether Delta is violating insurance law in the process.

### E.  The benefit of the bargain analysis is irrelevant.

It is also irrelevant for both claims whether Plaintiff allegedly received the "benefit of his bargain." The Florida law underlying Plaintiff's claims protects more than the benefit of the bargain. *Id.* (citing *Latman*, 758 So. 2d at 702–03). A benefit–of–the–bargain analysis is irrelevant because Plaintiff's claims are not based on contract nor otherwise on not receiving the benefit of his bargain. In fact, Plaintiff's claims are not based on any bargain with Delta; rather they are based on deceptive acts by Delta that allowed it to keep the majority of Plaintiff's funds from a transaction represented to be with a third-party insurer. Under Florida law, which defines the legally protected interest at stake, such conduct "is deceptive even if the consumer is willing to pay the total price (with the overcharge) for the product or service." *Id.*; *Latman*, 758 So. 2d at 702–03 ("We would not hesitate to say that an intentional overcharge of sales tax, which is kept by the company itself, is an unfair and deceptive trade practice and that the consumer must be repaid. That is so even though the consumers clearly were willing to pay the price charged—in the hypothetical example, they actually paid the sales tax overcharges—nor would it make a difference that the consumers paid no attention to the sales tax amount. We think such a claim would be actionable under FDUTPA."). In other words, Plaintiff has a legally protected interest in not paying a fee falsely marketed as a pass-through charge, regardless of whether he received the benefit of his bargain. *Deere*, 198 F. Supp. 3d at 1339 ("Defendants chose the descriptive terms and if they do not accurately describe what is being charged and collected, such conduct is actionable under the FDUTPA."). Accordingly, Delta's benefit-of-the-bargain analysis is meritless.

### F.  Delta Ironically Admits that it is asking this Court to Apply the Wrong Legal Standard

In Section III(C) of its motion, Delta unwittingly admits that its Section III(B) asks this Court to apply an erroneous legal standard to Plaintiff's FDUTPA claim.  While Delta had emphasized that the Court should grant summary judgment because Mr. Cappillo was not subjectively deceived based on his own views of Delta's conduct (ECF No. 220 at Section III (B)), Delta is then forced to admit in Section III(C) that the proper legal test is whether ***an objectively reasonable consumer*** would be deceived by Delta's conduct.  The Court cannot apply a subjective test as to Mr. Cappillo where binding precedent requires (as Delta now admits) the use of an objectively reasonable consumer standard. *See Democratic Republic of the Congo*, 614 F. App'x at 471 (noting that, although "[s]ome courts have injected a subjective element into FDUTPA

claims for unfair practices . . . deception is judged from an objective point of view"); *Carriuolo*, 823 F.3d at 985 ("the mental state of each class member is irrelevant").

And here there is ample record evidence to show that an "objectively reasonable consumer" would be deceived by Delta's conduct, specifically the expert survey of Mr. Sowers.  Plaintiff's Statement of Facts, Ex. 5.  This survey showed that a material percentage of respondents had no understanding or belief that Delta was being paid 50% of their insurance payment as a commission. Admitting that the Sowers report shows deception, Delta does nothing more than attack its methodology, which is not a basis to grant summary judgment.  Then Delta concludes its arguments by 1) again improperly asking this Court to rely on Mr. Cappillo's subjective beliefs; and 2) by claiming there was no misstatement about how the money is allocated.  The former is, again, the wrong legal standard, and the second is utterly false, as Delta admits.  Specifically, Delta's own statement of facts ***admits the insurance charge is a separate line item*** from the consumer's airfare (which includes all trip extras like priority boarding, seating, etc.).  So by setting out the charge separately, Delta did in fact make an affirmative misrepresentation as to where the money was going.  A reasonable consumer would believe all his airfare purchase (including trip extras) was going to Delta, and all his insurance premium was going to the third-party insurer.  That is a quintessential jury question. "Whether a reasonable consumer would interpret American's representations to mean that the trip insurance premium is a 'pass through' charge is thus a question of fact for a jury." *Zamber v. Am. Airlines, Inc*., 282 F. Supp. 3d 1289, 1300 (S.D. Fla. 2017).

### G. Delta's Filed-Rate Argument Fails based on Delta's Own Admissions

The Court must reject Delta's filed-rate argument for multiple reasons, not the least of which is that the contract between Delta and Allianz admits that ***Delta is not charging any filed rate*** for the insurance products.  By Delta's own admission, the products sold are hybrid insurance and assistance products, and they are priced not based on any filed rate, but based on a straight percentage of the consumer's airfare.  ECF No. 202-10 at Schedule A (listing percentage-based pricing).

As the proponent of its affirmative defense, Delta bears the burden of proof to demonstrate that a validly filed rate governs the transactions underlying Plaintiff's purchase.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1337 (11th Cir. 2018) (Jordan, J., dissenting) ("Because the federal filed rate doctrine can bar a claim 'only where there are validly filed rates,'

the defendant relying on the doctrine must show that a validly filed rate governs the transaction at issue."); *see also Perkins v. Ottershaw Invs. Ltd.*, 2007 WL 9701703, at *2 (S.D. Fla. Jan. 19, 2007) ("[W]here the moving parties request summary judgment on the basis of an affirmative defense, they have the initial burden of making a showing that the affirmative defense is applicable[.]").   "Indeed, the Supreme Court 'has emphasized the limited scope of the filed rate doctrine to preclude damage claims only where there are validly filed rates.'" *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009).  Further, "whether a filed rate applies to a given transaction is a precise factual inquiry, not a loose analysis to be done freehand." *Patel*, 904 F.3d at 1337.

Delta has not presented any evidence that the Plaintiff or any other consumer paid a validly filed rate for the trip insurance at issue here.  Instead, Delta offers a declaration in which Allianz's chief actuary declares that "Allianz ensures that how consumers are charged for trip insurance coverages are in accordance with the rate filings in their states."  Roth Decl. ¶5.  There is a reason that Mr. Roth does not mention the trip insurance product here.  Allianz has admitted that the product at issue is not solely an insurance product.  Plaintiff's Statement of Facts, Ex. 3, Horwitz Dep. Tr. 12:21-14:20.  Rather, it is a hybrid product that has both an insurance component and what is referred to as a "travel assistance" component.  *Id.*; Delta Statement of Undisputed Facts ("SUF") ¶21 ("The price of the travel insurance policies sold by Allianz to Delta's customers is composed of both insurance costs as well as non-insurance services.").  When coming up with a price for the travel assistance component, Allianz concededly does not rely on any filed rate. Rather, Allianz prices it according to Allianz's expenses (*e.g.*, overhead).  Horwitz Dep. Tr. 203:20-206:7.  In other words, given how the insurance product's price is set, no Delta customer could have possibly paid a filed rate.  The operative contract admits this point.  ECF No. 202-10 at Schedule A (showing pricing based not on filed rates, but a percentage of ticket price).

But this is not the only reason Delta cannot meet its burden of proof.  The evidence on which it purports to rely—the Roth Declaration—does not attach any of the rate filings on which Roth purports to rely.  In failing to do so, the declaration violates *Idearc Media Corp. v. Kimsey & Assocs., P.A.*, 2011 WL 1560653, at *4 (M.D. Fla. Apr. 25, 2011) ("[I]t is critical that the fact finder be able to see the alleged[ rate filings] in order to evaluate whether or not [a validly filed rate governs the transaction at issue].  Without the [rate filings] in evidence the affidavits referring to them violate the best evidence rule and must be excluded."); Fed. R. Civ. P. 56(c)(4) ("An

affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  Here, the Roth Declaration never even identifies the purportedly relevant rate filings.

Second, and independently, Delta's argument fails because it is internally inconsistent.  In short, if Delta is to be believed, its payment arrangement with Allianz does not implicate the filed rate.  Specifically, Delta insists that Allianz does not take any portion of the premium paid by customers and kick it back to Delta.  Rather, according to Delta, Allianz pays it a "monthly marketing fee for its role in providing Allianz the space on Delta's website to sell travel insurance." ECF No. 220 at 1.  Delta even insists that "[n]o incoming funds resulting from the sale of insurance to Delta customers are specifically earmarked or segregated by Allianz to be paid to Delta."  Delta SUF ¶17.  In light of such a position, Delta cannot plausibly argue that there is no genuine issue of disputed fact regarding application of the filed rate doctrine.

## CONCLUSION

Delta's summary judgment motion is based upon an alternate factual universe that Delta's own documentary admissions and testimony refute.  The Court must deny the motion in its entirety pursuant to binding precedent.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Dated: February 3, 2020                 Respectfully submitted,

                               */s/ Alec H. Schultz*

Scott B. Cosgrove
  Fla. Bar No. 161365
Alec H. Schultz
  Florida Bar No. 35022
John R. Byrne
  Florida Bar No. 126294
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:  305.740.1986
Facsimile:  305.437.8158
Email:  scosgrove@leoncosgrove.com
Email:  aschultz@leoncosgrove.com
Email:  jbyrne@leoncosgrove.com

*Counsel for Plaintiff*


Paul J. Geller, Esq.
  Florida Bar No. 984795
Stuart A. Davidson, Esq.
  Florida Bar No. 84824
Jason H. Alperstein, Esq.
  Florida Bar No. 64205
Christopher C. Gold, Esq.
  Florida Bar No. 088733
Bradley M. Beall, Esq.
  Florida Bar No. 1010635
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida  33432
Email:  pgeller@rgrdlaw.com
Email:  sdavidson@rgrdlaw.com
Email:  jalperstein@rgrdlaw.com
Email:  cgold@rgrdlaw.com
Email:  bbeall@rgrdlaw.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 3, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which in turn will serve a copy by electronic mail to all counsel of record.

*/s/ Alec H. Schultz*
Alec H. Schultz
