**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| **JUDITH MARILYN DONOFF,** <br> **on behalf of herself and all others similarly** <br> **situated,** <br><br>       **Plaintiff,** <br><br>    **v.** <br><br> **DELTA AIR LINES, INC.,** <br><br>       **Defendant.** | **Case No. 9:18-cv-81258-DMM** |

<u>**DELTA AIR LINES, INC.'S CORRECTED REPLY IN SUPPORT OF**</u>
<u>**ITS MOTION FOR SUMMARY JUDGMENT**</u>

## I.       INTRODUCTION

Plaintiff's opposition to Delta's motion for summary judgment ("Opp.") confirms what this Court has already held: this is not a pass-through case. Order on Motion for Class Certification, ECF No. 224 ("Order"). Plaintiff is unable to dispute the multiple factual distinctions making the pass-through measure of damages "not a just and reasonable method of calculating damages" here. *Id.* at 15. That is, (1) there is no affirmative statement on Delta's website stating whether Delta is compensated; (2) Delta did not collect the payment tendered for travel insurance; (3) Plaintiff paid Allianz for a travel insurance product that he received; and (4) there is no evidence that Plaintiff paid an inflated price. Unable to rely on the factually inapposite pass-through line of authority, Plaintiff lacks sufficient evidence to cure the "significant flaws" in his claims. *Id.*

***First***, FDUTPA requires evidence of actual damages. The only evidence of "damages" offered by Plaintiff and his expert are the amounts Allianz paid Delta under the Marketing Agreement. There is no evidence, however, that "but-for [Delta] obtaining a portion of the trip insurance proceeds, he . . . would have been able to secure trip insurance at a lower rate." *Id.* at 16. Nor is there any evidence that Allianz's payments to Delta inflated the price Plaintiff paid for his travel insurance policy. Plaintiff has thus failed to establish the actual damages required by FDUTPA. ***Second***, Plaintiff's FDUTPA claim also fails because the material, undisputed evidence demonstrates that reasonable consumers are not, in fact, likely to be deceived by Delta's website. Notably, Plaintiff's expert did not even conduct a survey on what a reasonable consumer would believe based on the "licensed producer" language he now claims to be the basis for the alleged deception. Nor does he offer any other evidence that a reasonable consumer would be deceived into believing Delta is not compensated based on the language that Allianz is the "licensed producer." His FDUTPA claim accordingly fails as a matter of law. ***Third***, Plaintiff's unjust enrichment claim is equally flawed. Just as Plaintiff cannot rely on the pass-through authority to save his deficient FDUTPA claim, he also cannot use the pass-through cases to cure the lack of evidence to support his unjust enrichment claim. Plaintiff simply has no evidence establishing that Delta's compensation from Allianz was inequitable vis-à-vis Plaintiff or that it caused Plaintiff any harm.

For these reasons, and those in Delta's opening brief, Plaintiff's claims fail as a matter of law, and the Court should grant summary judgment in favor of Delta.

## II.     UNDISPUTED MATERIAL FACTS

Plaintiff's opposition attempts to create the appearance of a material factual dispute, but there is none. While Delta is addressing the new facts alleged by Plaintiff in Delta's motion to strike and reply to Plaintiff's response to Delta's statement of undisputed material facts, three items warrant discussion here: ***First***, Plaintiff claims Allianz is not compensating Delta for advertising space, citing to a document indicating that Delta "is paid a 50% commission on all policy sales." Opp. at 4.  But even assuming, *arguendo*, the allegation is true, the fact that Delta's compensation is calculated based on 50% of policy sales does not mean that *the reason* Allianz is compensating Delta is for something other than the valuable advertising space on Delta's website. Indeed, Plaintiff emphasizes throughout his Opposition that Delta is paid a 50% commission rate on all policy sales. But this "fact" is immaterial to Delta's motion.

***Second***, Plaintiff attempts to contradict the declaration of Allianz employee Michael Confer stating that "[n]o incoming funds from the sale of insurance to Delta customers are specifically earmarked or segregated by Allianz to be paid to Delta." ECF No. 221 ("SUMF") ¶ 17. But Plaintiff misquotes the Marketing Agreement, which provides only that "the net premium to be retained by Allianz depends on the Advertising Fee." ECF No. 202, Ex. 10. That single statement does not establish how Allianz treats incoming funds or the source of Delta's compensation once the payments for travel insurance have been collected by Allianz. And Plaintiff did not seek to take Mr. Confer's deposition at any time to inquire further into his testimony. ***Third***, Plaintiff relies on an unauthenticated, hearsay "industry report" to attempt to create a triable issue of fact on whether the price of Plaintiff's insurance policy was "inflated." As shown below, the Court should reject this eleventh-hour attempt by Plaintiff to establish damages. Indeed, the statement on which Plaintiff relies cannot even be attributed to Allianz employee Daniel Roth, does not relate to Allianz's sale of travel insurance through Delta's website, and is insufficient to contradict the expert evidence submitted by Delta demonstrating that the products offered by Allianz to Delta's customers are among the least expensive in the market. The material, undisputed facts warrant summary judgment in favor of Delta.

## III.     ARGUMENT

### A.  The Pass-Through Authority Does Not Apply on the Facts of This Case.

In its order denying Plaintiff's motion for class certification, this Court held "that the facts in this case differ from the" pass-through cases "in several ways," and thus that "Plaintiff's theory

of his case" has "significant flaws." Order at 15. In doing so, the Court carefully considered *Latman v. Costa Cruise Lines, N.V.* and its progeny, concluding that "[a]n examination of cases applying the 'pass-through' theory demonstrates that it applies where a company makes some ***affirmative misrepresentation*** regarding how ***funds it obtains*** are being allocated." *Id.* at 13 (emphasis added). Plaintiff spends the majority of his opposition attempting to demonstrate that, despite this Court's holding, "Plaintiff's claim is a *Latman* claim." Opp. at 5-12. But saying so does not make it so, and Plaintiff's discussion of the pass-through authority only further demonstrates how this case "differ[s] from" the pass-through cases "in several ways." Order at 15.

As this Court noted, in each of the pass-through cases, the defendant made some affirmative representation about the fee that was being collected or whether the defendant was being compensated. *Id.* at 12-15. Indeed, effectively conceding the need to identify some affirmative representation, Plaintiff contends that the statement that Allianz is the "licensed producer" of the travel insurance is a statement that Delta is not being compensated. Not so. As a practical matter, the term "licensed producer" is insurance parlance—as Plaintiff admits. Fourth AC ¶ 29. And there is no evidence in the record that any consumer would associate the term "licensed producer" with whether Delta receives compensation from Allianz.[1] In addition, the statement that Allianz is the licensed producer means just that: Allianz is "the entity selling the product" and "accepting the payment for the product." SUMF ¶ 5. Both of those things are true. *Id.* ¶¶ 5, 9-10. What Allianz decides to do with the money in its "operations account" out of which Allianz pays things like "rent, salaries, and other operational costs" is a separate matter entirely. *Id.* ¶18. Plaintiff is accordingly precluded from relying on the "licensed producer" language to shoe-horn this case into the pass-through authority.

Plaintiff separately contends that no affirmative representation is required because FDUTPA incorporates a "net impression" test that applies to both representations and omissions. Opp. at 9. But, notably, Plaintiff does not cite any pass-through cases in support of this argument. *Id.* This is because the pass-through cases require an affirmative representation. Plaintiff's repeated insistence that Delta's website gives the "net impression" of a pass-through is telling in this respect. Plaintiff is not relying on any single statement on Delta's website regarding whether Delta has a financial interest in the travel insurance. Rather, Plaintiff seeks to expand the pass-through line of

---

[1] When asked at his deposition to identify what about Delta's website was inaccurate, Plaintiff never mentions the theory that his counsel posits in his Opposition. ECF No. 237, Ex. 6.

authority to apply in any circumstance where anything said *or not said* by a company could give the "net impression" that it was not receiving compensation. *See* Opp. at 9. The Court should again reject Plaintiff's invitation to expand *Latman* beyond its logical limits.

Yet another key distinction between this case and the pass-through cases is that Delta is not collecting the payments tendered by the customers for travel insurance. Contrary to Plaintiff's contention, this is far more than a "distinction without a difference." *Id.* at 6. In light of the circumstances of this case, that distinction is critical. Here, a third-party is selling a product and collecting the payment for that product.[2] It is undisputed that Plaintiff received the product he paid for at a price he agreed to pay Allianz. Separately, Allianz has a contractual arrangement with Delta that allows Allianz the "exclusive" ability to offer travel insurance to Delta's customers. ECF No. 202, Ex. 10. In return, Allianz is compensating Delta. Stated another way, Delta—by allowing Allianz the exclusive ability to sell travel insurance to Delta's customers—has contributed something of value to Allianz; Allianz, in turn, compensates Delta for that valuable "real estate" on delta.com. There is nothing nefarious about this typical e-commerce arrangement; and Plaintiff's unsuccessful attempt to invoke the pass-through authority cannot make it so. *See Flores v. United Airlines*, 2019 WL 6716608, at *5 (N.D. Ill. Dec. 10, 2019) ("*Flores*") (explaining that "[a] wise consumer assumes . . . that the owner of a website gets a share of the sale of products sold on its website").

Plaintiff's opposition attempts to minimize these critical distinctions by taking each one in isolation, claiming that "[w]ere the Court to grant summary judgment to Delta based on the path of money" it would allow Delta to do "indirectly what [] [it] is not permitted to do directly." Opp. at 7-8. Plaintiff's argument misses the point entirely. It is not simply the path of money that removes this case from the pass-through line of authority (although it is a key distinction); it is the totality of the circumstances here that make this case different from the *Latman*-type cases. Here, (1) there is no affirmative representation that Delta is not compensated, nor is there any misleading

---

[2] Plaintiff's tortured reading of the Marketing Agreement is insufficient to contradict the evidence demonstrating that Allianz collects payment for the travel insurance. Plaintiff relies on a single sentence in the Agreement to claim that "Delta is being paid a portion of each consumer's premium payment." ECF. No. 237 ¶ 9. The sentence in the Agreement actually states only that the amount of money "retained by Allianz" will depend on the "Advertising Fee" paid to Delta. Plaintiff's attempt to dispute this fact is also surprising in light of the plain terms of the Agreement stating that Allianz collects the payment for travel insurance and subsequently compensates Delta. *See*, *e.g.*, ECF No. 202, Exs. 4, 10.

description of the payment a customer makes for the travel insurance product; (2) Delta does not, in fact, directly collect any payment for travel insurance; (3) Plaintiff received the travel insurance product he purchased from Allianz; and (4) there is no evidence that Plaintiff was "overcharge[d]" as in the example used by the *Latman* court in describing the reasoning behind the recognition of liability for misrepresenting a pass-through fee, *Latman*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000). As this Court held, therefore, the pass-through "measure of damages" is "not a just and reasonable method of calculating damages under the circumstances presented here." Order at 15.

The remainder of Plaintiff's argument is nothing more than broad over-generalizations and a transparent attempt to resurrect the dismissed insurance statute-related claims. Opp. at 5 (contending a pass-through claim is simply where a defendant "hid[es] a vehicle for additional profits"); *id.* at 8-9 (arguing that it is "illegal[]" for Delta to receive commissions). But—to the extent Plaintiff's FDUTPA claim is premised on the allegedly "illegal" nature of the payment from Allianz to Delta, that claim fails as a matter of law. And, as this Court has explained, the pass-through authority extends only to a unique set of circumstances not present here. The Court should accordingly reaffirm its holding in denying Plaintiff's motion for class certification and decline to apply the pass-through line of authority to Plaintiff's purchase of travel insurance.

### B. Plaintiff's Evidence is Insufficient to Create a Triable Issue of Fact on Any Element of His FDUTPA Claim.

Unable to rely on the factually inapposite pass-through line of authority, Plaintiff's FDUTPA claim fails at every turn:

#### i. *Plaintiff lacks evidence that Delta's alleged conduct caused him any damages.*

As this Court explained, damages for Plaintiff's FDUTPA claim must be demonstrated by a showing that "but-for Defendant obtaining a portion of the trip insurance proceeds, he . . . would have been able to secure trip insurance at a lower rate." Order at 16. That holding was not based on the conclusion that "the difference in the market value" is the *only* method of calculating actual damages under FDUTPA. *Id.* at 15. Nor did Delta make that argument in its opening brief. Delta acknowledges the pass-through line of authority. ECF. No. 220 at 14. What Delta demonstrated, however, is that the pass-through measure of damages does not "obviate the need for a plaintiff to demonstrate actual damages." *Id.* (citing § 501.211(2), Fla. Stat.). This Court agrees. Order at 15 ("FDUTPA provides for actual damages.").

The "amount of the 'marketing fee'" Allianz pays Delta, therefore, cannot serve as a valid measure of damages here because there is no evidence that this amount equated to a "price premium" that Plaintiff paid for his travel insurance. SUMF ¶¶ 25-28. In fact, Delta has presented expert evidence analyzing the price of the Allianz travel insurance products sold through Delta's website and concluding that the "price of the travel insurance policies" are "actually among the least expensive travel products offered in the marketplace." SUMF ¶ 27. Plaintiff, on the other hand, failed to conduct any investigation or discovery into the price of his travel insurance policy as compared to those available in the market. SUMF ¶ 33. Nor did Plaintiff's damages expert conduct any such analysis. SUMF ¶¶ 22-24.

In an attempt to save his deficient FDUTPA claim and rehabilitate his failure to obtain any evidence during discovery of actual damages, Plaintiff makes two arguments to attempt to create an issue of fact: (1) Plaintiff asks this Court to "infer" that a "kickback" necessarily inflates the price of the product, Opp. at 11-12, and (2) he offers an unauthenticated, hearsay document wholly unrelated to this case, ECF No. 237, Ex. 4(B). The Court should reject both arguments out of hand. *First*, the Court cannot "infer" evidence that Plaintiff failed to offer.[3] It is Plaintiff's burden in opposing summary judgment to bring forward evidence creating a triable issue of fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (explaining that Rule 56(e) "shifts to the non-moving party the burden of presenting specific facts" contradicting the moving party's evidence). *Second*, the Court should refuse to consider the unauthenticated hearsay article attached to a declaration from Plaintiff's counsel as support for Plaintiff's speculation that it constitutes evidence in this case that Plaintiff could have secured travel insurance at a lower rate.

Even if the Court were to consider this unauthenticated document, the materials support granting Delta's motion, not denying it. Most importantly, the cited paragraph does not support the conclusion that Plaintiff could have purchased travel insurance elsewhere at a lower rate. Plaintiff points to a single sentence stating that "the amount of compensation offered to travel insurance distributors has a direct impact on the types and prices of products offered to consumers." ECF No. 237, Ex. 4(B).  However, the following paragraph also explains that any

---

[3] The authority Plaintiff relies on is inapposite. Both *U.S. v. Acme Process Equip. Co.*, 385 U.S. 138 (1966) and *U.S. v. Davio*, 136 F. Supp. 423 (E.D. Mich. 1955) are ***criminal case*s** involving individuals violating the Anti-Kickback Act. And in *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368 (S.D.N.Y. 2015), the court analyzed the sufficiency of allegations on a ***motion to dismiss*** not the sufficiency of evidence on a motion for summary judgment.

effect of the compensation paid to distributors is "mitigat[ed]" because "the types of travel purchased are relatively less complicated and thus relatively l*ess expensive than travel purchased through traditional travel agencies*." *Id.* (emphasis added). Moreover, the Court need not even reach this issue because the materials lack adequate authentication and foundation. Plaintiff never sought to depose Mr. Roth to question him on the statements in the materials, nor do the materials reference Delta or Allianz. Rather, the materials—at most—represent an actuarial group's generalized discussion of the industry, including the relationship between travel insurance providers and distributor partners. It was incumbent on Plaintiff during discovery to obtain evidence establishing the elements of his claims. Plaintiff failed to do so. Plaintiff's last-ditch effort to pluck an unauthenticated hearsay document off the internet and speculate as to whether its contents have any bearing on his claims should accordingly be rejected.

In sum, Plaintiff has presented no material, admissible evidence demonstrating that Plaintiff "would have been able to secure trip insurance at a lower rate" or contradicting the evidence establishing that the travel insurance products sold by Allianz through Delta's website are among the least expensive in the market. Plaintiff's FDUTPA claim accordingly fails.

### ii. *There is no material evidence creating a triable issue of fact as to whether Delta's alleged conduct is likely to deceive a reasonable consumer.*

Again trying to pigeon-hole his claims into the pass-through authority, Plaintiff contends that the statement that Allianz is the "licensed producer" of the travel insurance is an affirmative statement on Delta's website that is likely to deceive a consumer into believing that Delta does not receive compensation related to Allianz's sale of travel insurance on Delta's website. As shown above, this argument fails to bring Plaintiff's FDUTPA claim under the purview of the pass-through line of authority. But even if it could, it only serves to reveal a fatal gap in Plaintiff's evidence, *i.e.*, there is no evidence demonstrating that a reasonable consumer would be deceived by the phrase "licensed producer."

As shown in Delta's opening brief, Plaintiff himself was not deceived by Delta's website. SUMF ¶ 40. While Delta does not contend that Plaintiff's subjective belief is dispositive of his FDUTPA claim—indeed, Delta clearly recognizes the objective "reasonable consumer" standard—it is certainly *evidence* relevant to this Court's consideration of whether a reasonable consumer would be deceived by Delta's website. That evidence is bolstered by the common-sense conclusion reached by Judge Alonso in *Flores* (a decision Plaintiff ignores entirely): "A wise consumer assumes . . . that the owner of a website gets a share of the sale of products sold on its

7

website." *Flores*, at *5. In opposition to Delta's motion, Plaintiff attempts to rely on the expert survey of Mr. Sowers, claiming that it shows that "a material percentage of respondents had no understanding or belief" that Delta was receiving compensation from Allianz. Opp. at 17. But as demonstrated in Delta's opening brief, the Sowers survey is fundamentally flawed and *still* shows that—at best—only 27.4% of respondents believed Delta was not being compensated. ECF No. 220 at 15-16; SUMF ¶¶ 42-46.[4]

Even more critically, Mr. Sowers's survey did not test whether a reasonable consumer would be deceived by the "licensed producer" language which Plaintiff now claims to be the entire foundation of the alleged deception. *See* SUMF, Ex. L. Specifically, the Sowers Survey used an image of Delta's website that did not contain the language that Allianz is the "licensed producer" of the travel insurance. *Id.* at 10. This means that Plaintiff's survey does not, in fact, serve as evidence that a reasonable consumer would be deceived by the statement that Allianz is the "licensed producer." Mr. Sowers's survey tested only whether the ***omission*** of the fact of Delta's compensation was deceptive. But even with a flawed methodology testing that theory, Mr. Sowers's survey does not demonstrate a likelihood of deception overcoming the results of Mr. Poret's survey demonstrating that "only a net 1% of prospective purchasers of airline tickets through the Delta website understood the website to suggest that Delta does not receive compensation." SUMF ¶ 48.

Because there is insufficient evidence to create a triable issue of fact as to whether Delta's website would deceive a reasonable consumer, this presents an additional, independent basis for granting summary judgment in favor of Delta on Plaintiff's FDUTPA claim.

### C. Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law.

Plaintiff fails to address the primary reason Plaintiff's unjust enrichment claim fails, *i.e.*, Plaintiff has failed to present any evidence demonstrating that he was harmed by Delta's alleged conduct. *See Green v. McNeil Nutritionals, LLC*, 2005 WL 3388158, at *5 (Fla. Cir. Ct. Nov. 16, 2005) (a plaintiff must demonstrate that he was "harmed in some way before courts will impose th[e] equitable remedy" of unjust enrichment); *see also* ECF No. 220 at 7-8 (demonstrating the

---

[4] Plaintiff relies on *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1300 (S.D. Fla. 2017) to contend that the question of likelihood of deception is a "jury question." Opp. at 17. But the *Zamber* court was deciding American Airlines' ***motion to dismiss*** not a motion for summary judgment.

lack of evidence that Plaintiff suffered any damages). Completely ignoring the equitable component of his claim, Plaintiff simply asserts that whether Plaintiff "received the 'benefit of his bargain'" is "irrelevant." But here, again, Plaintiff relies on the pass-through authority, which is not applicable to Plaintiff's unjust enrichment claim. The benefit-of-the-bargain analysis is relevant to Plaintiff's unjust enrichment claim because it demonstrates that Plaintiff did not suffer damages, an essential element of that claim. *See Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) (dismissing unjust enrichment claim where the plaintiffs "received the benefit of their bargain"); *Van Zanen v. Qwest Wireless, L.L.C.*, 550 F. Supp. 2d 1261, 1267 (D. Col. 2007) (dismissing unjust enrichment claim because the plaintiff "obtained a valuable product for which they bargained and which they intend to keep"). Because Plaintiff does not dispute that he received "adequate consideration," *i.e.*, his travel insurance policy, for the "benefit conferred," *i.e.*, the amount he paid, his claim for unjust enrichment fails. *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. 5th DCA 2007).

Plaintiff likewise singularly relies on the pass-through authority as "evidence" that it would be inequitable for Delta to "retain the benefit of its undisclosed" profit. Opp. at 15. But those cases—which are wholly inapplicable to Plaintiff's unjust enrichment claim—do not serve as *evidence* in this case that Delta's compensation is inequitable. And Plaintiff does not even attempt to dispute the facts demonstrating that Delta's compensation from Allianz is not inequitable vis-à-vis Plaintiff, who received a travel insurance policy from Allianz at a price that he voluntarily agreed to pay. *See Moore v. GNC Holdings, Inc.*, 2014 WL 12634919, at *5 (S.D. Fla. Mar. 18, 2014) (granting summary judgment on unjust enrichment claim where, "[e]ven if Plaintiffs were deceived into purchasing the Product, they paid only the market value of that Product . . . [i]t would [thus] not be inequitable for Defendant to retain the money received from Plaintiffs' purchase of the Product"); *Flores* at *5 ("commissions are not inherently immoral, unethical, oppressive or unscrupulous").

Finally, Plaintiff does not dispute that he did not confer a "direct" benefit on Delta, arguing only that where the "benefit is money, courts have held that a direct benefit is conferred even if conferred via an intermediary." Opp. at 14. The vast majority of the cases cited by Plaintiff, however, pre-date the Florida Supreme Court's decision in *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). Opp. at 14 (relying on cases from 2014, 2013 and 2011). And, tellingly, Plaintiff does not even address the Eleventh Circuit's decision applying *Kopel* to affirm dismissal of an unjust

9

enrichment claim in almost identical circumstances as are presented here. *Johnson v. Catamaran Health Sols. LLC*, 687 F. App'x 825 (11th Cir. 2017). *Johnson* is controlling and dispositive of Plaintiff's unjust enrichment claim because here, as in *Johnson*, Plaintiff "conferred (at best) an indirect benefit on" Delta. *Id.*

### D.  Plaintiff Does Not Dispute That Any Insurance Statute-Related Claims Fail.

In its motion, Delta demonstrated that—to the extent Plaintiff's claims remain predicated on the requirements of Florida's insurance code—they fail as a matter of law. ECF No. 220, at 16-17. Plaintiff does not address, let alone dispute this argument, and it is accordingly waived. *Cigainero v. Carnival Corp.*, 2019 WL 2363806, at *4 (S.D. Fla. Feb. 20, 2019) (plaintiff failed to respond to various arguments raised in motion for summary judgment and thus waived them); *Grant v. Miami-Dade Cnty.*, 2014 WL 7928394, at *9 (S.D. Fla. Dec. 11, 2014) ("Where a plaintiff fails to respond to an argument in a motion for summary judgment, he waives the argument.").

### E.  Plaintiff's Claims Violate the Filed Rate Doctrine.

Plaintiff opposes Delta's filed-rate defense on two, related grounds: (1) by claiming that Allianz is not charging any filed rate for the insurance products, and (2) by disputing that Delta has provided sufficient evidence that Plaintiff paid a validly filed rate. Opp. at 17-18. Notably, however, Plaintiff does not dispute that his claim for damages in this case would result in reimbursement to Plaintiff of a significant portion of the amount he paid for his travel insurance policy. That undisputed fact necessarily implicates the filed-rate doctrine. And neither of Plaintiff's arguments demonstrate otherwise. *First*, Plaintiff's reliance on Schedule A to the Marketing Agreement misses the mark. Nothing in Schedule A states or even suggests that Allianz is not charging a filed rate. Nor does the fact that the travel insurance product includes both an insurance component and a "travel assistance" component mean that the price Plaintiff paid isn't based on a filed rate. *Second*, Delta submitted the declaration of Daniel Roth stating that Allianz ensures that rate filings are filed in "all states in which Allianz offers travel insurance products," and that "consumers are charged for the trip insurance . . . in accordance with the rate filings in their states." This declaration is undisputed evidence the Court may consider on summary judgment. Fed. R. Civ. P. 56(c)(4).

### IV.   CONCLUSION

For the foregoing reasons as well as those stated in Delta's opening brief, the Court should grant summary judgment in favor of Delta on Plaintiff's FDUTPA and unjust enrichment claims.

Respectfully submitted this 10th day of February, 2020.

*s/ Lazaro Fernandez, Jr.*
Lazaro Fernandez, Jr.
Fla. Bar No. 716545
Email:  lfernandez@stackfernandez.com
Denise B. Crockett
Fla. Bar No. 327913
Email:  dcrockett@stackfernandez.com
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001

Gayle I. Jenkins, Esq.
Email: gjenkins@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863

David L. Balser, Esq.
Email: dbalser@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 572-4600

Julia C. Barrett, Esq.
Email: jbarrett@kslaw.com
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel: (512) 457-2053

*Attorneys for Defendant Delta Air Lines, Inc.*

11